## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------------------x
                                                  :
In re:                                            :       Chapter 11
                                                  :
Nuverra Environmental Solutions, Inc., et al.,[1] :       Case No. 17–10949 (____)
                                                  :
                              Debtors.            :       (Joint Administration Requested)
                                                  :
                                                  :
-------------------------------------------------------------------x
```

## DEBTORS' MOTION FOR AN ORDER (I) AUTHORIZING PAYMENT OF CERTAIN PREPETITION TAXES AND (II) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR ALL RELATED CHECKS AND ELECTRONIC PAYMENT REQUESTS

Nuverra Environmental Solutions, Inc. and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned cases hereby submit this motion (this "**Motion**") for entry of an order (i) authorizing the Debtors to remit and pay, in the ordinary course of business, certain prepetition sales, use, franchise, and property taxes, as well as all other taxes, fees, and governmental obligations (collectively, the "**Taxes**") and (ii) authorizing the Debtors' banks and financial institutions (collectively, the "**Banks**") to honor all related checks and electronic payment requests. In support of this Motion, the Debtors respectfully represent as follows:

### Background

1. On the date hereof (the "**Petition Date**"), each of the Debtors filed with the Court a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11

---

[1] The Debtors in these proceedings (including the last four digits of their respective taxpayer identification numbers) are: Nuverra Environmental Solutions, Inc. (7117), Appalachian Water Services, LLC (0729), Badlands Leasing, LLC (2638), Badlands Power Fuels, LLC (DE) (8703), Badlands Power Fuels, LLC (ND) (1810), Heckmann Water Resources Corporation (1194), Heckmann Water Resources (CVR), Inc. (1795), Heckmann Woods Cross, LLC (9761), HEK Water Solutions, LLC (8233), Ideal Oilfield Disposal, LLC (5796), Landtech Enterprises, L.L.C. (9022), NES Water Solutions, LLC (3421), Nuverra Total Solutions, LLC (6218), and 1960 Well Services, LLC (5084). The Debtors' corporate headquarters is located at 14624 N. Scottsdale Rd., Suite 300, Scottsdale, Arizona 85254.

U.S.C. §§ 101–1532 (the "**Bankruptcy Code**").  The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these chapter 11 cases.  As of the date hereof, no creditors' committee has been appointed.  Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of these chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

2.       Concurrently herewith, the Debtors have filed the *Debtors' Prepackaged Plans of Reorganization Under Chapter 11 of the Bankruptcy Code* (the "**Plan**") and the related disclosure statement.  Voting on the Plan began prior to the Petition Date, but has not yet concluded.

3.       The Plan comprises (i) a separate plan (the "**Nuverra Group Plan**") for all of the Debtors except for Appalachian Water Services, LLC and Badlands Power Fuels, LLC (DE) (the "**Nuverra Group Debtors**"), (ii) a separate plan of reorganization for Appalachian Water Services, LLC (the "**AWS Plan**") and (iii) a separate plan of reorganization for Badlands Power Fuels, LLC (DE) (the "**Badlands (DE) Plan**" and collectively with the Nuverra Group Plan and the AWS Plan, the Plan).  The Plan was developed in accordance with the terms of the Restructuring Support Agreement, dated as of April 9, 2017, as amended from time to time (the "**Restructuring Support Agreement**"), among the Debtors and certain supporting noteholders who hold 100% of the outstanding principal amount of the Term Loan Facility Claims and approximately 86% in outstanding principal amount of the 2021 Notes (the "**Supporting Noteholders**").  The Restructuring Support Agreement obligates the Supporting Noteholders, subject to certain terms and conditions, to vote to approve the Plan.  The Debtors expect that,

01:19310099.14

with the affirmative vote of the Supporting Noteholders, each Plan will be accepted by one or more impaired classes of creditors.

4.      Additional factual background relating to the Debtors' business, capital structure, and the commencement of these chapter 11 cases is set forth in detail in the *Declaration of Robert D. Albergotti in Support of Voluntary Petitions, First Day Motions and Applications* (the "**First Day Declaration**").[2]

### **Prepetition Taxes Paid by the Debtors**[3]

5.      In the ordinary course of their business, the Debtors incur and collect the Taxes and remit such Taxes to various taxing, licensing, and other governmental authorities (collectively, the "**Taxing Authorities**").  The Debtors were substantially current in the payment of assessed and undisputed Taxes that were due and payable prior to the Petition Date.  However, certain Taxes attributable to the prepetition period (the "**Prepetition Taxes**") had not yet become due, or remained outstanding, as of the Petition Date.

6.      As discussed below, the Debtors categorize their Prepetition Taxes into the following: (i) Sales and Use Taxes, (ii) Franchise Taxes, (iii) Regulatory Fees, (iv) Property Taxes, (v) Business License Fees, Annual Report Taxes, and other Corporate Fees, and (vi) Other Taxes and Fees.  Additional detail with respect to each category of Prepetition Taxes is provided below.

---

[2]      Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

[3]      The Debtors do not seek authority to collect and pay state and federal employee withholding taxes under this Motion, but rather request such authority as part of the *Motion for Entry of an Order Authorizing the Debtors to (I) Pay Prepetition Employee, Independent Contractor and Director Wages, Salaries and Other Compensation, (II) Reimburse Prepetition Employee Business Expenses, (III) Contribute to Prepetition Employee Benefit Programs and Continue Such Programs Postpetition, (IV) Make Payments for which Prepetition Payroll Deductions Were Made, (V) Pay Workers' Compensation Obligations, and (VI) Pay All Costs And Expenses Incident to the Foregoing* filed concurrently herewith.

01:19310099.14

A.     *Sales and Use Taxes*.

7.     The Debtors collect and remit to certain Taxing Authorities a variety of sales, local gross receipts, and other similar taxes in connection with the sale of goods to their customers (collectively, the "**Sales Taxes**").  Sales Taxes are paid in the ordinary course of the Debtors' business and are calculated based upon statutorily mandated percentages.  The Debtors remit Sales Taxes quarterly or monthly, depending on the particular Taxing Authority.

8.     In addition, the Debtors may be responsible for the payment of use taxes (the "**Use Taxes**" and together with the Sales Taxes, the "**Sales and Use Taxes**").  Vendors are not obligated to charge or remit Sales Taxes for sales to parties outside the state of the vendor's operations.  Nevertheless, a purchaser is obligated to self-assess and pay taxes on the use, storage, or consumption of goods in the states in which the purchaser operates, regardless of whether the purchase took place in that state.  The Debtors incur and remit Use Taxes when they purchase property or services from vendors that have no nexus to the state in which the purchasing Debtor operates, and thus no Sales Taxes were collected by the vendor.

9.     Based on historical payments, as of the Petition Date, the Debtors estimate that they owe to the Taxing Authorities approximately $200,000 in Sales and Use Taxes relating to the prepetition period.

B.     *Franchise Taxes*

10.     The Debtors pay franchise, capital stock, and similar taxes and fees (collectively, the "**Franchise Taxes**") to certain of the Taxing Authorities to maintain the right to operate their business in the applicable taxing jurisdictions.  Some states assess a flat Franchise Tax on all business, and other states assess a Franchise Tax based upon net operating income.  Certain states will refuse to qualify a debtor to do business in a state if Franchise Taxes have not

been paid.  The Debtors estimate that the aggregate amount of prepetition Franchise Taxes owing to the Taxing Authorities is approximately $750,000.

### C. *Regulatory Fees*

11.    The nature of the Debtors' business subjects the Debtors to a variety of permit and other regulatory fees (collectively, the "**Regulatory Fees**").  The Debtors are required to pay these Regulatory Fees to the various Taxing Authorities on a periodic basis with funds drawn by checks and electronic payment requests from the Banks.   Failure to pay these Regulatory Fees could impact the Debtors' ability to conduct their business, thereby severely undermining the reorganization process.   The Debtors estimate that the aggregate amount of prepetition Regulatory Fees owing to the Taxing Authorities is approximately $200,000.

### D. *Property Taxes*

12.    The Debtors pay real and personal property taxes (collectively, the "**Property Taxes**") to certain of the Taxing Authorities within those jurisdictions where the Debtors own real property and personal property.   The Debtors estimate that the aggregate amount of prepetition Property Taxes accrued, but not yet due and owing to the Taxing Authorities, is approximately $2,000,000.

### E. *Business License Fees, Annual Report Taxes, and other Corporate Fees*

13.    Many municipal and county governments require businesses to obtain business licenses and pay corresponding business license fees (collectively, the "**Business License Fees**").  Certain state governments also require the Debtors to pay annual report or bi-annual report taxes or other corporate fees (collectively, the "**Corporate Fees**" and, together with the Business License Fees, the "**Business Taxes and Fees**") to be in good standing for purposes of conducting business within that state.  The Debtors do not believe there are any amounts owing to the Taxing Authorities for prepetition Business Taxes and Fees.

F.     *Other Taxes and Fees*

14.     The Debtors also incur various other taxes, fees, and charges, including, but not limited to, gross receipt taxes (the "**Other Taxes and Fees**").  The Debtors do not believe there are any amounts owing to the Taxing Authorities for Other Taxes and Fees.

## Jurisdiction

15.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  The statutory predicates for the relief requested herein are sections 105(a), 363(b), 507(a)(8), 541, 1107(a) and 1108 of the Bankruptcy Code and Bankruptcy Rule 6003.

## Relief Requested

16.     The Debtors hereby request entry of interim and final orders, pursuant to sections 105(a), 363(b), 507(a), and 541 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6005, (i) authorizing, but not directing, the Debtors to pay, in their sole discretion, all Prepetition Taxes in an amount not to exceed $3,750,000, absent further order of the Court, and (ii) authorizing the Banks to honor all related checks and electronic payment requests.

## Basis for Relief

I.     **THE COURT SHOULD AUTHORIZE, BUT NOT DIRECT, THE DEBTORS TO PAY, IN THEIR SOLE DISCRETION, THE PREPETITION TAXES**

A.     *Payment of the Prepetition Taxes Is Necessary and Appropriate to Ensure the Debtors' Smooth Transition into Chapter 11*

17.     The Debtors respectfully submit that the Court should authorize the payment of the Prepetition Taxes because: (i) certain of the Prepetition Taxes do not constitute property of the Debtors' chapter 11 estates; (ii) substantially all of the Prepetition Taxes

01:19310099.14

6

constitute priority claims that will be paid in full under a chapter 11 plan; (iii) the failure to pay certain of the Prepetition Taxes may impact the Debtors' ability to conduct business in certain jurisdictions and their ability to perform under their postpetition agreements; and (iv) the Debtors' directors and officers may face personal liability if certain of the Prepetition Taxes are not paid.  Absent payment of these amounts, the Debtors may face serious disruptions and distractions as they seek to restructure.

18.     The Sales Taxes and certain of the other Taxes identified above are "trust fund taxes" that, by definition, are held by the Debtors in trust for the benefit of those third parties to whom payment is owed or on behalf of whom such payment is being made.  Section 541(d) of the Bankruptcy Code excludes "property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest." 11 U.S.C. § 541(d).  It is well established under section 541(d) of the Bankruptcy Code that taxes collected on behalf of taxing authorities are not property of the estate.  *See Begier v. IRS*, 496 U.S. 53, 59 (1990) (holding that taxes such as excise taxes, FICA taxes and withholding taxes are property held by the debtor in trust for another and, as such, do not constitute property of the estate); *City of Farrell v. Sharon Steel Corp. (In re Sharon Steel Corp.)*, 41 F.3d 92, 98–103 (3d Cir. 1994) (finding that funds withheld from employees' paychecks may be subject to a trust, and thus not property of a debtor's estate, even where such funds were commingled with the debtor's other property); *In re Am. Int'l Airways, Inc.*, 70 B.R. 102, 103 (Bankr. E.D. Pa. 1987) (finding that funds held in trust for federal excise taxes are not property of a debtor's estate and, therefore, are not available for distribution to creditors).  Because the Prepetition Taxes that are trust fund Taxes do not constitute property of the Debtors' estates, these amounts will not otherwise be

available for distribution to the Debtors' creditors.  Thus, the payment of these Prepetition Taxes will not adversely affect the Debtors' estates and is warranted.

19.     The Debtors believe that most, if not all, of the Prepetition Taxes would be priority claims under section 507(a)(8) of the Bankruptcy Code.  As priority claims, these Taxes must be paid in full before the Debtors may obtain confirmation of a chapter 11 plan or make distributions to general unsecured nonpriority creditors.  *See* 11 U.S.C. § 1129(a)(9)(C). Accordingly, the proposed relief will only affect the timing of the payment of the Prepetition Taxes and not whether such amounts will be paid.  As such, payment of the Prepetition Taxes will not prejudice the rights of general unsecured nonpriority creditors or other parties in interest.

20.     Moreover, the failure to pay Property Taxes generally gives rise to a lien on or security interest in the taxed property.  Tax liens relating to Property Taxes typically arise on or relate back to a date prior to the due date of the tax bill (*e.g.*, the assessment date or tax status date).  Under section 506(b) of the Bankruptcy Code, secured tax claims may accrue interest and penalties up to the value of the underlying collateral.[4]  *See, e.g.*, *U.S. v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242–43 (1989) (stating that nonconsensual lienholders may receive interest on their claims under section 506(b) of the Bankruptcy Code).  Furthermore, under section 511 of the Bankruptcy Code, interest on a secured tax claim will accrue at the applicable rate under non-bankruptcy law.[5]  *In re Bernbaum*, 404 B.R. 39, 43 (Bankr. D. Mass. 2009) ("The

---

[4]     Section 506(b) of the Bankruptcy Code provides:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

11 U.S.C. § 506(b).

[5]     Section 511(a) of the Bankruptcy Code provides, in pertinent part, that "[i]f any provision of this title requires the payment of interest on a tax claim or on an administrative expense tax . . . the rate of interest shall be the rate determined under applicable nonbankruptcy law."  11 U.S.C. § 511(a).

plain meaning of § 511 is unambiguous: the bankruptcy court must refer to state law and may no longer use its equitable powers to alter the interest rate on a tax claim from the rate set forth under the applicable state law." (internal quotation omitted)).

21.     The Debtors are required to pay Franchise Taxes and, in some instances, other Prepetition Taxes to maintain their good standing to operate in the jurisdictions in which they do business.  Thus, if such Prepetition Taxes are not paid, Taxing Authorities may refuse to issue good standing certificates, which are often required in securities and financing transactions, and may refuse to take other actions requested of them by the Debtors during these chapter 11 cases.  The inability to obtain these documents may hinder the Debtors' ability to effectuate their restructuring and exit bankruptcy.  The Debtors also believe that some of the Taxing Authorities may initiate audits if the Debtors fail to pay the Prepetition Taxes promptly.  Such audits would further divert attention and resources from the process of administering these chapter 11 cases.

22.     Many Taxing Authorities impose personal liability on directors and officers responsible for collecting or paying certain Taxes to the extent that such Taxes are not remitted.  Thus, if any such Prepetition Taxes remain unpaid, the Debtors' directors and officers may be subject to lawsuits or even criminal prosecution on account of such nonpayment during the pendency of these chapter 11 cases.  Such lawsuits or proceedings would constitute a significant distraction for the Debtors' directors and officers at a time when they should be focused on the Debtors' efforts to stabilize their postpetition business operations and the formulation and implementation of a successful restructuring strategy.[6]

---

[6]     Although the Debtors believe that all Prepetition Taxes for which the Debtors' directors and responsible officers may be personally liable are described herein, it is possible that other prepetition obligations similar in nature (and in threat of personal liability) may be uncovered by the Debtors subsequent to the filing of this Motion.  To the extent that such prepetition obligations exist, the Debtors will consider such obligations "Prepetition Taxes" as that term is defined and used herein and request the authority to pay such Prepetition Taxes as they may arise in the ordinary course of their business.

**B.**      ***Payment of the Prepetition Taxes Is Authorized Under Sections 105(a), 363, 1107(a), and 1108 of the Bankruptcy Code and the Doctrine of Necessity***

23.      The relief requested in this Motion is also supported by several provisions of the Bankruptcy Code that authorize a debtor to honor prepetition obligations in certain circumstances.  Courts have recognized each of these provisions as valid authority for such payments.  For example, under section 363(b) of the Bankruptcy Code, a court may authorize a debtor to pay certain prepetition claims.  *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (referring to the court's earlier order authorizing payment of prepetition wages pursuant to section 363(b) of the Bankruptcy Code); *Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 397 (S.D.N.Y. 1983) (relying on section 363 of the Bankruptcy Code to allow a contractor to pay prepetition claims of suppliers who were potential lien claimants because the payments were necessary for general contractor to release funds owed to debtors).  To do so, "the debtor must articulate some business justification, other than the mere appeasement of major creditors." *Id.*; *see also Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063 (2d Cir. 1983).

24.      In addition, sections 1107(a) and 1108 of the Bankruptcy Code authorize a debtor in possession to continue to operate its business.  11 U.S.C. §§ 1107(a), 1108.  Indeed, a debtor in possession operating a business under section 1108 of the Bankruptcy Code has a duty to protect and preserve the value of its business, and prepetition claims may be paid if necessary to perform the debtor's duty.  *See In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) ("There are occasions when this duty can only be fulfilled by the preplan satisfaction of a prepetition claim.").  The *CoServ* court specifically noted that the pre-plan satisfaction of prepetition claims would be a valid exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." *Id.*

01:19310099.14

25.     To supplement these explicit powers, section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Numerous courts have recognized that payments to prepetition creditors are appropriate pursuant to section 105(a) of the Bankruptcy Code under the "doctrine of necessity" or the "necessity of payment" rule where such payments are necessary to the continued operation of the debtor's business. *See, e.g.*, *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court could authorize the payment of prepetition claims if such payment was essential to the continued operation of the debtor); *In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (holding that the necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims have been paid"); *In re Just for Feet, Inc.*, 242 B.R. 821, 826 (D. Del. 1999) (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization."). The rationale for the doctrine of necessity is consistent with the paramount goal of chapter 11—"facilitating the continued operation and rehabilitation of the debtor." *In re Ionosphere Clubs*, 98 B.R. at 176.

26.     The Debtors submit that the timely payment of the Prepetition Taxes is essential to the Debtors' restructuring and continued, uninterrupted operations. The Debtors' payment of the Prepetition Taxes is necessary to forestall the obstacles to the smooth functioning of the Debtors' business operations that likely would result from a failure to remit the tax payments described herein. Specifically, the failure to maintain good standing, potential audits by Taxing Authorities, and, crucially, the threat of personal liability for the Debtors' directors and responsible officers represent a few of the adverse consequences that may result from the

Debtors' failure to make necessary tax payments. Significant disruptions to the Debtors' operations of this type threaten to irreparably impair the Debtors' ability to restructure. Thus, payment of the Prepetition Taxes is warranted in these chapter 11 cases.

## II.    THE COURT SHOULD AUTHORIZE THE BANKS TO HONOR AND PROCESS THE DEBTORS' PAYMENTS ON ACCOUNT OF THE PREPETITION TAXES

27.    The Debtors represent that they have sufficient funds to pay the amounts described herein in the ordinary course of business by virtue of expected cash flows from ongoing business operations, debtor-in-possession financing, and anticipated access to cash collateral. As a result of the commencement of these chapter 11 cases and in the absence of an order of the Court providing otherwise, the Debtors' checks and electronic fund transfers on account of the Prepetition Taxes may be dishonored or rejected by financial institutions. Under the Debtors' cash management system, the Debtors can readily identify checks or transfers as relating directly to payment of Prepetition Taxes. Accordingly, the Debtors believe that prepetition checks and transfers other than those for Prepetition Taxes (and to the extent not authorized by another order of the Court) will not be honored inadvertently. The Debtors submit that any Bank should be authorized to rely on the representations of the Debtors with respect to whether any check drawn or transfer request issued by the Debtors prior to the Petition Date should be honored pursuant to this Motion.

### Reservation of Rights

28.    Nothing contained herein is or should be construed as: (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' right to dispute any claim on any grounds; (iii) a promise or requirement to pay any claim; (iv) an admission that any particular claim is of a type specified or defined hereunder; (v) a request to assume any executory contract or unexpired lease; or (vi) a waiver of the Debtors' rights under the

Bankruptcy Code or any other applicable law. If the Court authorizes the payments described herein, such payments should not be deemed to constitute a postpetition assumption or adoption of any programs, policies, or agreements as executory contracts and the authorization to pay all amounts on account of Taxes shall not affect the Debtors' right to contest the amount or validity of such obligations.

29.    Any and all payments arising under or in connection with or authorized to be made by this Motion or the proposed Order shall be subject to the interim and final orders of the Court in these chapter 11 cases approving the Debtors' debtor-in-possession financing facilities and the related budgets as approved by the lenders under such facilities.

### Request for Immediate Relief and Waiver of Stay

30.    As described above, the relief that the Debtors seek in this Motion is immediately necessary for them to continue to operate in a manner that maximizes the value of their estates. As set forth above, the Debtors believe that an immediate and orderly transition into chapter 11 is critical to the success of these chapter 11 cases. To this end, the payment of the Prepetition Taxes is necessary to prevent the immediate and irreparable damage to the Debtors' operations, going-concern value, and ability to restructure that would result from, among other things, the Debtors' failure to (i) maintain good standing within the jurisdictions in which they conduct their business or (ii) protect their directors and responsible officers from personal liability. Accordingly, to the extent that Bankruptcy Rule 6003 is applicable to the relief requested, the Debtors submit that for the reasons set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm.[7] Moreover, the Debtors

---

[7]    Bankruptcy Rule 6003 provides that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding . . . a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate . . . ." Fed. R. Bankr. P. 6003.

request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."

### Notice

31.     Notice of this Motion will be provided to:  (i) the United States Trustee for the District of Delaware; (ii) Fried, Frank, Harris, Shriver & Jacobson LLP, as counsel to the Supporting Noteholders, One New York Plaza, New York, NY 10004, Attn:  Brad Eric Scheler and Jennifer Rodburg; (iii) Goldberg Kohn Ltd., as counsel to Wells Fargo Bank, N.A., Revolving Credit Agreement Agent, 55 East Monroe, Suite 3300, Chicago, IL 60603, Attn: Randall Klein, Dimitri Karcazes and Gary Zussman; (iv) Morrison & Foerster LLP, as counsel to Wilmington Savings Fund Society, FSB, Trustee to Senior Secured Second Lien Notes due 2021, Trustee to 9.875% Senior Notes Due 2018 and Term Loan Agent, 250 West 55th Street, New York, NY 10019, Attn:  Jonathan I. Levine and James A. Newton; (v) Wilmington Savings Fund Society, FSB, as Trustee to Senior Secured Second Lien Notes due 2021, Trustee to 9.875% Senior Notes Due 2018, and  Term Loan Agent, 500 Delaware Avenue, Wilmington, DE 19801, Attn:  Corporate Trust and Geoffrey Lewis; (vi) American Stock Transfer & Trust Company, LLC, as Warrant Agent, 6201 15th Avenue, Brooklyn, NY 11219, Attn:  Relationship Manager, and 48 Wall Street, 21st Floor, New York, NY 10005, Attn:  Legal Department; and (vii) the 30 largest unsecured creditors of the Debtors, on a consolidated basis.  As this Motion is seeking "first-day" relief, the Debtors will serve copies of this Motion and any order entered in respect of this Motion as required by Local Rule 9013-1(m).  The Debtors respectfully submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as Exhibit A, granting the relief requested in this Motion and such other and further relief as may be just and proper.

Dated: Wilmington, Delaware
        May 1, 2017

SHEARMAN & STERLING LLP
Douglas P. Bartner (Pro Hac Vice Admission Pending)
Fredric Sosnick (Pro Hac Vice Admission Pending)
Sara Coelho (Pro Hac Vice Admission Pending)
Stephen M. Blank (Pro Hac Vice Admission Pending)
599 Lexington Avenue
New York, New York  10022
Telephone:  (212) 848-4000
Facsimile:   (646) 848-8174

-and-

YOUNG CONAWAY STARGATT & TAYLOR, LLP


*/s/ Jaime Luton Chapman*
Pauline K. Morgan (No. 3650)
Kenneth J. Enos (No. 4544)
Jaime Luton Chapman (No. 4936)
Rodney Square
1000 North King Street
Wilmington, Delaware  19801
Telephone: (302) 571-6600
Facsimile: (302)  571-1253

Proposed Counsel to the Debtors and Debtors in Possession

01:19310099.14

# **EXHIBIT A**

## **Proposed Order**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x
                                   :

In re:                            :        **Chapter 11**

Nuverra Environmental Solutions, Inc., *et al.*,[1]    :        **Case No. 17–10949 (____)**

                   **Debtors.**       :        **(Jointly Administered)**

                                     :        RE: Docket No. ____
---------------------------------------------------------------x

## ORDER (I) AUTHORIZING PAYMENT OF CERTAIN PREPETITION TAXES AND FEES AND (II) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR ALL RELATED CHECKS AND ELECTRONIC PAYMENT REQUESTS

Upon the motion (the "**Motion**")[2] of the Debtors for entry of an order (this "**Order**"), pursuant to sections 105(a), 363(b), 507(a), and 541 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004, (i) authorizing them to pay all Prepetition Taxes, and (ii) authorizing the Banks to honor all related checks and electronic payment requests; and upon the First Day Declaration; and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and that this Court may enter a final order consistent with Article III of the United States Constitution; and proper and adequate notice of the Motion and the hearing thereon having been given; and it appearing

---

[1]      The Debtors in these proceedings (including the last four digits of their respective taxpayer identification numbers) are:  Nuverra Environmental Solutions, Inc. (7117), Appalachian Water Services, LLC (0729), Badlands Leasing, LLC (2638), Badlands Power Fuels, LLC (DE) (8703), Badlands Power Fuels, LLC (ND) (1810), Heckmann Water Resources Corporation (1194), Heckmann Water Resources (CVR), Inc. (1795), Heckmann Woods Cross, LLC (9761), HEK Water Solutions, LLC (8233), Ideal Oilfield Disposal, LLC (5796), Landtech Enterprises, L.L.C. (9022), NES Water Solutions, LLC (3421), Nuverra Total Solutions, LLC (6218), and 1960 Well Services, LLC (5084).  The Debtors' corporate headquarters is located at 14624 N. Scottsdale Rd., Suite 300, Scottsdale, Arizona 85254.

[2]      Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion or the First Day Declaration, as applicable.

that no other or further notice being necessary; and it appearing that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and this Court having determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED as set forth herein.

2.      The Debtors, in their business judgment, are authorized, but not directed, to pay the Prepetition Taxes as they deem appropriate in the ordinary course of business without further application to this Court, including making all payments, and honoring and satisfying all obligations, whether relating to the period prior or subsequent to the Petition Date, *provided*, *however*, that such payments for Prepetition Taxes shall not exceed $3,750,000, absent further order of this Court.

3.      Nothing in the Motion or this Order, nor the Debtors' payment of claims pursuant to this Order, shall be deemed or construed as: (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' rights to dispute any claim on any grounds; (iii) a promise to pay any claim; or (iv) an implication or admission that any particular claim is a claim for Prepetition Taxes.

4.      All the Banks are authorized to receive, process, honor, and pay all checks presented for payment of, and to honor all fund transfer requests made by the Debtors related to, the Prepetition Taxes that the Debtors are authorized to pay pursuant to this Order, regardless of whether the checks were presented or fund transfer requests were submitted before or after the Petition Date, *provided*, that funds are available in the Debtors' accounts to cover the checks and fund transfers.  Banks may rely on the representations of the Debtors with respect to whether any

01:19310099.14

2

check, item or other payment order drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this or any other order of this Court and such Bank shall not have any liability to any party for relying on such representations by the Debtors as provided for herein.

5.      The Debtors are authorized to issue postpetition checks or to effect postpetition fund transfer requests in replacement of any checks or fund transfer requests in respect of the Prepetition Taxes dishonored or rejected as a consequence of the commencement of these chapter 11 cases.

6.      Any and all payments arising under or in connection with or authorized to be made by this Order, or otherwise relating to the relief requested in the Motion, shall be subject to the interim and final orders of this Court in these chapter 11 cases approving the Debtors' debtor-in-possession financing facilities and the related budgets as approved by the lenders under such facilities.

7.      The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion.

8.      The requirements set forth in Bankruptcy Rule 6004(a) are hereby waived, and pursuant to Bankruptcy Rule 6004(h), the terms and provisions of this Order shall be immediately effective and enforceable upon its entry.

9.      This Court shall retain jurisdiction over any and all matters arising from or related to the interpretation or implementation of this Order.

Dated: May _____, 2017
        Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

01:19310099.14

3