## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------------x
               :

In re:                          :        **Chapter 11**

**Nuverra Environmental Solutions, Inc.,** *et al.,*[1]  :        **Case No. 17–10949 (____)**

               **Debtors.**       :        **(Joint Administration Requested)**

               :
-------------------------------------------------------------------x

### DEBTORS' MOTION FOR AN ORDER AUTHORIZING THE DEBTORS TO MAINTAIN INSURANCE POLICIES, INSURANCE FINANCING AGREEMENTS AND SURETY PROGRAM AND PAY ALL PREPETITION AND POSTPETITION OBLIGATIONS IN RESPECT THEREOF

Nuverra Environmental Solutions, Inc. and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") in these chapter 11 cases hereby submit this motion (this "**Motion**") for entry of an order (the "**Order**") authorizing the Debtors to (a) continue their existing insurance policies and premium financing agreements and satisfy payment obligations related thereto, (b) renew, amend, supplement, extend, or purchase insurance coverage and premium financing agreements in the ordinary course of business and satisfy payment obligations related thereto, and (c) continue and renew their surety bond program on an uninterrupted basis, and granting related relief.  In support of this Motion, the Debtors respectfully represent as follows:

---

[1]     The Debtors in these cases (including the last four digits of their respective taxpayer identification numbers) are:  Nuverra Environmental Solutions, Inc. (7117), Appalachian Water Services, LLC (0729), Badlands Leasing, LLC (2638), Badlands Power Fuels, LLC (DE) (8703), Badlands Power Fuels, LLC (ND) (1810), Heckmann Water Resources Corporation (1194), Heckmann Water Resources (CVR), Inc. (1795), Heckmann Woods Cross, LLC (9761), HEK Water Solutions, LLC (8233), Ideal Oilfield Disposal, LLC (5796), Landtech Enterprises, L.L.C. (9022), NES Water Solutions, LLC (3421),  Nuverra Total Solutions, LLC (6218), and 1960 Well Services, LLC (5084).  The Debtors' corporate headquarters is located at 14624 N. Scottsdale Rd., Suite 300, Scottsdale, Arizona 85254.

## Background

1.     On the date hereof (the "**Petition Date**"), each of the Debtors filed with the Court a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**").  The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these chapter 11 cases.  As of the date hereof, no creditors' committee has been appointed.  Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of these chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

2.     Concurrently herewith, the Debtors have filed the *Debtors' Prepackaged Plans of Reorganization Under Chapter 11 of the Bankruptcy Code* (the "**Plan**") and the related disclosure statement.  Voting on the Plan began prior to the Petition Date, but has not yet concluded.

3.     The Plan comprises (i) a separate plan (the "**Nuverra Group Plan**") for all of the Debtors except for Appalachian Water Services, LLC and Badlands Power Fuels, LLC (DE) (the "**Nuverra Group Debtors**"), (ii) a separate plan of reorganization for Appalachian Water Services, LLC (the "**AWS Plan**") and (iii) a separate plan of reorganization for Badlands Power Fuels, LLC (DE) (the "**Badlands (DE) Plan**" and collectively with the Nuverra Group Plan and the AWS Plan, the Plan).  The Plan was developed in accordance with the terms of the Restructuring Support Agreement, dated as of April 9, 2017, as amended from time to time (the "**Restructuring Support Agreement**"), among the Debtors and certain supporting noteholders who hold 100% of the outstanding principal amount of the Term Loan Facility Claims and approximately 86% in outstanding principal amount of the 2021 Notes (the "**Supporting Noteholders**").  The Restructuring Support Agreement obligates the Supporting Noteholders,

subject to certain terms and conditions, to vote to approve the Plan.  The Debtors expect that, with the affirmative vote of the Supporting Noteholders, each Plan will be accepted by one or more impaired classes of creditors.

4.       Additional factual background relating to the Debtors' business, capital structure, and the commencement of these chapter 11 cases is set forth in the *Declaration of Robert D. Albergotti in Support of Voluntary Petitions, First Day Motions and Applications* (the "**First Day Declaration**").[2]

### Facts Specific to the Relief Requested

#### A.  Insurance Policies and Premium Financing Agreements

5.       In the ordinary course of business, the Debtors purchase various types of insurance policies through several different insurance carriers (collectively, the "**Insurance Carriers**").  A list of the insurance policies maintained by the Debtors is attached hereto as Exhibit A (each an "**Insurance Policy**," and collectively, the "**Insurance Policies**").[3]

6.       The Insurance Policies provide coverage to the Debtors for both general commercial business risks and risks specific to the Debtors' industry, including, but not limited to, coverage for the Debtors' general liability, pollution liability, fiduciary liability, directors' and officers' liability coverage, automobile liability, property liability, general and professional liability, employment practices, commercial umbrella liability, crime and commercial crime.  All of the Insurance Policies are essential to managing the risks borne by the Debtors' estates, and

---

[2]       Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the First Day Declaration.

[3]       In addition to the Insurance Policies listed on Exhibit A, the Debtors maintain other insurance policies (including workers' compensation) and programs with respect to employee benefits.  Authorization to continue paying these policies and programs and additional information on same can be found in the Debtors' motion for an order authorizing the payment of, among other things, prepetition wages and the continuation of employee benefit programs (the "**Employee Wages and Benefits Motion**").

are an important component of sound management and the ongoing operation of the Debtors' businesses.

7.      The Debtors pay approximately $7.65 million in the aggregate of annual premiums for the Insurance Policies.   In addition, the Debtors pay commissions for the placement or renewal, as applicable, of their Insurance Policies.

8.      Insurance Policy premiums typically are required to be paid in a lump-sum at the beginning of an applicable period, although some Insurance Policies allow for the payment of premiums to be made in installments.   There are times when, as a matter of business judgment, it is more appropriate to pay a lump-sum premium over time.   Accordingly, in the ordinary course of business, the Debtors finance lump-sum premiums on various policies pursuant to premium financing agreements with third- party lenders.   As of the Petition Date, the Debtors financed certain policies, including coverage for fiduciary liability, employment practices liability, crime, environmental liability, and general liability through two (2) insurance financing agreements with First Insurance Funding (collectively, the "**Insurance Financing Agreements**"), dated December 2, 2016, and December 30, 2016, respectively.   As of the Petition Date, the Debtors owe an aggregate amount of $1,522,033 on account of amounts payable under the Insurance Financing Agreements between the date hereof and the expiration of the Insurance Policies subject to the Insurance Financing Agreements.

9.      Each of the Insurance Financing Agreements provides that the lender thereunder pay the insurance premium due under applicable insurance policies in exchange for (i) a single down payment of $14,589.60, and $886,214.56, respectively (all of which have been paid) and (ii) ten (10) monthly payments, due on the thirtieth (30th) of an applicable month, in the amount of $8,467.68, and $245,204.49, respectively.   The Debtors' obligations under each

Insurance Financing Agreement are secured by the applicable financed policies and any premiums required under the financed policies, including, without limitation, to the extent permitted by applicable law, return premiums and certain dividend payments.  If the Debtors fail to make payments on the Insurance Financing Agreements, First Insurance Funding could seek relief from the automatic stay in order to terminate the applicable Insurance Policy.  Termination of any Insurance Policy would force the Debtors to obtain replacement insurance on an expedited basis and at significant cost.  In addition, any interruption of payments under existing Insurance Finance Agreements may negatively impact on the Debtors' ability to obtain financing for future policies, which in turn would impact their ability to continue to operate efficiently in the ordinary course of business.

10.     The Debtors believe that all installment payments on the Insurance Policies or Insurance Financing Agreements that were due prior to the Petition Date have been paid, and that no amounts are currently outstanding on the Insurance Policies or the Insurance Financing Agreements.  Additional installment payments for the Insurance Policies and Insurance Financing Agreements will come due postpetition, including the next monthly installment payments for the Insurance Financing Agreements, which are due on May 30, 2017.  Additionally, certain of the Debtors' Insurance Policies are subject to additional premiums or deductions based on an annual audit process (the "**Audits**").  Accordingly, it is possible that upon the conclusion of the Audits, the Debtors may owe some of the Insurance Carriers additional amounts (or the Debtors may be entitled to refunds of premiums paid).

11.     The Debtors also are required to pay certain deductibles and self-insured retention amounts as set forth in the underlying policies.  In such instances, claim losses and expenses, when incurred, are paid by the Insurance Carrier or the Debtors directly to claimants

and other parties (including attorneys and healthcare providers).  If the Insurance Carrier pays such amount, it then bills the Debtors for reimbursement of such losses and expenses, which are treated as deductibles or self-insured retention amounts, as applicable.[4]

12.    Continuation of the Insurance Policies and Insurance Financing Agreements, and entry into new insurance policies and insurance financing agreements, helps to ensure that the value of the Debtors' businesses and operations is preserved for the benefit of all stakeholders, by avoiding gaps in insurance coverage.   Accordingly, the Debtors request permission to maintain their existing Insurance Policies and Insurance Financing Agreements, and to continue to (i) pay the obligations owed thereunder as they become due in the ordinary course of their business, as well as any unanticipated unpaid amounts that may later be discovered to have accrued prior to the Petition Date (including any deductibles and self-insured retention amounts), and (ii) enter into new insurance policies and insurance financing agreements in the ordinary course of business, without further Court order.

**B.  Surety Bond Program**

13.    In the ordinary course of business, the Debtors are required to provide surety bonds to certain third parties to secure the Debtors' payment and performance of certain obligations, such as environmental obligations (the "**Surety Program**"), including to comply with statutes and ordinances that require the posting of surety bonds to secure the Debtors' obligations under various laws and regulations.  The Debtors post surety bonds in accordance with the laws and regulations of various states, including Montana, North Dakota, Texas, Pennsylvania, Ohio, Louisiana, West Virginia, and Mississippi.

---

[4]    In certain cases, the Debtors may pay more than the applicable deductible, in which case the Debtors ultimately receive that excess back from the applicable insurance company.

14.      As of the Petition Date, the Debtors have approximately 51 surety bonds, with an aggregate outstanding face amount of approximately $10 million, all of which are issued by Lexon Insurance Company, except for one, which is issued by Travelers Casualty and Surety Company of America.  The premiums (the "**Surety Premiums**") for surety bonds (the "**Surety Bonds**") issued under the Surety Program generally are determined on an annual basis and paid upon renewal.  The annual Surety Premiums are approximately $227,600 in the aggregate.  The Debtors also pay a commission to certain brokers for the placement or renewal of each Surety Bond.  On average, the Debtors pay brokers' commissions of approximately $70,000 per year for services in connection with the Surety Program.

15.      Failing to provide, maintain, or timely replace Surety Bonds may prevent the Debtors from maintaining permits required for their ongoing operations and complying with state law obligations.   Absence of required permits, among other things, will impede the Debtors' continued operations and preservation of estate value.  A schedule of the Surety Bonds currently maintained by the Debtors is attached hereto as Exhibit B.

16.      As of the Petition Date, the Debtors do not believe that they owe any amounts to the sureties on account of Surety Premiums or any commissions or other prepetition Surety Program obligations (collectively, the "**Surety Obligations**").  Out of an abundance of caution, however, the Debtors seek authority, but not the direction, to pay all Surety Obligations as they come due, including the Surety Premiums and any bond commissions (as needed).  The Debtors further seek authority to renew or potentially acquire additional bonding capacity (as needed) in the ordinary course of their businesses, and execute agreements necessary to maintain and extend their Surety Bonds and the Surety Program.

## Jurisdiction

17.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  The statutory predicates for the relief requested herein are sections 105(a), 363, 364, 503(b)(1), 1107(a), 1108, and 1112(b) of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004.

## Relief Requested

18.     By this Motion, the Debtors request authority, but not direction, pursuant to, among others, sections 105(a), 363, 364(c), 503(b) and 1112(b), as applicable, of the Bankruptcy Code to continue the Insurance Policies and Insurance Financing Agreements uninterrupted, and to honor any currently unknown prepetition obligations, including any deductibles and self-insured retention amounts (the "**Insurance Obligations**") up to an amount of approximately $2.0 million in the aggregate.[5]  The Debtors also request that the Court authorize, but not direct, the Debtors to renew, amend, supplement, extend, or purchase insurance policies and insurance financing agreements to the extent the Debtors determine, in their sole discretion, that such action is in the best interest of the estates.

19.     Additionally, the Debtors request the authority, but not the direction, to continue their Surety Program and pay all Surety Obligations, whether arising prepetition or postpetition.  The Debtors further seek authority to renew or potentially acquire additional bonding capacity (as needed) in the ordinary course of their businesses, and execute other agreements in connection with their Surety Bonds.

---

[5]     As noted, the Debtors seek permission to pay workers' compensation insurance obligations pursuant to the Employee Wages and Benefits Motion.

20.    The Debtors also request that all applicable banks and other financial institutions be authorized to receive, process, honor and pay all checks drawn by the Debtors that are presented for payment, and honor all electronic payment requests made by the Debtors, that are related to the prepetition obligations described herein, whether such checks were presented or electronic requests were submitted prior to or after the Petition Date.  The Debtors further request that all such banks and financial institutions be authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved pursuant to this Motion.

**Basis for Relief Requested**

**A.     Ample Cause Exists to Permit the Debtors to (i) Continue Their Insurance Policies, Insurance Financing Agreements and Surety Program and (ii) Pay All Obligations in Respect Thereof**

21.    The Bankruptcy Code permits the incurrence of expenses, such as those in connection with the Insurance Policies, Insurance Financing Agreements and Surety Program, that enable debtors to administer their estates effectively.  Specifically, section 503(b)(1) of the Bankruptcy Code provides that a court, after notice and a hearing, shall allow as administrative expenses, among other things, "the actual, necessary costs and expenses of preserving the estate."  As described above, the purpose of the Insurance Policies, Insurance Financing Agreements and Surety Program is to allow the Debtors to operate and preserve their estates for the benefit of all stakeholders.

22.    The requested relief may also be granted pursuant to section 363(b)(1) of the Bankruptcy Code, which provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  Applicable case law provides that a court may authorize a debtor to pay certain prepetition claims under section 363 of the Bankruptcy Code, but to do so, "the debtor must articulate some business justification,

other than the mere appeasement of major creditors." *In re Ionosphere Clubs*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989).

23.     The Debtors further submit that the maintenance of the Insurance Policies, the Premium Financing Agreements and Surety Program on a postpetition basis, and payments required in connection therewith, are within the ordinary course of business and may be continued in the Debtors' discretion, and without a notice and a hearing, under section 363(c)(1). Section 363(c)(1) allows the Debtors to "enter into transactions" and "use property of the estate" in the "ordinary course of business."  The maintenance of the Insurance Policies, Insurance Financing Agreements and Surety Program, and payment of postpetition obligations arising thereunder, is consistent with the Debtors' prepetition practices.  As such, the Debtors submit that the continuation, maintenance, and renewal of the Insurance Policies, Insurance Financing Agreements and Surety Program are within the ordinary course of their business and that any such actions may be done without further court approval.

24.     The relief requested herein is also authorized under the Court's general equitable powers, which are codified in section 105(a) of the Bankruptcy Code.  Under section 105(a), the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  The purpose of section 105(a) is "to assure the bankruptcy courts [sic] power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction."  2 COLLIER ON BANKRUPTCY ¶105.01 (Alan N. Resnick & Henry J. Somme eds., 16th ed.).  Under section 105(a), the Court "can permit pre-plan payment of a prepetition obligation when essential to the continued operation of the debtor."  *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citation omitted); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 826 (D. Del. 1999) (noting that "to invoke the necessity of payment doctrine, a

debtor must show that payment of the pre-petition claims is 'critical to the debtor's reorganization'") (citation omitted).   Indeed, numerous courts have used their section 105(a) equitable powers under the "necessity of payment" doctrine to authorize payment of debtors' prepetition obligations where, as here, such payment was necessary to preserve the debtors' estates.[6]  *See, e.g., In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that "if payment of a claim which arose prior to reorganization is essential to the continued operation of the [business] during reorganization, payment may be authorized even if it is made out of [the] corpus") (citations omitted); *Ionosphere Clubs*, 98 B.R. at 175 (observing that a bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept").

25.     The Court also may authorize the Debtors to enter into new insurance financing agreements pursuant to section 364(c)(2) of the Bankruptcy Code.   Section 364(c) authorizes (after notice and a hearing) a debtor in possession to obtain debt secured by a lien on property of the estate if the debtor has been unable to obtain unsecured credit.  *See* 11 U.S.C. § 364(c)(2); s*ee, e.g., In re Budget Grp., Inc.*, Case No. 02-12152, 2002 Bankr. LEXIS 1050, *6 (Bankr. D. Del. Aug, 1, 2002) (authorizing funding of acquisition of property on a secured basis where acquired property was necessary to maintain operations and debtor could not obtain such funding on an unsecured basis).   Here, the counterparty under any new Insurance Financing Agreement may require that the Debtors grant a security interest in the unearned premiums under the financed policies, thus implicating section 364(c)(2) of the Bankruptcy Code.  *See generally*

---

[6]     The "necessity of payment" doctrine, which was first articulated by the United States Supreme Court in *Miltenberger v. Logansport Railway Company*, 106 U.S. 286, 311-12 (1882),   recognizes   the   existence of judicial power to authorize a debtor in a reorganization case to pay prepetition claims where such payment is essential to the continued operation of the debtor.

*In re Schwinn Bicycle Co.*, 200 B.R. 980, 982 (Bankr. N.D. Ill. 1996) (describing insurance premium financing agreements).  As described herein, the Debtors' Insurance Policies and Insurance Financing Agreements are integral to maintaining essential insurance coverage required for the Debtors' ongoing operations.  As such, the Court should authorize the Debtors to renew any Insurance Financing Agreements and execute new insurance financing agreements, as applicable, post-petition under substantially similar terms.[7]

26.    In light of the foregoing, the Debtors submit that the use of the estates' funds for payment of the Insurance Obligations, Insurance Financing Agreements and Surety Obligations is (i) permitted by the Bankruptcy Code and (ii) essential to preserving the value of the Debtors' estates.  Continuation of the Insurance Policies, Insurance Financing Agreements and Surety Program is essential to ensuring that the Debtors are able to maintain the benefits of the Insurance Policies and Insurance Financing Agreements, are able to remain compliant with the state statutes governing their operations, and are able to preserve and maximize the value of their estates.  Accordingly, by this Motion, the Debtors are seeking to pay any outstanding prepetition obligations related to the Insurance Policies, Insurance Financing Agreements and Surety Program, as well as any amounts as they come due in the normal course of business.

### i.    Insurance Policies and Insurance Financing Agreements

27.    The nature of the Debtors' business and the extent of their operations make it essential for the Debtors to maintain their Insurance Policies and Insurance Financing Agreements on an ongoing and uninterrupted basis.  To the extent such payments fall outside of the ordinary course of business, they are warranted under the Bankruptcy Code, as described

---

[7]    Courts in this District have in other chapter 11 cases regularly authorized debtors to continue their pre-petition and enter into new postpetition insurance financing agreements. *See, e.g., In re Haggen Holdings, LLC*, Case No. 15-11874 (KG) (Oct. 2, 2015); *In re Trump Entm't Resorts, Inc.*, Case No. 14-12103 (KG) (Sept. 10, 2014).

above.  The nonpayment of any premiums, deductibles, self-insured retention amounts or related fees under one of the Insurance Policies or Insurance Financing Agreements could result in one or more of the Insurance Carriers or brokers, as applicable, terminating their existing policies, declining to renew their Insurance Policies or refusing to enter into new insurance or insurance financing agreements with the Debtors in the future.

28.     In the event that the Debtors were left uninsured, they could be exposed to substantial loss or liability.  A lapse or termination of insurance coverage could expose the Debtors to losses or liability arising from, among other things, damages resulting to persons and property of the Debtors and others, which could have a negative impact on the value of the Debtors' estates.  Furthermore, the Debtors would be required to obtain replacement policies on an expedited basis at what they expect would be a significantly higher cost to the estates, if any of the Insurance Policies were to expire or terminate.  Similarly, if the Debtors were unable to maintain their Insurance Financing Agreements, they would be forced to find alternative sources of financing.  As set forth in the *Declaration Of Dermott O'Flanagan In Support of the Motion for Final Orders (I) Authorizing Postpetition Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Priority, (III) Authorizing Use of Cash Collateral, (IV) Granting Adequate Protection to Prepetition Secured Lenders, (V) Modifying the Automatic Stay and (VI) Scheduling a Final Hearing*, financing is not available to the Debtors on an unsecured basis, and any secured financing is available only at significant cost to the Debtors' estates.  Accordingly, the Debtors respectfully submit that they must make all payments with respect to the Insurance Policies and Insurance Financing Agreements as they become due to maintain the benefits to the Debtors' estate.

29.     Continuation of the Insurance Policies and Insurance Financing Agreements is essential to the Debtors' ability to continue to operate in a manner that enables them to maximize the value of their estates.  By this Motion, the Debtors are seeking to pay any outstanding prepetition obligations related to the Insurance Policies, as well as any amounts as they come due in the normal course of business.

### ii.     Surety Program

30.     To the extent that the Debtors' participation in the Surety Program is deemed to fall outside the ordinary course of business, or requires the Debtors to honor or pay prepetition Surety Obligations, the Court should authorize, but not direct, the Debtors to continue the Surety Program, including the maintenance and renewal of existing Surety Bonds and obtaining new Surety Bonds as needed.  As noted above, the Surety Bonds are required by certain state law statutes, and the Debtors' failure to provide, maintain, or timely replace Surety Bonds may jeopardize their ability to remain in compliance and to freely conduct their business operations.  Additionally, due to the Debtors current financial situation and pending chapter 11 cases, the Debtors may not be able to obtain replacement Surety Bonds on equivalent or more favorable terms.  Accordingly, continuation of the Surety Program is necessary to maintain the Debtors' current business operations, and the Debtors submit that their participation in the Surety Program, including the satisfaction of all Surety Obligations, should be authorized under the Bankruptcy Code to the extent such participation is deemed to fall outside of the ordinary course of their businesses.

### B.     Continuation of the Insurance Policies is Required by the Bankruptcy Code, Law, and the UST Guidelines

31.     Continuing to maintain adequate insurance coverage is not only a sound exercise of the Debtors' business judgment, but it is required by the Bankruptcy Code, other

applicable law, and the operating guidelines established by the Office of the United States Trustee for the District of Delaware's Operating Guidelines for Chapter 11 Cases (the "**UST Guidelines**").  Section 1112(b)(4)(C) of the Bankruptcy Code provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case.  Additionally, the coverage provided under the Insurance Policies, in certain cases, is required by the regulations and laws governing the Debtors' activities.  Moreover, the UST Guidelines also require that the Debtors remain current with respect to certain primary insurance policies.

32.     To satisfy the requirements of the Bankruptcy Code, other applicable law and the UST Guidelines regarding the maintenance of adequate insurance coverage, it is essential that the Debtors be granted the authority to maintain and to pay all prepetition and postpetition Insurance Obligations arising under the Insurance Policies.  To avoid interruptions in insurance coverage that would run afoul of the applicable legal requirements, it also is essential that the Debtors be given the authority, as needed in their judgment, and without the need for further order of the Court to supplement, amend, extend, renew, or replace their Insurance Policies.

### The Court Should Authorize Banks to Honor and Process the Debtors' Payments to the Extent Authorized

33.     The Debtors represent that they have sufficient funds to pay the amounts described herein in the ordinary course of business by virtue of expected cash flows from ongoing business operations, debtor-in-possession financing, and anticipated access to cash collateral.  As a result of the commencement of these chapter 11 cases and in the absence of an order of the Court providing otherwise, the Debtors' checks may be dishonored or rejected by banks and other financial institutions.  The Debtors submit that any banks and other financial institutions should be authorized to debit the Debtors' accounts in the ordinary course of business

only for those items authorized by Court order.  The Debtors further submit that any bank or financial institution should be authorized to rely on the representations of the Debtors with respect to whether any check, item or other payment order drawn or issued by the Debtors prior to the Petition Date should be honored.  Any and all payments arising under or in connection with or authorized to be made by the Motion or the proposed Order shall be subject to the interim and final orders of the Court in these chapter 11 cases approving the Debtors' debtor-in-possession financing facilities and the related budgets as approved by the lenders under such facilities.

<u>**Request for Immediate Relief and Waiver of Stay**</u>

34.     As described above, the relief that the Debtors seek in this Motion is immediately necessary in order for them to avoid any gap in coverage under the Insurance Policies or Surety Program.  Any gap in coverage under the Insurance Policies or Surety Program could significantly hinder the Debtors operations or otherwise expose them to significant risk.  Accordingly, to the extent that Bankruptcy Rule 6003 is applicable to the relief requested, the Debtors submit that for the reasons set forth herein, the relief requested in this Motion is necessary on an immediate basis in order to irreparable harm.[8]  Moreover, the Debtors request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."

---

[8]     Bankruptcy Rule 6003 provides that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding . . . a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate . . . ."  Fed. R. Bankr. P. 6003.

## Reservation of Rights

35.     Nothing contained herein is or should be construed as:   (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an admission that any particular claim is of a type specified or defined hereunder; (e) a request to assume any executory contract or unexpired lease; or (f) a waiver of the Debtors' rights under the Bankruptcy Code or any other applicable law.  If the Court authorizes the payments described herein, such payments should not be deemed to constitute a postpetition assumption of any program, policy, or agreement as executory contracts, and the authorization to pay all amounts as requested herein shall not affect the Debtors' right to contest the amount or validity of any obligations under any such program, policy, or agreement.

## Notice

36.     Notice of this Motion will be provided to:  (i) the United States Trustee for the District of Delaware; (ii) Fried, Frank, Harris, Shriver & Jacobson LLP, as counsel to Supporting Noteholders, One New York Plaza, New York, NY 10004, Attn:  Brad Eric Scheler and Jennifer Rodburg; (iii) Goldberg Kohn Ltd., as counsel to Wells Fargo Bank, N.A., Revolving Credit Agreement Agent, 55 East Monroe, Suite 3300, Chicago, IL 60603, Attn: Randall Klein, Dimitri Karcazes and Gary Zussman; (iv) Morrison & Foerster LLP, as counsel to Wilmington Savings Fund Society, FSB, Trustee to Senior Secured Second Lien Notes due 2021, Trustee to 9.875% Senior Notes Due 2018 and Term Loan Agent, 250 West 55th Street, New York, NY 10019, Attn:  Jonathan I. Levine and James A. Newton; (v) Wilmington Savings Fund Society, FSB, as Trustee to Senior Secured Second Lien Notes due 2021, Trustee to 9.875% Senior Notes Due 2018, and  Term Loan Agent, 500 Delaware Avenue, Wilmington, DE 19801,

Attn:  Corporate Trust and Geoffrey Lewis; (vi) American Stock Transfer & Trust Company, LLC, as Warrant Agent, 6201 15th Avenue, Brooklyn, NY 11219, Attn:  Relationship Manager, and 48 Wall Street, 21st Floor, New York, NY 10005, Attn:  Legal Department; and (vii) the 30 largest unsecured creditors of the Debtors, on a consolidated basis.  As this Motion is seeking "first-day" relief, the Debtors will serve copies of this Motion and any order entered in respect of this Motion as required by Local Rule 9013-1(m).  The Debtors respectfully submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as <u>Exhibit C</u> granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: Wilmington, Delaware
      May 1, 2017

SHEARMAN & STERLING LLP
Douglas P. Bartner (Pro Hac Vice Admission Pending)
Fredric Sosnick (Pro Hac Vice Admission Pending)
Sara Coelho (Pro Hac Vice Admission Pending)
Stephen M. Blank (Pro Hac Vice Admission Pending)
599 Lexington Avenue
New York, New York  10022
Telephone:  (212) 848-4000
Facsimile:   (646) 848-8174

-and-

YOUNG CONAWAY STARGATT & TAYLOR, LLP


*/s/ Jaime Luton Chapman*
Pauline K. Morgan (No. 3650)
Kenneth J. Enos (No. 4544)
Jaime Luton Chapman (No. 4936)
Rodney Square
1000 North King Street
Wilmington, Delaware  19801
Telephone:  (302) 571-6600
Facsimile:   (302)  571-1253

Proposed Counsel to the Debtors and Debtors in Possession

## EXHIBIT A

### Insurance Policies

| Coverage | Carrier | Policy Number | Effective Dates |
|---|---|---|---|
| Workers' Compensation/ Employers' Liability | XL Specialty Insurance Company | ********3002 | 12/31/16-17 |
| General Liability | Kinsale Insurance Company | ********952-5 | 12/31/16-17 |
| Business Auto | Great West Casualty Company | ********554K | 01/01/17-18 |
| General Liability (Landtech Operations Only) | Mid Continent Casualty Company | ********7543 | 07/27/16-17 |
| Business Auto (Landtech Operations Only) | Mid Continent Casualty Company | ********5462 | 07/27/16-17 |
| Excess Auto Liability $4M x of $1M | First Specialty Insurance Corporation | ********9400 | 12/31/16-17 |
| Umbrella Liability | North American Elite Insurance Company (Swiss Re) | ********04-02 | 12/31/16-17 |
| Aviation Hull & Liability | Commerce & Industry (AIG) | ********83-05 | 10/18/16-17 |
| Property & Inland Marine | Starr Indemnity & Liability Insurance Company | ********5616 | 6/1/16-17 |
| Pollution & Remediation Legal Liability | Steadfast Insurance Company (Zurich) | ********96-00 | 12/31/16-17 |
| ND Landfill Environmental Package | Aspen Specialty Insurance Company | ********2N16 | 12/31/16-17 |
| ND Landfill Excess Casualty | Aspen Specialty Insurance Company | ********3T16 | 12/31/16-17 |
| Fiduciary Liability | National Union Fire (AIG) | ********20-55 | 11/30/16-17 |
| Crime | National Union Fire (AIG) | ********20-57 | 11/30/16-17 |
| Employed Lawyer's Liability | Federal Ins. Co. (Chubb) | ********3198 | 11/30/16-17 |
| Employment Practices Liability | Argonaut Ins. Co. | ********46-03 | 11/30/16-17 |
| Director's & Officer's Liability | National Union Fire (AIG) | ********40-07 | 11/30/15- 5/31/17 |
| Excess Director's & Officer's Liability | XL Specialty Insurance Company (XL) | ********08-15 | 11/30/15- 5/31/17 |

| Coverage | Carrier | Policy Number | Effective Dates |
|---|---|---|---|
| Excess Director's & Officer's Liability | US Specialty Insurance Company (HCC) | ********6415 | 11/30/15-5/31/17 |
| Excess Director's & Officer's Liability | RSUI Indemnity Co. (RSUI) | ********5498 | 11/30/15-5/31/17 |
| Excess Director's & Officer's Liability | Freedom Specialty | ********1981 | 11/30/15-5/31/17 |
| Excess Director's & Officer's Liability | Allied World National Assurance Co. | ********3199 | 11/30/15-5/31/17 |
| Excess Director's & Officer's Liability | National Union Fire (AIG) | ********11-42 | 11/30/15-5/31/17 |

## EXHIBIT B

### Surety Bonds

| Bond Number | Issuing Carrier | Debtor | Obligee | Type of Bond | Bond Amount | Premium |
|---|---|---|---|---|---|---|
| 1056713 | Lexon Insurance Company | Complete Vacuum and Rental, Inc. | Red River Parish Policy Jury | Excess Weight and Other Highway and Street Permits | $500,000.00 | $10,000.00 |
| 1056714 | Lexon Insurance Company | Landtech Enterprises, L.L.C. | Montana Board of Oil and Gas Conservation | Reclamation - Oil/Gas | $10,000.00 | $200.00 |
| 1056715 | Lexon Insurance Company | Landtech Enterprises, L.L.C. | Montana Board of Oil and Gas Conservation | Reclamation - Oil/Gas | $10,000.00 | $200.00 |
| 1056717 | Lexon Insurance Company | Badlands Power Fuels, LLC d.b.a. Nuverra Environmental Solutions, Inc. | Montana-Dakota Utilities Co., a Division of MDU Resources Group, Inc. | General Improvement Bond | $1,481,169.00 | $29,623.00 |
| 1056718 | Lexon Insurance Company | Landtech Enterprises, L.L.C. | State of North Dakota, Industrial Commission of North Dakota | Reclamation - Oil/Gas | $50,000.00 | $1,000.00 |
| 1056719 | Lexon Insurance Company | Landtech Enterprises, L.L.C. | State of North Dakota, Industrial Commission of North Dakota | Reclamation - Oil/Gas | $50,000.00 | $1,000.00 |
| 1056720 | Lexon Insurance Company | Heckmann Water Resources (CVR), Inc. | Railroad Commission of Texas, Oil and Gas Division | Reclamation - Oil/Gas | $259,852.00 | $5,197.00 |
| 1056721 | Lexon Insurance Company | Landtech Enterprises, L.L.C. | State of North Dakota, Industrial Commission of North Dakota | Reclamation - Oil/Gas | $50,000.00 | $1,000.00 |
| 1056722 | Lexon Insurance Company | Landtech Enterprises, L.L.C. | State of North Dakota, Industrial Commission of North Dakota | Reclamation - Oil/Gas | $50,000.00 | $1,000.00 |
| 1056723 | Lexon Insurance Company | Landtech Enterprises, L.L.C. | State of North Dakota, Industrial Commission of North Dakota | Reclamation - Oil/Gas | $50,000.00 | $1,000.00 |

| Bond Number | Issuing Carrier | Debtor | Obligee | Type of Bond | Bond Amount | Premium |
|---|---|---|---|---|---|---|
| 1056724 | Lexon Insurance Company | Landtech Enterprises, L.L.C. | State of North Dakota, Industrial Commission of North Dakota | Reclamation - Oil/Gas | $50,000.00 | $1,000.00 |
| 1056725 | Lexon Insurance Company | Landtech Enterprises, L.L.C. | State of North Dakota, Industrial Commission of North Dakota | Reclamation - Oil/Gas | $50,000.00 | $1,000.00 |
| 1056727 | Lexon Insurance Company | Landtech Enterprises, L.L.C. | State of North Dakota, Industrial Commission of North Dakota | Reclamation - Oil/Gas | $50,000.00 | $1,000.00 |
| 1056729 | Lexon Insurance Company | Landtech Enterprises, L.L.C. | State of North Dakota, Industrial Commission of North Dakota | Reclamation - Oil/Gas | $50,000.00 | $1,000.00 |
| 1056730 | Lexon Insurance Company | Landtech Enterprises, L.L.C. | State of North Dakota, Industrial Commission of North Dakota | Reclamation - Oil/Gas | $50,000.00 | $1,000.00 |
| 1056731 | Lexon Insurance Company | Landtech Enterprises, L.L.C. | Industrial Commission of North Dakota | Reclamation - Oil/Gas | $50,000.00 | $1,000.00 |
| 1056732 | Lexon Insurance Company | Landtech Enterprises, L.L.C. | State of North Dakota, Industrial Commission of North Dakota | Reclamation - Oil/Gas | $50,000.00 | $1,000.00 |
| 1056733 | Lexon Insurance Company | Landtech Enterprises, L.L.C. | State of North Dakota, Industrial Commission of North Dakota | Reclamation - Oil/Gas | $50,000.00 | $1,000.00 |
| 1056734 | Lexon Insurance Company | Landtech Enterprises, L.L.C. | Industrial Commission of North Dakota | Reclamation - Oil/Gas | $50,000.00 | $1,000.00 |
| 1056735 | Lexon Insurance Company | Nuverra Environmental Solutions, Inc. | Pennsylvania Turnpike Commission | Turnpike, Bridge or Toll Bonds | $15,000.00 | $300.00 |
| 1056736 | Lexon Insurance Company | Nuverra Environmental Solutions, Inc. | State of North Dakota, Industrial Commission of North Dakota | Trash or Waste Disposal Plants | $425,000.00 | $8,500.00 |

| Bond Number | Issuing Carrier | Debtor | Obligee | Type of Bond | Bond Amount | Premium |
|---|---|---|---|---|---|---|
| 1056737 | Lexon Insurance Company | Heckmann Water Resources (CVR), Inc. | Portgage County Engineer | Excess Weight and Other Highway and Street Permits | $200,000.00 | $4,000.00 |
| 1056742 | Lexon Insurance Company | Badlands Power Fuels, LLC dba Nuverra Environmental Solutions | State of North Dakota, Motor Fuel Tax Section, Office of State Tax Commissioner | Fuel Tax - All Others - Sellers and Users | $1,000.00 | $100.00 |
| 1056743 | Lexon Insurance Company | Badlands Power Fuels, LLC dba Nuverra Environmental Treatment Center | North Dakota Department of Health | Closure/Post Closure Bonds | $1,125,000.00 | $28,125.00 |
| 1056744 | Lexon Insurance Company | Nuverra Environmental Solutions, Inc. | Industrial Commission of North Dakota, Oil and Gas Division | License & Permit | $250,000.00 | $6,250.00 |
| 1056745 | Lexon Insurance Company | Badlands Power Fuels, LLC dba Nuverra Environmental Treatment Center | North Dakota Industrial Commission, Oil & Gas Division | Reclamation - Oil/Gas | $1,125,000.00 | $28,125.00 |
| 1070501 | Lexon Insurance Company | 1960 Well Services, LLC | Ohio Department of Natural Resources, Division of Mineral Resources Management | Reclamation - Oil/Gas | $15,000.00 | $750.00 |
| 1070502 | Lexon Insurance Company | Heckmann Water Resources (CVR), Inc. | Louisiana Department of Conservation, Department of Natural Resources | Reclamation - Oil/Gas | $181,673.50 | $9,084.00 |
| 1070503 | Lexon Insurance Company | Heckmann Water Resources (CVR), Inc. | Mississippi State Oil and Gas Board | Reclamation - Oil/Gas | $20,000.00 | $1,000.00 |

| Bond Number | Issuing Carrier | Debtor | Obligee | Type of Bond | Bond Amount | Premium |
|---|---|---|---|---|---|---|
| 1070504 | Lexon Insurance Company | Heckmann Water Resources (CVR), Inc. | Mississippi State Oil and Gas Board | Reclamation - Oil/Gas | $20,000.00 | $1,000.00 |
| 1070506 | Lexon Insurance Company | Heckmann Water Resources (CVR), Inc. | Texas Department of Transportation | Excess Weight and Other Highway and Street Permits | $15,000.00 | $375.00 |
| 1070507 | Lexon Insurance Company | Heckmann Water Resources (CVR), Inc. | Pennsylvania Turnpike Commission | Turnpike, Bridge or Toll Bonds | $15,000.00 | $750.00 |
| 1070508 | Lexon Insurance Company | Heckmann Water Resources (CVR), Inc. | Pennsylvania Department of Transportation | Excess Weight and Other Highway and Street Permits | $5,000.00 | $250.00 |
| 1070509 | Lexon Insurance Company | Heckmann Water Resources (CVR), Inc. | Ohio Department of Natural Resources, Division of Oil and Gas Resources Management | Reclamation - Oil/Gas | $15,000.00 | $750.00 |
| 1070512 | Lexon Insurance Company | Heckmann Water Resources (CVR), Inc. | Railroad Commission of Texas, Oil and Gas Division | Reclamation - Oil/Gas | $50,000.00 | $2,500.00 |
| 1070514 | Lexon Insurance Company | Heckmann Water Resources (CVR), Inc. | Ohio Department of Natural Resources, Division of Oil and Gas Resources Management | Reclamation - Oil/Gas | $15,000.00 | $750.00 |
| 1070515 | Lexon Insurance Company | Complete Vacuum and Rental, Inc. | State of Texas, Rail Road Commission of Texas | Reclamation - Oil/Gas | $25,000.00 | $625.00 |
| 1070516 | Lexon Insurance Company | Complete Vacuum and Rental, Inc. | State of Texas, Rail Road Commission of Texas | Reclamation - Oil/Gas | $56,098.00 | $2,805.00 |

| Bond Number | Issuing Carrier | Debtor | Obligee | Type of Bond | Bond Amount | Premium |
|---|---|---|---|---|---|---|
| 1070518 | Lexon Insurance Company | Complete Vacuum and Rental, Inc. | State of Texas, Rail Road Commission of Texas | Reclamation - Oil/Gas | $59,882.00 | $2,994.00 |
| 1070519 | Lexon Insurance Company | Complete Vacuum and Rental, Inc. | State of Texas, Rail Road Commission of Texas | Reclamation - Oil/Gas | $60,078.00 | $3,004.00 |
| 1070520 | Lexon Insurance Company | Complete Vacuum and Rental, Inc. | State of Texas, Rail Road Commission of Texas | Reclamation - Oil/Gas | $77,800.00 | $3,890.00 |
| 1070521 | Lexon Insurance Company | Heckmann Water Resources Corporation | Railroad Commission of Texas | Reclamation - Oil/Gas | $25,000.00 | $1,250.00 |
| 1070523 | Lexon Insurance Company | Heckmann Water Resources (CVR), Inc. | West Virginia Division of Labor | Union Bonds- Covers Payment of Wages and Fringe Benefits | $136,000.00 | $6,800.00 |
| 1070525 | Lexon Insurance Company | Heckmann Water Resources (CVR), Inc. | Pennsylvania Turnpike Commission | Turnpike, Bridge or Toll Bonds | $20,000.00 | $1,000.00 |
| 1090277 | Lexon Insurance Company | Appalachian Water Services, LLC | Commonwealth of Pennsylvania, Department of Environmental Protection, Bureau of Waste Management | Closure/Post Closure Bonds | $1,274,412.00 | $15,930.00 |
| 1092340 | Lexon Insurance Company | Badlands Power Fuels, LLC dba Nuverra Environmental Treatment Center | North Dakota Department of Health, Waste Management Division | Reclamation - Oil/Gas | $1,289,395.00 | $25,788.00 |
| 1096670 | Lexon Insurance Company | Heckmann Water Resources (CVR), Inc. | Trumbull County Engineer and Trumbull County Commissioners of Warren, OH | Excess Weight and Other Highway and Street Permits | $50,000.00 | $1,000.00 |

| Bond Number | Issuing Carrier | Debtor | Obligee | Type of Bond | Bond Amount | Premium |
|---|---|---|---|---|---|---|
| 1096676 | Lexon Insurance Company | Heckmann Water Resources Corporation | Louisiana Department of Conservation, Department of Natural Resources | Reclamation - Oil/Gas | $150,000.00 | $7,500.00 |
| 1096693 | Lexon Insurance Company | Heckmann Water Resources (CVR), Inc. | Federal Motor Carrier Safety Administration | Transportation Brokers | $75,000.00 | $2,250.00 |
| 1134845 | Lexon Insurance Company | Nuverra Total Solutions, LLC | State of Texas, Rail Road Commission of Texas | Reclamation - Oil/Gas | $25,000.00 | $833.00 |
| 81018161 | Travelers Casualty and Surety Company of America | Landtech Enterprises, L.L.C. | Montana Board of Oil and Gas Conservation | Reclamation - Oil/Gas | $10,000.00 | $100.00 |

# **EXHIBIT C**

**Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
----------------------------------------------------------------x
                                                 :
                                                 :
In re:                                           :    Chapter 11
                                                 :
Nuverra Environmental Solutions, Inc., et al.,[1] :   Case No. 17–10949 (____)
                                                 :
                            Debtors.             :    (Jointly Administered)
                                                 :
                                                 :    RE: Docket No. ___
----------------------------------------------------------------x
```

### ORDER AUTHORIZING THE DEBTORS TO MAINTAIN INSURANCE POLICIES, INSURANCE FINANCING AGREEMENTS AND SURETY PROGRAM AND PAY ALL PREPETITION AND POSTPETITION OBLIGATIONS IN RESPECT THEREOF

Upon the motion (the "**Motion**"),[2] of Nuverra Environmental Solutions, Inc. and its affiliated debtors and debtors in possession in the above-captioned cases (collectively, the "**Debtors**") for entry of an order (this "**Order**") authorizing the Debtors to (a) continue their existing insurance policies and insurance financing obligations and satisfy payment obligations related thereto, (b) renew, amend, supplement, extend, or purchase insurance coverage and insurance financing agreements in the ordinary course of business and satisfy payment obligations related thereto, and (c) continue and renew their surety bond program on an uninterrupted basis, and granting related relief, all as more fully set forth in the Motion; and upon the *Declaration of Robert D. Albergotti in Support of Voluntary Petitions, First Day Motions and*

---

[1]    The Debtors in these cases (including the last four digits of their respective taxpayer identification numbers) are:   Nuverra Environmental Solutions, Inc. (7117), Appalachian Water Services, LLC (0729), Badlands Leasing, LLC (2638), Badlands Power Fuels, LLC (DE) (8703), Badlands Power Fuels, LLC (ND) (1810), Heckmann Water Resources Corporation (1194), Heckmann Water Resources (CVR), Inc. (1795), Heckmann Woods Cross, LLC (9761), HEK Water Solutions, LLC (8233), Ideal Oilfield Disposal, LLC (5796), Landtech Enterprises, L.L.C. (9022), NES Water Solutions, LLC (3421), Nuverra Total Solutions, LLC (6218), and 1960 Well Services, LLC (5084).  The Debtors' corporate headquarters is located at 14624 N. Scottsdale Rd., Suite 300, Scottsdale, Arizona 85254.

[2]    Capitalized terms used but not defined herein shall have the meaning ascribed in the Motion.

*Applications*; and it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; and it appearing that venue of these chapter 11 cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties-in-interest; and it appearing that proper and adequate notice of the Motion has been given and that, except as otherwise ordered herein, no other or further notice is necessary; and after due deliberation thereon; and good and sufficient cause appearing therefor:

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED as set forth herein.

2.      The Debtors are authorized and empowered to maintain their Insurance Policies and Insurance Financing Agreements without interruption, on the same basis and in accordance with the same practices and procedures as were in effect prior to the Petition Date.

3.      The Debtors are authorized, but not directed, to renew, amend, supplement, extend, replace, or purchase new Insurance Policies and Insurance Financing Agreements, and to agree to provide customary levels and forms of security for any Insurance Financing Agreements, to the extent that the Debtors determine, in their business judgment, that such action is in the best interest of the Debtors' estates.

4.      The Debtors are authorized, but not directed, to pay, in their business judgment, in the ordinary course of their business, all premiums, claims, deductibles, excess, retrospective adjustments, administrative fees and all other obligations arising under the

Insurance Policies and Insurance Financing Agreements, including any self-insured retention amounts, and amounts that were due and payable but undiscovered as of the Petition Date (the "**Insurance Obligations**") up to an amount of $2.0 million.

5.      The Debtors are authorized, but not directed, to maintain the Surety Program without interruption, including the payment of all premiums and other Surety Obligations, the renewal or obtainment of new Surety Bonds, and the execution of other agreements in connection with the Surety Program.

6.      All banks and other financial institutions are authorized to (a) receive, process, honor and pay all checks presented for payment, and to honor all electronic payment requests made by the Debtors that are related to the prepetition obligations described in the Motion, whether such checks were presented or electronic requests were submitted prior to or after the Petition Date and (b) rely on the Debtors' designation of any particular check or electronic payment request as approved pursuant to this Order.

7.      Any and all payments arising under or in connection with or authorized to be made by this Order, or otherwise relating to the relief requested in the Motion, shall be subject to the interim and final orders of this Court in these chapter 11 cases approving the Debtors' debtor-in-possession financing facilities and the related budgets as approved by the lenders under such facilities.

8.      Nothing in this Order or the Motion shall be construed as prejudicing the rights of the Debtors to dispute or contest the amount of, or basis for, any claims against the Debtors in connection with or relating to the Insurance Policies, Insurance Financing Agreements or Surety Program.

01:21851730.3

9.      To the extent any Insurance Policy, Insurance Financing Agreement, Surety Bond or related agreement is deemed an executory contract within the meaning of section 365 of the Bankruptcy Code, neither this Order nor any payments made in accordance with this Order shall constitute the postpetition assumption of those Insurance Policies, Insurance Financing Agreement, Surety Bond or related agreements under section 365 of the Bankruptcy Code.

10.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

11.     The requirements of Bankruptcy Rule 6004(h), to the extent applicable, are hereby waived, and this Order shall be immediately effective and enforceable upon its entry.

12.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: Wilmington, Delaware
       May _____, 2017

_____

UNITED STATES BANKRUPTCY JUDGE

01:21851730.3

4