## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-----------------------------------------------------------------x
                                                                 :
                                                                 :
In re:                                                           :   Chapter 11
                                                                 :
Nuverra Environmental Solutions, Inc., et al.,¹                  :   Case No. 17–10949 (____)
                                                                 :
                                   Debtors.                      :   (Joint Administration Requested)
                                                                 :
                                                                 :
-----------------------------------------------------------------x
```

**DEBTORS' MOTION FOR AN ORDER AUTHORIZING THE DEBTORS TO CONTINUE TO (I) USE AND MAINTAIN EXISTING BANK ACCOUNTS, (II) USE THEIR EXISTING CASH MANAGEMENT SYSTEM, (III) USE THEIR EXISTING BUSINESS FORMS AND (IV) MAKE INTERCOMPANY TRANSACTIONS**

Nuverra Environmental Solutions, Inc. ("**Nuverra**") and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") in these chapter 11 cases hereby submit this motion (this "**Motion**") for entry of an order (the "**Order**") authorizing the Debtors to (a) maintain their existing Bank Accounts (defined below), (b) continue use of their existing cash management system, (c) continue use of their existing business forms and (d) continue intercompany transactions in the ordinary course of business.  In support of this Motion, the Debtors respectfully represent as follows:

### Background

1.       On the date hereof (the "**Petition Date**"), each of the Debtors filed with the Court a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11

---

[1]       The Debtors in these cases (including the last four digits of their respective taxpayer identification numbers) are:  Nuverra Environmental Solutions, Inc. (7117), Appalachian Water Services, LLC (0729), Badlands Leasing, LLC (2638), Badlands Power Fuels, LLC (DE) ("**Power Fuels**") (8703), Badlands Power Fuels, LLC (ND) (1810), Heckmann Water Resources Corporation (1194), Heckmann Water Resources (CVR), Inc. (1795), Heckmann Woods Cross, LLC (9761), HEK Water Solutions, LLC (8233), Ideal Oilfield Disposal, LLC (5796), Landtech Enterprises, L.L.C. (9022), NES Water Solutions, LLC (3421), Nuverra Total Solutions, LLC (6218), and 1960 Well Services, LLC (5084). The Debtors' corporate headquarters is located at 14624 N. Scottsdale Rd., Suite 300, Scottsdale, Arizona 85254.

U.S.C. §§ 101–1532 (the "**Bankruptcy Code**").  The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these chapter 11 cases.  As of the date hereof, no creditors' committee has been appointed.  Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of these chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

2.        Concurrently herewith, the Debtors have filed the *Debtors' Prepackaged Plans of Reorganization Under Chapter 11 of the Bankruptcy Code* (the "**Plan**") and the related disclosure statement.  Voting on the Plan began prior to the Petition Date, but has not yet concluded.

3.        The Plan comprises (i) a separate plan (the "**Nuverra Group Plan**") for all of the Debtors except for Appalachian Water Services, LLC and Badlands Power Fuels, LLC (DE) (the "**Nuverra Group Debtors**"), (ii) a separate plan of reorganization for Appalachian Water Services, LLC (the "**AWS Plan**") and (iii) a separate plan of reorganization for Badlands Power Fuels, LLC (DE) (the "**Badlands (DE) Plan**" and collectively with the Nuverra Group Plan and the AWS Plan, the Plan).  The Plan was developed in accordance with the terms of the Restructuring Support Agreement, dated as of April 9, 2017, as amended from time to time (the "**Restructuring Support Agreement**"), among the Debtors and certain supporting noteholders who hold 100% of the outstanding principal amount of the Term Loan Facility Claims and approximately 86% in outstanding principal amount of the 2021 Notes (the "**Supporting Noteholders**").  The Restructuring Support Agreement obligates the Supporting Noteholders, subject to certain terms and conditions, to vote to approve the Plan.  The Debtors expect that,

with the affirmative vote of the Supporting Noteholders, each Plan will be accepted by one or more impaired classes of creditors.

4.       Additional factual background relating to the Debtors' business, capital structure, and the commencement of these chapter 11 cases is set forth in the *Declaration of Robert D. Albergotti in Support of Voluntary Petitions, First Day Motions and Applications* (the "**First Day Declaration**").[2]

## Facts Specific to the Relief Requested

5.       In the ordinary course of their businesses, and like other comparable-sized companies, the Debtors utilize a centralized corporate cash management system (the "**Cash Management System**"), which integrates the Debtors' various bank accounts, including those used for customer collections and the payment of business-related disbursements and other operating expenses.  The Cash Management System, which is managed by the Debtors' finance and accounting personnel, comprises 16 bank accounts, a list of which is attached hereto as Exhibit A (the "**Bank Accounts**").  Fifteen of the Bank Accounts are with Wells Fargo Bank, N.A. ("**Wells Fargo**") and one is with Citibank, N.A. ("**Citi**").[3]  A diagram depicting the structure of the Cash Management System is attached hereto as Exhibit B.

## A.       Bank Accounts and Cash Management System

6.       The Cash Management System is a centralized system consisting of multiple bank accounts to efficiently collect, transfer, and disburse funds generated by the

---

[2]       Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

[3]       Both Wells Fargo and Citi are financially stable banking institutions that have executed a Uniform Depository Agreement for debtor-in-possession accounts in a form satisfactory to the United States Trustee for the District of Delaware (the "**U.S. Trustee**").  Moreover, all of the Wells Fargo Bank Accounts (other than the Master Account (as defined below) are zero-balance accounts with no funds maintained in such accounts for more than one night (as described herein).  The Debtors have no financial investments.  The Debtors believe that they are in compliance with section 345(b) of the Bankruptcy Code by virtue of the executed Uniform Depository Agreements.  Accordingly, the Debtors are seeking a finding that the Bank Accounts comply with section 345(b) of the Bankruptcy Code.

Debtors' business operations, as set forth below.  The Debtors have no investment activity and thus no investment accounts.  The current form of the Cash Management System has utilized the same general framework since the Debtors began daily sweeps of their collections in March 2016, in accordance with their prepetition asset-based revolving credit facility, as amended (the "**Prepetition ABL Facility**").[4]

7.      The Bank Accounts that comprise the Cash Management System can be categorized as follows:

1.  **Master Account**: A master account in the name of Nuverra ("**Master Account**"), which is limited to a daily aggregate balance of less than $1 million and primarily used to fund Disbursement Accounts (as defined below).

2.  **Deposit Accounts**: Four zero-balance accounts (each a "**Deposit Account**," and together, the "**Deposit Accounts**"), one each in the name of (i) Power Fuels, (ii) Heckmann Water Resources (CVR), Inc. ("**HWR**"), (iii) Appalachian Water Services, LLC ("**AWS**") and (iv) Nuverra.[5]  The Deposit Accounts for Power Fuels, HWR and AWS receive trade receivables and receipts generated by the respective entity and its business.  The Deposit Account for Nuverra receives amounts related to general corporate purposes, including, among other things, insurance and tax refunds.

3.  **Disbursement Accounts**: Nine zero-balance disbursement accounts (the "**Disbursement Accounts**"), which are used to pay certain expenses.  Of the nine Disbursement Accounts, four—one each for Nuverra, Power Fuels, HWR and AWS—generally are used to facilitate Automated Clearing House ("**ACH**") debit and credit transactions and wire transfers to vendors on account of business expenses.  Two of the Disbursement Accounts—one each for Nuverra and AWS—are able to issue checks. Two of the Disbursement Accounts—one each for Power Fuels and HWR —have a separate "controlled disbursement account" that processes checks on behalf of Power Fuels and HWR, respectively.  Three of the

---

[4]      The Prepetition ABL Facility was provided under that certain Credit Agreement, dated as of April 10, 2012, by and among Heckmann Corporation (as predecessor to Nuverra), each of the guarantors named therein, the ABL Agent, and the ABL Lenders, as amended, modified or supplemented from time to time. (the "**Prepetition ABL Credit Agreement**").

[5]      The Deposit Account for each of Power Fuels and HWR are both "lockbox accounts."  Generally, a lockbox account simplifies collection and processing of account receivables by having payments transmitted directly to a location accessible by a bank, such as a post-office box.

Disbursement Accounts—one each for Nuverra, Power Fuels, and HWR—are "payroll accounts" that are used by each respective entity to remit payroll amounts to the Debtors' third party payroll processor, Paycor, Inc.[6]

4. **Citibank Escrow Account**:  An escrow account used by Gallagher Bassett Services, Inc. ("**Gallagher**"), the administrator for the Debtors' workers' compensation insurance policies, to issue payments in relation to filed workers' compensation claims.[7]

In addition to the existing Bank Accounts that were used by the Debtors prior to the Petition Date as part of their Cash Management System, the Debtors have opened a demand deposit account that will hold funds constituting adequate assurance of future performance (the "**Utility Account**") pursuant to the *Debtors' Motion for Interim and Final Orders (I) Prohibiting Utility Companies from Discontinuing, Altering or Refusing Service, (II) Deeming Utility Companies to have Adequate Assurance of Payment and (III) Establishing Procedures for Resolving Requests for Additional Assurance*, filed contemporaneously herewith.  Although the Utility Account was opened prior to the Petition Date, the Debtors were not granted access to the Utility Account until the filing of these chapter 11 cases.

8. All amounts received by the Deposit Accounts are swept within one business day into a cash dominion sweep account maintained by Wells Fargo to pay down the

---

[6]    The payroll Disbursement Account for Power Fuels is used to wire to Paycor the payroll for Badlands Power Fuels, LLC (ND) and Landtech Enterprises, L.L.C., both of which are subsidiaries of Power Fuels. Additional detail about the payroll process and wages and compensation generally is contained within the *Motion for Entry of an Order Authorizing the Debtors to (I) Pay Prepetition Employee, Independent Contractor and Director Wages, Salaries and Other Compensation, (II) Reimburse Prepetition Employee Business Expenses, (III) Contribute to Prepetition Employee Benefit Programs and Continue Such Programs Postpetition, (IV) Make Payments for which Prepetition Payroll Deductions Were Made, (V) Pay Workers' Compensation Obligations, and (VI) Pay All Costs and Expenses Incident to the Foregoing* (the "**Employee Wages and Benefits Motion**") filed contemporaneously herewith.

[7]    Additional details regarding the Debtors' workers' compensation programs and the role of Gallagher, as well as authority for the Debtors to continue such policies, are contained within the Employee Wages and Benefits Motion.

loans under the Prepetition ABL Facility.[8]  Prior to the Petition Date, the Debtors would draw upon the Prepetition ABL Facility as needed, subject to the satisfaction of conditions to borrow set forth in the Prepetition ABL Credit Agreement.  Amounts drawn under the Prepetition ABL Facility are disbursed to the Master Account and then transferred by the Debtors to the applicable Disbursement Account.

9.    The Debtors anticipate that while they are in chapter 11, funding will be provided by the lenders under the debtor-in-possession credit facilities (the "**DIP Credit Facilities**")[9] in a similar fashion to the way borrowings are made under the Prepetition ABL Facility.  Amounts borrowed under the DIP Facilities will be advanced directly to the Master Account and thereafter transferred as needed to the Disbursement Account.

### B.    Business Forms

10.    In the ordinary course of business, the Debtors use a number of business forms (the "**Business Forms**"), including, but not limited to, checks, letterhead, purchase orders, and invoices.  If the Debtors were required to obtain new business forms as a result of the filing of these chapter 11 cases, the Debtors would incur significant expense and attendant delay in effectuating their ordinary course, prepetition business transactions.

### C.    Intercompany Transactions

11.    To facilitate the transfer of goods and services within the Debtors' operations in a way that most efficiently manages resources, the Debtors, in the ordinary course of business, enter into intercompany transactions with each other through the operation of their

---

[8]    Prior to March 2016, Disbursement Accounts also received deposits.  Since March 2016, certain payors have, from time to time, continued to make payments directly into Disbursement Accounts.  When this happens, the deposits flow directly to the Master Account.

[9]    *See Debtors' Motion for Interim and Final Orders (I) Authorizing Postpetition Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Priority, (III) Authorizing Use of Cash Collateral, (IV) Granting Adequate Protection to Prepetition Secured Lenders, (V) Modifying the Automatic Stay and (VI) Scheduling a Final Hearing.*

Cash Management System (the "**Intercompany Transactions**").   The Debtors track all Intercompany Transactions in their accounting system and can ascertain, trace, and account for them as needed.  If the Intercompany Transactions were discontinued, the Cash Management System would be disrupted to the Debtors' detriment.

12.     The Debtors are not seeking authority through this Motion to pay amounts owing on account of prepetition Intercompany Transactions.  However, the Debtors are seeking authority to continue postpetition Intercompany Transactions in the ordinary course of business and will maintain all receipts of disbursements and records of all transfers within the Cash Management System during the postpetition period.[10]  It is critical that the Debtors be able to consolidate management of cash and centrally coordinate transfers of funds pursuant to their existing Cash Management System to operate their businesses efficiently and effectively, and minimize disruptions during these chapter 11 cases.

## Jurisdiction

13.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  The statutory predicates for the relief requested herein are sections 345 and 363 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Rule 2015-2(b) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**").

---

[10]     Because the Debtors engage in Intercompany Transactions on a regular basis and such transfers are common among enterprises similar in size, scope and structure to the Debtors' businesses, the Debtors believe such transfers are ordinary course transactions within the meaning of section 363(c)(1) of the Bankruptcy Code and thus do not require the Court's approval.  Nevertheless, out of an abundance of caution, the Debtors are seeking express authority to engage in such transactions on a postpetition basis as part of the Cash Management System.

01:21851731.3

## Relief Requested

14.     By this Motion, the Debtors respectfully request a waiver of certain operating guidelines established by the U.S. Trustee that otherwise would require the Debtors to close all prepetition bank accounts, open new "Debtor-in-Possession" bank accounts for each Debtor and obtain new business forms and stationery, and certain other related relief. Specifically, the Debtors seek entry of an order that authorizes the Debtors to:  (a) maintain the Bank Accounts and open and close Bank Accounts as needed; (b) continue to use the Cash Management System, including the payment of administrative costs related thereto; (c) continue to use their existing Business Forms; and (d) continue the Intercompany Transactions in the ordinary course of business.

## Basis for Relief

**A.     The Debtors Should Be Granted Authority to Maintain Their Existing Bank Accounts**

15.     To supervise the administration of chapter 11 cases, the U.S. Trustee has established certain operating guidelines for debtors in possession (the "**UST Guidelines**").  The UST Guidelines provide that chapter 11 debtors generally should:  (a) close all existing bank accounts and open new debtor-in-possession bank accounts; (b) establish one debtor-in-possession account for all estate monies required for the payment of taxes, including payroll taxes; and (c) maintain a separate debtor-in-possession account for cash collateral.

16.     The Debtors seek a waiver of the UST Guideline requirement that the Bank Accounts be closed and that new postpetition bank accounts be opened, as well as authority to treat their prepetition Bank Accounts as debtor-in-possession accounts for all purposes (including for internal coding purposes).  If the requirement to open new bank accounts were enforced in these chapter 11 cases, it would cause considerable disruption to the Debtors'

businesses due to likely delays in payments to creditors and others, which would impair the Debtors' efforts to maximize the value of their estates. Maintaining the existing Bank Accounts, therefore, is critical to ensuring the uninterrupted flow of the Debtors' collections and disbursements, which, in turn is essential to the Debtors' ongoing operations.

17.    The Debtors also request that they be permitted to open new accounts and close old accounts as needed; *provided, that*, if they do so, the Debtors will give the U.S. Trustee, Wells Fargo, the Supporting Noteholders, and any statutory committee appointed in these chapter 11 cases notice of any account closure and prior notice of any newly opened accounts. The Debtors request that any and all accounts opened by the Debtors on or after the Petition Date be deemed a Bank Account (as if opened prior to the Petition Date and listed on Exhibit A), and that any and all Banks at which such accounts are opened shall similarly be subject to the rights and obligations under the Order that the Debtors' respectfully request the Court enter, substantially in the form as attached hereto as Exhibit C.

18.    In sum, the Debtors request that they be authorized and empowered to: (a) designate, maintain and continue to use any and all Bank Accounts in existence as of the Petition Date, including, without limitation, the accounts identified in Exhibit A attached hereto, with the same account numbers, styles and document forms as those employed during the prepetition period; (b) open new accounts as needed, *provided, however*, that the Debtors will give the U.S. Trustee, the Supporting Noteholders and any statutory committee that may be appointed in these chapter 11 cases notice of each such newly opened account; (c) treat the Bank Accounts for all purposes (including internal coding purposes) as accounts of the Debtors in their capacity as debtors in possession; and (d) close any Bank Account in their discretion, *provided,*

01:21851731.3

*however*, that the Debtors shall give the U.S. Trustee and any statutory committee that may be appointed in these chapter 11 cases notice of each such account closing.

19.      To effectuate the foregoing, and assist in the implementation of the other relief contemporaneously with this Motion, the Debtors request that Wells Fargo be authorized to honor all representations from the Debtors as to which prepetition checks should be honored or dishonored.  To the extent that any of the Debtors' prepetition checks have been dishonored, the Debtors reserve the right to issue, or to request authority to issue replacement checks to pay the amounts related to such dishonored checks, consistent with applicable orders of the Court.

20.      Courts in this and other districts have allowed chapter 11 debtors to continue using their prepetition cash management systems, waived the requirement that a debtor-in-possession close its bank accounts, and have otherwise granted relief similar to that requested herein.  Accordingly, the Debtors respectfully submit that there is a significant legal basis for granting the relief requested herein relating to the Bank Accounts.

**B.      The Debtors Should Be Authorized to Continue to Use Their Existing Cash Management System**

21.      The Cash Management System employed by the Debtors constitutes ordinary, usual and essential business practices similar to those used by other corporate enterprises similar in size to the Debtors.  The Cash Management System provides significant benefits to all Debtors, including the ability to control corporate funds centrally and to ensure availability of funds when necessary.

22.      Compelling the Debtors to adopt a new, segmented cash management system would be expensive and create unnecessary administrative burdens.  These burdens would run counter to the efforts that the Debtors, their personnel and their advisors expended to ensure the smooth operation of the Cash Management System during these chapter 11 cases and

thereafter.  Consequently, maintenance of the Cash Management System, including the Debtors' continued ability to transfer funds between Bank Accounts, not only is essential, but also is in the best interests of all creditors and other parties-in-interest.   Accordingly, the Debtors request authority to continue to use the Cash Management System and to disburse funds, in their sole discretion, by debit, check, wire transfer, ACH payments and other similar methods.

23.    A debtor's request for authorization to continue to use its cash management system has been held to be entirely consistent with section 363(c)(1) of the Bankruptcy Code, which allows a debtor-in-possession to "use property of the estate in the ordinary course of business."  *See Charter Co. v. Prudential Ins. Co. of Am. (In re Charter Co.)*, 778 F.2d 617, 621 (11th Cir. 1985).   Delaware bankruptcy courts have recognized that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash."  *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part and rev'd in part*, 997 F.2d 1039, 1053 (3d. Cir. 1993) (reversing with respect to customer refunds and research and development surcharges, but also noting that "pooling of funds promoted efficient utilization of cash resources"), *cert. denied sub nom Official Comm. of Unsecured Creditors v. Columbia Gas Transmission Corp.*, 510 U.S. 1110 (1994).  The Third Circuit has agreed, emphasizing the "huge administrative burden" and economic inefficiency of requiring debtors to maintain all accounts separately.  *Columbia Gas*, 997 F.2d at 1061; *see also Southmark Corp. v. Grosz (In re Southmark Corp.)*, 49 F.3d 1111, 1114 (5th Cir. 1995) (maintaining existing cash management system allows a debtor "to administer more efficiently and effectively its financial operations and assets").

24.     In connection with the Cash Management System, the Debtors incur periodic fees and other charges.  Payment of such prepetition fees (if any) will enable the Debtors to purchase the services required to operate the Cash Management System and prevent disruption to the Cash Management System.  Moreover, payment of such charges is unlikely to affect unsecured creditors in any significant degree because banks may exercise a right of setoff against deposit accounts to recover their fees and other charges.  Accordingly, the Debtors seek authority to pay such periodic fees and other charges (if any).

25.     Relief similar to that requested herein has been granted repeatedly by courts in this District.  The Debtors respectfully submit that the relief requested herein related to the Cash Management System is appropriate and within the Court's authority.

## C.     The Debtors Should Be Granted Authority to Continue to Use Existing Business Forms

26.     To minimize expenses to their estates during these chapter 11 cases, the Debtors also request authorization to (i) continue using all correspondence and Business Forms existing immediately prior to the Petition Date without reference to the Debtors' status as debtors in possession and (ii) continue using checks and check stock (including manual and electronic checks) without the "debtor-in-possession" label, until existing stock runs out.  As soon as practicable after the Petition Date, the Debtors will imprint the legend "DIP" or "Debtor in Possession" on new stock of correspondence and business forms purchased during the pendency of these chapter 11 cases and include "DIP" or "Debtor in Possession" on the checks it prints electronically, to the extent possible.  Changing Business Forms at this time would be expensive and burdensome to the Debtors' estates and disruptive to the Debtors' postpetition efforts.

01:21851731.3

27.     The relief requested with respect to the continued use of existing Business Forms, including checks, without the "debtor in possession" label, at least until the depletion of the Debtors' existing supply of checks, is consistent with the relief granted in other large cases in this District.  Accordingly, the Debtors respectfully submit that there is an established practice and a legal basis for the granting of the relief requested herein relating to the Debtors' existing business forms.

**D.     The Debtors Should be Granted Authority to Continue Intercompany Transactions**

28.     As set forth above, the Debtors enter into Intercompany Transactions, which function in connection with the operation of the Cash Management System, are essential to the Debtors' business practices.  The Intercompany Transactions allow the Debtors to pool their cash and manage receipts and disbursements centrally, a practice that makes the Debtors' businesses as a whole less expensive to fund.  Discontinuation of the Intercompany Transactions would disrupt the Cash Management System and could result in the imposition of costly administrative delays at a time when the Debtors are trying to maximize value to their stakeholders.  Accordingly, the Debtors request authority to continue their Intercompany Transactions in the ordinary course of business.

29.     The relief requested with respect to continuing the Intercompany Transactions is consistent with the relief granted in other large cases in this District. Accordingly, the Debtors respectfully submit that allowing them to continue to engage in the Intercompany Transactions in the ordinary course of business is warranted.

**The Court Should Authorize the Banks to Honor and**
**Process the Debtors' Payments to the Extent Authorized**

30.     The Debtors represent that they have sufficient funds to pay the amounts described herein in the ordinary course of business by virtue of expected cash flows from ongoing business operations, debtor-in-possession financing, and anticipated access to cash collateral.  As a result of the commencement of the chapter 11 cases and in the absence of an order of the Court providing otherwise, the Debtors' checks may be dishonored or rejected by financial institutions.  The Debtors submit that the Banks should be authorized to debit the Debtors' accounts in the ordinary course of business only for those items authorized by Court order.  Moreover, the Debtors submit that any Bank should be authorized to rely on the representations of the Debtors with respect to whether any check, item or other payment order drawn or issued by the Debtors prior to the Petition Date should be honored.  Finally, the Debtors request that any Bank that implements reasonable handling procedures designed to effectuate the terms of the proposed Order, but which then incorrectly honors a prepetition check or other item drawn on any account that is the subject of the proposed Order as a result of an innocent mistake made despite implementation of such handling procedures, shall not be deemed to be liable to the Debtors or their estates or otherwise in violation of the proposed Order on account of such mistake.

31.     Any and all payments arising under or in connection with or authorized to be made by the Motion or the proposed Order shall be subject to the interim and final orders of the Court in these chapter 11 cases approving the Debtors' debtor-in-possession financing facilities, and the related budgets approved by the lenders under such facilities.

## Request for Immediate Relief and Waiver of Stay

32.     As described above, the relief that the Debtors seek in this Motion is immediately necessary for the Debtors to continue to operate the Cash Management System in the normal course of their businesses and avoid disruption that would occur if the Debtors were unable to continue their existing Cash Management System.   Accordingly, to the extent that Bankruptcy Rule 6003 is applicable to the relief requested, the Debtors submit that, for the reasons set forth herein, the relief requested in this Motion is necessary on an immediate basis to avoid irreparable harm.[11]   Moreover, the Debtors request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."

## Reservation of Rights

33.     Nothing contained herein is or should be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an admission that any particular claim is of a type specified or defined hereunder; (e) a request to assume any executory contract or unexpired lease; or (f) a waiver of the Debtors' rights under the Bankruptcy Code or any other applicable law.  If the Court authorizes the relief sought herein, such relief should not be deemed to constitute a postpetition assumption or adoption of any programs, policies, or agreements.

---

[11]     Bankruptcy Rule 6003 provides that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding . . . a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate . . . ." Fed. R. Bankr. P. 6003.

## Notice

34.     Notice of this Motion will be provided to:  (i) the United States Trustee for the District of Delaware; (ii) Fried, Frank, Harris, Shriver & Jacobson LLP, as counsel to the Supporting Noteholders, One New York Plaza, New York, NY 10004, Attn:  Brad Eric Scheler and Jennifer Rodburg; (iii) Goldberg Kohn Ltd., as counsel to Wells Fargo Bank, N.A., Revolving Credit Agreement Agent, 55 East Monroe, Suite 3300, Chicago, IL 60603, Attn: Randall Klein, Dimitri Karcazes and Gary Zussman; (iv) Morrison & Foerster LLP, as counsel to Wilmington Savings Fund Society, FSB, Trustee to Senior Secured Second Lien Notes due 2021, Trustee to 9.875% Senior Notes Due 2018 and Term Loan Agent, 250 West 55th Street, New York, NY 10019, Attn:  Jonathan I. Levine and James A. Newton; (v) Wilmington Savings Fund Society, FSB, as Trustee to Senior Secured Second Lien Notes due 2021, Trustee to 9.875% Senior Notes Due 2018, and  Term Loan Agent, 500 Delaware Avenue, Wilmington, DE 19801, Attn:  Corporate Trust and Geoffrey Lewis; (vi) American Stock Transfer & Trust Company, LLC, as Warrant Agent, 6201 15th Avenue, Brooklyn, NY 11219, Attn:  Relationship Manager, and 48 Wall Street, 21st Floor, New York, NY 10005, Attn:  Legal Department; and (vii) the 30 largest unsecured creditors of the Debtors, on a consolidated basis.  As this Motion is seeking "first-day" relief, the Debtors will serve copies of this Motion and any order entered in respect of this Motion as required by Local Rule 9013-1(m).  The Debtors respectfully submit that, in light of the nature of the relief requested, no other or further notice need be given.

01:21851731.3

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as Exhibit C, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: Wilmington, Delaware
      May 1, 2017

SHEARMAN & STERLING LLP
Douglas P. Bartner (Pro Hac Vice Admission Pending)
Fredric Sosnick (Pro Hac Vice Admission Pending)
Sara Coelho (Pro Hac Vice Admission Pending)
Stephen M. Blank (Pro Hac Vice Admission Pending)
599 Lexington Avenue
New York, New York  10022
Telephone:  (212) 848-4000
Facsimile:  (646) 848-8174

-and-

YOUNG CONAWAY STARGATT & TAYLOR, LLP


/s/ Jaime Luton Chapman
Pauline K. Morgan (No. 3650)
Kenneth J. Enos (No. 4544)
Jaime Luton Chapman (No. 4936)
Rodney Square
1000 North King Street
Wilmington, Delaware  19801
Telephone: (302) 571-6600
Facsimile: (302)  571-1253

Proposed Counsel to the Debtors and Debtors in Possession

01:21851731.3

# EXHIBIT A

## Bank Accounts

| Account Held By | Bank | Account Number (Last 4 Digits) | Account Type |
|---|---|---|---|
| Nuverra Environmental Solutions, Inc. | Wells Fargo Bank, N.A. | 7839 | Master Account |
| Nuverra Environmental Solutions, Inc. | Wells Fargo Bank, N.A. | 9143 | Disbursement Only Demand Deposit Account |
| Nuverra Environmental Solutions, Inc. | Wells Fargo Bank, N.A. | 3296 | Payroll Only Disbursement Demand Deposit Account |
| Nuverra Environmental Solutions, Inc. | Wells Fargo Bank, N.A. | 9012 | Receipt Only Demand Deposit Account |
| Nuverra Environmental Solutions, Inc. | Citibank, N.A. | 1756 | Escrow Account |
| Nuverra Environmental Solutions, Inc. | Wells Fargo Bank, N.A. | 8551 | Utility Account |
| Appalachian Water Services, LLC | Wells Fargo Bank, N.A. | 5011 | Disbursement Only Demand Deposit Account |
| Appalachian Water Services, LLC | Wells Fargo Bank, N.A. | 5960 | Receipt Only Demand Deposit Account |
| Badlands Power Fuels, LLC | Wells Fargo Bank, N.A. | 9184 | Disbursement Only Demand Deposit Account |
| Badlands Power Fuels, LLC | Wells Fargo Bank, N.A. | 3080 | Payroll Only Disbursement Demand Deposit Account |
| Badlands Power Fuels, LLC | Wells Fargo Bank, N.A. | 9971 | Controlled Disbursement Account |
| Badlands Power Fuels, LLC | Wells Fargo Bank, N.A. | 4527 | Lockbox (Denver) |
| Heckmann Water Resources (CVR), Inc. | Wells Fargo Bank, N.A. | 9176 | Disbursement Only Demand Deposit Account |
| Heckmann Water Resources (CVR), Inc. | Wells Fargo Bank, N.A. | 3288 | Payroll Only Disbursement Demand Deposit Account |
| Heckmann Water Resources (CVR), Inc. | Wells Fargo Bank, N.A. | 9963 | Controlled Disbursement Account |
| Heckmann Water Resources (CVR), Inc. | Wells Fargo Bank, N.A. | 4543 | Lockbox (Dallas) |

**EXHIBIT B**

**Cash Management Diagram**



# **EXHIBIT C**

## **Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
--------------------------------------------------------------------x
                                      :
                                      :
In re:                                :         Chapter 11
                                      :
Nuverra Environmental Solutions, Inc., et al.,[1]   :    Case No. 17–10949 (____)
                                      :
            Debtors.                  :         (Jointly Administered)
                                      :
                                      :         RE: Docket No. ___
                                      :
--------------------------------------------------------------------x
```

### ORDER AUTHORIZING THE DEBTORS TO CONTINUE TO (I) USE AND MAINTAIN EXISTING BANK ACCOUNTS, (II) USE THEIR EXISTING CASH MANAGEMENT SYSTEM, (III) USE THEIR EXISTING BUSINESS FORMS AND (IV) MAKE INTERCOMPANY TRANSACTIONS

Upon the motion (the "**Motion**")[2] of Nuverra Environmental Solutions, Inc. and

its affiliated debtors and debtors in possession in the above-captioned cases (collectively, the

"**Debtors**"), for entry of an order (this "**Order**") authorizing the Debtors to (a) maintain existing

bank accounts, (b) continue use of their existing cash management system, (c) continue use of

their existing business forms and (d) continue Intercompany Transactions, all as more fully set

forth in the Motion; and upon the *Declaration of Robert D. Albergotti in Support of Voluntary*

*Petitions, First Day Motions and Applications*; and it appearing that this Court has jurisdiction to

consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of*

*Reference* from the United States District Court for the District of Delaware dated as of February

---

[1]    The Debtors in these cases (including the last four digits of their respective taxpayer identification numbers) are:  Nuverra Environmental Solutions, Inc. (7117), Appalachian Water Services, LLC (0729), Badlands Leasing, LLC (2638), Badlands Power Fuels, LLC (DE) (8703), Badlands Power Fuels, LLC (ND) (1810), Heckmann Water Resources Corporation (1194), Heckmann Water Resources (CVR), Inc. (1795), Heckmann Woods Cross, LLC (9761), HEK Water Solutions, LLC (8233), Ideal Oilfield Disposal, LLC (5796), Landtech Enterprises, L.L.C. (9022), NES Water Solutions, LLC (3421), Nuverra Total Solutions, LLC (6218), 1960 Well Services, LLC (5084). The Debtors' corporate headquarters is located at 14624 N. Scottsdale Rd., Suite 300, Scottsdale, Arizona 85254.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

29, 2012; and it appearing that venue of these chapter 11 cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties-in-interest; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and after due deliberation thereon; and good and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1.　　　The Motion is GRANTED as set forth herein.

2.　　　<u>Maintenance of Bank Accounts</u>.　　Pursuant to section 363 of the Bankruptcy Code, the Debtors, in their discretion, are authorized and empowered to: (a) designate, maintain and continue to use any and all of the bank accounts in existence as of the Petition Date, including, without limitation, the accounts identified in Exhibit A to the Motion (the "**Bank Accounts**"), with the same account numbers, styles and document forms as those employed during the prepetition period; *provided, however*, that the Debtors shall direct the financial institutions where the Bank Accounts are maintained (collectively, the "**Banks**") to internally code the Bank Accounts as debtor-in-possession accounts; (b) open new accounts wherever they are needed; *provided*, *however*, that the Debtors shall give the U.S. Trustee, Wells Fargo Bank, N.A., the Supporting Noteholders, and any statutory committee that may be appointed in these chapter 11 cases 15 days' advance notice (or such shorter notice as the U.S. Trustee and any committee may agree to) of each such newly opened account and any new account shall be opened at a Bank that has executed, or is willing to execute, a Uniform Depositary Agreement with the U.S. Trustee; (c) treat the Bank Accounts for all purposes as accounts of the Debtors in their capacity as debtors in possession; and (d) close any Bank

Account in the Debtors' discretion; *provided, however*, that the Debtors shall give the U.S. Trustee, Wells Fargo Bank, N.A., the Supporting Noteholders, and any statutory committee that may be appointed in these chapter 11 cases notice following any such account closure.

3. The Banks are authorized to honor the Debtors' requests to open or close, as the case may be, such bank accounts or additional bank accounts effective as of the Petition Date.

4. For all purposes in this Order, any and all accounts opened by the Debtors on or after the Petition Date shall be deemed a Bank Account (as if it had been opened prior to the Petition Date and listed on Exhibit A to the Motion) and any and all Banks at which such accounts are opened shall similarly be subject to the rights and obligations of this Order.

5. The Bank Accounts at financial institutions that have executed a Uniform Depository Agreement with the U.S. Trustee satisfy the requirements of section 345(b) of the Bankruptcy Code.

6. <u>Cash Management System</u>.  The Debtors are authorized, but not directed, to continue to use the Cash Management System, including any intercompany transfers among Bank Accounts in accordance with the ordinary course and historical practices of the Cash Management System; *provided* they maintain detailed records reflecting all transfers of funds, so that all such transactions, including prepetition and postpetition transactions, may be readily ascertained, traced and recorded properly on applicable accounts.

7. The Debtors are further authorized to honor and pay all obligations related to the Cash Management System, including all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Bank as service charges for the maintenance of the Cash

Management System, as described in the Motion and in accordance with any order authorizing the use of cash collateral or postpetition financing.

8.      The Debtors may, in their sole discretion, disburse funds by debit, check, wire transfer, ACH payments and other similar methods and as described in the Motion.

9.      The Banks are authorized to continue to treat, service, and administer the Bank Accounts as accounts of the respective Debtor as a debtor-in-possession without interruption and in the usual and ordinary course and to receive, process and honor and pay, to the extent of available funds, any and all post-petition checks, drafts, wires, or ACH transfers drawn on the Bank Accounts by the holders or makers thereof, as the case may be.

10.      The Banks are authorized to debit the Debtors' accounts in the ordinary course of business without the need for further order of this Court for: (i) all checks drawn on the Debtors' accounts which are cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; (ii) all checks or other items deposited in one of the Debtors' accounts with such Bank prior to the Petition Date which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtor was responsible for such items prior to the Petition Date; and (iii) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Bank as service charges for the maintenance of the Cash Management System.

11.      A Bank may rely on the representations of the Debtor with respect to whether any check, item or other payment order drawn or issued by the Debtor prior to the Petition Date should be honored pursuant to this or any other order of this Court, and no Bank shall have any liability to any party for relying on any such representations by the Debtors.  The

Banks have no duty to independently inquire as to whether such payments are authorized by an order of this Court.

12.     Any and all payments arising under or in connection with or authorized to be made by this Order, or otherwise relating to the relief requested in the Motion, shall be subject to the interim and final orders of this Court in these chapter 11 cases approving the Debtors' debtor-in-possession financing facilities, and the related budgets as approved by the lenders under such facilities.

13.     No Bank that implements reasonable handling procedures designed to effectuate the terms of this Order, but which then incorrectly honors a prepetition check or other item drawn on any account that is the subject of this Order as a result of an innocent mistake made despite implementation of such handling procedures, shall be deemed to be liable to the Debtors or their estates or otherwise in violation of this Order on account of such mistake.

14.     The Banks shall not be liable to any party on account of (i) following the Debtors' instructions or representations as to any order of this Court, (ii) the honoring of any prepetition check or item in a good faith belief that the Court has authorized such prepetition check or item to be honored, or (iii) an innocent mistake made despite implementation of reasonable item handling procedures.

15.     Notwithstanding anything herein to the contrary, those certain existing deposit agreements between the Debtors and the Banks (including the existing deposit account control agreements) shall continue to govern the post-petition Cash Management System between  the Debtors and the Banks, and all of the provisions of such agreements, including, without limitation, the termination and fee provisions, shall remain in full force and effect, and either the Debtors or the Banks may, without further order of this Court, implement changes to

the Cash Management System in the ordinary course of business pursuant to terms of those certain existing deposit agreements, including, without limitation, the opening and closing of bank accounts.

16.    Any third-party service provider with whom the Debtors directly or indirectly have contracted to provide services in connection with the operation of the Cash Management System is authorized to continue to provide to the Debtors those services they provided prior to the Petition Date, absent further order of this Court.

17.    <u>Use of Business Forms</u>.  The Debtors are authorized, but not directed, to continue to use their Business Forms existing immediately prior to the Petition Date without alteration or change and without the designation "Debtor in Possession" or a Debtor in Possession case number imprinted upon them and are granted a waiver of the requirement that the legend "DIP" or "Debtor in Possession" be printed on their checks; *provided, however*, that the Debtors shall imprint the legend "DIP" or "Debtor in Possession" on any new stock of checks purchased for use during the pendency of the chapter 11 cases, unless such requirement is waived by further order of this Court, and shall note "DIP" or "Debtor-in-Possession" on electronically printed checks as soon as practicable.

18.    <u>Intercompany Transactions</u>.  The Debtors are authorized to continue performing intercompany transactions arising from or related to the operation of their business in the ordinary course (the "**Intercompany Transactions**"); *provided*, *however*, that nothing in this Order shall authorize any transaction between the Debtors and a non-Debtor affiliate.

19.    In connection with the Intercompany Transactions, the Debtors shall continue to maintain current records with respect to all transfers such that all Intercompany Transactions may be readily ascertained, traced and properly recorded.

20.      The Debtors are authorized to use their consolidated Cash Management System; *provided, however*, that the Debtors shall calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of each Debtor.

21.      The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

22.      The requirements of Bankruptcy Rule 6004(h), to the extent applicable, are hereby waived, and this Order shall be immediately effective and enforceable upon its entry.

23.      The Debtors shall serve a copy of this Order, by overnight mail, on all Banks within five business days of the entry of this Order and shall promptly advise all Banks of the bankruptcy filing.

24.      Notwithstanding any provision in the Federal Rules of Bankruptcy Procedure to the contrary, the Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order, and the Debtors may, in their discretion and without further delay, take any action and perform any act necessary to implement the relief granted in this Order.

25.      This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation and enforcement of this Order.

Dated:  Wilmington, Delaware
        May ____, 2017

_____
UNITED STATES BANKRUPTCY JUDGE

01:21851731.3

7