## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------------------x
                                                     :
In re:                                               :     Chapter 11
                                                     :
Nuverra Environmental Solutions, Inc., et al.,[1]    :     Case No. 17–10949 (____)
                                                     :
                             Debtors.                :     (Joint Administration Requested)
                                                     :
                                                     :
-------------------------------------------------------------------x
```

### MOTION OF THE DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTORS TO PAY CERTAIN PREPETITION GENERAL UNSECURED CLAIMS IN THE ORDINARY COURSE OF BUSINESS, (II) AUTHORIZING APPLICABLE BANKS AND OTHER FINANCIAL INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS, AND (III) GRANTING RELATED RELIEF

Nuverra Environmental Solutions, Inc. and its affiliated debtors and debtors in possession in the above-captioned cases (collectively, the "**Debtors**") hereby file this motion (this "**Motion**") for entry of an interim order (the "**Interim Order**") and a final order (the "**Final Order**" and, collectively with the Interim Order, the "**Orders**") (i) authorizing the Debtors to pay certain prepetition general unsecured claims related to the Debtors' operations in the ordinary course of business and consistent with past practice, (ii) authorizing applicable banks and other financial institutions to honor and process related checks and transfers, and (iii) granting certain related relief, including scheduling a hearing to consider approval of the Motion on a final basis (the "**Final Hearing**").  In support of this Motion, the Debtors respectfully represent as follows:

---

[1]    The Debtors in these proceedings (including the last four digits of their respective taxpayer identification numbers) are:  Nuverra Environmental Solutions, Inc. (7117), Appalachian Water Services, LLC (0729), Badlands Leasing, LLC (2638), Badlands Power Fuels, LLC (DE) (8703), Badlands Power Fuels, LLC (ND) (1810), Heckmann Water Resources Corporation (1194), Heckmann Water Resources (CVR), Inc. (1795), Heckmann Woods Cross, LLC (9761), HEK Water Solutions, LLC (8233), Ideal Oilfield Disposal, LLC (5796), Landtech Enterprises, L.L.C. (9022), NES Water Solutions, LLC (3421), Nuverra Total Solutions, LLC (6218), and 1960 Well Services, LLC (5084).  The Debtors' corporate headquarters is located at 14624 N. Scottsdale Rd., Suite 300, Scottsdale, Arizona 85254.

## Background

1.      On the date hereof (the "**Petition Date**"), each of the Debtors filed with the Court a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**").   The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.   No trustee or examiner has been appointed in these chapter 11 cases. As of the date hereof, no creditors' committee has been appointed.   Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of these chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

2.      Concurrently herewith, the Debtors have filed the *Debtors' Prepackaged Plans of Reorganization Under Chapter 11 of the Bankruptcy Code* (the "**Plan**") and the related disclosure statement.   Voting on the Plan began prior to the Petition Date, but has not yet concluded.

3.      The Plan comprises (i) a separate plan (the "**Nuverra Group Plan**") for all of the Debtors except for Appalachian Water Services, LLC and Badlands Power Fuels, LLC (DE) (the "**Nuverra Group Debtors**"), (ii) a separate plan of reorganization for Appalachian Water Services, LLC (the "**AWS Plan**") and (iii) a separate plan of reorganization for Badlands Power Fuels, LLC (DE) (the "**Badlands (DE) Plan**" and collectively with the Nuverra Group Plan and the AWS Plan, the Plan).   The Plan was developed in accordance with the terms of the Restructuring Support Agreement, dated as of April 9, 2017, as amended from time to time (the "**Restructuring Support Agreement**"), among the Debtors and certain supporting noteholders who hold 100% of the outstanding principal amount of the Term Loan Facility Claims and approximately 86% in outstanding principal amount of the 2021 Notes (the "**Supporting**

**Noteholders**").  The Restructuring Support Agreement obligates the Supporting Noteholders, subject to certain terms and conditions, to vote to approve the Plan.  The Debtors expect that, with the affirmative vote of the Supporting Noteholders, each Plan will be accepted by one or more impaired classes of creditors.

4.        Additional factual background relating to the Debtors' business, capital structure and the commencement of these chapter 11 cases is set forth in detail in the *Declaration of Robert D. Albergotti in Support of Voluntary Petitions, First Day Motions and Applications* (the "**First Day Declaration**"),[2] which was filed contemporaneously with this Motion and is incorporated herein by reference.

## Jurisdiction

5.        The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  The statutory predicates for the relief requested herein are sections 105(a), 363, 503(b), 1107(a), 1108, and 1112(b) of the Bankruptcy Code.

## Relief Requested

6.        By this Motion, the Debtors request entry of the Interim and Final Orders, substantially in the forms attached hereto as Exhibit A and Exhibit B, respectively, authorizing the Debtors, in their discretion, to pay prepetition amounts owed to trade creditors and customers (collectively, the "**Business Claims**") in the ordinary course of business and consistent with past practice, subject to certain conditions described below.  The Debtors seek authority to pay

---

[2]        Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

Business Claims in an aggregate amount not to exceed $7.4 million on an interim basis and $10.8 million on a final basis.  Contemporaneously with the filing of this Motion, the Debtors have filed certain other "first day" motions seeking authority to satisfy certain prepetition obligations to parties including, among others, employees, insurance providers, and taxing authorities.  The relief sought in this Motion is not duplicative of that contained in the Debtors' other first day motions.

7.    The Debtors further request that the Court authorize and direct applicable banks and other financial institutions to receive, process, honor, and pay any and all checks drawn on the Debtors' accounts and other transfers to the extent that those checks or transfers relate to Business Claims, regardless of whether such checks and transfers were presented prior to or after the Petition Date.

### The Business Claims

8.    The Debtors provide comprehensive, full-cycle environmental solutions to companies focused on the development, exploration, and ongoing production of oil and natural gas from shale formations in the United States.  In the ordinary course of business, the Debtors obtain goods and services from numerous trade creditors to support the Debtors' customers and operations.

9.    The Debtors incur numerous fixed, liquidated, and undisputed payment obligations to trade creditors and customers in the ordinary course of business.  Although the majority of such Business Claims would be classified as General Unsecured Claims under the Plan, certain of these claims may be (a) administrative priority claims under sections 503(b)(9)

of the Bankruptcy Code or (b) secured by liens under applicable state law.[3]  The Debtors have

paid $6.9 million per month on average to trade creditors and customers for the 12 months prior

to the Petition Date.

10.     The Debtors estimate that, as of the Petition Date, the Debtors owe a total

of approximately $10.8 million on account of Business Claims.  The Business Claims generally

comprise five different categories of Business Claims paid by the Debtors in the ordinary course

of their business:

| Administrative[4] | Support services for corporate and administrative functions, such as information technology, human resources, legal, rent, and accounting |
| --- | --- |
| Operational | Suppliers, service providers, and other vendors utilized in connection with Debtors' business operations |
| Fleet/Logistics | Providers of supplies and repairs/maintenance for entire fleet operations and logistics such as fuel, tires, supplies, and providers of similar services |
| Potential Lienholder | Includes access to saltwater disposal ("**SWD**") wells and related services |
| Customer-related | Includes pass-through costs under customer agreements and credits and rebates owed to customers |

11.     The Debtors are not seeking to pay all Business Claims immediately;

rather, if authorized by the Court to pay such claims, the Debtors will process such payments in

accordance with their normal accounts payable procedures, as they become due and payable in

the ordinary course of business and consistent with past practice.  The Debtors' postpetition

financing and the cash generated in the ordinary course of their business will provide ample

---

[3]     Although the majority of such creditors are likely to hold General Unsecured Claims, a limited number of trade creditors may also be able to assert either administrative claim priority under 11 U.S.C. § 503(b)(9) or liens under applicable state law.  Because such claims fall within the general category of "trade creditor" and are anticipated to be relatively low in number and amounts owed, the Debtors have included them within the category of trade creditors for whom payment is sought in this Motion.

[4]     The Debtors intend to file a motion seeking authority to employ certain professionals (who are included herein as trade creditors) that provide ongoing administrative services in the ordinary course of business under section 327 of the Bankruptcy Code.  The relief requested in this Motion pertains solely to amounts owed to such professionals on account of services rendered before the Petition Date.

liquidity for payment of the Business Claims, as well as for the Debtors to conduct operations during these chapter 11 cases as they move forward with confirmation of the Plan.

**Conditions on Authority to Pay Business Claims in the Ordinary Course**

12.    The Debtors propose that all payments made under the Orders be subject to the following conditions:

(i)    The Debtors, in their discretion, subject to the terms set forth below, shall determine which Business Claims, if any, will be paid pursuant to the Orders;

(ii)    Unless the parties agree to different terms and conditions, if a creditor that holds a Business Claim accepts payment (a "**Business Claim Payee**"), such Business Claim Payee is deemed to agree to continue to provide goods or services to the Debtors, on terms that are as good as or better than the terms and conditions (including credit terms) contained in any binding prepetition contract with the Debtors or, in the absence of such contract, such terms and conditions that existed 120 days prior to the date of commencement of these cases (collectively, the "**Customary Terms**"), during the pendency of these chapter 11 cases;

(iii)    In the event that a Business Claim Payee does not have a binding prepetition contract with the Debtors and its relationship with the Debtors does not extend to 120 days before the Petition Date, the Customary Terms shall mean the terms that the Business Claim Payee generally extends to its customers or such terms as are acceptable to the Debtors in the reasonable exercise of their business judgment;

(iv)    If a Business Claim Payee accepts payment and thereafter does not continue to provide goods or services on at least the Customary Terms (or as otherwise agreed by the Debtors) during the pendency of these chapter 11 cases, then the Debtors may, in their discretion, deem (i) any payment on a prepetition claim received by such Business Claim Payee to be an unauthorized voidable postpetition transfer under section 549 of the Bankruptcy Code and, therefore, (a) recoverable by the Debtors in cash upon written request and (b) upon recovery by the Debtors, any such prepetition claim shall be reinstated as if the payment had not been made; or (ii) such payment to apply instead to any postpetition amount that may be owing to such trade creditor;

(v)     If the Debtors seek to recover a payment from a trade creditor because the trade creditor does not continue to provide goods or services to the Debtors on at least the Customary Terms during the pendency of and after these chapter 11 cases, the Business Claim Payee may contest such action by making a written request (a "**Request**") to the Debtors to schedule a hearing before the Court.  If such a Request is made, the Debtors shall provide notice of a hearing on such Request to the trade creditor making the Request and other interested parties in accordance with the Bankruptcy Code and the orders of the Court; and

(vi)    Prior to making a payment on disputed claims to a trade creditor under the Orders, the Debtors may settle all or some of the disputed prepetition claims of such Business Claim Payee for less than their face amount without further notice or hearing.

### Treatment of Business Claims under the Plan

13.     The goal of these chapter 11 cases is to significantly deleverage the Debtors' balance sheet on an expedited basis with minimal interruption to the Debtors' business operations.  Any disruption to the Debtors' supply chain and receipt of necessary goods and services could negatively impact the Debtors' ability to provide environmental solutions to exploration and production companies and would likely harm the Debtors' business by damaging their market reputation and possibly leading to termination of customer relationships. Accordingly, it is imperative that the Debtors maintain positive relationships with the suppliers of the goods and services essential to their business operations throughout the course of these chapter 11 cases.

14.     The Debtors negotiated the terms of the Plan with this goal in mind. Under the Plan, the legal, equitable, and contractual rights of holders of, among others, Other Priority Claims, Other Secured Claims, and General Unsecured Claims (each as defined in the Plan), which includes the Business Claims, will be unaltered.

15.     Accordingly, the relief requested in this Motion is in keeping with the Debtors' consensual restructuring process, is necessary to preserve the Debtors' operations and business during these chapter 11 cases, and furthers the Debtors' overall restructuring goals.

**Basis for Relief**

I.     **Payment of the Business Claims is Warranted under Sections 105(a) and 363(b)(1) of the Bankruptcy Code.**

16.     Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Under section 363(b), courts require only that the debtor "show that a sound business purpose justifies such actions."  *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (internal citations omitted); *see also In re Phoenix Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987); *see, e.g.*, *In re Adelphia Commc'ns Corp.*, No. 02-41729, 2003 WL 22316543, at *31 (Bankr. S.D.N.Y. Mar. 4, 2003); *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983).  Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."  *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted).

17.     In addition to being justified under section 363(b)(1) of the Bankruptcy Code, payment of the Business Claims is warranted under the doctrine of necessity.  Section 105(a) of the Bankruptcy Code, which codifies the inherent equitable powers of the bankruptcy court, empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105.  Under section 105(a) and the "doctrine of necessity," the Court may exercise its broad grant of equitable powers to

permit the payment of prepetition obligations when such payment is essential to the continued operation of the debtor's business. *See, e.g.*, *In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del. 1999) (holding that section 105(a) of the Bankruptcy Code provides a statutory basis for the payment of prepetition claims under the doctrine of necessity and noting that "[t]he Supreme Court, the Third Circuit and the District of Delaware all recognize the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11"); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (confirming that the doctrine of necessity is the standard in the Third Circuit for enabling a court to authorize the payment of prepetition claims prior to the confirmation of a reorganization plan).

18.    The United States Court of Appeals for the Third Circuit recognized the "necessity of payment" doctrine in *In re Lehigh & New England Railway Co.*, 657 F.2d 570, 581 (3d Cir. 1981).  The Third Circuit held that a court could authorize the payment of prepetition claims if such payment was essential to the continued operation of the debtor.  *Id.* (stating that court may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also In re Motor Coach Indus. Int'l, Inc.*, No. 08-12136 (BLS), 2009 WL 330993, at *3 (D. Del. Feb. 10, 2009) (denying stay pending appeal on grounds that doctrine of necessity had not been brought into serious question by courts in Third Circuit).

19.    The necessity of payment doctrine is designed to foster a debtor's rehabilitation, which courts have recognized is "the paramount policy of Chapter 11."  *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989); *In re Chateaugay Corp.*, 80 B.R. 279, 287 (S.D.N.Y. 1987) (authorizing payment of prepetition workers' compensation claims on grounds that the fundamental purpose of reorganization and equity powers of

bankruptcy courts "is to create a flexible mechanism that will permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately"); *Just for Feet*, 242 B.R. at 826 (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); *In re Quality Interiors, Inc.*, 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("[A] general practice has developed . . . where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment."); *In re Eagle-Picher Indus., Inc*., 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (approving payment of prepetition unsecured claims of tool makers as "necessary to avert a serious threat to the Chapter 11 process").   Moreover, Bankruptcy Rule 6003 itself implies that the payment of prepetition obligations may be permissible within the first twenty-one (21) days of a case where doing so is "necessary to avoid immediate and irreparable harm."

20.    It is a sound exercise of the Debtors' business judgment to pay the Business Claims as they become due in the ordinary course of business because doing so will help the Debtors to avoid the potential for value destroying business interruption during these chapter 11 cases.   The goods and services provided by trade creditors are necessary for the continued operation of the Debtors' business.   Irrespective of the proposed Plan treatment that leaves holders of General Unsecured Claims unimpaired, the Debtors anticipate that the failure to pay certain Business Claims as they become due would likely result in certain trade creditors refusing to provide essential goods and services, or conditioning the delivery of such goods and services on compliance with onerous and commercially unreasonable terms.   Honoring the prepetition obligations to trade creditors and customers will enable the Debtors to retain valuable relationships that are necessary to maintain customers, which are the Debtors' revenue source,

and will help strengthen the Debtors' business, thereby preserving value for the benefit of all constituents.

21.     Failure to preserve their relationships with trade creditors and customers could lead to a material disruption to the Debtors' operations, and cause irreparable harm to the Debtors' business, goodwill and market share and ultimate ability to restructure pursuant to the Plan.  Replacement vendors and the search for such vendors, even to the extent available, would likely result in substantially higher costs for the Debtors or subject the Debtors to risk of operational shutdowns and noncompliance with state regulations.

22.     The Debtors cannot rely on bringing motions to compel trade creditors to perform in order to address any potential holdups as their primary means of ensuring an uninterrupted supply of goods and services.  A disruption may occur before the Debtors would be able to successfully bring an action in the Court to compel performance or otherwise enforce the automatic stay.  In addition, the Debtors interact with creditors pursuant to a variety of arrangements, including many arrangements that are not executory in nature.  The counterparty of such an arrangement may decide not to continue to do business with the Debtors unless paid on account of prepetition amounts due from the Debtors, and would be under no obligation to do so.

23.     In short, if the trade creditors and customers refuse to transact with the Debtors or limit credit or other trade terms, the operations of the Debtors' business will likely be significantly disrupted.  Authority to pay the Business Claims as they come due will assist the smooth transition into and out of these chapter 11 cases and will ensure the Debtors' continued operation during the intervening period.  Moreover, no party in interest will be prejudiced by the relief requested herein because the Business Claims are unimpaired under the Plan and will be

paid in full upon the effective date of the Plan.  Thus, the relief requested herein seeks to alter only the timing, not the amount or priority, of such payments.

24.     Accordingly, paying the Business Claims in the ordinary course is prudent when compared to the amount that the Debtors' stakeholders stand to lose if the Debtors' business were to be interrupted.  Accordingly, paying the Business Claims in the ordinary course is a sound exercise of the Debtors' business judgment.

## II.    Additional Bases for Payment

### A.    Certain Business Claims Have Administrative Expense Priority

25.     Certain of the Business Claims discussed in this Motion relate to goods delivered to the Debtors within 20 days prior to the Petition Date.  Section 503(b)(9) of the Bankruptcy Code provides that such claims hold administrative expense priority against the applicable Debtor's estate.  Such claims, therefore, must be paid in full to confirm a plan of reorganization.  *See* 11 U.S.C. § 1129(a)(9)(A) (requiring payment in full of claims entitled to priority).  Instead of paying such claims after confirmation of the Plan, the Debtors seek to pay such Business Claims during the pendency of these chapter 11 cases as and when due.  The Debtors believe that this relief is in the best interest of the Debtors' estates and will prevent detrimental changes to trade terms or a refusal to do business altogether, and as such, preserve the Debtors' liquidity and operations.

26.     Additionally, the Plan provides for payment in full of administrative expense claims that are *not otherwise paid in the ordinary course* on the effective date of the Plan, or as soon as reasonably practicable after the date on which such administrative expense claims become allowed claims.  Accordingly, payment of 503(b)(9) Claims under the Orders is consistent with the Plan.  Finally, authorizing the Debtors to pay Business Claims pursuant to the

terms set forth herein should eliminate the burden on the Court and the Debtors arising from individual motions requesting payment on account of 503(b)(9) claims.

       B.    <u>Certain Business Claims May Be Secured by Liens</u>

       27.    Certain of the Business Claims are held by (i) service suppliers for SWD wells owned by the Debtors and (ii) landowners and other entities that are entitled to prepetition royalty payments from the Debtors.  The Debtors "lease" certain of their SWD facilities, meaning they own the SWD wellbore, but lease the underlying real property from a third party. For some of these leases, the Debtors pay royalty payments to the landowners in lieu of rent, which royalty payments are based upon disposal volumes of the SWD wells located on the property during the preceding month.  Absent payment of these accrued prepetition royalties (the "**SWD Royalties**"), the owners of the underlying real property may be entitled to assert and perfect liens on the SWD wells or otherwise interfere with the Debtors' ability to access their wells on the property.  Accordingly, the Debtors' operations in these areas could be significantly disrupted absent payment of the royalties.

       28.    Creditors who are entitled to SWD Royalties may assert liens in respect of such SWD Royalties, some of which may have arisen prior to the Petition Date against certain of the Debtors' assets under certain state and federal laws.  Under the Plan, creditors holding Other Secured Claims are unimpaired.  Moreover, under section 363(e) of the Bankruptcy Code, certain creditors with liens may be entitled to adequate protection of their liens, the enforcement of which may impose additional costs on the Debtors' estates.  Considering that both General Unsecured Claims and Other Secured Claims will be unimpaired under the Plan, to avoid any unnecessary costs to the Debtors' estates, and for reasons previously stated regarding avoiding

disruption to the Debtors' operations, payment of the Business Claims supported by liens is an exercise of the Debtors' sound business judgment.

**Processing of Checks and Electronic Fund Transfers Should be Authorized**

29.    The Debtors have sufficient funds to pay the Business Claims in the ordinary course of business through their postpetition financing and the cash generated in the ordinary course of their business.  Under the Debtors' existing cash management system, the Debtors have made arrangements to readily identify checks or wire transfer requests relating to the Business Claims, as applicable.  The Debtors believe there is minimal risk that checks or wire transfer requests that the Court has not authorized will be inadvertently made.  Thus, the Debtors request that the Court authorize all applicable financial institutions to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the Business Claims.

**Request for Immediate Relief and Waiver of Stay**

30.    As described above, the relief that the Debtors seek in this Motion is immediately necessary in order for the Debtors to continue to operate in a manner that maximizes estate value.  As set forth above, the Debtors believe that an immediate and orderly transition into chapter 11 is critical to the success of these chapter 11 cases.  To this end, the payment of the Business Claims is vital to ensure that the Debtors' operations are not disrupted at a critical juncture in the Debtors' restructuring.  Accordingly, to the extent that Bankruptcy Rule 6003 is applicable to the relief requested, the Debtors submit that for the reasons set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm.[5] Moreover, the Debtors request that the Court waive the stay imposed by Bankruptcy Rule

---

[5]    Bankruptcy Rule 6003 provides that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding . . . a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate . . . ." Fed. R. Bankr. P. 6003.

6004(h), which provides that "[a]n order authorizing the use, sale or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."

**Reservation of Rights**

31.     Nothing contained herein is or should be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an admission that any particular claim is of a type specified or defined hereunder; (e) a request to assume any executory contract or unexpired lease; or (f) a waiver of the Debtors' rights under the Bankruptcy Code or any other applicable law.  If the Court authorizes the payments described herein, such payments should not be deemed to constitute a postpetition assumption or adoption of any programs, policies, or agreements as executory contracts and the authorization to pay all amounts on account of Business Claims shall not affect the Debtors' right to contest the amount or validity of such obligations.

32.     Any and all payments arising under or in connection with or authorized to be made by the Motion or the proposed Orders shall be subject to the interim and final orders of the Court in these chapter 11 cases approving the Debtors' debtor-in-possession financing facilities and the related budgets and projections as approved by the lenders under such facilities.

**Notice**

33.     Notice of this Motion will be provided to:  (i) the United States Trustee for the District of Delaware; (ii) Fried, Frank, Harris, Shriver & Jacobson LLP, as counsel to the Supporting Noteholders, One New York Plaza, New York, NY 10004, Attn:  Brad Eric Scheler and Jennifer Rodburg; (iii) Goldberg Kohn Ltd., as counsel to Wells Fargo Bank, N.A., Revolving Credit Agreement Agent, 55 East Monroe, Suite 3300, Chicago, IL 60603,

Attn:  Randall Klein, Dimitri Karcazes and Gary Zussman; (iv) Morrison & Foerster LLP, as counsel to Wilmington Savings Fund Society, FSB, Trustee to Senior Secured Second Lien Notes due 2021, Trustee to 9.875% Senior Notes Due 2018 and Term Loan Agent, 250 West 55th Street, New York, NY 10019, Attn:  Jonathan I. Levine and James A. Newton; (v) Wilmington Savings Fund Society, FSB, as Trustee to Senior Secured Second Lien Notes due 2021, Trustee to 9.875% Senior Notes Due 2018, and  Term Loan Agent, 500 Delaware Avenue, Wilmington, DE 19801, Attn:  Corporate Trust and Geoffrey Lewis; (vi) American Stock Transfer & Trust Company, LLC, as Warrant Agent, 6201 15th Avenue, Brooklyn, NY 11219, Attn:  Relationship Manager, and 48 Wall Street, 21st Floor, New York, NY 10005, Attn:  Legal Department; and (vii) the 30 largest unsecured creditors of the Debtors, on a consolidated basis. As this Motion is seeking "first-day" relief, the Debtors will serve copies of this Motion and any order entered in respect of this Motion as required by Local Rule 9013-1(m).  The Debtors respectfully submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtors respectfully request entry of an Interim Order, substantially in the form attached hereto as <u>Exhibit A</u>, and a Final Order, in substantially the form attached hereto as <u>Exhibit B</u>, granting the relief requested herein and granting such other relief as is just and proper.

Dated: Wilmington, Delaware
      May 1, 2017

SHEARMAN & STERLING LLP
Douglas P. Bartner (Pro Hac Vice Admission Pending)
Fredric Sosnick (Pro Hac Vice Admission Pending)
Sara Coelho (Pro Hac Vice Admission Pending)
Stephen M. Blank (Pro Hac Vice Admission Pending)
599 Lexington Avenue
New York, New York  10022
Telephone:  (212) 848-4000
Facsimile:   (646) 848-8174

-and-

YOUNG CONAWAY STARGATT & TAYLOR, LLP


*/s/ Jaime Luton Chapman*
Pauline K. Morgan (No. 3650)
Kenneth J. Enos (No. 4544)
Jaime Luton Chapman (No. 4936)
Rodney Square
1000 North King Street
Wilmington, Delaware  19801
Telephone: (302) 571-6600
Facsimile: (302)  571-1253

Proposed Counsel to the Debtors and Debtors in Possession

**Exhibit A**

**Proposed Interim Order**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------------x
                                       :

In re:                                :     **Chapter 11**

**Nuverra Environmental Solutions, Inc.,** *et al.*,[1]  :     **Case No. 17–10949 (___)**

                 **Debtors.**     :     **(Jointly Administered)**

                                         :     RE: Docket No.__
-----------------------------------------------------------------x

**INTERIM ORDER (I) AUTHORIZING DEBTORS TO PAY CERTAIN PREPETITION
GENERAL UNSECURED CLAIMS IN THE ORDINARY COURSE OF BUSINESS,
(II) AUTHORIZING APPLICABLE BANKS AND OTHER  FINANCIAL
INSTITUTIONS TO HONOR AND PROCESS RELATED
<u>CHECKS AND TRANSFERS, AND (III) GRANTING RELATED RELIEF</u>**

Upon the motion (the "**Motion**")[2] of the Debtors for entry of entry of this interim

order ("**Interim Order**") (i) authorizing the Debtors to pay Business Claims in the ordinary

course of business and consistent with past practice, (ii) authorizing applicable banks and other

financial institutions to honor and process related checks and transfers, and (iii) granting certain

related relief, all as more fully set forth in the Motion; and this Court having jurisdiction to

consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and

the *Amended Standing Order of Reference* from the United States District Court for the District

of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding

pursuant to 28 U.S.C. § 157(b)(2); and that this Court may enter a final order consistent with

Article III of the United States Constitution; and this Court having found that venue of this

---

[1]     The Debtors in these proceedings (including the last four digits of their respective taxpayer identification numbers) are: Nuverra Environmental Solutions, Inc. (7117), Appalachian Water Services, LLC (0729), Badlands Leasing, LLC (2638), Badlands Power Fuels, LLC (DE) (8703), Badlands Power Fuels, LLC (ND) (1810), Heckmann Water Resources Corporation (1194), Heckmann Water Resources (CVR), Inc. (1795), Heckmann Woods Cross, LLC (9761), HEK Water Solutions, LLC (8233), Ideal Oilfield Disposal, LLC (5796), Landtech Enterprises, L.L.C. (9022), NES Water Solutions, LLC (3421), Nuverra Total Solutions, LLC (6218), and 1960 Well Services, LLC (5084).  The Debtors' corporate headquarters is located at 14624 N. Scottsdale Rd., Suite 300, Scottsdale, Arizona 85254.

[2]     Capitalized terms used but not otherwise defined herein shall have the meaning given to them in the Motion.

proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and

due and proper notice of the Motion having been provided under the circumstances; and the

relief requested being in the best interest of the Debtors and their estates and creditors; and this

Court having reviewed the Motion and having heard the statements in support of the relief

requested therein; and this Court having determined that the legal and factual bases set forth in

the Motion establish just cause for the relief granted herein; and upon all of the proceedings had

before this Court and after due deliberation and sufficient cause appearing thereof,

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED on an interim basis as set forth herein.

2.      The Debtors are authorized, but not directed, to pay Business Claims in an

aggregate amount not to exceed $7.4 million subject to the following conditions:

(i)      The Debtors, in their discretion, subject to the terms set forth below, shall determine which Business Claims, if any, will be paid pursuant to the Orders;

(ii)     Unless the parties agree to different terms and conditions, if a creditor that holds a Business Claim accepts payment (a "**Business Claim Payee**"), such Business Claim Payee is deemed to agree to continue to provide goods or services to the Debtors, on terms that are as good as or better than the terms and conditions (including credit terms) contained in any binding prepetition contract with the Debtors or, in the absence of such contract, such terms and conditions that existed 120 days prior to the date of the commencement of these cases (collectively, the "**Customary Terms**"), during the pendency of these chapter 11 cases;

(iii)    In the event that a Business Claim Payee does not have a binding prepetition contract with the Debtors and its relationship with the Debtors does not extend to 120 days before the Petition Date, the Customary Terms shall mean the terms that the Business Claim Payee generally extends to its customers or such terms as are acceptable to the Debtors in the reasonable exercise of their business judgment;

(iv)     If a Business Claim Payee accepts payment and thereafter does not continue to provide goods or services on at least the Customary

Terms (or as otherwise agreed by the Debtors) during the pendency of these chapter 11 cases, then the Debtors may, in their discretion, deem (i) any payment on a prepetition claim received by such Business Claim Payee to be an unauthorized voidable postpetition transfer under section 549 of the Bankruptcy Code and, therefore, (a) recoverable by the Debtors in cash upon written request and (b) upon recovery by the Debtors, any such prepetition claim shall be reinstated as if the payment had not been made; or (ii) such payment to apply instead to any postpetition amount that may be owing to such trade creditor;

(v)     If the Debtors seek to recover a payment from a trade creditor because the trade creditor does not continue to provide goods or services to the Debtors on at least the Customary Terms during the pendency of and after these chapter 11 cases, the Business Claim Payee may contest such action by making a written request (a "**Request**") to the Debtors to schedule a hearing before this Court. If such a Request is made, the Debtors shall provide notice of a hearing on such Request to the trade creditor making the Request and other interested parties in accordance with the Bankruptcy Code and the orders of this Court; and

(vi)    Prior to making a payment on disputed claims to a trade creditor under the Orders, the Debtors may settle all or some of the disputed prepetition claims of such Business Claim Payee for less than their face amount without further notice or hearing.

3.      All applicable banks and other financial institutions are authorized to rely on the Debtors' direction to pay amounts in accordance with this Interim Order, provided that sufficient funds are available in the applicable accounts to make the payments.

4.      The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with any Business Claim.

5.      Nothing in this Interim Order: (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors or their estates; (ii) shall impair,

prejudice, waive, or otherwise affect the rights of the Debtors or their estates to contest the validity, priority, or amount of any claim against the Debtors or their estates; (iii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against any third party; or (iv) shall be construed as a promise to pay a claim or continue any applicable program post-petition, which decision shall be in the discretion of the Debtors.  Any payment made pursuant to this Interim Order is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

6.    Nothing contained in the Motion or this Interim Order is intended or should be construed to create an administrative expense priority on account of any Business Claim.

7.    The deadline by which objections to the Motion and the Final Order must be filed is _____, 2017 at 4:00 p.m. (ET).  A final hearing, if required, on the Motion will be held on _____, 2017 at _____ __.m. (ET).  If no objections are filed to the Motion, this Court may enter the Final Order without further notice or hearing.

8.    Any and all payments arising under or in connection with or authorized to be made by this Interim Order, or otherwise relating to the relief requested in the Motion, shall be subject to the interim and final orders of this Court in these chapter 11 cases approving the Debtors' debtor-in-possession financing facilities and the related budgets as approved by the lenders under such facilities.

9.      This Court finds and determines that the requirements of Bankruptcy Rule 6003 are satisfied and that the relief requested is necessary to avoid immediate and irreparable harm.

10.     The requirements of Bankruptcy Rule 6004(h), to the extent applicable, are hereby waived, and this Interim Order shall be immediately effective and enforceable upon its entry.

11.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

12.     This Court shall retain jurisdiction over any and all matters arising from or related to the interpretation or implementation of this Interim Order.

Dated:  May ____, 2017
        Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

**<u>EXHIBIT B</u>**

**Proposed Final Order**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------------x
                                      :

In re:                              :      **Chapter 11**

**Nuverra Environmental Solutions, Inc.,** *et al.,*[1]  :      **Case No. 17–10949 (___)**

                 **Debtors.**        :      **(Jointly Administered)**

                                        :      **RE: Docket Nos. ___ & ___**
-------------------------------------------------------------------x

**FINAL ORDER (I) AUTHORIZING DEBTORS TO PAY CERTAIN PREPETITION
GENERAL UNSECURED CREDITORS IN THE ORDINARY COURSE OF BUSINESS,
(II) AUTHORIZING APPLICABLE BANKS AND OTHER FINANCIAL
INSTITUTIONS TO HONOR AND PROCESS RELATED
CHECKS AND TRANSFERS, AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**")[2] of the Debtors for entry of this final order

(this "**Final Order**") (i) authorizing the Debtors to pay Business Claims in the ordinary course

of business and consistent with past practice, (ii) authorizing applicable banks and other

financial institutions to honor and process related checks and transfers, and (iii) granting certain

related relief, all as more fully set forth in the Motion; and this Court having jurisdiction to

consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and

the *Amended Standing Order of Reference* from the United States District Court for the District

of Delaware, dated February 29, 2012; and this Court having found that this is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2); and that this Court may enter a final order

consistent with Article III of the United States Constitution; and this Court having found that

---

[1] The Debtors in these proceedings (including the last four digits of their respective taxpayer identification numbers) are: Nuverra Environmental Solutions, Inc. (7117), Appalachian Water Services, LLC (0729), Badlands Leasing, LLC (2638), Badlands Power Fuels, LLC (DE) (8703), Badlands Power Fuels, LLC (ND) (1810), Heckmann Water Resources Corporation (1194), Heckmann Water Resources (CVR), Inc. (1795), Heckmann Woods Cross, LLC (9761), HEK Water Solutions, LLC (8233), Ideal Oilfield Disposal, LLC (5796), Landtech Enterprises, L.L.C. (9022), NES Water Solutions, LLC (3421), Nuverra Total Solutions, LLC (6218), and 1960 Well Services, LLC (5084). The Debtors' corporate headquarters is located at 14624 N. Scottsdale Rd., Suite 300, Scottsdale, Arizona 85254.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning given to them in the Motion.

venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided; and the relief requested being in the best interest of the Debtors and their estates and creditors; and this Court having reviewed the Motion; and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1.    The Motion is GRANTED on a final basis as set forth herein.

2.    The Debtors are authorized, but not directed, to pay prepetition amounts owed to the trade creditors on account of the Claims in an aggregate amount not to exceed $10.8 million, subject to the following conditions:

(i)    The Debtors, in their discretion, subject to the terms set forth below, shall determine which Business Claims, if any, will be paid pursuant to the Orders;

(ii)    Unless the parties agree to different terms and conditions, if a creditor that holds a Business Claim accepts payment (a "**Business Claim Payee**"), such Business Claim Payee is deemed to agree to continue to provide goods or services to the Debtors, on terms that are as good as or better than the terms and conditions (including credit terms) contained in any binding prepetition contract with the Debtors or, in the absence of such contract, such terms and conditions that existed 120 days prior to the date of the commencement of these cases (collectively, the "**Customary Terms**"), during the pendency of these chapter 11 cases;

(iii)    In the event that a Business Claim Payee does not have a binding prepetition contract with the Debtors and its relationship with the Debtors does not extend to 120 days before the Petition Date, the Customary Terms shall mean the terms that the Business Claim Payee generally extends to its customers or such terms as are acceptable to the Debtors in the reasonable exercise of their business judgment;

     (iv)    If a Business Claim Payee accepts payment and thereafter does not continue to provide goods or services on at least the Customary Terms (or as otherwise agreed by the Debtors) during the pendency of these chapter 11 cases, then the Debtors may, in their discretion, deem (i) any payment on a prepetition claim received by such Business Claim Payee to be an unauthorized voidable postpetition transfer under section 549 of the Bankruptcy Code and, therefore, (a) recoverable by the Debtors in cash upon written request and (b) upon recovery by the Debtors, any such prepetition claim shall be reinstated as if the payment had not been made; or (ii) such payment to apply instead to any postpetition amount that may be owing to such trade creditor;

     (v)    If the Debtors seek to recover a payment from a trade creditor because the trade creditor does not continue to provide goods or services to the Debtors on at least the Customary Terms during the pendency of and after these chapter 11 cases, the Business Claim Payee may contest such action by making a written request (a "**Request**") to the Debtors to schedule a hearing before this Court.  If such a Request is made, the Debtors shall provide notice of a hearing on such Request to the trade creditor making the Request and other interested parties in accordance with the Bankruptcy Code and the orders of this Court; and

     (vi)    Prior to making a payment on disputed claims to a trade creditor under the Orders, the Debtors may settle all or some of the disputed prepetition claims of such Business Claim Payee for less than their face amount without further notice or hearing.

3.     All applicable banks and other financial institutions are authorized to rely on the Debtors' direction to pay amounts in accordance with this Final Order, provided that sufficient funds are available in the applicable accounts to make the payments.

4.     The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of the chapter 11 cases with respect to prepetition amounts owed in connection with any Business Claim.

5.     Nothing in this Final Order: (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission

3

as to the validity of any claim against the Debtors or their estates; (ii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates to contest the validity, priority, or amount of any claim against the Debtors or their estates; (iii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against any third party; or (iv) shall be construed as a promise to pay a claim or continue any applicable program post-petition, which decision shall be in the discretion of the Debtors.  Any payment made pursuant to this Order is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

6.      Nothing contained in the Motion or this Final Order is intended or should be construed to create an administrative expense priority on account of any Business Claim.

7.      Any and all payments arising under or in connection with or authorized to be made by this Final Order, or otherwise relating to the relief requested in the Motion, shall be subject to the interim and final orders of this Court in these chapter 11 cases approving the Debtors' debtor-in-possession financing facilities and the related budgets as approved by the lenders under such facilities.

8.      The requirements of Bankruptcy Rule 6004(h), to the extent applicable, are hereby waived, and this Final Order shall be immediately effective and enforceable upon its entry.

9.      The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

        10.      This Court shall retain jurisdiction over any and all matters arising from or related to the interpretation or implementation of this Final Order.

Dated: _____, 2017
        Wilmington, Delaware

                                    _____

                                      UNITED STATES BANKRUPTCY JUDGE