## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------------------x
                                                :
                                                :
In re:                                          :   Chapter 11
                                                :
Nuverra Environmental Solutions, Inc., et al.,[1]   :   Case No. 17–10949 (____)
                                                :
                        Debtors.                :   (Joint Administration Requested)
                                                :
                                                :
-------------------------------------------------------------------x
```

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) SCHEDULING
COMBINED HEARING ON (A) ADEQUACY OF DISCLOSURE STATEMENT
AND (B) CONFIRMATION OF PREPACKAGED PLAN; (II) FIXING DEADLINE
TO OBJECT TO DISCLOSURE STATEMENT AND PREPACKAGED PLAN;
(III) APPROVING PREPETITION SOLICITATION PROCEDURES AND FORM AND
MANNER OF NOTICE OF COMMENCEMENT, COMBINED HEARING, AND
OBJECTION DEADLINE; (IV) CONDITIONALLY (A) DIRECTING THE
UNITED STATES TRUSTEE NOT TO CONVENE SECTION 341 MEETING
OF CREDITORS AND (B) WAIVING REQUIREMENT OF FILING
STATEMENTS OF FINANCIAL AFFAIRS AND SCHEDULES OF ASSETS
AND LIABILITIES; AND (V) GRANTING RELATED RELIEF**

Nuverra Environmental Solutions, Inc. and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") file this motion (this "**Motion**") for entry of an order:

    i.    scheduling a combined hearing (the "**Combined Hearing**") to (a) approve the Solicitation and Disclosure Statement, dated April 28, 2017 (as may be amended, modified, or supplement from time to time, the "**Disclosure Statement**") and (b) consider confirmation of the *Debtors' Prepackaged Plans of Reorganization Under Chapter 11 of the Bankruptcy Code* (as

---

[1]    The Debtors in these proceedings (including the last four digits of their respective taxpayer identification numbers) are: Nuverra Environmental Solutions, Inc. (7117), Appalachian Water Services, LLC (0729), Badlands Leasing, LLC (2638), Badlands Power Fuels, LLC (DE) (8703), Badlands Power Fuels, LLC (ND) (1810), Heckmann Water Resources Corporation (1194), Heckmann Water Resources (CVR), Inc. (1795), Heckmann Woods Cross, LLC (9761), HEK Water Solutions, LLC (8233), Ideal Oilfield Disposal, LLC (5796), Landtech Enterprises, L.L.C. (9022), NES Water Solutions, LLC (3421), Nuverra Total Solutions, LLC (6218), and 1960 Well Services, LLC (5084). The Debtors' corporate headquarters is located at 14624 N. Scottsdale Rd., Suite 300, Scottsdale, Arizona 85254.

may be amended, modified, or supplement from time to time, the "**Plan**");[2]

ii.    establishing the deadline (the "**Objection Deadline**") to object to the adequacy of the Disclosure Statement and confirmation of the Plan;

iii.    approving the Solicitation Procedures (as herein defined) with respect to the Plan, including the forms of ballots and the form and manner of the notice of the commencement of the Debtors' chapter 11 cases, the Combined Hearing, and the Objection Deadline (the "**Combined Notice**");

iv.    conditionally (a) directing the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") not to convene an initial meeting of creditors under section 341(a) of the Bankruptcy Code (the "**341 Meeting**"), and (b) waiving the requirement that the Debtors file statements of financial affairs ("**SOFAs**") and schedules of assets and liabilities ("**Schedules**"); and

v.    granting related relief.

In support of this Motion, the Debtors respectfully represent as follows:

### Background

1.    On the date hereof (the "**Petition Date**"), each of the Debtors filed with the Court a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**"). The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these chapter 11 cases. As of the date hereof, no creditors' committee has been appointed. Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of these chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

---

[2]    Copies of the Disclosure Statement and Plan have been filed contemporaneously with this Motion. Capitalized terms used but not otherwise herein defined shall have the meanings ascribed to such terms in the Plan.

01:19499509.11

2.       Concurrently herewith, the Debtors have filed the *Debtors' Prepackaged Plans of Reorganization Under Chapter 11 of the Bankruptcy Code* (the "**Plan**") and the related disclosure statement.  Voting on the Plan began prior to the Petition Date, but has not yet concluded.

3.       The Plan comprises (i) a separate plan (the "**Nuverra Group Plan**") for all of the Debtors except for Appalachian Water Services, LLC and Badlands Power Fuels, LLC (DE) (the "**Nuverra Group Debtors**"), (ii) a separate plan of reorganization for Appalachian Water Services, LLC (the "**AWS Plan**") and (iii) a separate plan of reorganization for Badlands Power Fuels, LLC (DE) (the "**Badlands (DE) Plan**" and collectively with the Nuverra Group Plan and the AWS Plan, the Plan).  The Plan was developed in accordance with the terms of the Restructuring Support Agreement, dated as of April 9, 2017, as amended from time to time (the "**Restructuring Support Agreement**"), among the Debtors and certain supporting noteholders who hold 100% of the outstanding principal amount of the Term Loan Facility Claims and approximately 86% in outstanding principal amount of the 2021 Notes (the "**Supporting Noteholders**").  The Restructuring Support Agreement obligates the Supporting Noteholders, subject to certain terms and conditions, to vote to approve the Plan.  The Debtors expect that, with the affirmative vote of the Supporting Noteholders, each Plan will be accepted by one or more impaired classes of creditors.

4.       Additional factual background relating to the Debtors' business, capital structure, and the commencement of these chapter 11 cases is set forth in detail in the *Declaration of Robert D. Albergotti in Support of Voluntary Petitions, First Day Motions and Applications* (the "**First Day Declaration**"), which was filed contemporaneously with this Motion and is incorporated herein by reference.

## Jurisdiction

5.       The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated as of February 29, 2012.   Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  The statutory predicates for the relief requested herein are sections 105(a), 1125, 1126, and 1128 of the Bankruptcy Code, Bankruptcy Rules 2002, 3016, 3017, 3018, and 3020, and Rules 1007-1, 3017-1, and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States District Court for the District of Delaware (the "**Local Rules**").

## Relief Requested

6.       By this Motion, the Debtors respectfully request entry of an order: (i) scheduling the Combined Hearing; (ii) establishing the Objection Deadline; (iii) approving the Solicitation Procedures and Combined Notice; (iv) conditionally (a) directing the U.S. Trustee to not convene a 341 Meeting and (b) waiving the requirement that the Debtors file SOFAs and Schedules; and (v) granting related relief.

7.       A proposed form of order granting the relief requested herein is attached hereto as Exhibit A (the "**Scheduling Order**").

8.      Below is a table highlighting the key dates and deadlines relevant to the Solicitation Procedures and setting forth the Debtors' proposed dates for the mailing of the Combined Notice, the Objection Deadline, and the Combined Hearing.

| Event | Date/Deadline |
|---|---|
| Voting Record Date | April 28, 2017 |
| Commencement of Solicitation | April 28, 2017 |
| Petition Date | May 1, 2017 |
| Voting Deadline | May 26, 2017 at 5:00 p.m. (Eastern Prevailing Time) |
| Plan/Disclosure Statement Objection Deadline | June 6, 2017, at 4:00 p.m. (Eastern Prevailing Time) |
| Plan/Disclosure Statement Reply Deadline | June 12, 2017 |
| Combined Hearing | June 15, 2017, at _:00 a/p.m. (Eastern Prevailing Time) |

**The Plan and the Chapter 11 Cases**

9.      The Debtors commenced these chapter 11 cases to implement the prepackaged Plan. Pursuant to the Plan, the Debtors seek to recapitalize their businesses by converting the 2021 Notes, 2018 Notes, and certain amounts outstanding under their Term Loan Facility to equity. The recapitalization contemplated by the Plan also will result in the cancellation of existing Nuverra Equity Interests, and the repayment of the Debtors' present asset-based lending facility (and the contemplated postpetition refinancing of such facility). Solicitation on the Plan commenced on April 28, 2017, and will conclude on May 26, 2017.

10.     The Plan was negotiated with the Supporting Noteholders that represent that they hold, collectively, 100% of the aggregate principal amount of Supporting Noteholder Term Loan Claims against the Nuverra Group Debtors, AWS Debtor, and Badlands (DE) Debtor (Class A4, B4, and C4, respectively) and approximately 86% of the aggregate principal amount of 2021 Note Claims against Nuverra Group Debtors, AWS Debtor, and Badlands (DE) Debtor,

(Class A5, B5, and C5, respectively). The Supporting Noteholders have agreed to vote in favor of the Plan, subject to the terms and conditions of the Restructuring Support Agreement.[3]

11.     The Plan classifies all claims and equity interests in the Debtors, other than Administrative Claims and Priority Tax Claims, as follows:

| NUVERRA GROUP DEBTORS | | | |
|---|---|---|---|
| **Class** | **Claims and Equity Interests** | **Status** | **Voting Rights** |
| Class A1 | Other Priority Claims against the Nuverra Group Debtors | Unimpaired | No (deemed to accept) |
| Class A2 | Other Secured Claims against the Nuverra Group Debtors | Unimpaired | No (deemed to accept) |
| Class A3 | ABL Credit Facility Claims against the Nuverra Group Debtors | Unimpaired | No (deemed to accept) |
| Class A4 | Supporting Noteholder Term Loan Claims against the Nuverra Group Debtors | Impaired | Yes |
| Class A5 | 2021 Note Claims against the Nuverra Group Debtors | Impaired | Yes |
| Class A6 | 2018 Note Claims against the Nuverra Group Debtors | Impaired | Yes |
| Class A7 | Nuverra Group General Unsecured Claims | Unimpaired | No (deemed to accept) |
| Class A8 | Nuverra Group Rejection Damage Claims | Impaired | No (deemed to reject) |
| Class A9 | Intercompany Claims against the Nuverra Group Debtors | Unimpaired | No (deemed to accept) |
| Class A10 | Subordinated Claims against the Nuverra Group Debtors | Impaired | No (deemed to reject) |
| Class A11 | Nuverra Equity Interests | Impaired | No (deemed to reject) |
| Class A12 | Surviving Equity Interests of the Nuverra Group Debtors | Unimpaired | No (deemed to accept) |

---

[3]     A copy of the Restructuring Support Agreement (redacted to remove information about the holdings of each individual Supporting Noteholder and the amount of interim financing provided by each Supporting Noteholder) is attached to the Disclosure Statement as Exhibit B.

01:19499509.11

| AWS DEBTOR | | | |
|---|---|---|---|
| **Class** | **Claims and Equity Interests** | **Status** | **Voting Rights** |
| Class B1 | Other Priority Claims against the AWS Debtor | Unimpaired | No (deemed to accept) |
| Class B2 | Other Secured Claims against the AWS Debtor | Unimpaired | No (deemed to accept) |
| Class B3 | ABL Credit Facility Claims against the AWS Debtor | Unimpaired | No (deemed to accept) |
| Class B4 | Supporting Noteholder Term Loan Claims against the AWS Debtor | Impaired | Yes |
| Class B5 | 2021 Note Claims against the AWS Debtor | Impaired | Yes |
| Class B6 | AWS  Debtor Unsecured Debt Claims | Impaired | No (deemed to reject) |
| Class B7 | AWS Debtor General Unsecured Claims | Unimpaired | No (deemed to accept) |
| Class B8 | Intercompany Claims against the AWS Debtor | Unimpaired | No (deemed to accept) |
| Class B9 | Subordinated Claims against the AWS Debtor | Impaired | No (deemed to reject) |
| Class B10 | Surviving Equity Interests of the AWS Debtor | Unimpaired | No (deemed to accept) |

| BADLANDS (DE) DEBTOR | | | |
|---|---|---|---|
| **Class** | **Claims and Equity Interests** | **Status** | **Voting Rights** |
| Class C1 | Other Priority Claims against the Badlands (DE) Debtor | Unimpaired | No (deemed to accept) |
| Class C2 | Other Secured Claims against the Badlands (DE) Debtor | Unimpaired | No (deemed to accept) |
| Class C3 | ABL Credit Facility Claims against the Badlands (DE) Debtor | Unimpaired | No (deemed to accept) |
| Class C4 | Supporting Noteholder Term Loan Claims against the Badlands (DE) Debtor | Impaired | Yes |
| Class C5 | 2021 Note Claims against the Badlands (DE) Debtor | Impaired | Yes |
| Class C6 | Badlands (DE) Debtor Unsecured Debt Claims | Impaired | No (deemed to reject) |
| Class C7 | Badlands (DE) Debtor General Unsecured Claims | Unimpaired | No (deemed to accept) |
| Class C8 | Intercompany Claims against the Badlands (DE) Debtor | Unimpaired | No (deemed to accept) |

01:19499509.11

| BADLANDS (DE) DEBTOR | | | |
|---|---|---|---|
| **Class** | **Claims and Equity Interests** | **Status** | **Voting Rights** |
| Class C9 | Subordinated Claims against the Badlands (DE) Debtor | Impaired | No (deemed to reject) |
| Class C10 | Surviving Equity Interests of the Badlands (DE) Debtor | Unimpaired | No (deemed to accept) |

### Basis for Relief Requested

**A.     Scheduling a Combined Hearing**

12.     The Debtors seek a Combined Hearing to consider approval of the Disclosure Statement and the Plan to be held, subject to the Court's schedule, on June 15, 2017. This request is consistent with the practice for prepackaged cases in this District, applicable statutes and rules, and will facilitate an expeditious reorganization on a schedule consistent with the dates set forth in the Restructuring Support Agreement.  The Debtors further request that the Scheduling Order provide that the Combined Hearing may be adjourned from time to time without further notice other than an announcement of the adjourned date or dates in open court or at the Combined Hearing and that notice of such adjourned date(s) will be available on the electronic case filing docket.

13.     Bankruptcy Rules 2002(b) and 3017(a) require twenty-eight (28) days' notice be given by mail to all creditors of the time fixed for filing objections to approval of a disclosure statement or confirmation of a plan of reorganization, subject to the Court's discretion to shorten such period under Bankruptcy Rule 9006(c)(1).  Section 1128(a) of the Bankruptcy Code provides, "[a]fter notice, the court shall hold a hearing on confirmation of a plan."  In addition, Bankruptcy Rule 3017(c) provides, "[o]n or before approval of the disclosure statement, the court shall fix a time within which the holders of claims and interests may accept or reject the plan and may fix a date for the hearing on confirmation."  Section 105(d)(2)(B)(vi)

of the Bankruptcy Code provides that the Court may combine the hearing on approval of a disclosure statement with the hearing on confirmation of the related plan. 11 U.S.C. § 105(d)(2)(B)(vi).

14. The most sensitive and difficult task required to effectuate a successful reorganization—the negotiation of consensual agreements with critical creditor constituencies—already has been concluded in advance of the Petition Date. Likewise, the most critical and complex task required to effectuate a successful reorganization—the negotiation, formulation, and solicitation of a chapter 11 plan of reorganization—already has been accomplished. Accordingly, a Combined Hearing in these chapter 11 cases will promote judicial economy and will allow the Debtors to effectuate expeditiously their restructuring and preserve value. The adverse effects of the chapter 11 filings upon the Debtors' businesses and going-concern value will be minimized, and the benefit to creditors maximized, through prompt distributions to holders of claims against, and interests in, the Debtors. Likewise, an expeditious restructuring will serve to minimize administrative expenses of the estates. Such benefits are the hallmarks of a prepackaged plan of reorganization. In addition to the reasons set forth above, it is appropriate to enter the Scheduling Order at this time so that parties in interest may be informed as promptly as possible of the anticipated schedule of events for confirmation of the Plan.

15. The proposed schedule affords creditors, interest holders, and all other parties in interest ample notice of these chapter 11 cases and the Combined Hearing. Specifically, the proposed schedule affords, after notice of the Confirmation Hearing, at least twenty-eight (28) days' notice of the Objection Deadline and thirty-five (35) days' notice of the Confirmation Hearing.[4] As a result, parties will have sufficient time to evaluate their rights in

---

[4] *See* Local Rule 3017-1 (requiring the hearing date on a disclosure statement to be at least thirty-five (35) days following service thereof).

01:19499509.11

9

respect of the Plan prior to the proposed Combined Hearing thereon and, therefore, no party in interest will be prejudiced by the requested relief.

16.     Therefore, the Debtors respectfully request entry of the Scheduling Order, pursuant to section 105(d)(2)(B)(vi) of the Bankruptcy Code, setting June 15, 2017, as the date for the Combined Hearing.

**B.     Approval of the Disclosure Statement**

17.     At the Combined Hearing, the Debtors will seek approval of the Disclosure Statement.   Under section 1125 of the Bankruptcy Code, a plan proponent must provide holders of impaired claims with "adequate information" regarding a debtor's proposed plan of reorganization, which is defined as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such hypothetical investor of the relevant class to make an informed judgment about the plan

11 U.S.C. § 1125(a)(1).

18.     Whether a disclosure statement contains adequate information is intended by Congress to be a flexible, fact-specific inquiry left within the discretion of the bankruptcy court:

> Precisely what constitutes adequate information in any particular instance will develop on a case-by-case basis.  Courts will take a practical approach as to what is necessary under the circumstances of each case, such as the cost of preparation of the statements, the need for relative speed in solicitation and confirmation, and, of course, the need for investor protection.  There will be a balancing of interests in each case.   In reorganization cases, there is frequently great uncertainty.  Therefore the need for flexibility is greatest.

01:19499509.11

H.R. Rep. 95-595, at 409 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6365. *See also Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) (observing that "adequate information will be determined by the facts and circumstances of each case"); *Tex. Extrusion Corp. v. Lockheed Corp. (In re Tex. Extrusion Corp.)*, 844 F.2d 1142, 1157 (5th Cir. 1988) (opining that what constitutes adequate information is "subjective," "made on a case-by-case basis," and "largely in the discretion of the bankruptcy court").

19.    The Disclosure Statement is extensive and comprehensive. It contains descriptions of, among other things: (i) the Plan; (ii) the operation of the Debtors' business; (iii) key events leading to the commencement of these chapter 11 cases; (iv) the Debtors' significant prepetition indebtedness; (v) the proposed capital structure of the Reorganized Debtors; (vi) financial information and valuations that would be relevant to creditors' determinations of whether to accept or reject the Plan; (vii) a liquidation analysis setting forth the estimated return that holders of claims and interests would receive in a hypothetical chapter 7 liquidation; (viii) risk factors regarding the Debtors and the Plan; and (ix) federal tax law consequences of the Plan.

20.    Based on the foregoing, the Debtors will request at the Combined Hearing that the Court approve the Disclosure Statement as meeting the requirements for "adequate information" under section 1125(a) of the Bankruptcy Code.

## C.    Approval of the Solicitation Procedures and Forms of Solicitation Materials

21.    The Debtors also request that the Court approve the solicitation, balloting, tabulation, and related activities undertaken in connection with the Plan (collectively, the "**Solicitation Procedures**"). As set forth below, the Debtors submit that the Solicitation Procedures comply with the various applicable provisions of the Bankruptcy Rules and Bankruptcy Code and should be approved.

01:19499509.11

**1.    Non-Solicitation of Classes Presumed to Accept or Deemed to Reject the Plan**

22.    The Plan provides that specific Classes of claims against, and interests in, the Debtors are presumed to accept or deemed to reject the Plan (collectively, the "**Non-Voting Holders**").  Specifically, the Plan provides that holders of claims and equity interests in the following Classes are unimpaired: Classes A1-3, A7, A9, A12, B1-3, B7, B8, B10, C1-3, C7, C8, and C10.  Pursuant to section 1126(f) of the Bankruptcy Code, each holder of a claim or interest in an unimpaired class is "conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class . . . is not required."  11 U.S.C. § 1126(f).  Accordingly, holders of claims and equity interests in each of the above-mentioned unimpaired Classes are conclusively presumed to accept the Plan and were not solicited.

23.    Section 1126(g) of the Bankruptcy Code provides that "a class is deemed not to have accepted a plan if such plan provides that the claims or interests of such class do not entitle the holders of such claims or interests to receive or retain any property under the Plan on account of such claims or interests."  11 U.S.C. § 1126(g).  The holders of claims and equity interests in Classes A8, A10, A11, B6, B9, C6, and C9 are not entitled to any distribution or to retain any property pursuant to the Plan.  Pursuant to section 1126(g) of the Bankruptcy Code, such holders of claims and interests are conclusively deemed to have rejected the Plan and, thus, are not entitled to vote.  Accordingly, the Debtors have not solicited votes from such holders.

24.    The Debtors are requesting a waiver of the requirement that they mail copies of the Plan and Disclosure Statement to Non-Voting Holders.  *See* Fed. R. Bankr. P. 3017(d) (requiring transmission of court-approved disclosure statement to, *inter alia*, classes of unimpaired creditors and equity security holders).  The Debtors submit that Bankruptcy Rule 3017(d) does not apply here because the Debtors solicited acceptances and rejections of the Plan on a prepetition basis, and, thus, there is no disclosure statement that was "approved by the

court" to transmit.  Alternatively, the Court should order that the Debtors are not required to provide those materials to Non-Voting Holders as it would be a significant and unnecessary administrative burden on the Debtors to transmit the Disclosure Statement and Plan to such holders of claims or interests.

25.    In lieu of furnishing each of the Non-Voting Holders with a copy of the Plan and Disclosure Statement, the Debtors propose to send to such Non-Voting Holders the Combined Notice, which sets forth a summary of the Plan and the treatment of such Non-Voting Holders Claims or Interests, as well as the manner in which a copy of the Prepackaged Plan and the Disclosure Statement may be obtained.  In addition, the Debtors have made the Disclosure Statement and the Plan available at no cost on the website of the Debtors' claims and noticing agent, Prime Clerk LLC (the "**Voting Agent**") at http://cases.primeclerk.com/Nuverra.

26.    The Solicitation Procedures undertaken by the Debtors and described herein with respect to the Non-Voting Holders comply with the Bankruptcy Code and should be approved.  Accordingly, the Debtors respectfully request that the Court approve the Solicitation Procedures with respect to these Classes.

**2.    Solicitation of Impaired Classes Entitled to Vote to Accept or Reject the Plan**

27.    Holders of Term Loan Facility Claims (Classes A4, B4, and C4), 2021 Note Claims (Classes A5, B5, and C5), and 2018 Note Claims (Class A6) are entitled to vote to accept or reject the Plan (collectively, the "**Voting Classes**").

28.    On April 28, 2017, the Debtors commenced soliciting votes from members of the Voting Classes by transmitting copies of the solicitation package (the "**Solicitation Package**") containing the Disclosure Statement, including the Plan and other exhibits thereto, and one or more ballots (the "**Ballots**"), as applicable, to each holder of a claim in a Voting Class by first class mail or electronic mail.

01:19499509.11

29. The Solicitation Package advised recipients, among other things, of the May 26, 2017 deadline to vote on the Plan (the "**Voting Deadline**"). The Solicitation Package further advised recipients that Ballots must be returned to the Voting Agent, and specified that Ballots must be returned by regular mail, hand delivery, or overnight courier to an address specified on the Ballot. Each Ballot also contained detailed instructions on how to complete it and how to make any applicable elections contained therein. In addition, as specified on the Ballot, any Ballot that was otherwise properly completed, executed and timely returned to the Voting Agent, but did not indicate an acceptance or rejection of the Plan, or that indicated both an acceptance and rejection of the Plan would not be counted as a vote in determining acceptance or rejection of the Plan.

### 3. Form of Ballot

30. Bankruptcy Rule 3017(d) requires that the Debtors use a form of ballot substantially conforming to Official Form No. 14. The Ballots, copies of which are annexed as <u>Exhibits B-1 through B-5</u> to this Motion, are based on Official Form No. 14, but were modified to address the particular aspects of these chapter 11 cases and to be relevant and appropriate for each Voting Class. With respect to the Voting Classes, the Debtors distributed five forms of Ballots: (i) two forms of Ballot for beneficial owners holding 2021 Note Claims or 2018 Note Claims through a nominee or as record holders in its own name (each, a "**Beneficial Owner Ballot**"); (ii) two forms of Ballot for nominees that are registered holders of 2021 Note Claims or 2018 Note Claims (or agent thereof) to transmit the votes of one or more beneficial owners (each, a "**Master Ballot**"); and (iii) a form of Ballot for holders of the Term Loan Facility Claims. The Ballots for the Term Loan Facility and both the Master Ballot and Beneficial Owner Ballots for the 2021 Note Claims contained separate Ballots on a single form to vote on the Nuverra Group Plan, the AWS Plan and the Badlands (DE) Plan. The Master Ballot and

Beneficial Owner Ballots for the 2018 Note Claims only contained a single Ballot to vote on the Nuverra Group Plan.

31.     As set forth above, to be counted as votes to accept or reject the Plan, the Ballots were required to be properly executed, completed, and delivered to the Voting Agent so that they were received no later than the applicable Voting Deadline; *provided, however*, beneficial holders of 2021 Note Claims or 2018 Note Claims who received a Beneficial Owner Ballot from a bank or brokerage firm (or its agent) were advised to return the Beneficial Owner Ballot to such intermediary firm (or its agent) with sufficient time for such intermediary to complete and return the applicable Master Ballot to the Voting Agent prior to the Voting Deadline.  In addition, each of the Ballots was specifically designed to conform to the Plan.

### 4.     Compliance with Non-Bankruptcy Securities Laws Applicable to Prepetition Solicitation

32.     Section 1126(b) of the Bankruptcy Code expressly permits a debtor to solicit votes from holders of claims and equity interests prepetition without a court-approved disclosure statement if the solicitation complies with applicable non-bankruptcy law—including generally applicable federal and state securities laws or regulations—or, if no such laws exist, the solicited holders receive "adequate information" within the meaning of section 1125(a) of the Bankruptcy Code.

33.     The Solicitation Procedures comply with all applicable non-bankruptcy laws governing the adequacy of disclosure in connection with the solicitation.  The Debtors' prepetition Solicitation Procedures are exempt from registration pursuant to section 3(a)(9) of the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa (as amended from time to time, the "**Securities Act**") and under state "Blue Sky" laws, or any similar rules, regulations, or statutes. Specifically, section 3(a)(9) of the Securities Act creates an exemption from the registration

requirements under the Securities Act for "security exchanged by the issuer with its existing security holders exclusively where no commission or other remuneration is paid or given directly or indirectly for soliciting such exchange" *See* Securities Act, 15 U.S.C. § 77(c)(a)(9); *see also* §§ 77(r)(a)(1)(A), (b)(4)(E) (exempting transactions covered by Section 3(a)(9) of the Securities Act from Blue Sky laws).  The Debtors have complied with the requirements of Section 3(a)(9) of the Securities Act.  Therefore, the requirements of section 1126(b)(1) of the Bankruptcy Code are inapplicable to the Debtors' prepetition solicitation.

34.    Accordingly, the Debtors respectfully submit that the Solicitation Procedures satisfy section 1126(b)(2) of the Bankruptcy Code because all holders in the Voting Classes received "adequate information" as that term is used in section 1125(a) of the Bankruptcy Code and, accordingly, the Solicitation Procedures should be approved.

### 5.    Voting Record Date and Voting Deadline

35.    Bankruptcy Rule 3017(d) provides that, for the purposes of soliciting votes in connection with the confirmation of a plan of reorganization, "creditors and equity security holders shall include holders of stock, bonds, debentures, notes and other securities of record on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing." Fed R. Bankr. P. 3017(d).  Bankruptcy Rule 3018(a) contains a similar provision regarding determination of the record date for voting purposes.  Bankruptcy Rule 3018(b) provides, among other things, that prepetition acceptances or rejections of a plan are valid only if the plan was "transmitted to substantially all creditors and equity security holders of the same class" and that the time for voting was not "unreasonably short."

36.    The Solicitation Packages were distributed to all holders of claims in the Voting Classes as of April 28, 2017 (the "**Voting Record Date**").  The Voting Record Date and

the Voting Deadline were identified clearly in the Disclosure Statement and in each of the Ballots, as applicable.

37.     All holders of claims in the Voting Classes will have been provided adequate time to consider the materials in the Solicitation Packages.  As an initial matter, the Supporting Noteholders played an instrumental role in negotiating the terms of the Plan and Disclosure Statement with the Debtors.  In addition, the Debtors are continuing to solicit votes to accept or reject the Plan to ensure that members of the Voting Classes have adequate time to consider the materials in the Solicitation Packages and make an informed voting decision.  The Debtors submit that the 28-day solicitation period and the Voting Deadline is sufficient and appropriate.

**D.    Confirmation of the Plan**

38.     The Debtors believe that the Plan satisfies all of the requirements for confirmation under the Bankruptcy Code.  As noted above, the Debtors have requested that the Court schedule the Combined Hearing, at which time the Debtors will seek confirmation of the Plan.  Before the Combined Hearing, the Debtors will file a brief in support of confirmation that, among other things, (i) demonstrates that the Plan satisfies the requirements for plan confirmation set forth in section 1129 of the Bankruptcy Code and (ii) responds to objections to confirmation, if any.

**E.    Deadline and Procedures for Objections to the Disclosure Statement and Confirmation of the Prepackaged Plan**

39.     Bankruptcy Rule 3017(a) authorizes the Court to fix a time for filing objections to the adequacy of a disclosure statement and Bankruptcy Rule 3020(b)(1) authorizes the Court to fix a time for filing objections to a plan of reorganization.  Further, Bankruptcy Rule 2002(b) requires at least twenty-eight (28) days' notice be given by mail to all creditors of the

time fixed for filing objections to approval of a disclosure statement and confirmation of a plan of reorganization.

40.     The Debtors request that the Court set June 6, 2017, at 4:00 p.m. (ET), as the deadline to file objections to the adequacy of the Disclosure Statement or confirmation of the Plan (the "**Objection Deadline**").  The proposed Objection Deadline will provide creditors and equity interest holders with sufficient notice of the deadline for filing objections to the Disclosure Statement and Plan, while still affording the Debtors and any parties in interest time to file a responsive brief and resolve consensually as many of those objections as possible.

41.     The Debtors further request that the Court direct that any responses or objections to the adequacy of the Disclosure Statement or confirmation of the Plan must: (i) be in writing; (ii) conform to the applicable Bankruptcy Rules and the Local Rules; (iii) set forth the name of the objecting party, the basis for the objection, and the specific grounds thereof; and (iv) be filed with the Court, together with proof of service.  In addition to being filed with the Court, any such responses or objections must be served on the following parties so as to be received by the Objection Deadline:  (a) counsel to the Debtors, Shearman & Sterling LLP, 599 Lexington Avenue, New York, New York 10022 (Attn: Douglas P. Bartner, Esq., Fredric Sosnick, Esq., and Sara Coelho, Esq.); (b) Delaware counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Pauline K. Morgan, Esq. and Kenneth Enos, Esq.); (c) counsel to the Supporting Noteholders, Fried, Frank, Harris, Shriver & Jacobson LLP, One New York Plaza, New York, NY 10004 (Attn:  Brad Eric Scheler, Esq. and Jennifer Rodburg, Esq.); and (d) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware, 19801 (Attn: Mark Kenney, Esq.).

42.     The Debtors further request that they be authorized to file replies to any objections or responses to confirmation received by the Objection Deadline by June 12, 2017.

**F.     Approval of Form and Manner of Notice of the Commencement
of the Chapter 11 Cases, the Combined Hearing, and the Objection Deadline**

43.     The Debtors propose to mail (or cause to be mailed) within five (5) business days of the entry of the Scheduling Order or as soon as reasonably possible thereafter, to all known holders of claims against and interests in the Debtors a notice (the "**Combined Notice**"), substantially in the form annexed as <u>Exhibit 1</u> to the Scheduling Order, setting forth, among other things, (i) the notice of commencement of the Debtors' chapter 11 cases, (ii) the date, time, and place of the Combined Hearing, (iii) instructions for obtaining copies of the Disclosure Statement and Plan, (iv) the Objection Deadline and procedures for filing objections to the adequacy of the Disclosure Statement and/or confirmation of the Plan, and (v) a summary of the Plan.

44.     The Debtors propose to send the Combined Notice to holders of 2018 Note Claims and 2021 Note Claims as reflected in the records maintained by the Debtors' transfer agent(s) or trustee(s) as of the close of business on the Voting Record Date.  The Debtors realize, however, that the records maintained by such transfer agent(s) or trustee(s) reflect the brokers, dealers, commercial banks, trust companies, or other agents or nominees (collectively, "**Nominees**") through which the beneficial owners hold the various securities.  Accordingly, the Debtors request that the Court authorize (i) the Debtors to provide the Nominees with sufficient copies of the Combined Notice to forward to the beneficial holders and (ii) the Nominees to forward the Combined Notice or copies thereof to the beneficial holders within five (5) business days of the receipt by such Nominee of the Combined Notice.  To the extent the Nominees incur out-of-pocket expenses in connection with distribution of the Combined Notice, the Debtors

request authority to reimburse such entities for their reasonable and customary expenses incurred in this regard.

45.     Bankruptcy Rule 2002(f)(1) provides that notice of "the order for relief" shall be sent by mail to all creditors.  Bankruptcy Rule 2002(d) similarly provides that, unless otherwise ordered by the court, notice of the "order for relief" shall be given to all of the Debtors' equity security holders.

46.     In addition, Bankruptcy Rule 2002(1) permits the Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice."  The Debtors request that the Court authorize them, in their sole discretion, to provide supplemental publication notice of the Combined Hearing not less than fourteen (14) days prior to the Combined Hearing Date in the national edition of *USA Today*, and any other trade or other publications the Debtors deem prudent.  The Debtors believe that the publication of certain of the contents of the Combined Notice in this manner would provide sufficient notice of the date, time, and place of the Combined Hearing and the Objection Deadline (and related procedures) to persons who do not otherwise receive the Combined Notice by mail.  Accordingly, the Debtors respectfully request that this Court approve the form and manner of service of the Combined Notice in the foregoing manner.

47.     To provide another layer of notice to parties in interest in these cases, the Debtors will post to the Voting Agent's website various chapter 11 documents, including the following: (i) the Plan, (ii) the Disclosure Statement, (iii) this Motion and any orders entered in connection with this Motion, and (iv) the Combined Notice.  Moreover, notice of commencement of the Debtors' chapter 11 cases will be filed with the Securities and Exchange

01:19499509.11

Commission on Form 8-K and, thus, will be available to interested parties through the Securities and Exchange Commission's EDGAR website.

48.     The proposed service of the Combined Notice will provide sufficient notice to all parties in interest in the Debtors' chapter 11 cases of the commencement of such cases, the date, time, and place of the Combined Hearing, and the procedures for objecting to the adequacy of the Disclosure Statement or the confirmation of the Plan.   In addition, the Publication Notice will provide sufficient notice to person who did not otherwise receive notice pursuant to the Combined Notice.

**G.     Extension and Conditional Waiver of the
         341 Meeting and the Filing of SOFAs and Schedules**

49.     The Debtors also request that the Scheduling Order provide that: (i) the 341 Meeting shall not be scheduled by the U.S. Trustee before June 30, 2017, which is approximately sixty (60) days from the Petition Date; (ii) the time for filing the SOFAs and Schedules be extended until the same date; and (iii) if the Plan is confirmed on or before June 30, 2017, the 341 Meeting will be waived, and the Debtors will be excused from filing the SOFAs and Schedules, in each case without further order of the Court.   This relief is appropriate under the circumstances, because the Debtors began soliciting acceptance of the Plan prepetition and anticipate the near-term confirmation of the Plan and subsequent emergence from chapter 11.

50.     While section 341 of the Bankruptcy Code requires the U.S. Trustee to convene and preside at a meeting of creditors, it also provides for the following exception:

> Notwithstanding subsections (a) and (b), the court, on the request of a party in interest and after notice and a hearing, for cause may order that the United States trustee not convene a meeting of creditors or equity security holders if the debtor has filed a plan as to which the debtor solicited acceptances prior to the commencement of the case.

11 U.S.C. § 341(e).  With the affirmative vote of the Supporting Noteholders in accordance with the Restructuring Support Agreement, each Plan will be accepted by one or more impaired classes of creditors, and, therefore, the requested conditional relief pursuant to section 341(e) is appropriate here.  Granting this relief conditionally at the outset of the chapter 11 cases also allows the U.S. Trustee to schedule a 341 Meeting, if it eventually becomes appropriate to do so.

51.     The Debtors also request that the time for filing their SOFAs and Schedules be extended until June 30, 2017 and to be waived in the event the Plan is confirmed. Under the terms of the Plan, only Holders of Term Loan Facility Claims, 2021 Note Claims, and 2018 Note Claims are entitled to vote and holders of all other claims and equity interests are unimpaired or not entitled to any recovery.  Consequently, the Debtors do not plan to establish a bar date in these chapter 11 cases.  *See* Plan § 6.11.  Accordingly, the SOFAs and Schedules would not serve their traditional purpose in these prepackaged chapter 11 cases.

52.     As a matter of course, the Debtors are already entitled to an extension to thirty (30) days from the Petition Date because the Debtors' claims agent is maintaining the consolidated creditor matrix as of the Petition Date, and the Debtors have over 200 creditors. *See* Local Rule 1007-1(b).  The Court is authorized to grant the Debtors' further extension "for cause" pursuant to Bankruptcy Rule 1007(c) and Local Rule 1007-1(b).  Sufficient cause exists here because requiring the Debtors to file Schedules in the first thirty (30) days of these cases would divert management's time and attention from ensuring a smooth transition into chapter 11. The SOFAs and Schedules, even if filed on the current deadline, would be of little benefit to most parties in interest in these chapter 11 cases at that point, while requiring a substantial expenditure of time and resources by the Debtors to prepare and file.

53.     Therefore, the Court should only require the Debtors to file SOFAs and Schedules if the Plan is not confirmed within the timetable contemplated by the Debtors and their major constituencies.  Courts in this District have waived the requirements for a debtor to file Schedules and SOFAs and for the U.S. Trustee to convene a 341 Meeting in other prepackaged chapter 11 cases under similar circumstances.  *See e.g., In re Halcon Resources Corp.*, 16-11724 (BLS) (Bankr. D. Del. July 29, 2016) [D.I. 50]; *In re RCS Capital Corp.*, No. 16-0223 (MFW) (Bankr. D. Del. Mar. 29, 2016) [D.I. 423]; *In re Offshore Group Inv. Ltd.,* No. 15-12422 (BLS) (Bankr. D. Del. Dec. 4, 2015) [D.I. 37].

54.     The Debtors reserve the right to supplement this Motion and request that any relief granted be without prejudice to the Debtors' ability to seek further extension or modification of the requirements to file Schedules and SOFAs and for the U.S. Trustee to convene a 341 meeting.  In this regard, the Debtors request that the Court authorize the Debtors to further extend the deadline to file Schedules and SOFAs and convene a 341 Meeting without filing a supplemental motion so long as they have procured advance consent from the U.S. Trustee.

**Request for Bankruptcy Rule 6004 Waivers**

55.     The Debtors request a waiver of any applicable notice requirements under Bankruptcy Rule 6004(a) and any stay of the order granting the relief requested herein pursuant to Bankruptcy Rule 6004(h).  As explained above and in the First Day Declaration, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors. Accordingly, ample cause exists to justify the waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply.

01:19499509.11

## Notice

56.     Notice of this Motion will be provided to:  (i) the United States Trustee for the District of Delaware; (ii) Fried, Frank, Harris, Shriver & Jacobson LLP, as counsel to the Supporting Noteholders, One New York Plaza, New York, NY 10004, Attn:  Brad Eric Scheler and Jennifer Rodburg; (iii) Goldberg Kohn Ltd., as counsel to Wells Fargo Bank, N.A., Revolving Credit Agreement Agent, 55 East Monroe, Suite 3300, Chicago, IL 60603, Attn:  Randall Klein, Dimitri Karcazes and Gary Zussman; (iv) Morrison & Foerster LLP, as counsel to Wilmington Savings Fund Society, FSB, Trustee to Senior Secured Second Lien Notes due 2021, Trustee to 9.875% Senior Notes Due 2018 and Term Loan Agent, 250 West 55th Street, New York, NY 10019, Attn:  Jonathan I. Levine and James A. Newton; (v) Wilmington Savings Fund Society, FSB, as Trustee to Senior Secured Second Lien Notes due 2021, Trustee to 9.875% Senior Notes Due 2018, and  Term Loan Agent, 500 Delaware Avenue, Wilmington, DE 19801, Attn:  Corporate Trust and Geoffrey Lewis; (vi) American Stock Transfer & Trust Company, LLC, as Warrant Agent, 6201 15th Avenue, Brooklyn, NY 11219, Attn:  Relationship Manager, and 48 Wall Street, 21st Floor, New York, NY 10005, Attn:  Legal Department; and (vii) the 30 largest unsecured creditors of the Debtors, on a consolidated basis.

57.     The Debtors respectfully submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtors respectfully request entry of the Scheduling Order granting the relief requested and any other relief as is just and proper.

Dated: Wilmington, Delaware
         May 1, 2017                    SHEARMAN & STERLING LLP
                                        Douglas P. Bartner (Pro Hac Vice Admission Pending)
                                        Fredric Sosnick  (Pro Hac Vice Admission Pending)
                                        Sara Coelho (Pro Hac Vice Admission Pending)
                                        Stephen M. Blank (Pro Hac Vice Admission Pending)
                                        599 Lexington Avenue
                                        New York, New York  10022
                                        Telephone:  (212) 848-4000
                                        Facsimile:   (646) 848-8174

                                                 -and-

                                        YOUNG CONAWAY STARGATT & TAYLOR, LLP


                                        */s/ Jaime Luton Chapman*
                                        Pauline K. Morgan (No. 3650)
                                        Kenneth J. Enos (No. 4544)
                                        Jaime Luton Chapman (No. 4936)
                                        Rodney Square
                                        1000 North King Street
                                        Wilmington, Delaware  19801
                                        Telephone: (302) 571-6600
                                        Facsimile: (302)  571-1253

                                        Proposed Counsel to the Debtors and Debtors in Possession

01:19499509.11

## Exhibit A

**Proposed Scheduling Order**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
--------------------------------------------------------x
                                         :
                                         :
In re:                                   :    Chapter 11
                                         :
Nuverra Environmental Solutions, Inc., et al.,¹  :  Case No. 17–10949 (____)
                                         :
                    Debtors.             :    (Jointly Administered)
                                         :
                                         :    RE: Docket No. ___
--------------------------------------------------------x
```

**ORDER (I) SCHEDULING COMBINED HEARING ON (A) ADEQUACY DISCLOSURE STATEMENT AND (B) CONFIRMATION OF PREPACKAGED PLAN; (II) FIXING DEADLINE TO OBJECT TO DISCLOSURE STATEMENT AND PREPACKAGED PLAN; (III) APPROVING PREPETITION SOLICITATION PROCEDURES AND FORM AND MANNER OF NOTICE OF COMMENCEMENT, COMBINED HEARING, AND OBJECTION DEADLINE; (IV) CONDITIONALLY (A) DIRECTING THE UNITED STATES TRUSTEE NOT TO CONVENE CREDITORS' MEETING AND (B) WAIVING REQUIREMENT OF FILING STATEMENTS OF FINANCIAL AFFAIRS AND SCHEDULES OF ASSETS AND LIABILITIES; AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**")[2] of the Debtors for entry of an order (the "**Scheduling Order**") (i) scheduling the Combined Hearing; (ii) establishing the Objection Deadline; (iii) approving the Solicitation Procedures and Combined Notice; (iv) conditionally (a) directing the U.S. Trustee to not convene a 341 Meeting and (b) waiving the requirement that the Debtors file SOFAs and Schedules; and (v) granting related relief, all as more fully set forth in the Motion; and upon consideration of the First Day Declaration; and this Court having

---

[1] The Debtors in these proceedings (including the last four digits of their respective taxpayer identification numbers) are: Nuverra Environmental Solutions, Inc. (7117), Appalachian Water Services, LLC (0729), Badlands Leasing, LLC (2638), Badlands Power Fuels, LLC (DE) (8703), Badlands Power Fuels, LLC (ND) (1810), Heckmann Water Resources Corporation (1194), Heckmann Water Resources (CVR), Inc. (1795), Heckmann Woods Cross, LLC (9761), HEK Water Solutions, LLC (8233), Ideal Oilfield Disposal, LLC (5796), Landtech Enterprises, L.L.C. (9022), NES Water Solutions, LLC (3421), Nuverra Total Solutions, LLC (6218), and 1960 Well Services, LLC (5084). The Debtors' corporate headquarters is located at 14624 N. Scottsdale Rd., Suite 300, Scottsdale, Arizona 85254.

[2] Capitalized terms used but not otherwise herein defined shall have the meanings ascribed to such terms in the Motion.

jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the parties listed therein, and it appearing that no other or further notice need be provided; and this Court having reviewed the Motion; and this Court having held a hearing on the Motion; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and all parties in interests; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      The Combined Hearing (at which time this Court will consider, among other things, the adequacy of the Disclosure Statement and confirmation of the Plan) will be held before the Honorable _____, United States Bankruptcy Judge, in Room _____ of the United States Bankruptcy Court for the District of Delaware, 824 Market Street, _____ Floor, Wilmington, Delaware 19801, **on June _____, 2017 at _____ (ET)**.  The Combined Hearing may be continued from time to time by the Court without further notice other than adjournments announced in open court in the filing of a notice or a hearing agenda in these chapter 11 cases.

01:19499509.11

2

3.      Any responses or objections to the adequacy of the Disclosure Statement or confirmation of the Plan must: (i) be in writing; (ii) conform to the applicable Federal Rules of Bankruptcy Procedure and the Local Rules; (iii) set forth the name of the objecting party, the basis for the objection, and the specific grounds thereof; and (iv) be filed with this Court, together with proof of service.  In addition to being filed with the Court, any such responses or objections must be served on the following parties so as to be received by **4:00 p.m. (ET) on _____, 2017** (the "**Objection Deadline**"):  (a) counsel to the Debtors, Shearman & Sterling LLP, 599 Lexington Avenue, New York, New York 10022 (Attn: Douglas P. Bartner, Esq., Fredric Sosnick, Esq., and Sara Coelho, Esq.); (b) Delaware counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Pauline K. Morgan, Esq. and Kenneth Enos, Esq.); (c) counsel to the Supporting Noteholders, Fried, Frank, Harris, Shriver & Jacobson LLP, One New York Plaza, New York, NY 10004 (Attn:  Brad Eric Scheler, Esq. and Jennifer Rodburg, Esq.); and (d) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware, 19801 (Attn: Mark Kenney, Esq.).  **Any objections not timely filed and served in the manner set forth in this Scheduling Order may not be considered and may be overruled**.

4.      The Debtors may file reply briefs in response to any objections by June ____, 2017.

5.      The Debtors are authorized to combine the notice of the Combined Hearing and the Objection Deadline (and related procedures) with the notice of commencement of these chapter 11 cases.

6.      Notice of the Combined Heading as proposed in the Motion and the form of Combined Notice, substantially the form attached hereto as <u>Exhibit 1</u>, shall be deemed good and sufficient notice of the Combined Hearing and no further notice need be given.  The Debtors shall cause the Voting Agent to mail a copy of the Combined Notice to the parties set forth in the Motion within five (5) businesses day of the entry of this Scheduling Order or as soon as reasonably possible.  The notice procedures set forth in this paragraph 6 constitute good and sufficient notice of the commencement of the Debtors' chapter 11 cases, the Combined Hearing, the Objection Deadline, and procedures for objecting to the adequacy of the Disclosure Statement and to confirmation of the Plan.

7.      The Debtors are authorized to mail the Combined Notice to the Non-Voting Holders, in accordance with the terms of this Scheduling Order, in lieu of sending such Non-Voting Holders copies of the Disclosure Statement and the Plan and, except to the extent necessary to comply with Local Rule 3017-1(c), the requirements under the Bankruptcy Rules or the Local Rules, including Bankruptcy Rule 3017(d), to transmit copies of the Disclosure Statement and Plan to Non-Voting Holders are hereby waived with respect to such Non-Voting Holders.

8.      To the extent the Nominees incur out-of-pocket expenses in connection with distribution of the Combined Notice, the Debtors are authorized, but not directed, to reimburse such entities for their reasonable and customary expenses incurred in this regard.

9.      The Debtors are authorized, but not directed, pursuant to Bankruptcy Rule 2002(1), to give supplemental publication notice of the Combined Hearing and Objection Deadline (in a form substantially similar to the Combined Notice modified for publication or a summary thereof) not less than fourteen (14) days prior to the Combined Hearing Date in the

national edition of *USA Today*, and any other trade or other publications the Debtors deem necessary in their sole discretion, which publication notice shall constitute good and sufficient notice of the Combined Hearing and the Objection Deadline (and related procedures) to persons who do not receive the Combined Notice by mail.

10.     The Solicitation Procedures utilized by the Debtors for distribution of the Solicitation Packages as set forth in the Motion in soliciting acceptances and rejections of the Plan satisfy the requirements of the Bankruptcy Code and the Bankruptcy Rules and are conditionally approved.

11.     The Ballots, substantially in the forms attached to the Motion as Exhibits B-1 through B-5 are approved.

12.     The 341 Meeting shall be waived unless the Plan is not confirmed on or before June 30, 2017.

13.     Cause exists to extend the time by which the Debtors must file SOFAs and Schedules until June 30, 2017, without prejudice to the Debtors' rights to request further extensions thereof; *provided, however*, that if the Plan is confirmed by this Court on or before June 30, 2017, the requirement to file SOFAs and Schedules in the Debtors' chapter 11 cases shall be waived.

14.     The Debtors shall file the Plan Supplement (as defined in the Plan) no later than seven (7) calendar days prior to the Combined Hearing.

15.     The requirements of Bankruptcy Rule 6004(h), to the extent applicable, are hereby waived, and this Scheduling Order shall be immediately effective and enforceable upon its entry.

16.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rules 4001(d) and 6004(a) are waived.

17.     The Debtors are authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Scheduling Order.

18.     This Court shall retain jurisdiction with respect to all matters arising from or related to the interpretation or implementation of this Scheduling Order.

Dated:  May _____, 2017
       Wilmington, Delaware

                        _____

                        UNITED STATES BANKRUPTCY JUDGE

## **Exhibit 1 to Scheduling Order**

**Combined Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

```
------------------------------------------------------------------x
                                       :
In re:                                 :     Chapter 11
                                       :
Nuverra Environmental Solutions, Inc., et al.,¹   :   Case No. 17–10949 (____)
                                       :
           Debtors.                    :     (Jointly Administered)
                                       :
------------------------------------------------------------------x
```

**NOTICE OF COMMENCEMENT OF CASES**
**UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

**-AND-**

**SUMMARY OF PREPACKAGED PLANS OF REORGANIZATION UNDER CHAPTER 11**
**AND NOTICE OF HEARING TO CONSIDER (A) ADEQUACY OF DISCLOSURE**
**REQUIREMENTS AND (B) CONFIRMATION OF PREPACKAGED PLAN**

**NOTICE IS HEREBY GIVEN** as follows:

1.    On May 1, 2017 (the "**Petition Date**"), Nuverra Environmental Solutions, Inc. and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") each commenced a case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**").

2.    On the Petition Date, the Debtors filed a "prepackaged" plan of reorganization (the "**Plan**") and a proposed disclosure statement (the "**Disclosure Statement**") pursuant to sections 1125 and 1126(b) of the Bankruptcy Code. Solicitation of the Plan commenced prior to the Petition Date. The Plan comprises (i) a separate plan (the "**Nuverra Group Plan**") for all of the Debtors except for Appalachian Water Services, LLC and Badlands Power Fuels, LLC (DE) (the "**Nuverra Group Debtors**"), (ii) a separate plan of reorganization for Appalachian Water Services, LLC (the "**AWS Plan**") and (iii) a separate plan of reorganization for Badlands Power Fuels, LLC (DE) (the "**Badlands (DE) Plan**" and collectively with the Nuverra Group Plan and the AWS Plan, the Plan). As the Plan constitutes a separate plan of reorganization for each of the Debtors, the Plan may be confirmed and consummated as to each of the Debtors separate from, and independent of, confirmation and consummation of the Plan as to any other Debtor. Copies of the Plan and the Disclosure Statement may be obtained free of charge by visiting the website maintained by the Debtors' voting agent, Prime Clerk LLC (the "**Voting Agent**") at http://cases.primeclerk.com/Nuverra.

3.    The Plan was developed in accordance with the terms of the Restructuring Support Agreement, dated as of April 9, 2017, as amended from time to time (the "**Restructuring Support Agreement**"), among the Debtors and certain supporting noteholders who hold 100% of the outstanding principal amount of the Term Loan Facility Claims and approximately 86% in outstanding principal amount of the 2021 Notes (the "**Supporting Noteholders**"). The Restructuring Support Agreement obligates the Supporting Noteholders, subject to certain terms and conditions, to vote to approve the Plan.

4.    If the Plan is confirmed by the Bankruptcy Court, among other things, (i) all, or a portion, of the Supporting Noteholder Term Loan Claims against the Debtors would be converted into Reorganized Nuverra Common Stock or repaid in Cash, depending on the amount of proceeds derived from the Rights Offering prior to the Effective Date, (ii) each Holder of 2021 Note Claims against the Debtors would receive, in full and final satisfaction of its Allowed 2021 Note Claims, its Pro-Rata Share of (1) 99.75% of the Remaining Reorganized Nuverra Common Stock and (2) 2021

---

¹    The Debtors in these proceedings (including the last four digits of their respective taxpayer identification numbers) are:  Nuverra Environmental Solutions, Inc. (7117), Appalachian Water Services, LLC (0729), Badlands Leasing, LLC (2638), Badlands Power Fuels, LLC (DE) (8703), Badlands Power Fuels, LLC (ND) (1810), Heckmann Water Resources Corporation (1194), Heckmann Water Resources (CVR), Inc. (1795), Heckmann Woods Cross, LLC (9761), HEK Water Solutions, LLC (8233), Ideal Oilfield Disposal, LLC (5796), Landtech Enterprises, L.L.C. (9022), NES Water Solutions, LLC (3421), Nuverra Total Solutions, LLC (6218), and 1960 Well Services, LLC (5084).  The Debtors' corporate headquarters is located at 14624 N. Scottsdale Rd., Suite 300, Scottsdale, Arizona 85254.

Noteholder Rights, subject to the terms of Section 4.14 of the Plan (iii) each Holder of 2018 Note Claims against the Nuverra Group Debtors would receive, in full and final satisfaction of its Allowed 2018 Note Claims against the Nuverra Group Debtors,  its Pro-Rata Share of (1) 0.25% of the Remaining Reorganized Nuverra Common Stock and (2) 2018 Noteholder Rights, subject to the terms of Section 4.14 of the Plan and (iv) Nuverra Equity Interests would be cancelled.

## I.    Hearing to Consider Compliance with Disclosure Requirements and Confirmation of the Prepackaged Plan

5.    A combined hearing to consider compliance with the Bankruptcy Code's disclosure requirements and any objections thereto and to consider confirmation of the Plan and any objection thereto will be held before the Honorable _____, United States Bankruptcy Judge, in Courtroom No. ___ of the United States Bankruptcy Court, 824 Market Street, 6th Floor, Wilmington, Delaware 19801, on June __, 2017 at _____ __.m. (ET) or as soon thereafter as counsel may be heard (the "**Combined Hearing**").  The Combined Hearing may be adjourned from time to time without further notice other than an announcement of the adjourned date or dates at the Combined Hearing and will be available on the electronic case filing docket and the Voting Agent's website at http://cases.primeclerk.com/Nuverra.

6.    Any objections to the Disclosure Statement and/or the Plan must (i) be in writing; (ii) conform to the applicable Federal Rules of Bankruptcy Procedure and the Local Rules; (iii) set forth the name of the objecting party, the basis for the objection, and the specific grounds thereof; and (iv) be filed with this Court, together with proof of service.  In addition to being filed with the Court, any such responses or objections must be **served on the following parties so as to be received by 4:00 p.m. (ET) on June ___, 2017:**

(i)    Counsel to the Debtors, Shearman & Sterling LLP, 599 Lexington Avenue, New York, New York 10022 (Attn: Douglas P. Bartner, Esq., Fredric Sosnick, Esq., and Sara Coelho, Esq.);

(ii)    Delaware counsel to the Debtors , Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Pauline K. Morgan, Esq. and Kenneth Enos, Esq.);

(iii)    Counsel to the Supporting Noteholders , Fried, Frank, Harris, Shriver & Jacobson LLP, One New York Plaza, New York, NY 10004 (Attn:  Brad Eric Scheler, Esq. and Jennifer Rodburg, Esq.); and

(iv)    the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 North King Street, Suite 2207, Wilmington, DE 19801 (Attn: Mark Kenney, Esq.).

**UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

## II.    Summary of the Plan[2]

7.    The tables below summarize each Class of Claims and Equity Interests in the Nuverra Group Plan, AWS Plan, and Badlands (DE) Plan, the projected aggregate amount of Claims or Equity Interests comprising each Class, the treatment of each Class, and the projected recoveries of each Class.  The tables are qualified in their entirety by reference to the full text of the Plan and this Solicitation and Disclosure Statement.

8.    The projected recoveries (if the Plan is approved) are based upon certain assumptions contained in the valuation analysis as set forth in Article VIII of the Disclosure Statement.  The projected recoveries (if the Plan is approved) are prior to any dilution resulting from the Management Incentive Plan.

### The Nuverra Group Plan

| Class | Projected Claims/Equity Interests | Nuverra Group Plan Treatment of Allowed Claims in Class | Status/ Voting Right | Projected Recovery Under Plan |
|---|---|---|---|---|
| Class A1- Other Priority Claims against the Nuverra Group Debtors. | The Debtors currently are unable to estimate the amount of Claims in this Class. | Paid in full in Cash. | Unimpaired | 100% |

---

[2]    The statements contained herein are summaries of the provisions contained in the Disclosure Statement and the Plan and do not purport to be precise or complete statements of all the terms and provisions of the Plan or documents referred to therein.  For a more detailed description of the Plan, please refer to the Disclosure Statement.  Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan.

01:21850893.3

| Class | Projected Claims/Equity Interests | Nuverra Group Plan Treatment of Allowed Claims in Class | Status/ Voting Right | Projected Recovery Under Plan |
|---|---|---|---|---|
| Class A2- Other Secured Claims against the Nuverra Group Debtors. | The Debtors currently are unable to estimate the amount of Claims in this Class. | Paid in full in Cash or Reinstated, at the option of the Debtors. | Unimpaired | 100% |
| Class A3 - ABL Credit Facility Claims against the Nuverra Group Debtors. | The ABL Credit Facility Claims against the Nuverra Group Debtors shall be deemed Allowed on the Effective Date in the aggregate principal amount outstanding on the Petition Date (A) plus, to the extent permitted under the ABL Credit Agreement Documents and the DIP Financing Order, (1) any accrued and unpaid fees, costs and other charges thereon through the Effective Date, (2) any accrued and unpaid interest thereon immediately prior to the Petition Date, (3) any accrued and unpaid interest thereon payable at the non-default rate from and after the Petition Date through the Effective Date, and (B) minus, to the extent permitted under the ABL Credit Agreement Documents and the DIP Financing Order, any and all amounts paid by the Debtors to the Holders of ABL Credit Facility Claims during the Chapter 11 Cases and applied to reduce the ABL Credit Facility Claims. | Paid in full in Cash. | Unimpaired | 100% |
| Class A4 - Supporting Noteholder Term Loan Claims against the Nuverra Group Debtors. | The aggregate principal amount of (a) the DIP Term Loan Facility Claims and (b) approximately $80 million of Term Loan Facility Claims, plus any accrued and unpaid interest thereon payable at the non-default rate through the Effective Date. | On the Effective Date, the Supporting Noteholder Term Loan Claims against the Nuverra Group Debtors will be cancelled and discharged.  The Supporting Noteholder Term Loan Claims against the Nuverra Group Debtors will be treated as follows: (a) $78,750,000 of the Supporting Noteholder Term Loan Claims, in the aggregate, will convert into shares of Reorganized Nuverra Common Stock on a dollar for dollar basis at the Plan Value (subject to dilution by the Management Incentive Plan) and (b) the remaining Supporting Noteholder Term Loan Claims, if any, will first be paid in Cash from the Excess Rights Offering Proceeds, and any remaining balance will be converted into Reorganized Nuverra Common Stock on a dollar for dollar basis at the Plan Value (subject to dilution by the Management Incentive Plan). | Impaired/ Entitled to Vote | 74.2% - 95.2% |
| Class A5 - 2021 Note Claims against the Nuverra Group Debtors. | Approximately $356 million, plus any accrued and unpaid interest thereon payable at the non-default rate through the Petition Date. | Each Holder of Allowed 2021 Note Claims will receive, in full and final satisfaction of all Allowed 2021 Note Claims against the Nuverra Group Debtors, its Pro-Rata Share of (i) 99.75% of the Remaining Reorganized Nuverra Common Stock and (ii) 2021 Noteholder Rights, subject to the terms of Section 4.14 of the Plan.  On the Effective Date, all of the 2021 Notes will be cancelled and discharged. | Impaired/ Entitled to Vote | 42.5% - 54.5% |
| Class A6 - 2018 Note Claims against the Nuverra Group Debtors. | Approximately $40.4 million, plus any accrued and unpaid interest thereon payable at the non-default rate through the Petition Date. | Each Holder of Allowed 2018 Note Claims against the Nuverra Group Debtors will receive, in full and final satisfaction of its Allowed 2018 Note Claims against the Nuverra Group Debtors, its Pro-Rata Share of (i) 0.25% of the Remaining Reorganized Nuverra Common Stock and (ii) 2018 Noteholder Rights, subject to the terms of Section 4.14 of the Plan.  On the Effective Date, all of the 2018 Notes will be cancelled and discharged. | Impaired/ Entitled to Vote | 0.9% - 1.2% |
| Class A7 - Nuverra Group General Unsecured Claims. | The Debtors currently are unable to estimate the amount of Claims in this Class. | Except to the extent that a Holder of a Nuverra Group General Unsecured Claim agrees to a less favorable treatment, in full and final satisfaction of such Allowed Nuverra Group General Unsecured Claim, (a) the legal, equitable and contractual rights to which the Allowed Nuverra Group General Unsecured Claim entitles the Holder of such Claim will remain unaltered, or (b) if such Allowed Nuverra Group General Unsecured Claim is due and payable in Cash on or before the Effective Date, the Holder of such Allowed Nuverra Group General Unsecured Claim will receive, payment in Cash or otherwise treated in a manner to render Unimpaired such Nuverra Group General Unsecured Claim, on the later of (a) the Effective Date (or as soon as is reasonably | Unimpaired | 100% |

| Class | Projected Claims/Equity Interests | Nuverra Group Plan Treatment of Allowed Claims in Class | Status/ Voting Right | Projected Recovery Under Plan |
|---|---|---|---|---|
| | | practical thereafter) or (b) the date that is 10 Business Days after the date such Nuverra Group General Unsecured Claim becomes an Allowed Nuverra Group General Unsecured Claim. For avoidance of doubt, if an Allowed Nuverra Group General Unsecured Claim is not due and payable before the Effective Date, the Holder of such Allowed Claim may be paid in the ordinary course of business consistent with past practices. Notwithstanding the foregoing, if an Allowed Nuverra Group General Unsecured Claim is, by the terms of such Claim, payable in stock, such Allowed Claim may, with the consent of the Supporting Noteholders, be paid with Reorganized Nuverra Common Stock in an amount sufficient to render Unimpaired such Nuverra Group General Unsecured Claim. | | |
| Class A8 - Nuverra Group Rejection Damage Claims. | The Debtors currently are unable to estimate the amount of Claims in this Class. | On the Effective Date, all of the Nuverra Group Rejection Damage Claims will be cancelled and discharged. Holders thereof will not receive a distribution on account of such Nuverra Group Rejection Damage Claims. | Impaired | 0% |
| Class A9 - Intercompany Claims against the Nuverra Group Debtors. | The Debtors currently are unable to estimate the amount of Claims in this Class. | Reinstated. | Unimpaired | 100% |
| Class A10 – Subordinated Claims against the Nuverra Group Debtors. | The Debtors currently are unable to estimate the amount of Claims in this Class. | Subordinated Claims against the Nuverra Group Debtors will be cancelled and discharged and the Holders of such Claims will not receive or retain any property under this Plan on account of such Subordinated Claims against the Nuverra Group Debtors. | Impaired | 0% |
| Class A11 – Nuverra Equity Interests. | Not Applicable. | On the Effective Date, all of the Nuverra Equity Interests will be cancelled and discharged.  Holders thereof will not receive a distribution on account of such Nuverra Equity Interests. | Impaired | 0% |
| Class A12 - Surviving Equity Interests of the Nuverra Group Debtors. | Not Applicable. | Reinstated. | Unimpaired | 100% |

### The AWS Plan

| Class | Projected Claims/Equity Interests | AWS Plan Treatment of Allowed Claims in Class | Status/ Voting Right | Projected Recovery Under Plan |
|---|---|---|---|---|
| Class B1 - Other Priority Claims against the AWS Debtor. | The Debtors currently are unable to estimate the amount of Claims in this Class. | Paid in full in Cash | Unimpaired | 100% |
| Class B2 - Other Secured Claims against the AWS Debtor. | The Debtors currently are unable to estimate the amount of Claims in this Class. | Paid in full in Cash or Reinstated, at the option of the Debtors | Unimpaired | 100% |
| Class B3 - ABL Credit Facility Claims against the AWS Debtor. | The ABL Credit Facility Claims against the AWS Debtor shall be deemed Allowed on the Effective Date in the aggregate principal amount outstanding on the Petition Date (A) plus, to the extent permitted under the ABL Credit Agreement Documents and the DIP Financing Order, (1) any accrued and unpaid fees, costs and other charges thereon through the Effective Date, (2) any accrued and unpaid interest thereon immediately prior to the Petition Date, (3) any accrued and unpaid interest thereon payable at the non-default rate from and after the Petition Date through the Effective Date, and (B) minus, to the extent permitted under the ABL Credit Agreement Documents and the DIP Financing Order, any and all amounts paid by the Debtors to the Holders of ABL Credit Facility Claims during the Chapter 11 Cases and | Paid in full in Cash | Unimpaired | 100% |

| Class | Projected Claims/Equity Interests | AWS Plan Treatment of Allowed Claims in Class | Status/ Voting Right | Projected Recovery Under Plan |
|---|---|---|---|---|
| | applied to reduce the ABL Credit Facility Claims. | | | |
| Class B4 - Supporting Noteholder Term Loan Claims against the AWS Debtor. | The aggregate principal amount of (a) the DIP Term Loan Facility Claims and (b) approximately $80 million of Term Loan Facility Claims, *plus* any accrued and unpaid interest thereon payable at the non-default rate through the Effective Date. | The Supporting Noteholder Term Loan Claims against the AWS Debtor will be treated as follows:  (a) $78,750,000 of the Supporting Noteholder Term Loan Claims, in the aggregate, will convert into shares of Reorganized Nuverra Common Stock on a dollar for dollar basis at the Plan Value (subject to dilution by the Management Incentive Plan) and (b) the remaining Supporting Noteholder Term Loan Claims, if any, will first be paid in Cash from the Excess Rights Offering Proceeds, and any remaining balance will be converted into Reorganized Nuverra Common Stock on a dollar for dollar basis at the Plan Value  (subject to dilution by the Management Incentive Plan).  On the Effective Date, the Supporting Noteholder Term Loan Claims against the AWS Debtor will be cancelled and discharged. | Impaired/ Entitled to Vote | 74.2% - 95.2% |
| Class B5- 2021 Note Claims against the AWS Debtor. | Approximately $356 million, *plus* any accrued and unpaid interest thereon payable at the non-default rate through the Petition Date. | Each Holder of Allowed 2021 Note Claims will receive, in full and final satisfaction of all Allowed 2021 Note Claims against the AWS Debtor, its Pro-Rata Share of (i) 99.75% of the Remaining Reorganized Nuverra Common Stock and (ii) 2021 Noteholder Rights, subject to the terms of Section 4.14 of the Plan.  On the Effective Date, all of the 2021 Notes will be cancelled and discharged. | Impaired/ Entitled to Vote | 42.5% - 54.5% |
| Class B6 - AWS Debtor Unsecured Debt Claims. | The Debtors currently are unable to estimate the amount of Claims in this Class. | On the Effective Date, all of the AWS Debtor Unsecured Debt Claims will be cancelled and discharged.  Holders thereof will not receive a distribution on account of such AWS Debtor Unsecured Debt Claims. | Impaired | 0% |
| Class B7 - AWS Debtor General Unsecured Claims. | The Debtors currently are unable to estimate the amount of Claims in this Class. | Except to the extent that a Holder of an AWS Debtor General Unsecured Claim agrees to a less favorable treatment, in full and final satisfaction of such Allowed AWS Debtor General Unsecured Claims, (a) the legal, equitable and contractual rights to which the Allowed AWS Debtor General Unsecured Claim entitles the Holder of such Claim will remain unaltered, or (b) if such Allowed AWS Debtor General Unsecured Claim is due and payable in Cash on or before the Effective Date, the Holder of such Allowed AWS Debtor General Unsecured Claim will receive, payment in Cash or otherwise treated in a manner to render Unimpaired such AWS Debtor General Unsecured Claim, on the later of (a) the Effective Date (or as soon as is reasonably practical thereafter) or (b) the date that is 10 Business Days after the date such AWS Debtor General Unsecured Claim becomes an Allowed AWS Debtor General Unsecured Claim. For avoidance of doubt, if an Allowed AWS Debtor General Unsecured Claim is not due and payable before the Effective Date, the Holder of such Allowed Claim may be paid in the ordinary course of business consistent with past practices. | Unimpaired | 100% |
| Class B8 - Intercompany Claims against the AWS Debtor. | The Debtors currently are unable to estimate the amount of Claims in this Class. | Reinstated. | Unimpaired | 100% |
| Class B9 - Subordinated Claims against the AWS Debtor. | The Debtors currently are unable to estimate the amount of Claims in this Class. | Subordinated Claims against the AWS Debtor are subordinated pursuant to this Plan and section 510 of the Bankruptcy Code.  On the Effective Date, all Subordinated Claims against the AWS Debtor will be cancelled and discharged and the Holders of such Claims will not receive or retain any property under this Plan on account of such Subordinated Claims against the AWS Debtor. | Impaired | 0% |
| Class B10 - Surviving Equity Interests of the AWS Debtor. | Not Applicable. | Reinstated. | Unimpaired | 100% |

**The Badlands (DE) Plan**

| Class | Projected Claims/Equity Interests | Badlands (DE) Plan Treatment of Allowed Claims in Class | Status/ Voting Right | Projected Recovery Under Plan |
|---|---|---|---|---|
| Class C1 - Other Priority Claims against the Badlands (DE) Debtor. | The Debtors currently are unable to estimate the amount of Claims in this Class. | Paid in full in Cash | Unimpaired | 100% |
| Class C2 - Other Secured Claims against the Badlands (DE) Debtor. | The Debtors currently are unable to estimate the amount of Claims in this Class. | Paid in full in Cash or Reinstated, at the option of the Debtors | Unimpaired | 100% |
| Class C3- ABL Credit Facility Claims against the Badlands (DE) Debtor. | The ABL Credit Facility Claims against the Badlands (DE) Debtor shall be deemed Allowed on the Effective Date in the aggregate principal amount outstanding on the Petition Date (A) plus, to the extent permitted under the ABL Credit Agreement Documents and the DIP Financing Order, (1) any accrued and unpaid fees, costs and other charges thereon through the Effective Date, (2) any accrued and unpaid interest thereon immediately prior to the Petition Date, (3) any accrued and unpaid interest thereon payable at the non-default rate from and after the Petition Date through the Effective Date, and (B) minus, to the extent permitted under the ABL Credit Agreement Documents and the DIP Financing Order, any and all amounts paid by the Debtors to the Holders of ABL Credit Facility Claims during the Chapter 11 Cases and applied to reduce the ABL Credit Facility Claims. | Paid in full in Cash | Unimpaired | 100% |
| Class C4 - Supporting Noteholder Term Loan Claims against the Badlands (DE) Debtor. | The aggregate principal amount of (a) the DIP Term Loan Facility Claims and (b) approximately $80 million of Term Loan Facility Claims, *plus* any accrued and unpaid interest thereon payable at the non-default rate through the Effective Date. | The Supporting Noteholder Term Loan Claims against the Badlands (DE) Debtor will be treated as follows: (a) $78,750,000 of the Supporting Noteholder Term Loan Claims, in the aggregate, will convert into shares of Reorganized Nuverra Common Stock on a dollar for dollar basis at the Plan Value (subject to dilution by the Management Incentive Plan) and (b) the remaining Supporting Noteholder Term Loan Claims, if any, will first be paid in Cash from the Excess Rights Offering Proceeds, and any remaining balance will be converted into Reorganized Nuverra Common Stock on a dollar for dollar basis at the Plan Value (subject to dilution by the Management Incentive Plan).   On the Effective Date, the Supporting Noteholder Term Loan Claims against the Badlands (DE) Debtor will be cancelled and discharged. | Impaired/ Entitled to Vote | 74.2% - 95.2% |
| Class C5 - 2021 Note Claims against the Badlands (DE) Debtor. | Approximately $356 million, *plus* any accrued and unpaid interest thereon payable at the non-default rate through the Petition Date. | Each Holder of Allowed 2021 Note Claims will receive, in full and final satisfaction of all Allowed 2021 Note Claims against the Badlands (DE) Debtor, its Pro-Rata Share of (i) 99.75% of the Remaining Reorganized Nuverra Common Stock and (ii) 2021 Noteholder Rights, subject to the terms of Section 4.14 of the Plan.  On the Effective Date, all of the 2021 Notes will be cancelled and discharged. | Impaired/ Entitled to Vote | 42.5% - 54.5% |
| Class C6 - Badlands (DE) Debtor Unsecured Debt Claims. | The Debtors currently are unable to estimate the amount of Claims in this Class. | On the Effective Date, all of the Badlands (DE) Debtor Unsecured Debt Claims will be cancelled and discharged. Holders thereof will not receive a distribution on account of such Badlands (DE) Debtor Unsecured Debt Claims. | Impaired | 0% |
| Class C7 - Badlands (DE) Debtor General Unsecured Claims. | The Debtors currently are unable to estimate the amount of Claims in this Class. | Except to the extent that a Holder of a Badlands (DE) Debtor General Unsecured Claim agrees to a less favorable treatment, in full and final satisfaction of such Allowed Badlands (DE) Debtor General Unsecured Claim, (a) the legal, equitable and contractual rights to which the Allowed Badlands (DE) Debtor General Unsecured Claim entitles the Holder of such Claim will remain unaltered, or (b) if such Allowed Badlands (DE) Debtor General Unsecured Claim is due and payable in Cash on or before the Effective Date, the Holder of such Allowed Badlands (DE) Debtor General Unsecured Claim will receive, payment in Cash or otherwise treated in a manner to render Unimpaired such Badlands (DE) Debtor General Unsecured Claim, on the later of (a) the Effective Date (or as soon as is reasonably practical thereafter) or (b) the date that is 10 Business Days after the date such | Unimpaired | 100% |

01:21850893.3

| Class | Projected Claims/Equity Interests | Badlands (DE) Plan Treatment of Allowed Claims in Class | Status/ Voting Right | Projected Recovery Under Plan |
|---|---|---|---|---|
| | | Badlands (DE) Debtor General Unsecured Claim becomes an Allowed Badlands (DE) Debtor General Unsecured Claim. For avoidance of doubt, if an Allowed Badlands (DE) Debtor General Unsecured Claim is not due and payable before the Effective Date, the Holder of such Allowed Claim may be paid in the ordinary course of business consistent with past practices. | | |
| Class C8 - Intercompany Claims against the Badlands (DE) Debtor. | The Debtors currently are unable to estimate the amount of Claims in this Class. | Reinstated. | Unimpaired | 100% |
| Class C9 - Subordinated Claims against the Badlands (DE) Debtor. | The Debtors currently are unable to estimate the amount of Claims in this Class. | Subordinated Claims against the Badlands (DE) Debtor are subordinated pursuant to this Plan and section 510 of the Bankruptcy Code.  On the Effective Date, all Subordinated Claims against the Badlands (DE) Debtor will be cancelled and discharged and the Holders of such Claims will not receive or retain any property under this Plan on account of such Subordinated Claims against the Badlands (DE) Debtor. | Impaired | 0% |
| Class C10 - Surviving Equity Interests of the Badlands (DE) Debtor. | Not Applicable. | Reinstated. | Unimpaired | 100% |

## III. NOTICE REGARDING CERTAIN RELEASE, EXCULPATION AND INJUNCTION PROVISIONS IN THE PLAN[3]

PLEASE BE ADVISED THAT ARTICLE IX OF THE PLAN CONTAINS CERTAIN RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, INCLUDING THOSE SET FORTH BELOW.  YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS SET FORTH IN ARTICLE IX OF THE PLAN, AS YOUR RIGHTS MIGHT BE AFFECTED.:

### *RELEASES BY THE DEBTORS*

**UPON THE EFFECTIVE DATE, EXCEPT FOR THE RIGHTS THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN AND THE PLAN DOCUMENTS, THE DEBTORS, THE REORGANIZED DEBTORS AND THE ESTATES, IN EACH CASE ON BEHALF OF THEMSELVES AND THEIR RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES AND ANY AND ALL OTHER ENTITIES WHO MAY PURPORT TO ASSERT ANY CAUSE OF ACTION DERIVATIVELY, BY OR THROUGH THE FOREGOING ENTITIES, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, INCLUDING, WITHOUT LIMITATION, THE EFFORTS OF THE RELEASED PARTIES TO FACILITATE THE REORGANIZATION OF THE DEBTORS AND THE IMPLEMENTATION OF THE PLAN AND THE TRANSACTIONS CONTEMPLATED IN THE PLAN AND BY THE PLAN, WILL FOREVER RELEASE, WAIVE AND DISCHARGE, TO THE MAXIMUM EXTENT PERMITTED BY LAW, ALL CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, CAUSES OF ACTION, LOSSES, REMEDIES, AND LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE REORGANIZED DEBTORS, OR THE ESTATES, WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, THEN EXISTING OR THEREAFTER ARISING, IN LAW, EQUITY OR OTHERWISE AGAINST THE RELEASED PARTIES THAT ARE BASED IN**

---

[3] The "Released Parties" means, collectively, and in each case excluding the Excluded Parties, each of: (i) the Debtors; (ii) the Debtors' other non-Debtor Affiliates; (iii) the Supporting Noteholders; (iv) the Standby Exit Facility Lenders; (v) the ABL Agent; (vi) the ABL Lenders; (vii) the Term Loan Agent, (viii) the Term Loan Lenders, (ix) the DIP Agents; (x) the DIP Lenders; (xi) the 2018 Note Indenture Trustee; and (xii) the 2021 Note Indenture Trustee; and with respect to each of the foregoing entities, such entities' predecessors, successors, assigns, subsidiaries, present and former Affiliates, managed accounts and funds, current and former officers and directors, principals, shareholders, members, partners, managers, employees, subcontractors, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals (including any professionals retained by such entities), and all of the foregoing entities' respective heirs, executors, estates, servants, and nominees, in each case in their capacity as such.

The "Releasing Parties" means, collectively, each Holder of a Claim who (i) does not opt out of the release provisions in the Plan on their Ballot or (ii) votes to accept the Plan.

01:21850893.3

WHOLE OR IN PART ON ANY ACT, OMISSION, TRANSACTION, EVENT OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE, AND IN ANY WAY RELATING TO (A)  THE DEBTORS AND ANY AFFILIATES OR SUBSIDIARIES OF THE DEBTORS, (B) THE REORGANIZED DEBTORS, (C) THE ESTATES, (D) THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS, (E) THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR EQUITY INTEREST THAT IS TREATED IN THE PLAN, (F) THE CHAPTER 11 CASES, (G) THE PLAN, INCLUDING THE SOLICITATION OF VOTES ON THE PLAN, (H) THE SOLICITATION AND DISCLOSURE STATEMENT, (I) THE RESTRUCTURING OF ANY CLAIM OR EQUITY INTEREST BEFORE OR DURING THE CHAPTER 11 CASES, INCLUDING THE OUT-OF-COURT RESTRUCTURING, (J) THE RIGHTS OFFERING, (K) THE RESTRUCTURING SUPPORT AGREEMENT, (L) THE EXIT FACILITY CREDIT AGREEMENT, AND (M) THE NEGOTIATION, FORMULATION OR PREPARATION OF THE FOREGOING AGREEMENTS AND TRANSACTIONS DESCRIBED IN SECTION 9.3 OF THE PLAN (THE FOREGOING, THE "*DEBTOR RELEASED CLAIMS*"); *PROVIDED, HOWEVER*, THAT (I) NO RELEASED PARTY WILL BE RELEASED THEREUNDER FROM ANY DEBTOR RELEASED CLAIM AS A RESULT OF  ANY ACT, OMISSION, TRANSACTION, EVENT OR OTHER OCCURRENCE BY A RELEASED PARTY THAT HAS BEEN OR IS HEREAFTER FOUND BY ANY COURT OR TRIBUNAL BY FINAL ORDER TO CONSTITUTE A WILLFUL CRIMINAL ACT OR INTENTIONAL FRAUD; AND (II) THE FOREGOING RELEASE WILL NOT APPLY TO OR RELEASE ANY EXPRESS CONTRACTUAL OR FINANCIAL OBLIGATIONS OWED TO THE DEBTORS OR THE REORGANIZED DEBTORS OR ANY RIGHT OR OBLIGATION ARISING UNDER OR THAT IS PART OF THE PLAN OR ANY AGREEMENT ENTERED INTO PURSUANT TO, IN CONNECTION WITH OR CONTEMPLATED BY, THE PLAN.

### *RELEASES BY HOLDERS OF CLAIMS*

TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, UPON THE EFFECTIVE DATE, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, INCLUDING, WITHOUT LIMITATION, THE EFFORTS OF THE RELEASED PARTIES TO FACILITATE THE EXPEDITIOUS REORGANIZATION OF THE DEBTORS AND THE IMPLEMENTATION OF THE PLAN AND THE TRANSACTIONS, CONTRACTS AND INSTRUMENTS CONTEMPLATED IN THE PLAN AND BY THE PLAN, EACH OF THE RELEASING PARTIES[4] AGREES TO THE RELEASE PROVISIONS IN THE PLAN AND WILL FOREVER RELEASE, WAIVE AND DISCHARGE, TO THE MAXIMUM EXTENT PERMITTED BY LAW, ALL CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, CAUSES OF ACTION AND LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE REORGANIZED DEBTORS, OR THE ESTATES, WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, THEN EXISTING OR THEREAFTER ARISING, IN LAW, EQUITY OR OTHERWISE AGAINST THE RELEASED PARTIES THAT ARE BASED IN WHOLE OR IN PART ON ANY ACT, OMISSION, TRANSACTION, EVENT OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE AND IN ANY WAY RELATING TO OR ARISING FROM, IN WHOLE OR IN PART, (A) THE DEBTORS AND ANY AFFILIATES OR SUBSIDIARIES OF THE DEBTORS, (B) THE REORGANIZED DEBTORS, (C) THE ESTATES, (D) THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS, (E) THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR EQUITY INTEREST THAT IS TREATED IN THE PLAN, (F) THE CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTORS AND ANY RELEASED PARTY, (G) THE CHAPTER 11 CASES, (H) THE PLAN, INCLUDING THE SOLICITATION OF VOTES ON THE PLAN, (I) THE SOLICITATION AND DISCLOSURE STATEMENT, (J) THE RIGHTS OFFERING, (K) THE EXIT FACILITY CREDIT AGREEMENT, (L) THE RESTRUCTURING OF ANY CLAIM OR EQUITY INTEREST BEFORE OR DURING THE CHAPTER 11 CASES, INCLUDING THE OUT-OF-COURT RESTRUCTURING, AND (M) THE NEGOTIATION, FORMULATION OR PREPARATION OF THE FOREGOING AGREEMENTS AND TRANSACTIONS DESCRIBED IN SECTION 9.3 OF THE PLAN (THE FOREGOING, THE "*RELEASING PARTY RELEASED CLAIMS*"); *PROVIDED, HOWEVER*, THAT (I) NO RELEASED PARTY WILL BE RELEASED THEREUNDER FROM ANY RELEASING PARTY RELEASED CLAIM AS A RESULT OF  ANY ACT, OMISSION, TRANSACTION, EVENT OR OTHER OCCURRENCE BY A RELEASED PARTY THAT HAS BEEN OR IS HEREAFTER FOUND BY ANY COURT OR TRIBUNAL BY FINAL ORDER TO CONSTITUTE A WILLFUL CRIMINAL ACT OR INTENTIONAL FRAUD; (II) THE FOREGOING RELEASE WILL NOT APPLY TO OR RELEASE ANY EXPRESS CONTRACTUAL OR FINANCIAL

---

[4] The "Releasing Parties" means, collectively, each Holder of a Claim who (i) does not opt out of the release provisions in the Plan on their Ballot or (ii) votes to accept the Plan.

01:21850893.3

OBLIGATIONS OR ANY RIGHT OR OBLIGATION ARISING UNDER OR THAT IS PART OF THE PLAN OR ANY AGREEMENT ENTERED INTO PURSUANT TO, IN CONNECTION WITH OR CONTEMPLATED BY, THE PLAN; AND (III) THE FOREGOING RELEASE SHALL NOT APPLY TO OR RELEASE ANY SURVIVING OBLIGATIONS UNDER THE ABL CREDIT AGREEMENT OR DIP REVOLVING FACILITY

EACH PERSON PROVIDING RELEASES UNDER THE PLAN, INCLUDING THE DEBTORS, THE REORGANIZED DEBTORS AND THE RELEASING PARTIES, WILL HAVE GRANTED THE RELEASES SET FORTH IN THE PLAN NOTWITHSTANDING THAT SUCH PERSON MAY HEREAFTER DISCOVER FACTS IN ADDITION TO, OR DIFFERENT FROM, THOSE WHICH IT NOW KNOWS OR BELIEVES TO BE TRUE, AND WITHOUT REGARD TO THE SUBSEQUENT DISCOVERY OR EXISTENCE OF SUCH DIFFERENT OR ADDITIONAL FACTS, AND SUCH PERSON EXPRESSLY WAIVES ANY AND ALL RIGHTS THAT IT MAY HAVE UNDER ANY STATUTE OR COMMON LAW PRINCIPLE WHICH WOULD LIMIT THE EFFECT OF SUCH RELEASES TO THOSE CLAIMS OR CAUSES OF ACTION ACTUALLY KNOWN OR SUSPECTED TO EXIST AT THE TIME OF EXECUTION OF SUCH RELEASE.  AS OF THE DATE HEREOF, THE DEBTORS ARE NOT AWARE OF ANY SUCH CLAIMS OR CAUSES OF ACTION AGAINST, OR THAT COULD BE ASSERTED AGAINST, A RELEASED PARTY AND DO NOT BELIEVE ANY SUCH CLAIMS OR CAUSES OF ACTION EXIST.

### *EXCULPATION AND LIMITATION OF LIABILITY*

TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, EXCEPT WITH RESPECT TO ANY ACTS OR OMISSIONS EXPRESSLY SET FORTH IN AND PRESERVED BY THE PLAN, THE PLAN SUPPLEMENT, OR DEFINITIVE DOCUMENTS, NO EXCULPATED PARTY WILL HAVE OR INCUR, AND EACH EXCULPATED PARTY IS HEREBY RELEASED AND EXCULPATED FROM, ANY CLAIM, EQUITY INTEREST, OBLIGATION, SUIT, JUDGMENT, DAMAGE, DEMAND, DEBT, RIGHT, CAUSE OF ACTION, LOSS, REMEDY, OR LIABILITY FOR ANY CLAIM IN CONNECTION WITH OR ARISING OUT OF THE ADMINISTRATION OF THE CHAPTER 11 CASES; THE FORMULATION, NEGOTIATION, PREPARATION, DISSEMINATION, OR TERMINATION OF THE DIP FACILITIES, THE REORGANIZED DEBTORS CONSTITUENT DOCUMENTS, THE MANAGEMENT INCENTIVE PLAN, THE NEW EMPLOYMENT AGREEMENTS, THE EXIT FACILITY CREDIT AGREEMENT, THE REGISTRATION RIGHTS AGREEMENT, THE SOLICITATION AND DISCLOSURE STATEMENT, THE RESTRUCTURING SUPPORT AGREEMENT, THE PLAN SUPPLEMENT, AND THE PLAN (INCLUDING THE PLAN DOCUMENTS), OR THE SOLICITATION OF VOTES FOR, OR CONFIRMATION OF, THE PLAN; ANY CONTRACT, INSTRUMENT, RELEASE OR OTHER AGREEMENT OR DOCUMENTS (INCLUDING PROVIDING ANY LEGAL OPINION REQUESTED BY ANY ENTITY REGARDING ANY TRANSACTION, CONTRACT, INSTRUMENT, DOCUMENT OR OTHER AGREEMENT CONTEMPLATED BY THE PLAN OR THE RELIANCE BY ANY EXCULPATED PARTY ON THE PLAN OR THE CONFIRMATION ORDER IN LIEU OF SUCH LEGAL OPINION) CREATED OR ENTERED INTO IN CONNECTION WITH THE DISCLOSURE STATEMENT OR THE PLAN; THE FILING OF THE CHAPTER 11 CASES; THE FUNDING OF THE PLAN; THE OCCURRENCE OF THE EFFECTIVE DATE; THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN; THE ISSUANCE OF SECURITIES UNDER OR IN CONNECTION WITH THE PLAN; OR THE TRANSACTIONS IN FURTHERANCE OF ANY OF THE FOREGOING; EXCEPT FOR A WILLFUL CRIMINAL ACT OR INTENTIONAL FRAUD AS DETERMINED BY A FINAL ORDER, BUT IN ALL RESPECTS SUCH ENTITIES WILL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO THE PLAN.  THE EXCULPATED PARTIES AND EACH OF THEIR RESPECTIVE AFFILIATES, AGENTS, DIRECTORS, OFFICERS, EMPLOYEES, ADVISORS, AND ATTORNEYS HAVE ACTED IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE WITH REGARD TO THE SOLICITATION AND DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS WILL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN, INCLUDING THE ISSUANCE OF SECURITIES THEREUNDER.  THIS EXCULPATION WILL BE IN ADDITION TO, AND NOT IN LIMITATION OF, ALL OTHER RELEASES, INDEMNITIES, EXCULPATIONS, AND ANY OTHER APPLICABLE LAW OR RULES PROTECTING SUCH EXCULPATED PARTIES FROM LIABILITY.

01:21850893.3

*INJUNCTION*

(a) *GENERAL*

ALL ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS OR EQUITY INTERESTS (OTHER THAN THE CLAIMS REINSTATED UNDER THE PLAN) AND ALL OTHER PARTIES IN INTEREST IN THE CHAPTER 11 CASES, ALONG WITH THEIR RESPECTIVE CURRENT AND FORMER EMPLOYEES, AGENTS, OFFICERS, DIRECTORS, PRINCIPALS AND AFFILIATES, PERMANENTLY ARE ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST THE DEBTORS OR THE REORGANIZED DEBTORS, (B) ENFORCING, ATTACHING, COLLECTING OR RECOVERING BY ANY MANNER OR MEANS OF ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST THE DEBTORS OR REORGANIZED DEBTORS, (C) CREATING, PERFECTING, OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST THE DEBTORS OR REORGANIZED DEBTORS, OR (D) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE THE DEBTORS OR REORGANIZED DEBTORS OR AGAINST THE PROPERTY OR INTERESTS IN PROPERTY OF THE DEBTORS OR REORGANIZED DEBTORS, ON ACCOUNT OF SUCH CLAIMS OR EQUITY INTERESTS; *PROVIDED, HOWEVER,* THAT NOTHING CONTAINED IN THE PLAN WILL PRECLUDE SUCH ENTITIES FROM EXERCISING THEIR RIGHTS PURSUANT TO AND CONSISTENT WITH THE TERMS HEREOF AND THE CONTRACTS, INSTRUMENTS, RELEASES, INDENTURES AND OTHER AGREEMENTS AND DOCUMENTS DELIVERED OR ASSUMED UNDER OR IN CONNECTION WITH THE PLAN.

(b) *INJUNCTION AGAINST INTERFERENCE WITH PLAN*

UPON ENTRY OF THE CONFIRMATION ORDER, ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS AND THEIR RESPECTIVE CURRENT AND FORMER EMPLOYEES, AGENTS, OFFICERS, DIRECTORS, PRINCIPALS AND AFFILIATES WILL BE ENJOINED FROM TAKING ANY ACTIONS TO INTERFERE WITH THE IMPLEMENTATION OR CONSUMMATION OF THE PLAN; *PROVIDED,* THAT THE FOREGOING WILL NOT ENJOIN ANY PARTY TO THE RESTRUCTURING SUPPORT AGREEMENT FROM EXERCISING ANY OF ITS RIGHTS OR REMEDIES UNDER THE RESTRUCTURING SUPPORT AGREEMENT IN ACCORDANCE WITH THE TERMS THEREOF.

Dated:  Wilmington, Delaware
       May ___, 2017

SHEARMAN & STERLING LLP
Douglas P. Bartner (Admitted Pro Hac Vice)
Fredric Sosnick  (Admitted Pro Hac Vice)
Sara Coelho (Admitted Pro Hac Vice)
Stephen M. Blank (Admitted Pro Hac Vice )
599 Lexington Avenue
New York, New York  10022
Telephone:  (212) 848-4000
Facsimile:  (646) 848-8174

      -and-

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____
Pauline K. Morgan (No. 3650)
Kenneth J. Enos (No. 4544)
Jaime Luton Chapman (No. 4936)
Rodney Square
1000 North King Street
Wilmington, Delaware  19801
Telephone: (302) 571-6600
Facsimile: (302)  571-1253

Proposed Counsel to the Debtors and Debtors in Possession

01:21850893.3