**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
-------------------------------------------------------------------x
                                            :
In re:                                      :        Chapter 11
                                            :
Nuverra Environmental Solutions, Inc., et al.,¹  :   Case No. 17–10949 (KJC)
                                            :
        Debtors.                            :        (Jointly Administered)
                                            :
-------------------------------------------------------------------x
```

**NOTICE OF COMMENCEMENT OF CASES
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

**-AND-**

**SUMMARY OF PREPACKAGED PLANS OF REORGANIZATION UNDER CHAPTER 11
AND NOTICE OF HEARING TO CONSIDER (A) ADEQUACY OF DISCLOSURE
REQUIREMENTS AND (B) CONFIRMATION OF PREPACKAGED PLAN**

**NOTICE IS HEREBY GIVEN** as follows:

1.    On May 1, 2017 (the "**Petition Date**"), Nuverra Environmental Solutions, Inc. and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") each commenced a case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**").

2.    On the Petition Date, the Debtors filed a "prepackaged" plan of reorganization (the "**Plan**") and a proposed disclosure statement (the "**Disclosure Statement**") pursuant to sections 1125 and 1126(b) of the Bankruptcy Code. Solicitation of the Plan commenced prior to the Petition Date. The Plan comprises (i) a separate plan (the "**Nuverra Group Plan**") for all of the Debtors except for Appalachian Water Services, LLC and Badlands Power Fuels, LLC (DE) (the "**Nuverra Group Debtors**"), (ii) a separate plan of reorganization for Appalachian Water Services, LLC (the "**AWS Plan**") and (iii) a separate plan of reorganization for Badlands Power Fuels, LLC (DE) (the "**Badlands (DE) Plan**" and collectively with the Nuverra Group Plan and the AWS Plan, the Plan). As the Plan constitutes a separate plan of reorganization for each of the Debtors, the Plan may be confirmed and consummated as to each of the Debtors separate from, and independent of, confirmation and consummation of the Plan as to any other Debtor. Copies of the Plan and the Disclosure Statement may be obtained free of charge by visiting the website maintained by the Debtors' voting agent, Prime Clerk LLC (the "**Voting Agent**") at http://cases.primeclerk.com/Nuverra.

3.    The Plan was developed in accordance with the terms of the Restructuring Support Agreement, dated as of April 9, 2017, as amended from time to time (the "**Restructuring Support Agreement**"), among the Debtors and certain supporting noteholders who hold 100% of the outstanding principal amount of the Term Loan Facility Claims and approximately 86% in outstanding principal amount of the 2021 Notes (the "**Supporting Noteholders**"). The Restructuring Support Agreement obligates the Supporting Noteholders, subject to certain terms and conditions, to vote to approve the Plan.

4.    If the Plan is confirmed by the Bankruptcy Court, among other things, (i) all, or a portion, of the Supporting Noteholder Term Loan Claims against the Debtors would be converted into Reorganized Nuverra Common Stock or repaid in Cash, depending on the amount of proceeds derived from the Rights Offering prior to the Effective Date, (ii) each Holder of 2021 Note Claims against the Debtors would receive, in full and final satisfaction of its Allowed 2021 Note Claims, its Pro-Rata Share of (1) 99.75% of the Remaining Reorganized Nuverra Common Stock and (2) 2021

---

¹ The Debtors in these proceedings (including the last four digits of their respective taxpayer identification numbers) are: Nuverra Environmental Solutions, Inc. (7117), Appalachian Water Services, LLC (0729), Badlands Leasing, LLC (2638), Badlands Power Fuels, LLC (DE) (8703), Badlands Power Fuels, LLC (ND) (1810), Heckmann Water Resources Corporation (1194), Heckmann Water Resources (CVR), Inc. (1795), Heckmann Woods Cross, LLC (9761), HEK Water Solutions, LLC (8233), Ideal Oilfield Disposal, LLC (5796), Landtech Enterprises, L.L.C. (9022), NES Water Solutions, LLC (3421), Nuverra Total Solutions, LLC (6218), and 1960 Well Services, LLC (5084). The Debtors' corporate headquarters is located at 14624 N. Scottsdale Rd., Suite 300, Scottsdale, Arizona 85254.

Noteholder Rights, subject to the terms of Section 4.14 of the Plan (iii) each Holder of 2018 Note Claims against the Nuverra Group Debtors would receive, in full and final satisfaction of its Allowed 2018 Note Claims against the Nuverra Group Debtors, its Pro-Rata Share of (1) 0.25% of the Remaining Reorganized Nuverra Common Stock and (2) 2018 Noteholder Rights, subject to the terms of Section 4.14 of the Plan and (iv) Nuverra Equity Interests would be cancelled.

## I.   Hearing to Consider Compliance with Disclosure Requirements and Confirmation of the Prepackaged Plan

5.   A combined hearing to consider compliance with the Bankruptcy Code's disclosure requirements and any objections thereto and to consider confirmation of the Plan and any objection thereto will be held before the Honorable Kevin J. Carey, United States Bankruptcy Judge, in Courtroom No. 5 of the United States Bankruptcy Court, 824 Market Street, 6th Floor, Wilmington, Delaware 19801, on June 21, 2017 at 10:00 a.m. (ET) or as soon thereafter as counsel may be heard (the "**Combined Hearing**").  The Combined Hearing may be adjourned from time to time without further notice other than an announcement of the adjourned date or dates at the Combined Hearing and will be available on the electronic case filing docket and the Voting Agent's website at http://cases.primeclerk.com/Nuverra.

6.   Any objections to the Disclosure Statement and/or the Plan must (i) be in writing; (ii) conform to the applicable Federal Rules of Bankruptcy Procedure and the Local Rules; (iii) set forth the name of the objecting party, the basis for the objection, and the specific grounds thereof; and (iv) be filed with this Court, together with proof of service.  In addition to being filed with the Court, any such responses or objections must be **served on the following parties so as to be received by 4:00 p.m. (ET) on June 12, 2017:**

(i)   Counsel to the Debtors, Shearman & Sterling LLP, 599 Lexington Avenue, New York, New York 10022 (Attn: Douglas P. Bartner, Esq., Fredric Sosnick, Esq., and Sara Coelho, Esq.);

(ii)   Delaware counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Pauline K. Morgan, Esq. and Kenneth Enos, Esq.);

(iii)   Counsel to the Supporting Noteholders , Fried, Frank, Harris, Shriver & Jacobson LLP, One New York Plaza, New York, NY 10004 (Attn:  Brad Eric Scheler, Esq. and Jennifer Rodburg, Esq.); and

(iv)   the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 North King Street, Suite 2207, Wilmington, DE 19801 (Attn: Mark Kenney, Esq.).

**UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

## II.  Summary of the Plan[2]

7.   The tables below summarize each Class of Claims and Equity Interests in the Nuverra Group Plan, AWS Plan, and Badlands (DE) Plan, the projected aggregate amount of Claims or Equity Interests comprising each Class, the treatment of each Class, and the projected recoveries of each Class.  The tables are qualified in their entirety by reference to the full text of the Plan and this Solicitation and Disclosure Statement.

8.   The projected recoveries (if the Plan is approved) are based upon certain assumptions contained in the valuation analysis as set forth in Article VIII of the Disclosure Statement.  The projected recoveries (if the Plan is approved) are prior to any dilution resulting from the Management Incentive Plan.

### The Nuverra Group Plan

| Class | Projected Claims/Equity Interests | Nuverra Group Plan Treatment of Allowed Claims in Class | Status/ Voting Right | Projected Recovery Under Plan |
|---|---|---|---|---|
| Class A1- Other Priority Claims against the Nuverra Group Debtors. | The Debtors currently are unable to estimate the amount of Claims in this Class. | Paid in full in Cash. | Unimpaired | 100% |

---

[2]   The statements contained herein are summaries of the provisions contained in the Disclosure Statement and the Plan and do not purport to be precise or complete statements of all the terms and provisions of the Plan or documents referred to therein.  For a more detailed description of the Plan, please refer to the Disclosure Statement.  Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan.

01:21865577.2

| Class | Projected Claims/Equity Interests | Nuverra Group Plan Treatment of Allowed Claims in Class | Status/ Voting Right | Projected Recovery Under Plan |
|---|---|---|---|---|
| Class A2- Other Secured Claims against the Nuverra Group Debtors. | The Debtors currently are unable to estimate the amount of Claims in this Class. | Paid in full in Cash or Reinstated, at the option of the Debtors. | Unimpaired | 100% |
| Class A3 - ABL Credit Facility Claims against the Nuverra Group Debtors. | The ABL Credit Facility Claims against the Nuverra Group Debtors shall be deemed Allowed on the Effective Date in the aggregate principal amount outstanding on the Petition Date (A) plus, to the extent permitted under the ABL Credit Agreement Documents and the DIP Financing Order, (1) any accrued and unpaid fees, costs and other charges thereon through the Effective Date, (2) any accrued and unpaid interest thereon immediately prior to the Petition Date, (3) any accrued and unpaid interest thereon payable at the non-default rate from and after the Petition Date through the Effective Date, and (B) minus, to the extent permitted under the ABL Credit Agreement Documents and the DIP Financing Order, any and all amounts paid by the Debtors to the Holders of ABL Credit Facility Claims during the Chapter 11 Cases and applied to reduce the ABL Credit Facility Claims. | Paid in full in Cash. | Unimpaired | 100% |
| Class A4 - Supporting Noteholder Term Loan Claims against the Nuverra Group Debtors. | The aggregate principal amount of (a) the DIP Term Loan Facility Claims and (b) approximately $80 million of Term Loan Facility Claims, plus any accrued and unpaid interest thereon payable at the non-default rate through the Effective Date. | On the Effective Date, the Supporting Noteholder Term Loan Claims against the Nuverra Group Debtors will be cancelled and discharged.  The Supporting Noteholder Term Loan Claims against the Nuverra Group Debtors will be treated as follows: (a) $78,750,000 of the Supporting Noteholder Term Loan Claims, in the aggregate, will convert into shares of Reorganized Nuverra Common Stock on a dollar for dollar basis at the Plan Value (subject to dilution by the Management Incentive Plan) and (b) the remaining Supporting Noteholder Term Loan Claims, if any, will first be paid in Cash from the Excess Rights Offering Proceeds, and any remaining balance will be converted into Reorganized Nuverra Common Stock on a dollar for dollar basis at the Plan Value  (subject to dilution by the Management Incentive Plan). | Impaired/ Entitled to Vote | 74.2% - 95.2% |
| Class A5 - 2021 Note Claims against the Nuverra Group Debtors. | Approximately $356 million, plus any accrued and unpaid interest thereon payable at the non-default rate through the Petition Date. | Each Holder of Allowed 2021 Note Claims will receive, in full and final satisfaction of all Allowed 2021 Note Claims against the Nuverra Group Debtors, its Pro-Rata Share of (i) 99.75% of the Remaining Reorganized Nuverra Common Stock and (ii) 2021 Noteholder Rights, subject to the terms of Section 4.14 of the Plan.  On the Effective Date, all of the 2021 Notes will be cancelled and discharged. | Impaired/ Entitled to Vote | 42.5% - 54.5% |
| Class A6 - 2018 Note Claims against the Nuverra Group Debtors. | Approximately $40.4 million, plus any accrued and unpaid interest thereon payable at the non-default rate through the Petition Date. | Each Holder of Allowed 2018 Note Claims against the Nuverra Group Debtors will receive, in full and final satisfaction of its Allowed 2018 Note Claims against the Nuverra Group Debtors, its Pro-Rata Share of (i) 0.25% of the Remaining Reorganized Nuverra Common Stock and (ii) 2018 Noteholder Rights, subject to the terms of Section 4.14 of the Plan.  On the Effective Date, all of the 2018 Notes will be cancelled and discharged. | Impaired/ Entitled to Vote | 0.9% - 1.2% |
| Class A7 - Nuverra Group General Unsecured Claims. | The Debtors currently are unable to estimate the amount of Claims in this Class. | Except to the extent that a Holder of a Nuverra Group General Unsecured Claim agrees to a less favorable treatment, in full and final satisfaction of such Allowed Nuverra Group General Unsecured Claim, (a) the legal, equitable and contractual rights to which the Allowed Nuverra Group General Unsecured Claim entitles the Holder of such Claim will remain unaltered, or (b) if such Allowed Nuverra Group General Unsecured Claim is due and payable in Cash on or before the Effective Date, the Holder of such Allowed Nuverra Group General Unsecured Claim will receive, payment in Cash or otherwise treated in a manner to render Unimpaired such Nuverra Group General Unsecured Claim, on the later of (a) Effective Date (or as soon as is reasonably | Unimpaired | 100% |

| Class | Projected Claims/Equity Interests | Nuverra Group Plan Treatment of Allowed Claims in Class | Status/ Voting Right | Projected Recovery Under Plan |
|---|---|---|---|---|
| | | practical thereafter) or (b) the date that is 10 Business Days after the date such Nuverra Group General Unsecured Claim becomes an Allowed Nuverra Group General Unsecured Claim. For avoidance of doubt, if an Allowed Nuverra Group General Unsecured Claim is not due and payable before the Effective Date, the Holder of such Allowed Claim may be paid in the ordinary course of business consistent with past practices. Notwithstanding the foregoing, if an Allowed Nuverra Group General Unsecured Claim is, by the terms of such Claim, payable in stock, such Allowed Claim may, with the consent of the Supporting Noteholders, be paid with Reorganized Nuverra Common Stock in an amount sufficient to render Unimpaired such Nuverra Group General Unsecured Claim. | | |
| Class A8 - Nuverra Group Rejection Damage Claims. | The Debtors currently are unable to estimate the amount of Claims in this Class. | On the Effective Date, all of the Nuverra Group Rejection Damage Claims will be cancelled and discharged. Holders thereof will not receive a distribution on account of such Nuverra Group Rejection Damage Claims. | Impaired | 0% |
| Class A9 - Intercompany Claims against the Nuverra Group Debtors. | The Debtors currently are unable to estimate the amount of Claims in this Class. | Reinstated. | Unimpaired | 100% |
| Class A10 – Subordinated Claims against the Nuverra Group Debtors. | The Debtors currently are unable to estimate the amount of Claims in this Class. | Subordinated Claims against the Nuverra Group Debtors will be cancelled and discharged and the Holders of such Claims will not receive or retain any property under this Plan on account of such Subordinated Claims against the Nuverra Group Debtors. | Impaired | 0% |
| Class A11 – Nuverra Equity Interests. | Not Applicable. | On the Effective Date, all of the Nuverra Equity Interests will be cancelled and discharged.  Holders thereof will not receive a distribution on account of such Nuverra Equity Interests. | Impaired | 0% |
| Class A12 - Surviving Equity Interests of the Nuverra Group Debtors. | Not Applicable. | Reinstated. | Unimpaired | 100% |

### The AWS Plan

| Class | Projected Claims/Equity Interests | AWS Plan Treatment of Allowed Claims in Class | Status/ Voting Right | Projected Recovery Under Plan |
|---|---|---|---|---|
| Class B1 - Other Priority Claims against the AWS Debtor. | The Debtors currently are unable to estimate the amount of Claims in this Class. | Paid in full in Cash | Unimpaired | 100% |
| Class B2 - Other Secured Claims against the AWS Debtor. | The Debtors currently are unable to estimate the amount of Claims in this Class. | Paid in full in Cash or Reinstated, at the option of the Debtors | Unimpaired | 100% |
| Class B3 - ABL Credit Facility Claims against the AWS Debtor. | The ABL Credit Facility Claims against the AWS Debtor shall be deemed Allowed on the Effective Date in the aggregate principal amount outstanding on the Petition Date (A) plus, to the extent permitted under the ABL Credit Agreement Documents and the DIP Financing Order, (1) any accrued and unpaid fees, costs and other charges thereon through the Effective Date, (2) any accrued and unpaid interest thereon immediately prior to the Petition Date, (3) any accrued and unpaid interest thereon payable at the non-default rate from and after the Petition Date through the Effective Date, and (B) minus, to the extent permitted under the ABL Credit Agreement Documents and the DIP Financing Order, any and all amounts paid by the Debtors to the Holders of ABL Credit Facility Claims during the Chapter 11 Cases and | Paid in full in Cash | Unimpaired | 100% |

01:21865577.2

| Class | Projected Claims/Equity Interests | AWS Plan Treatment of Allowed Claims in Class | Status/ Voting Right | Projected Recovery Under Plan |
|---|---|---|---|---|
| | applied to reduce the ABL Credit Facility Claims. | | | |
| Class B4 - Supporting Noteholder Term Loan Claims against the AWS Debtor. | The aggregate principal amount of (a) the DIP Term Loan Facility Claims and (b) approximately $80 million of Term Loan Facility Claims, *plus* any accrued and unpaid interest thereon payable at the non-default rate through the Effective Date. | The Supporting Noteholder Term Loan Claims against the AWS Debtor will be treated as follows:  (a) $78,750,000 of the Supporting Noteholder Term Loan Claims, in the aggregate, will convert into shares of Reorganized Nuverra Common Stock on a dollar for dollar basis at the Plan Value (subject to dilution by the Management Incentive Plan) and (b) the remaining Supporting Noteholder Term Loan Claims, if any, will first be paid in Cash from the Excess Rights Offering Proceeds, and any remaining balance will be converted into Reorganized Nuverra Common Stock on a dollar for dollar basis at the Plan Value  (subject to dilution by the Management Incentive Plan).  On the Effective Date, the Supporting Noteholder Term Loan Claims against the AWS Debtor will be cancelled and discharged. | Impaired/ Entitled to Vote | 74.2% - 95.2% |
| Class B5- 2021 Note Claims against the AWS Debtor. | Approximately $356 million, *plus* any accrued and unpaid interest thereon payable at the non-default rate through the Petition Date. | Each Holder of Allowed 2021 Note Claims will receive, in full and final satisfaction of all Allowed 2021 Note Claims against the AWS Debtor, its Pro-Rata Share of (i) 99.75% of the Remaining Reorganized Nuverra Common Stock and (ii) 2021 Noteholder Rights, subject to the terms of Section 4.14 of the Plan.  On the Effective Date, all of the 2021 Notes will be cancelled and discharged. | Impaired/ Entitled to Vote | 42.5% - 54.5% |
| Class B6 - AWS Debtor Unsecured Debt Claims. | The Debtors currently are unable to estimate the amount of Claims in this Class. | On the Effective Date, all of the AWS Debtor Unsecured Debt Claims will be cancelled and discharged.  Holders thereof will not receive a distribution on account of such AWS Debtor Unsecured Debt Claims. | Impaired | 0% |
| Class B7 - AWS Debtor General Unsecured Claims. | The Debtors currently are unable to estimate the amount of Claims in this Class. | Except to the extent the Holder of an AWS Debtor General Unsecured Claim agrees to a less favorable treatment, in full and final satisfaction of such Allowed AWS Debtor General Unsecured Claims, (a) the legal, equitable and contractual rights to which the Allowed AWS Debtor General Unsecured Claim entitles the Holder of such Claim will remain unaltered, or (b) if such Allowed AWS Debtor General Unsecured Claim is due and payable in Cash on or before the Effective Date, the Holder of such Allowed AWS Debtor General Unsecured Claim will receive, payment in Cash or otherwise treated in a manner to render Unimpaired such AWS Debtor General Unsecured Claim, on the later of (a) the Effective Date (or as soon as is reasonably practical thereafter) or (b) the date that is 10 Business Days after the date such AWS Debtor General Unsecured Claim becomes an Allowed AWS Debtor General Unsecured Claim. For avoidance of doubt, if an Allowed AWS Debtor General Unsecured Claim is not due and payable before the Effective Date, the Holder of such Allowed Claim may be paid in the ordinary course of business consistent with past practices. | Unimpaired | 100% |
| Class B8 - Intercompany Claims against the AWS Debtor. | The Debtors currently are unable to estimate the amount of Claims in this Class. | Reinstated. | Unimpaired | 100% |
| Class B9 - Subordinated Claims against the AWS Debtor. | The Debtors currently are unable to estimate the amount of Claims in this Class. | Subordinated Claims against the AWS Debtor are subordinated pursuant to this Plan and section 510 of the Bankruptcy Code.  On the Effective Date, all Subordinated Claims against the AWS Debtor will be cancelled and discharged and the Holders of such Claims will not receive or retain any property under this Plan on account of such Subordinated Claims against the AWS Debtor. | Impaired | 0% |
| Class B10 - Surviving Equity Interests of the AWS Debtor. | Not Applicable. | Reinstated. | Unimpaired | 100% |

## The Badlands (DE) Plan

| Class | Projected Claims/Equity Interests | Badlands (DE) Plan Treatment of Allowed Claims in Class | Status/ Voting Right | Projected Recovery Under Plan |
|---|---|---|---|---|
| Class C1 - Other Priority Claims against the Badlands (DE) Debtor. | The Debtors currently are unable to estimate the amount of Claims in this Class. | Paid in full in Cash | Unimpaired | 100% |
| Class C2 - Other Secured Claims against the Badlands (DE) Debtor. | The Debtors currently are unable to estimate the amount of Claims in this Class. | Paid in full in Cash or Reinstated, at the option of the Debtors | Unimpaired | 100% |
| Class C3- ABL Credit Facility Claims against the Badlands (DE) Debtor. | The ABL Credit Facility Claims against the Badlands (DE) Debtor shall be deemed Allowed on the Effective Date in the aggregate principal amount outstanding on the Petition Date (A) plus, to the extent permitted under the ABL Credit Agreement Documents and the DIP Financing Order, (1) any accrued and unpaid fees, costs and other charges thereon through the Effective Date, (2) any accrued and unpaid interest thereon immediately prior to the Petition Date, (3) any accrued and unpaid interest thereon payable at the non-default rate from and after the Petition Date through the Effective Date, and (B) minus, to the extent permitted under the ABL Credit Agreement Documents and the DIP Financing Order, any and all amounts paid by the Debtors to the Holders of ABL Credit Facility Claims during the Chapter 11 Cases and applied to reduce the ABL Credit Facility Claims. | Paid in full in Cash | Unimpaired | 100% |
| Class C4 - Supporting Noteholder Term Loan Claims against the Badlands (DE) Debtor. | The aggregate principal amount of (a) the DIP Term Loan Facility Claims and (b) approximately $80 million of Term Loan Facility Claims, *plus* any accrued and unpaid interest thereon payable at the non-default rate through the Effective Date. | The Supporting Noteholder Term Loan Claims against the Badlands (DE) Debtor will be treated as follows: (a) $78,750,000 of the Supporting Noteholder Term Loan Claims, in the aggregate, will convert into shares of Reorganized Nuverra Common Stock on a dollar for dollar basis at the Plan Value (subject to dilution by the Management Incentive Plan) and (b) the remaining Supporting Noteholder Term Loan Claims, if any, will first be paid in Cash from the Excess Rights Offering Proceeds, and any remaining balance will be converted into Reorganized Nuverra Common Stock on a dollar for dollar basis at the Plan Value  (subject to dilution by the Management Incentive Plan).   On the Effective Date, the Supporting Noteholder Term Loan Claims against the Badlands (DE) Debtor will be cancelled and discharged. | Impaired/ Entitled to Vote | 74.2% - 95.2% |
| Class C5 - 2021 Note Claims against the Badlands (DE) Debtor. | Approximately $356 million, *plus* any accrued and unpaid interest thereon payable at the non-default rate through the Petition Date. | Each Holder of Allowed 2021 Note Claims will receive, in full and final satisfaction of all Allowed 2021 Note Claims against the Badlands (DE) Debtor, its Pro-Rata Share of (i) 99.75% of the Remaining Reorganized Nuverra Common Stock and (ii) 2021 Noteholder Rights, subject to the terms of Section 4.14 of the Plan.  On the Effective Date, all of the 2021 Notes will be cancelled and discharged. | Impaired/ Entitled to Vote | 42.5% - 54.5% |
| Class C6 - Badlands (DE) Debtor Unsecured Debt Claims. | The Debtors currently are unable to estimate the amount of Claims in this Class. | On the Effective Date, all of the Badlands (DE) Debtor Unsecured Debt Claims will be cancelled and discharged. Holders thereof will not receive a distribution on account of such Badlands (DE) Debtor Unsecured Debt Claims. | Impaired | 0% |
| Class C7 - Badlands (DE) Debtor General Unsecured Claims. | The Debtors currently are unable to estimate the amount of Claims in this Class. | Except to the extent that a Holder of a Badlands (DE) Debtor General Unsecured Claim agrees to a less favorable treatment, in full and final satisfaction of such Allowed Badlands (DE) Debtor General Unsecured Claim, (a) the legal, equitable and contractual rights to which the Allowed Badlands (DE) Debtor General Unsecured Claim entitles the Holder of such Claim will remain unaltered, or (b) if such Allowed Badlands (DE) Debtor General Unsecured Claim is due and payable in Cash on or before the Effective Date, the Holder of such Allowed Badlands (DE) Debtor General Unsecured Claim will receive, payment in Cash or otherwise treated in a manner to render Unimpaired such Badlands (DE) Debtor General Unsecured Claim, on the later of (a) the Effective Date (or as soon as is reasonably practical thereafter) or (b) the date that is 10 Business Days after the date such | Unimpaired | 100% |

| Class | Projected Claims/Equity Interests | Badlands (DE) Plan Treatment of Allowed Claims in Class | Status/ Voting Right | Projected Recovery Under Plan |
|---|---|---|---|---|
| | | Badlands (DE) Debtor General Unsecured Claim becomes an Allowed Badlands (DE) Debtor General Unsecured Claim. For avoidance of doubt, if an Allowed Badlands (DE) Debtor General Unsecured Claim is not due and payable before the Effective Date, the Holder of such Allowed Claim may be paid in the ordinary course of business consistent with past practices. | | |
| Class C8 - Intercompany Claims against the Badlands (DE) Debtor. | The Debtors currently are unable to estimate the amount of Claims in this Class. | Reinstated. | Unimpaired | 100% |
| Class C9 - Subordinated Claims against the Badlands (DE) Debtor. | The Debtors currently are unable to estimate the amount of Claims in this Class. | Subordinated Claims against the Badlands (DE) Debtor are subordinated pursuant to this Plan and section 510 of the Bankruptcy Code. On the Effective Date, all Subordinated Claims against the Badlands (DE) Debtor will be cancelled and discharged and the Holders of such Claims will not receive or retain any property under this Plan on account of such Subordinated Claims against the Badlands (DE) Debtor. | Impaired | 0% |
| Class C10 - Surviving Equity Interests of the Badlands (DE) Debtor. | Not Applicable. | Reinstated. | Unimpaired | 100% |

## III. NOTICE REGARDING CERTAIN RELEASE, EXCULPATION AND INJUNCTION PROVISIONS IN THE PLAN[3]

PLEASE BE ADVISED THAT ARTICLE IX OF THE PLAN CONTAINS CERTAIN RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, INCLUDING THOSE SET FORTH BELOW. YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS SET FORTH IN ARTICLE IX OF THE PLAN, AS YOUR RIGHTS MIGHT BE AFFECTED.

### *RELEASES BY THE DEBTORS*

UPON THE EFFECTIVE DATE, EXCEPT FOR THE RIGHTS THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN AND THE PLAN DOCUMENTS, THE DEBTORS, THE REORGANIZED DEBTORS AND THE ESTATES, IN EACH CASE ON BEHALF OF THEMSELVES AND THEIR RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES AND ANY AND ALL OTHER ENTITIES WHO MAY PURPORT TO ASSERT ANY CAUSE OF ACTION DERIVATIVELY, BY OR THROUGH THE FOREGOING ENTITIES, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, INCLUDING, WITHOUT LIMITATION, THE EFFORTS OF THE RELEASED PARTIES TO FACILITATE THE REORGANIZATION OF THE DEBTORS AND THE IMPLEMENTATION OF THE PLAN AND THE TRANSACTIONS CONTEMPLATED IN THE PLAN AND BY THE PLAN, WILL FOREVER RELEASE, WAIVE AND DISCHARGE, TO THE MAXIMUM EXTENT PERMITTED BY LAW, ALL CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, CAUSES OF ACTION, LOSSES, REMEDIES, AND LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE REORGANIZED DEBTORS, OR THE ESTATES, WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, THEN EXISTING OR THEREAFTER ARISING, IN LAW, EQUITY OR OTHERWISE AGAINST THE RELEASED PARTIES THAT ARE BASED IN WHOLE OR IN PART ON ANY ACT, OMISSION, TRANSACTION, EVENT OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE, AND IN ANY WAY RELATING TO (A) THE DEBTORS AND

---

[3] The "Released Parties" means, collectively, and in each case excluding the Excluded Parties, each of: (i) the Debtors; (ii) the Debtors' other non-Debtor Affiliates; (iii) the Supporting Noteholders; (iv) the Standby Exit Facility Lenders; (v) the ABL Agent; (vi) the ABL Lenders; (vii) the Term Loan Agent, (viii) the Term Loan Lenders, (ix) the DIP Agents; (x) the DIP Lenders; (xi) the 2018 Note Indenture Trustee; and (xii) the 2021 Note Indenture Trustee; and with respect to each of the foregoing entities, such entities' predecessors, successors, assigns, subsidiaries, present and former Affiliates, managed accounts and funds, current and former officers and directors, principals, shareholders, members, partners, managers, employees, subcontractors, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals (including any professionals retained by such entities), and all of the foregoing entities' respective heirs, executors, estates, servants, and nominees, in each case in their capacity as such.

ANY AFFILIATES OR SUBSIDIARIES OF THE DEBTORS, (B) THE REORGANIZED DEBTORS, (C) THE ESTATES, (D) THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS, (E) THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR EQUITY INTEREST THAT IS TREATED IN THE PLAN, (F) THE CHAPTER 11 CASES, (G) THE PLAN, INCLUDING THE SOLICITATION OF VOTES ON THE PLAN, (H) THE SOLICITATION AND DISCLOSURE STATEMENT, (I) THE RESTRUCTURING OF ANY CLAIM OR EQUITY INTEREST BEFORE OR DURING THE CHAPTER 11 CASES, INCLUDING THE OUT-OF-COURT RESTRUCTURING, (J) THE RIGHTS OFFERING, (K) THE RESTRUCTURING SUPPORT AGREEMENT, (L) THE EXIT FACILITY CREDIT AGREEMENT, AND (M) THE NEGOTIATION, FORMULATION OR PREPARATION OF THE FOREGOING AGREEMENTS AND TRANSACTIONS DESCRIBED IN <u>SECTION 9.3</u> OF THE PLAN (THE FOREGOING, THE "*DEBTOR RELEASED CLAIMS*"); *PROVIDED, HOWEVER*, THAT (I) NO RELEASED PARTY WILL BE RELEASED THEREUNDER FROM ANY DEBTOR RELEASED CLAIM AS A RESULT OF ANY ACT, OMISSION, TRANSACTION, EVENT OR OTHER OCCURRENCE BY A RELEASED PARTY THAT HAS BEEN OR IS HEREAFTER FOUND BY ANY COURT OR TRIBUNAL BY FINAL ORDER TO CONSTITUTE A WILLFUL CRIMINAL ACT OR INTENTIONAL FRAUD; AND (II) THE FOREGOING RELEASE WILL NOT APPLY TO OR RELEASE ANY EXPRESS CONTRACTUAL OR FINANCIAL OBLIGATIONS OWED TO THE DEBTORS OR THE REORGANIZED DEBTORS OR ANY RIGHT OR OBLIGATION ARISING UNDER OR THAT IS PART OF THE PLAN OR ANY AGREEMENT ENTERED INTO PURSUANT TO, IN CONNECTION WITH OR CONTEMPLATED BY, THE PLAN.

### <u>RELEASES BY HOLDERS OF CLAIMS</u>

TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, UPON THE EFFECTIVE DATE, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, INCLUDING, WITHOUT LIMITATION, THE EFFORTS OF THE RELEASED PARTIES TO FACILITATE THE EXPEDITIOUS REORGANIZATION OF THE DEBTORS AND THE IMPLEMENTATION OF THE PLAN AND THE TRANSACTIONS, CONTRACTS AND INSTRUMENTS CONTEMPLATED IN THE PLAN AND BY THE PLAN, EACH OF THE RELEASING PARTIES[4] AGREES TO THE RELEASE PROVISIONS IN THE PLAN AND WILL FOREVER RELEASE, WAIVE AND DISCHARGE, TO THE MAXIMUM EXTENT PERMITTED BY LAW, ALL CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, CAUSES OF ACTION AND LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE REORGANIZED DEBTORS, OR THE ESTATES, WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, THEN EXISTING OR THEREAFTER ARISING, IN LAW, EQUITY OR OTHERWISE AGAINST THE RELEASED PARTIES THAT ARE BASED IN WHOLE OR IN PART ON ANY ACT, OMISSION, TRANSACTION, EVENT OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE AND IN ANY WAY RELATING TO OR ARISING FROM, IN WHOLE OR IN PART, (A) THE DEBTORS AND ANY AFFILIATES OR SUBSIDIARIES OF THE DEBTORS, (B) THE REORGANIZED DEBTORS, (C) THE ESTATES, (D) THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED DEBTORS, (E) THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR EQUITY INTEREST THAT IS TREATED IN THE PLAN, (F) THE CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTORS AND ANY RELEASED PARTY, (G) THE CHAPTER 11 CASES, (H) THE PLAN, INCLUDING THE SOLICITATION OF VOTES ON THE PLAN, (I) THE SOLICITATION AND DISCLOSURE STATEMENT, (J) THE RIGHTS OFFERING, (K) THE EXIT FACILITY CREDIT AGREEMENT, (L) THE RESTRUCTURING OF ANY CLAIM OR EQUITY INTEREST BEFORE OR DURING THE CHAPTER 11 CASES, INCLUDING THE OUT-OF-COURT RESTRUCTURING, AND (M) THE NEGOTIATION, FORMULATION OR PREPARATION OF THE FOREGOING AGREEMENTS AND TRANSACTIONS DESCRIBED IN <u>SECTION 9.3</u> OF THE PLAN (THE FOREGOING, THE "*RELEASING PARTY RELEASED CLAIMS*"); *PROVIDED, HOWEVER*, THAT (I) NO RELEASED PARTY WILL BE RELEASED THEREUNDER FROM ANY RELEASING PARTY RELEASED CLAIM AS A RESULT OF ANY ACT, OMISSION, TRANSACTION, EVENT OR OTHER OCCURRENCE BY A RELEASED PARTY THAT HAS BEEN OR IS HEREAFTER FOUND BY ANY COURT OR TRIBUNAL BY FINAL ORDER TO CONSTITUTE A WILLFUL CRIMINAL ACT OR INTENTIONAL FRAUD; (II) THE FOREGOING RELEASE WILL NOT APPLY TO OR RELEASE ANY EXPRESS CONTRACTUAL OR FINANCIAL OBLIGATIONS OR ANY RIGHT OR OBLIGATION ARISING UNDER OR THAT IS PART OF THE PLAN OR ANY AGREEMENT ENTERED INTO PURSUANT TO, IN CONNECTION WITH OR CONTEMPLATED BY, THE

---

[4] The "Releasing Parties" means, collectively, each Holder of a Claim who (i) does not opt out of the release provisions in the Plan on their Ballot or (ii) votes to accept the Plan.

01:21865577.2

PLAN; AND (III) THE FOREGOING RELEASE SHALL NOT APPLY TO OR RELEASE ANY SURVIVING OBLIGATIONS UNDER THE ABL CREDIT AGREEMENT OR DIP REVOLVING FACILITY

EACH PERSON PROVIDING RELEASES UNDER THE PLAN, INCLUDING THE DEBTORS, THE REORGANIZED DEBTORS AND THE RELEASING PARTIES, WILL HAVE GRANTED THE RELEASES SET FORTH IN THE PLAN NOTWITHSTANDING THAT SUCH PERSON MAY HEREAFTER DISCOVER FACTS IN ADDITION TO, OR DIFFERENT FROM, THOSE WHICH IT NOW KNOWS OR BELIEVES TO BE TRUE, AND WITHOUT REGARD TO THE SUBSEQUENT DISCOVERY OR EXISTENCE OF SUCH DIFFERENT OR ADDITIONAL FACTS, AND SUCH PERSON EXPRESSLY WAIVES ANY AND ALL RIGHTS THAT IT MAY HAVE UNDER ANY STATUTE OR COMMON LAW PRINCIPLE WHICH WOULD LIMIT THE EFFECT OF SUCH RELEASES TO THOSE CLAIMS OR CAUSES OF ACTION ACTUALLY KNOWN OR SUSPECTED TO EXIST AT THE TIME OF EXECUTION OF SUCH RELEASE. AS OF THE DATE HEREOF, THE DEBTORS ARE NOT AWARE OF ANY SUCH CLAIMS OR CAUSES OF ACTION AGAINST, OR THAT COULD BE ASSERTED AGAINST, A RELEASED PARTY AND DO NOT BELIEVE ANY SUCH CLAIMS OR CAUSES OF ACTION EXIST.

### *EXCULPATION AND LIMITATION OF LIABILITY*

TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, EXCEPT WITH RESPECT TO ANY ACTS OR OMISSIONS EXPRESSLY SET FORTH IN AND PRESERVED BY THE PLAN, THE PLAN SUPPLEMENT, OR DEFINITIVE DOCUMENTS, NO EXCULPATED PARTY WILL HAVE OR INCUR, AND EACH EXCULPATED PARTY IS HEREBY RELEASED AND EXCULPATED FROM, ANY CLAIM, EQUITY INTEREST, OBLIGATION, SUIT, JUDGMENT, DAMAGE, DEMAND, DEBT, RIGHT, CAUSE OF ACTION, LOSS, REMEDY, OR LIABILITY FOR ANY CLAIM IN CONNECTION WITH OR ARISING OUT OF THE ADMINISTRATION OF THE CHAPTER 11 CASES; THE FORMULATION, NEGOTIATION, PREPARATION, DISSEMINATION, OR TERMINATION OF THE DIP FACILITIES, THE REORGANIZED DEBTORS CONSTITUENT DOCUMENTS, THE MANAGEMENT INCENTIVE PLAN, THE NEW EMPLOYMENT AGREEMENTS, THE EXIT FACILITY CREDIT AGREEMENT, THE REGISTRATION RIGHTS AGREEMENT, THE SOLICITATION AND DISCLOSURE STATEMENT, THE RESTRUCTURING SUPPORT AGREEMENT, THE PLAN SUPPLEMENT, AND THE PLAN (INCLUDING THE PLAN DOCUMENTS), OR THE SOLICITATION OF VOTES FOR, OR CONFIRMATION OF, THE PLAN; ANY CONTRACT, INSTRUMENT, RELEASE OR OTHER AGREEMENT OR DOCUMENTS (INCLUDING PROVIDING ANY LEGAL OPINION REQUESTED BY ANY ENTITY REGARDING ANY TRANSACTION, CONTRACT, INSTRUMENT, DOCUMENT OR OTHER AGREEMENT CONTEMPLATED BY THE PLAN OR THE RELIANCE BY ANY EXCULPATED PARTY ON THE PLAN OR THE CONFIRMATION ORDER IN LIEU OF SUCH LEGAL OPINION) CREATED OR ENTERED INTO IN CONNECTION WITH THE DISCLOSURE STATEMENT OR THE PLAN; THE FILING OF THE CHAPTER 11 CASES; THE FUNDING OF THE PLAN; THE OCCURRENCE OF THE EFFECTIVE DATE; THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN; THE ISSUANCE OF SECURITIES UNDER OR IN CONNECTION WITH THE PLAN; OR THE TRANSACTIONS IN FURTHERANCE OF ANY OF THE FOREGOING; EXCEPT FOR A WILLFUL CRIMINAL ACT OR INTENTIONAL FRAUD AS DETERMINED BY A FINAL ORDER, BUT IN ALL RESPECTS SUCH ENTITIES WILL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO THE PLAN. THE EXCULPATED PARTIES AND EACH OF THEIR RESPECTIVE AFFILIATES, AGENTS, DIRECTORS, OFFICERS, EMPLOYEES, ADVISORS, AND ATTORNEYS HAVE ACTED IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE WITH REGARD TO THE SOLICITATION AND DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS WILL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN, INCLUDING THE ISSUANCE OF SECURITIES THEREUNDER. THIS EXCULPATION WILL BE IN ADDITION TO, AND NOT IN LIMITATION OF, ALL OTHER RELEASES, INDEMNITIES, EXCULPATIONS, AND ANY OTHER APPLICABLE LAW OR RULES PROTECTING SUCH EXCULPATED PARTIES FROM LIABILITY.

01:21865577.2

### *INJUNCTION*

**(a)** *GENERAL*

ALL ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS OR EQUITY INTERESTS (OTHER THAN THE CLAIMS REINSTATED UNDER THE PLAN) AND ALL OTHER PARTIES IN INTEREST IN THE CHAPTER 11 CASES, ALONG WITH THEIR RESPECTIVE CURRENT AND FORMER EMPLOYEES, AGENTS, OFFICERS, DIRECTORS, PRINCIPALS AND AFFILIATES, PERMANENTLY ARE ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST THE DEBTORS OR THE REORGANIZED DEBTORS, (B) ENFORCING, ATTACHING, COLLECTING OR RECOVERING BY ANY MANNER OR MEANS OF ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST THE DEBTORS OR REORGANIZED DEBTORS, (C) CREATING, PERFECTING, OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST THE DEBTORS OR REORGANIZED DEBTORS, OR (D) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE THE DEBTORS OR REORGANIZED DEBTORS OR AGAINST THE PROPERTY OR INTERESTS IN PROPERTY OF THE DEBTORS OR REORGANIZED DEBTORS, ON ACCOUNT OF SUCH CLAIMS OR EQUITY INTERESTS; *PROVIDED, HOWEVER,* THAT NOTHING CONTAINED IN THE PLAN WILL PRECLUDE SUCH ENTITIES FROM EXERCISING THEIR RIGHTS PURSUANT TO AND CONSISTENT WITH THE TERMS HEREOF AND THE CONTRACTS, INSTRUMENTS, RELEASES, INDENTURES AND OTHER AGREEMENTS AND DOCUMENTS DELIVERED OR ASSUMED UNDER OR IN CONNECTION WITH THE PLAN.

**(b)** *INJUNCTION AGAINST INTERFERENCE WITH PLAN*

UPON ENTRY OF THE CONFIRMATION ORDER, ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS AND THEIR RESPECTIVE CURRENT AND FORMER EMPLOYEES, AGENTS, OFFICERS, DIRECTORS, PRINCIPALS AND AFFILIATES WILL BE ENJOINED FROM TAKING ANY ACTIONS TO INTERFERE WITH THE IMPLEMENTATION OR CONSUMMATION OF THE PLAN; *PROVIDED*, THAT THE FOREGOING WILL NOT ENJOIN ANY PARTY TO THE RESTRUCTURING SUPPORT AGREEMENT FROM EXERCISING ANY OF ITS RIGHTS OR REMEDIES UNDER THE RESTRUCTURING SUPPORT AGREEMENT IN ACCORDANCE WITH THE TERMS THEREOF.

| | |
|---|---|
| Dated:  Wilmington, Delaware<br>May 3, 2017 | SHEARMAN & STERLING LLP<br>Douglas P. Bartner (Admitted Pro Hac Vice)<br>Fredric Sosnick  (Admitted Pro Hac Vice)<br>Sara Coelho (Admitted Pro Hac Vice)<br>Stephen M. Blank (Admitted Pro Hac Vice )<br>599 Lexington Avenue<br>New York, New York  10022<br>Telephone:  (212) 848-4000<br>Facsimile:   (646) 848-8174 |

-and-

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Jaime Luton Chapman*
Pauline K. Morgan (No. 3650)
Kenneth J. Enos (No. 4544)
Jaime Luton Chapman (No. 4936)
Rodney Square
1000 North King Street
Wilmington, Delaware  19801
Telephone: (302) 571-6600
Facsimile: (302)  571-1253

Proposed Counsel to the Debtors and Debtors in Possession

01:21865577.2