**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

----------------------------------------------------------------x
:
:
In re:  : Chapter 11
:
**Nuverra Environmental Solutions, Inc., *et al.*,**[1]  : Case No. 17–10949 (KJC)
:
Debtors.  : (Jointly Administered)
:
:
: Hearing Date: May 31, 2017 at 2:00 p.m. (ET)
: Objection Deadline: May 24, 2017 at 4:00 p.m. (ET)
----------------------------------------------------------------x

**DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING
THE DEBTORS TO (I) EMPLOY AND RETAIN AP SERVICES, LLC TO
PROVIDE INTERIM MANAGEMENT SERVICES PURSUANT TO 11 U.S.C. § 363,
*NUNC PRO TUNC* TO THE PETITION DATE, AND (II) DESIGNATE
ROBERT D. ALBERGOTTI AS CHIEF RESTRUCTURING OFFICER**

Nuverra Environmental Solutions, Inc. and its affiliated debtors and debtors in possession in the above-captioned cases (collectively, the "**Debtors**") hereby file this motion (this "**Motion**") for the entry of an order, substantially in the form attached hereto as Exhibit A (the "**Proposed Order**"), authorizing the Debtors to employ and retain AP Services, LLC ("**APS**"), *nunc pro tunc* to the Petition Date (as defined herein), to provide interim management and restructuring services, and designating Robert D. Albergotti as Chief Restructuring Officer ("**CRO**") to the Debtors. In support of this Motion, the Debtors submit the declaration of Robert D. Albergotti (the "**Albergotti Declaration**"), a copy of which is attached as Exhibit B and

---

[1] The Debtors in these proceedings (including the last four digits of their respective taxpayer identification numbers) are: Nuverra Environmental Solutions, Inc. (7117), Appalachian Water Services, LLC (0729), Badlands Leasing, LLC (2638), Badlands Power Fuels, LLC (DE) (8703), Badlands Power Fuels, LLC (ND) (1810), Heckmann Water Resources Corporation (1194), Heckmann Water Resources (CVR), Inc. (1795), Heckmann Woods Cross, LLC (9761), HEK Water Solutions, LLC (8233), Ideal Oilfield Disposal, LLC (5796), Landtech Enterprises, L.L.C. (9022), NES Water Solutions, LLC (3421), Nuverra Total Solutions, LLC (6218), and 1960 Well Services, LLC (5084). The Debtors' corporate headquarters is located at 14624 N. Scottsdale Rd., Suite 300, Scottsdale, Arizona 85254.

incorporated by reference herein.  In further support of this Motion, the Debtors respectfully state as follows:

## Background

1. On May 1, 2017 (the "**Petition Date**"), each of the Debtors filed with the Court a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**").  The cases are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").  The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these chapter 11 cases.  As of the date hereof, no creditors' committee has been appointed.

2. On the Petition Date, the Debtors filed the *Debtors' Prepackaged Plans of Reorganization Under Chapter 11 of the Bankruptcy Code* (the "**Plan**") and the related disclosure statement.  Voting on the Plan began prior to the Petition Date, but has not yet concluded.

3. The Plan comprises (i) a separate plan (the "**Nuverra Group Plan**") for all of the Debtors except for Appalachian Water Services, LLC and Badlands Power Fuels, LLC (DE) (the "**Nuverra Group Debtors**"), (ii) a separate plan of reorganization for Appalachian Water Services, LLC (the "**AWS Plan**") and (iii) a separate plan of reorganization for Badlands Power Fuels, LLC (DE) (the "**Badlands (DE) Plan**" and collectively with the Nuverra Group Plan and the AWS Plan, the Plan).  The Plan was developed in accordance with the terms of the Restructuring Support Agreement, dated as of April 9, 2017, as amended from time to time (the "**Restructuring Support Agreement**"), among the Debtors and certain supporting noteholders who hold 100% of the outstanding principal amount of the claims arising under a term loan

01:19496407.5

credit agreement, dated April 15, 2016, and approximately 86% in outstanding principal amount of the 12.5%/10.0% senior secured notes due 2021 (the "**Supporting Noteholders**"). The Restructuring Support Agreement obligates the Supporting Noteholders, subject to certain terms and conditions, to vote to approve the Plan. The Debtors expect that, with the affirmative vote of the Supporting Noteholders, each Plan will be accepted by one or more impaired classes of creditors.

4. Additional factual background relating to the Debtors' business, capital structure, and the commencement of these chapter 11 cases is set forth in the *Declaration of Robert D. Albergotti in Support of Voluntary Petitions, First Day Motions and Applications* [D.I. 12] (the "**First Day Declaration**").

## Jurisdiction

5. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory predicates for the relief requested herein are sections 105 and 363 of the Bankruptcy Code.

## Relief Requested

6. By this Motion, the Debtors seek to (i) employ and retain APS, pursuant to section 363 of the Bankruptcy Code, to perform interim management services and (ii) designate Robert D. Albergotti as CRO for the Debtors in these chapter 11 cases upon the terms and conditions contained in that certain engagement letter dated as of April 3, 2017, between APS and the Debtors (such engagement letter, as amended, together with all related documents, the

"**Engagement Letter**"), a copy of which is attached as <u>Exhibit C</u> hereto and incorporated by reference herein.

### Basis for Relief

7.   The retention of interim corporate officers and other temporary employees is proper under section 363 of the Bankruptcy Code.  Section 363(b) of the Bankruptcy Code provides, in relevant part, that the trustee or debtor in possession, "after notice and a hearing may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Section 363 of the Bankruptcy Code provides that transactions not in the ordinary course of business must be approved by court order.  Under applicable case law, in this and other jurisdictions, if a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable business judgment on the part of the debtor, such use should be approved.  *See, e.g.*, *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991)); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Del. Hudson Ry. Co.*, 124 B.R. 169, 175–76 (D. Del. 1991) (courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b)); *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct.").

8.   The retention of APS and its professionals is a sound exercise of the Debtors' business judgment.  Mr. Albergotti has extensive experience as a senior officer and advisor for many troubled companies.  In addition, APS has acquired significant knowledge of

the Debtors and their business operations as a result of the prepetition work performed on the Debtors' behalf. APS personnel have worked closely with the Debtors' management and other professionals in assisting with the myriad requirements of these chapter 11 cases. Consequently, the Debtors believe that APS has developed relevant experience and expertise regarding the Debtors, their operations and the unique circumstances of these cases. For these reasons, APS is both well qualified and uniquely suited to deal effectively and efficiently with matters that may arise in the context of these cases. Accordingly, the Debtors believe that the retention of APS and its professionals is appropriate and in the best interests of the Debtors and their estates and creditors.

### APS's Qualifications

9. Since approximately October 14, 2016, the professionals at APS have provided services to the Debtors in connection with their restructuring efforts.[2] Mr. Albergotti was appointed as CRO on April 2, 2017. In providing such prepetition professional services to the Debtors, APS has become familiar with the Debtors and their businesses, including the Debtors' financial affairs, debt structure, operations and related matters. Having worked closely with the Debtors' management and their other advisors, APS has developed relevant experience and expertise regarding the Debtors that will assist it in providing effective and efficient services in these chapter 11 Cases.

10. APS is an internationally recognized restructuring and turnaround firm and has a wealth of experience in providing financial advisory services, and enjoys an excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States.

---

[2] Some AlixPartners personnel have previously worked with the Debtors pursuant to an engagement letter between the Debtors and AlixPartners, LLP. APS is a wholly owned subsidiary of AlixPartners, LLP.

01:19496407.5

11. The Debtors selected APS to provide interim management services because of APS's experience and reputation for providing interim management services in chapter 11 cases such as those listed below.  Furthermore, as a result of the prepetition work performed on behalf of the Debtors, APS has acquired significant knowledge of the Debtors and their business and is now familiar with the Debtors' financial affairs, debt structure, operations, and related matters.  Likewise, in providing prepetition services to the Debtors, APS's professionals have worked closely with the Debtors' management and their other advisors.

12. APS's professionals have provided strategic advice to, debtors, creditors, bondholders, investors, and other entities in numerous chapter 11 cases.  Since its inception in 1981, APS, AlixPartners, its subsidiary affiliates, and its predecessor entities have provided restructuring or crisis management services in numerous large cases, including most recently *See, e.g.*, *In re Basic Energy Servs., Inc.*, Case No. 16-12320 (KJC) (Bankr. D. Del. Nov. 18, 2016); *In re Triangle USA Petroleum Corp.*, Case No. 16-11566 (MFW) (Bankr. D. Del. Aug. 1, 2016); *In re Aspect Software Parent, Inc.*, Case No. 16-10597 (MFW) (Bankr. D. Del. Apr. 22, 2016); *In re Paragon Offshore PLC*, Case No. 16-10597 (CSS) (Bankr. D. Del. Apr. 5, 2016); *In re Ryckman Creek Res., LLC*, Case No. 16-10292 (KJC) (Bankr. D. Del. Feb. 9, 2016); *In re Molycorp Inc.*, Case No. 15-11362 (CSS) (Bankr. D. Del. July 17, 2015); *In re Altegrity, Inc.*, Case No. 15-10226 (LSS) (Bankr. D. Del. Mar. 16, 2015); *In re Energy Future Holdings Corp.*, Case No. 14-10979 (CJS) (Bankr. D. Del. Jan. 12, 2015); *In re Dendreon Corp.*, Case No. 14-12515 (LSS) (Bankr. D. Del. Dec. 9, 2014); *In re Ablest Inc.*, No. 14-10717 (KJC) (Bankr. D. Del. Apr. 21, 2014); *In re Synagro Techs.*, Inc., No. 13-11041 (BLS) (Bankr. D. Del. June 5, 2013); *In re The Scooter Store Holdings, Inc.*, No. 13-10904 (PJW) (Bankr. D. Del. June 7,

2013); *In re CHL, Ltd.*, No. 12-12437 (KJC) (Bankr. D. Del. Sept. 24, 2012); *In re Pemco World Air Servs., Inc.*, No. 12-10799 (MFW) (Bankr. D. Del. Apr. 3, 2012).

13. Mr. Albergotti, who will act as CRO for the Debtors, has more than 10 years of experience as a restructuring professional.  In addition to possessing a strong background in the creation of integrated business planning models, Mr. Albergotti has a wealth of experience in the development and implementation of complex cash management programs that forecast, monitor and improve liquidity.  In addition to his experience in advising distressed companies, Mr. Albergotti has significant experience managing and advising companies involved in the exploration & production of oil and gas, service providers to those companies, both on and offshore, as well companies providing storage and transportation services to those exploration and production companies.

14. The Debtors have selected APS as their restructuring advisor because of APS's experience and reputation for providing crisis management services in large, complex chapter 11 cases such as those listed above.[3]  Accordingly, APS is both well-qualified and uniquely able to represent the Debtors in these chapter 11 cases in an efficient and timely manner.

**Scope of Services**

15. As provided in the Engagement Letter, APS has agreed that Mr. Albergotti will serve as CRO.  Working collaboratively with the Debtors' senior management team and board of directors, as well as the Debtors' other professionals, Mr. Albergotti will assist the

---

[3] The Debtors' board of directors, in consultation with the Debtors' proposed counsel and management, selected APS and Robert D. Albergotti as interim management and CRO, respectively.  No other party-in-interest (including the Debtors' secured lenders) had any role in the search, selection, interview, or hiring process with respect to APS and Mr. Albergotti.

01:19496407.5

Debtors in evaluating and implementing strategic and tactical options through the restructuring process.

16. In addition, APS has agreed to provide certain temporary staff to assist Mr. Albergotti and the Debtors in their restructuring efforts (collectively, the "**Temporary Staff**"). The initial list of Temporary Staff, their rates, and other information is set forth in the Engagement Letter and summarized in the section below regarding professional compensation.

17. The Debtors anticipate that during these chapter 11 cases, in addition to the ordinary course duties of a CRO, Mr. Albergotti and the Temporary Staff will perform a broad range of services, including, without limitation, the following:[4]

- Assist the Debtors with management of their financial and treasury functions;

- Assist with the preparation of the statements of affairs, schedules, and other regular reports required by the Court;

- Provide testimony before the Court, as required, on matters that are within the scope of this engagement and within APS's area of testimonial competencies;

- Assist in obtaining and presenting information required by parties in interest in the Debtors' bankruptcy process including official committees appointed by the Court and the Court itself;

- Assist the "working group" professionals who are representing the Debtors or their stakeholders in the reorganization process with their efforts in a manner consistent with the Debtors' overall restructuring goals;

- Maintain signing authority on behalf of the Debtors in line with the Debtors' internal delegation of authority and/or risk management policies;

- Provide assistance to management in connection with the Debtors' development and maintenance of their rolling 13-week cash receipts and disbursements forecasting tool;

- Provide assistance to management in connection with the Debtors' review and/or development of their revised business plan, and such other related forecasts as may be required;

---

[4] The description of the services to be rendered pursuant to the Engagement Letter herein is a summary. To the extent that this Motion and the terms of the Engagement Letter are inconsistent, the terms of the Engagement Letter shall control.

01:19496407.5

- Assess basin level operations for profitability and growth opportunities;
- Assist in communication and/or negotiation with the Debtors' stakeholders, including, but not limited to, the Debtors' lenders and their advisors;
- Assist management in reviewing and enhancing current cost reduction initiatives, and
- Assist with such other matters as may be requested that fall within APS's expertise and that are mutually agreeable.

18. The Debtors and APS intend that all of the services that APS will provide to the Debtors will be: (i) appropriately directed by the Debtors so as to avoid duplicative efforts among the other professionals retained in these cases and (ii) performed in accordance with applicable standards of the profession.

19. In connection with each of its engagements, APS may use employees each of its U.S. and non-U.S. subsidiary affiliates, depending on the needs of the engagement. To the extent APS uses employees from non-U.S. subsidiary affiliates during this engagement, APS will charge standard non-U.S. hourly rates for each such employee, converted without mark-up to U.S. dollars on the invoice date. To the extent APS uses employees its U.S. subsidiary affiliates during this engagement, APS will charge standard U.S. hourly rates for each such employee.

20. If APS finds it desirable to augment its Temporary Staff with independent contractors (each, an "**Independent Contractor**") in these chapter 11 cases, (i) APS will file, and require the Independent Contractor to file, a declaration indicating that the Independent Contractor has reviewed the list of the interested parties in these cases, disclosing the Independent Contractor's relationships, if any, with the interested parties, and indicating that the Independent Contractor is disinterested, (ii) the Independent Contractor will remain disinterested during the time that APS is involved in providing services on behalf of the Debtors, and (iii) the Independent Contractor will represent that he/she will not work for the Debtors or other interested parties in these chapter 11 cases during the time APS is involved in providing services

to the Debtors. APS's standard practice is to charge for an Independent Contractor's services in a chapter 11 case at the rate APS pays the Independent Contractor for such services.

### Terms of Retention

21. APS's decision to accept this engagement to provide services to the Debtors is conditioned upon its ability to be retained in accordance with its customary terms and conditions of employment, compensated for its services, and reimbursed for the out-of-pocket expenses it incurs in accordance with its customary billing practices, as set forth in Schedule 1 of the Engagement Letter (the "**Fee and Expense Structure**").

22. The standard hourly rates, subject to periodic adjustments, as set forth in the Engagement Letter, charged by professionals anticipated to be assigned to these chapter 11 cases are as follows:

| Name | Description | 2017 Hourly Rate |
|---|---|---|
| Robert D. Albergotti | Chief Restructuring Officer | $985 |

### Additional Temporary Staff

| Name | Description | 2017 Hourly Rate | Commitment Full[5] or Part[6] Time |
|---|---|---|---|
| Robert Sullivan | Operations Subject Matter Expert | $1,050 | Part Time |
| Michael Hartley | Restructuring Team | $800 | Full Time |
| Dan Kelsall | Liquidity Management & Business Planning | $605 | Full Time |
| Alvaro Corletto-Costa | Liquidity Management & Business Planning | $415 | Part Time |
| Shamiq Syed | Restructuring Team | $415 | Full Time |
| Hart Ku | Restructuring Team | $325 | Full Time |

---

[5]  Full time is defined as substantially full time.

[6]  Part time is defined as approximately two to three days per week, with some weeks more or less depending on the needs and issues facing the Company at that time.

01:19496407.5

23. APS's current standard hourly rates for 2017, subject to periodic adjustments, are as follows:

| Title | Hourly Rate |
|---|---|
| Managing Director | $960 – $1,135 |
| Director | $745 – $910 |
| Vice President | $550 – $660 |
| Associate | $380 – $520 |
| Analyst | $135 – $365 |
| Paraprofessional | $250 – $270 |
| Developer | $200 – $415 |

In the normal course of business, APS reserves the right to periodically adjust its billing rates.

24. The Debtors shall reimburse APS, upon receipt of periodic billings, for all reasonable and necessary direct expenses incurred in connection with these chapter 11 cases, including transportation costs, lodging, food, telephone, and messenger services.[7]

25. APS will submit monthly invoices to the Debtors, and the Debtors request authority to pay, in the ordinary course of business, all reasonable amounts invoiced by APS for fees and expenses.

26. APS typically works for compensation that includes base fee and contingent incentive compensation earned upon achieving meaningful results. In the instant cases, the Debtors and APS have agreed that no success fee is being sought in connection with

---

[7] Such reimbursements by the Debtors will be subject to the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**") regarding limitations on reimbursement of expenses.

01:19496407.5

this engagement at this time, but the parties may discuss and agree upon a success fee in the future, at which point the Debtors will seek authority from the Court to amend the Engagement Letter. Payment of any success fee shall be subject to approval of the Court on a reasonableness standard.

27. The fee structure is consistent with and typical of compensation arrangements entered into by APS and other comparable firms in connection with the rendering of similar services under similar circumstances. The Debtors believe that the fee structure is in fact reasonable, market-based, and designed to fairly compensate APS for its work and to cover fixed and routine overhead expenses.

28. Because APS is not being employed as a professional under section 327 of the Bankruptcy Code, it will not submit quarterly fee applications pursuant to sections 330 and 331 of the Bankruptcy Code. APS will, however, file with the Court, and provide notice to the Office of United States Trustee for the District of Delaware ("**U.S. Trustee**") and any official committees appointed in these cases, reports of compensation earned and expenses incurred as set forth in the Proposed Order. As set forth in greater detail in the Proposed Order, such reports shall summarize the services provided, identify the compensation earned by each executive officer and staff employee provided, and summarize the expenses incurred. Such compensation and expenses will be subject to Court review in the event an objection is filed.

29. APS received an initial retainer of $200,000 (the "**Retainer**") from the Debtors. In addition to the Retainer, during the 90 days prior to the commencement of these chapter 11 cases, the Debtors paid APS a total of $1,341,902.38 incurred in providing services to the Debtors in contemplation of, and in connection with, prepetition restructuring activities as follows:

| Invoice Date | Invoice Amount | Payment Date | Service Period Covered |
|---|---|---|---|
| 02/15/2017 | 200,192.96 | 03/22/2017 | 1/1/17-1/31/17 |
| 03/21/2017 | 243,009.68 | 03/30/2017 | 2/1/17-2/28/17 |
| 03/31/2017 | 277,611.08 | 03/31/2017 | 3/1/17-3/31/17 |
| 04/07/2017 | 64,984.50 | 04/21/2017 | through 4/3/17 |
| 04/13/2017 | 126,402.58 | 04/21/2017 | 4/4/17-4/10/17 |
| 04/18/2017 | 110,241.85 | 04/26/2017 | 4/11/17-4/16/17 |
| 04/25/2017 | 150,643.76 | 04/26/2017 | 4/17/17-4/23/17 |
| 04/28/2017 | 168,815.97 | 04/28/2017 | 4/24/17-4/28/17 |

30. The Retainer has been applied to outstanding balances existing as of the Petition Date.[8]

31. Due to the ordinary course and unavoidable reconciliation of fees and submission of expenses immediately prior to, and subsequent to, the Petition Date, APS may have incurred but not billed fees and reimbursable expenses that relate to the prepetition period. APS hereby seeks this Court's approval to apply the Retainer to these amounts and any further prepetition fees and expenses APS becomes aware of during its ordinary course billing review and reconciliation. Upon the proposed applications of the Retainer, the Debtors would not owe APS any sums for prepetition services.

**AP Services' Connections with the Debtors and Parties-in-Interest**

32. The Debtors do not believe that APS is a "professional" whose retention is subject to approval under section 327 of the Bankruptcy Code. However, APS has provided information with respect to its connections with the Debtors, their creditors or their related parties, as more specifically described in the Albergotti Declaration.

---

[8] APS has not yet completed its final reconciliation of the prepetition fees and expenses applied against its Retainer. Upon entry of an order approving the relief requested herein, the Debtors will not owe APS any sums for prepetition services.

01:19496407.5

33.     To the best of APS's knowledge and except to the extent disclosed herein and in the Etlin Declaration: (i) APS has no connection with the Debtors, their creditors, or other parties in interest, or the attorneys or accountants of the foregoing, or the Office of the U.S. Trustee or any person employed in the Office of the U.S. Trustee; and (ii) does not hold any interest adverse to the Debtors' estates.

## Indemnification

34.     To provide the indemnification contemplated by the Engagement Letter to APS personnel servings as corporate officers, as limited by applicable law, the Debtors request that the Court approve the indemnification provisions as set forth in the Engagement Letter, as modified by the Proposed Order, to provide Mr. Albergotti the benefit of the most favorable indemnification and exculpation provisions provided by the Debtors to their officers and directors under the corporate bylaws and applicable state law, along with insurance coverage under the Debtors' D&O policy.

## Notice

35.     Notice of this Motion will be provided to:  (i) the U.S. Trustee; (ii) Fried, Frank, Harris, Shriver & Jacobson LLP, as counsel to the Supporting Noteholders, One New York Plaza, New York, NY 10004, Attn:  Brad Eric Scheler and Jennifer Rodburg; (iii) Goldberg Kohn Ltd., as counsel to Wells Fargo Bank, N.A., Revolving Credit Agreement Agent, 55 East Monroe, Suite 3300, Chicago, IL 60603, Attn:  Randall Klein, Dimitri Karcazes and Gary Zussman; (iv) Morrison & Foerster LLP, as counsel to Wilmington Savings Fund Society, FSB, Trustee to Senior Secured Second Lien Notes due 2021, and Term Loan Agent, 250 West 55th Street, New York, NY 10019, Attn:  Jonathan I. Levine and James A. Newton; (v) Ropes & Gray LLP, as counsel to Wilmington Trust, National Association, Trustee to 9.875% Senior Notes due 2018, Prudential Tower, 800 Boylston Street, Boston, MA 02199, Attn:  Mark R. Somerstein;

01:19496407.5

(vi) American Stock Transfer & Trust Company, LLC, as Warrant Agent, 6201 15th Avenue, Brooklyn, NY 11219, Attn: Relationship Manager, and 48 Wall Street, 21st Floor, New York, NY 10005, Attn: Legal Department; (vii) the 30 largest unsecured creditors of the Debtors, on a consolidated basis; and (viii) all parties requesting notice pursuant to Bankruptcy Rule 2002.  The Debtors respectfully submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtors respectfully request the entry of the Proposed Order, approving the employment and retention of APS to provide interim management services to the Debtors, appointing Robert D. Albergotti as CRO, and granting such other and further relief as the Court deems appropriate.

Dated: Wilmington, Delaware
May 6, 2017

SHEARMAN & STERLING LLP
Douglas P. Bartner
Fredric Sosnick
Sara Coelho
Stephen M. Blank
599 Lexington Avenue
New York, New York  10022
Telephone:  (212) 848-4000
Facsimile:  (646) 848-8174

-and-

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Jaime Luton Chapman*
Pauline K. Morgan (No. 3650)
Kenneth J. Enos (No. 4544)
Jaime Luton Chapman (No. 4936)
Rodney Square
1000 North King Street
Wilmington, Delaware  19801
Telephone: (302) 571-6600
Facsimile: (302)  571-1253

Proposed Counsel to the Debtors and Debtors in Possession