## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------------x
:
:
In re:                                                   :    Chapter 11
:
Nuverra Environmental Solutions, Inc., *et al.*,[1]      :    Case No. 17–10949 (KJC)
:
                                   Debtors.              :    (Jointly Administered)
:
:    Hearing Date: May 31, 2017 at 2:00 p.m. (ET)
:    Objection Deadline: May 24, 2017 at 4:00 p.m. (ET)
:
-------------------------------------------------------------------x

## DEBTORS' APPLICATION FOR AN ORDER
## AUTHORIZING THE RETENTION AND EMPLOYMENT OF
## SHEARMAN & STERLING LLP AS CO-COUNSEL FOR THE DEBTORS
## *NUNC PRO TUNC* TO THE PETITION DATE

Nuverra Environmental Solutions, Inc. ("**Nuverra**"), on behalf of itself and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned cases, hereby submit this application (this "**Application**") for entry of an order authorizing the Debtors to retain and employ Shearman & Sterling LLP ("**Shearman & Sterling**") as co-counsel for the Debtors, effective as of the Petition Date (defined below). In support of this Application, the Debtors submit the declaration of Fredric Sosnick (the "**Sosnick Declaration**"), attached hereto as Exhibit A, and the declaration of Joseph M. Crabb, Executive Vice President and Chief Legal Officer of Nuverra (the "**Client Declaration**"), attached hereto as Exhibit B, and respectfully represent as follows:

---

[1]     The Debtors in these cases (including the last four digits of their respective taxpayer identification numbers) are: Nuverra Environmental Solutions, Inc. (7117), Appalachian Water Services, LLC (0729), Badlands Leasing, LLC (2638), Badlands Power Fuels, LLC (DE) (8703), Badlands Power Fuels, LLC (ND) (1810), Heckmann Water Resources Corporation (1194), Heckmann Water Resources (CVR), Inc. (1795), Heckmann Woods Cross, LLC (9761), HEK Water Solutions, LLC (8233), Ideal Oilfield Disposal, LLC (5796), Landtech Enterprises, L.L.C. (9022), NES Water Solutions, LLC (3421), Nuverra Total Solutions, LLC (6218), and 1960 Well Services, LLC (5084). The Debtors' corporate headquarters is located at 14624 N. Scottsdale Rd., Suite 300, Scottsdale, Arizona 85254.

## Background

1.      On May 1, 2017 (the "**Petition Date**"), each of the Debtors filed with the Court a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**").  The cases are being jointly administered.  The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these chapter 11 cases.  As of the date hereof, no creditors' committee has been appointed.

2.      On the Petition Date, the Debtors filed the Debtors' Prepackaged Plans of Reorganization Under Chapter 11 of the Bankruptcy Code (the "**Plan**") and the related disclosure statement.  Voting on the Plan began prior to the Petition Date, but has not yet concluded.

3.      The Plan comprises (i) a separate plan (the "**Nuverra Group Plan**") for all of the Debtors except for Appalachian Water Services, LLC and Badlands Power Fuels, LLC (DE) (the "**Nuverra Group Debtors**"), (ii) a separate plan of reorganization for Appalachian Water Services, LLC (the "**AWS Plan**") and (iii) a separate plan of reorganization for Badlands Power Fuels, LLC (DE) (the "**Badlands (DE) Plan**" and collectively with the Nuverra Group Plan and the AWS Plan, the Plan).  The Plan was developed in accordance with the terms of the Restructuring Support Agreement, dated as of April 9, 2017, as amended from time to time (the "**Restructuring Support Agreement**"), among the Debtors and certain supporting noteholders who hold 100% of the outstanding principal amount of the claims arising under a term loan credit agreement, dated April 15, 2016 and approximately 86% in outstanding principal amount of the 12.5%/10.0% senior secured notes due 2021 (together, the "**Supporting Noteholders**").

The Restructuring Support Agreement obligates the Supporting Noteholders, subject to certain terms and conditions, to vote to approve the Plan.  The Debtors expect that, with the affirmative vote of the Supporting Noteholders, each Plan will be accepted by one or more impaired classes of creditors.

4.    Additional factual background relating to the Debtors' business, capital structure, and the commencement of these chapter 11 cases is set forth in the *Declaration of Robert D. Albergotti in Support of Voluntary Petitions, First Day Motions and Applications* (the "**First Day Declaration**") [Docket No. 12].

<u>**Relief Requested**</u>

5.    By this Application, the Debtors seek to retain and employ the law firm of Shearman & Sterling, effective as of the Petition Date, to represent the Debtors as their co-counsel in connection with the filing of their chapter 11 petitions and the prosecution of these chapter 11 cases.[2]  Accordingly, the Debtors respectfully request that the Court enter an order authorizing the Debtors to employ and retain Shearman & Sterling under a general retainer as their attorneys to perform the legal services that will be necessary during these chapter 11 cases.

---

[2]    Concurrently herewith, the Debtors have filed an application to retain Young Conaway Stargatt & Taylor, LLP ("**YCST**") as their Delaware co-counsel under section 327(a) of the Bankruptcy Code.  In addition, the Debtors have filed an application to retain Squire Patton Boggs (US) LLP ("**Squire**") under section 327(e) of the Bankruptcy Code to advise on certain finance and corporate matters.  Shearman & Sterling, YCST and Squire will take the appropriate steps to ensure that there is no unnecessary duplication of efforts between them.

**Jurisdiction**

6.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  The statutory predicates for the relief requested herein are sections 327(a) and 328(a) of the Bankruptcy Code, Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**").

**Basis For Relief**

7.      The Debtors have selected, and hereby seek to retain, the law firm of Shearman & Sterling as their bankruptcy co-counsel because of, among other things: (a) Shearman & Sterling's extensive experience and knowledge in the fields of debtors' and creditors' rights and business reorganizations under chapter 11 of the Bankruptcy Code; and (b) Shearman & Sterling's familiarity with the Debtors' business affairs and potential legal issues in the context of these chapter 11 cases.

8.      Shearman & Sterling has a broad range of experience in reorganization and bankruptcy proceedings.  Over the last several years, Shearman & Sterling has represented debtors, creditors and creditors' committees, institutional lenders, and various other parties-in-interest in numerous bankruptcy cases, including, among others, Westinghouse Electric Company LLC, Grupo Isolux Corsan, S.A., Energy Future Intermediate Holding Company, RCS Capital Corp., BPS US Holdings Inc., Coldwater Creek Inc., Lupatech S.A., Sabine Oil & Gas Corporation, Cinram, Caesars Entertainment Operating Company, SunEdison, Northshore

Mainland Services, Inc., Molycorp, Inc., AMR Corporation, Applied Extrusion Technologies, Asarco LLC, Capmark Financial Group, Inc., Chemtura Corporation, Eastman Kodak Co., Lehman Brothers Holdings Inc., Pilgrim's Pride Corp., Pope & Talbot, Inc., Quebecor World Inc., Remy Worldwide Holdings, Inc., Residential Capital, LLC, Stock Building Supply Holdings, LLC, and Synagro Technologies Inc.  Accordingly, Shearman & Sterling has developed significant bankruptcy and reorganization knowledge and expertise that will serve the Debtors well in these chapter 11 cases.

9.     The Debtors engaged Shearman & Sterling to provide legal advisory services pursuant to the letter agreement between Nuverra and Shearman & Sterling, dated September 11, 2015, a copy of which is attached hereto as <u>Exhibit C</u> (the "**Engagement Letter**").[3]  During its engagement, Shearman & Sterling developed significant knowledge of the Debtors' businesses and legal affairs and became familiar with the Debtors' business plan and strategy, capital structure, material agreements, and other issues relevant to these chapter 11 cases.  Shearman & Sterling's recent representation of the Debtors included, among other things, advising the Debtors in developing and considering strategic alternatives, in negotiating with lenders and bondholders, and structuring, negotiating, and preparing legal documentation to file these chapter 11 cases.  As a result of providing such extensive prepetition services to the Debtors, Shearman & Sterling's professionals have worked closely with the Debtors' management and have become well acquainted with the Debtors' businesses, operations, finances, debt structure, and related matters.  Accordingly, Shearman & Sterling has significant

---

[3]     Additionally, the board of directors or managing member, as applicable, of each Debtor, authorized Shearman & Sterling, pursuant to resolutions attached to each Debtor's respective chapter 11 petition, to provide legal services to it pursuant to the Engagement Letter.

experience and expertise regarding the Debtors that will allow the effective and efficient provision of legal services throughout these chapter 11 cases.

A.      **Services To Be Rendered**

10.    If retained, Shearman & Sterling will render, among others, the following services to the Debtors at their request:

(a)    legal advice with respect to the Debtors' rights and duties as debtors in possession;

(b)    preparation on behalf of the Debtors of all necessary applications, motions, complaints, objections, responses, answers, orders, reports, and other legal papers;

(c)    advice on obtaining debtor in possession financing (and the use of cash collateral) and exit financing, and the terms and conditions of such financing;

(d)    advice regarding the negotiation and pursuit of confirmation of a chapter 11 plan and approval of the corresponding solicitation procedures and disclosure statement;

(e)    attendance at meetings and negotiations with representatives of creditors, equity holders, prospective investors or acquirers, and other parties-in-interest in connection with the above matters;

(g)    appearance before the Court, any appellate courts, and the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") to protect the interests of the Debtors;

(h)    provision of general corporate, capital markets, mergers and acquisitions, employment, tax, and litigation advice and other general non-bankruptcy legal services to the Debtors, as required; and

(i)    performance of all other legal services for the Debtors that are necessary and proper in these proceedings.

The Debtors understand that Shearman & Sterling intends to work closely with other professionals retained by the Debtors, including YCST, to the extent necessary to coordinate

representation of the Debtors and to ensure that there is no unnecessary duplication of services performed for or charged to the Debtors' estates.

**B.       Disinterestedness**

11.    To the best of the Debtors' knowledge, except as otherwise set forth in the Sosnick Declaration, neither Shearman & Sterling nor any partner, counsel, or associate of Shearman & Sterling:   (a) represents entities other than the Debtors in connection with these chapter 11 cases; (b) has any connections with the Debtors, their creditors, or stockholders or any other party in interest; or (c) holds any interest adverse to the Debtors or their estates.

12.    In addition, as set forth in the Sosnick Declaration, Shearman & Sterling, its partners, counsel, and associates:

(a)       are not creditors, equity security holders, or insiders of the Debtors;

(b)       are not and were not, within two years before the Petition Date, directors, officers, or employees of the Debtors; and

(c)       do not have an interest materially adverse to the interest of the Debtors' estates or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in the Debtors, or for any other reason.

Accordingly, the Debtors believe that Shearman & Sterling is a "disinterested person," as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) thereof.

13.    Shearman & Sterling is conducting a continuing inquiry into any matters that would affect its disinterested status.   In the event additional disclosure is necessary,

Shearman & Sterling will file a supplemental declaration with the Court setting forth any facts and circumstances relevant thereto.

14.    To the extent issues arise that would cause the Debtors to be adverse to any of Shearman & Sterling's clients such that it would be inappropriate for Shearman & Sterling to represent the Debtors with respect to such matters, the Debtors will request that their bankruptcy co-counsel, YCST, represent the Debtors with respect to those matters.

### C.    Professional Compensation

15.    Pursuant to section 328(a) of the Bankruptcy Code, the Debtors may retain Shearman & Sterling on any reasonable terms and conditions.  The Debtors and Shearman & Sterling have agreed, therefore, that subject to the Court's approval, for all services performed and expenses incurred after the Petition Date, Shearman & Sterling shall be paid its customary hourly rates for services that are in effect from time to time, as charged to bankruptcy and non-bankruptcy clients, and shall be reimbursed according to Shearman & Sterling's customary reimbursement policies and in accordance with sections 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016, the Local Rules, and any other applicable procedures and orders of the Court.

16.    In addition, the Debtors propose to retain Shearman & Sterling under a general retainer (the "**Retainer**")[4] because of the extensive legal services that may be required and the fact that the nature and extent of such services are not known at this time.  Prior to the Petition Date, a substantial portion of the Retainer was applied to any outstanding balance

---

[4]    Shearman & Sterling received a Retainer in the aggregate amount of $400,000 prior to the Petition Date (which was increased from $250,000 to $400,000 on March 31, 2017).  Prior to the Petition Date, Shearman & Sterling applied a substantial portion of the Retainer to prepetition fees and expenses. Shearman & Sterling has not yet completed its final reconciliation of prepetition fees and expenses applied against the Retainer.  Details regarding such final reconciliation will be included in Shearman & Sterling's first application for interim compensation.

existing immediately prior to the Petition Date.  After application of amounts for payment of any prepetition professional services and related expenses, the excess amount of the Retainer will be credited to the Debtors and utilized as the Retainer to apply to postpetition fees and expenses pursuant to the compensation procedures approved by the Court in accordance with the Bankruptcy Code.

17.    In these cases, the Retainer is appropriate for several reasons.  *See In re Insilco Techs., Inc.*, 291 B.R. 628, 634 (Bankr. D. Del. 2003) (KJC) ("Factors to be considered, include . . . whether terms of an engagement agreement reflect normal business terms in the marketplace; . . . the relationship between the Debtor and the professionals, *i.e.*, whether the parties involved are sophisticated business entities with equal bargaining power who engaged in an arms-length negotiation [and] whether the retention, as proposed, is in the best interests of the estate . . ."); *see also* Statements of Bankruptcy Judge Peter J. Walsh, *In re CTC Commc'ns Grp., Inc.*, Case No. 02-12873 (PJW) (Bankr. D. Del. May 22, 2003), transcript of hearing held May 22, 2003, at 43 ("I agree and adopt wholeheartedly Judge Carey's decision in the *Insilco* case."). First, these types of retainer agreements reflect normal business terms in the marketplace.  *See In re Insilco Techs., Inc.*, 291 B.R. at 634 ("[I]t is not disputed that the taking of [security] retainers is a practice now common in the market place.").  Second, both Shearman & Sterling and the Debtors are sophisticated business entities that have negotiated the Retainer at arm's length. Third, the retention of Shearman & Sterling is in the best interests of the Debtors' estates because the Engagement Letter and Retainer allow the Debtors to maintain the prepetition relationship established with Shearman & Sterling.  Thus, under the standards articulated in *In re Insilco Technologies, Inc.*, and adopted in *In re CTC Communications Group, Inc.*, the facts and circumstances of these cases support the approval of the security retainer.

18.     As described in the Sosnick Declaration, Shearman & Sterling did not agree to any variations from, or alternatives to, its standard or customary billing arrangements. Additionally, no Shearman & Sterling professionals included in this engagement with the Debtors vary their rates based on the geographic location of their practice or these chapter 11 cases.    Also, Shearman & Sterling will categorize billings by subject matter and such categorization will be evident in any fee application to be filed by Shearman & Sterling.

19.     As of the Petition Date, Shearman & Sterling's rates, which are adjusted from time to time include the following ranges and amounts: $925 to $1,500 for partners, from $915 to $1,135 for counsel, from $325 to $995 for associates, and from $215 to $430 for legal assistants and specialists.    Shearman & Sterling's hourly rates vary with the experience and seniority of the individuals assigned.    The hourly rates Shearman & Sterling charged the Debtors in the prepetition period are the same as the hourly rates Shearman & Sterling will charge the Debtors in the postpetition period, subject to periodic adjustment to reflect economic and other conditions.

20.     Shearman & Sterling customarily is reimbursed for all expenses it incurs in connection with its representation of a client in a given matter.    Those expenses include, without limitation, travel, telecommunications, express mail, messenger service, document reproduction, document processing, temporary employment of additional staff, overtime meals, Lexis and Westlaw fees, court fees, transcript costs and, in general, all identifiable expenses that would not have been incurred but for the representation of a particular client.    To ensure compliance with all applicable deadlines in these chapter 11 cases, from time to time Shearman & Sterling utilizes the services of overtime secretaries.    Shearman & Sterling charges fees for

these services pursuant to the Engagement Letter, which permits Shearman & Sterling to bill the Debtors for overtime secretarial charges that arise out of business necessity.

21.     Shearman & Sterling is not a creditor of the Debtors.  The billing and payment history between Shearman & Sterling and the Debtors for the 90 days prior to the commencement of these chapter 11 cases is listed on <u>Schedule I</u> to the Sosnick Declaration, which demonstrates the Debtors' history of making timely payments in full.  In addition, Shearman & Sterling received the Retainer for professional services to be performed and expenses to be incurred in connection with these chapter 11 cases.

22.     Shearman & Sterling acknowledges that all amounts paid to it during these chapter 11 cases are subject to final allowance by the Court.  In the event that any fees or expenses paid to Shearman & Sterling during these chapter 11 cases are disallowed by the Court, the fees and expenses will be disgorged by Shearman & Sterling and returned to the Debtors or as otherwise ordered by the Court.

23.     No arrangement is proposed between the Debtors and Shearman & Sterling for compensation to be paid in these chapter 11 cases other than as set forth above and in the Sosnick Declaration.  The Debtors understand that no agreement exists, and that no agreement will be entered into, for Shearman & Sterling to share with any other person or firm any compensation that Shearman & Sterling receives for its services to the Debtors.

**D.     Best Interests of the Estates**

24.     Shearman & Sterling's attorneys are highly experienced and uniquely skilled in the fields of bankruptcy and reorganization and have developed a deep understanding of the Debtors' business, operations, and finances.  The Debtors believe that Shearman & Sterling's expertise in these areas is essential to the success of the Debtors' reorganization

efforts.   Accordingly, based on the foregoing facts and authorities, the Debtors respectfully submit that the retention of Shearman & Sterling is in the best interest of the Debtors, their estates, and their creditors, and that the relief requested herein should be granted.

## Notice

25.      Notice of this Motion will be provided to:  (i) the United States Trustee for the District of Delaware; (ii) Fried, Frank, Harris, Shriver & Jacobson LLP, as counsel to the Supporting Noteholders, One New York Plaza, New York, NY 10004, Attn:  Brad Eric Scheler and Jennifer Rodburg; (iii) Goldberg Kohn Ltd., as counsel to Wells Fargo Bank, N.A., Revolving Credit Agreement Agent, 55 East Monroe, Suite 3300, Chicago, IL 60603, Attn: Randall Klein, Dimitri Karcazes and Gary Zussman; (iv) Morrison & Foerster LLP, as counsel to Wilmington Savings Fund Society, FSB, Trustee to Senior Secured Second Lien Notes due 2021, and Term Loan Agent, 250 West 55th Street, New York, NY 10019, Attn:  Jonathan I. Levine and James A. Newton; (v) Ropes & Gray LLP, as counsel to Wilmington Trust, National Association, Trustee to 9.875% Senior Notes due 2018, Prudential Tower, 800 Boylston Street, Boston, MA 02199, Attn:  Mark R. Somerstein; (vi) American Stock Transfer & Trust Company, LLC, as Warrant Agent, 6201 15th Avenue, Brooklyn, NY 11219, Attn:  Relationship Manager, and 48 Wall Street, 21st Floor, New York, NY 10005, Attn:  Legal Department; (vii) the 30 largest unsecured creditors of the Debtors, on a consolidated basis; and (viii) all parties that have requested notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002.  The Debtors respectfully submit that, in light of the nature of the relief requested, no other or further notice need be given.

**No Prior Request**

26.     No prior request for the relief sought in this Motion has been made to this

or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter an order in

the form attached hereto as <u>Exhibit D</u>, granting the relief requested in this Application and such

other and further relief as may be just and proper.


Dated:  Phoenix, Arizona
         May 10, 2017

                                        Nuverra Environmental Solutions, Inc. on behalf of
itself and its affiliated Debtors and Debtors in
Possession

By: <u>/s/ Joseph M. Crabb</u>
Name:    Joseph M. Crabb
Title:    Executive Vice President and Chief Legal
              Officer of Nuverra