IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x
:
**In re:** : Chapter 11
:
**Nuverra Environmental Solutions, Inc.,** *et al.*,[1] : Case No. 17–10949 (KJC)
:
**Debtors.** : (Jointly Administered)
:
: Hearing Date: May 31, 2017 at 2:00 p.m. (ET)
: Objection Deadline: May 24, 2017 at 4:00 p.m. (ET)
---------------------------------------------------------------x

**DEBTORS' APPLICATION FOR AN ORDER AUTHORIZING THE RETENTION
AND EMPLOYMENT OF YOUNG CONAWAY STARGATT & TAYLOR, LLP AS
CO-COUNSEL FOR THE DEBTORS, EFFECTIVE AS OF THE PETITION DATE**

Nuverra Environmental Solutions, Inc. and its affiliated debtors and debtors in possession in the above-captioned cases (collectively, the "**Debtors**") hereby file this application (this "**Application**") for the entry of an order, substantially in the form attached hereto as Exhibit D (the "**Proposed Order**") authorizing the retention and employment of Young Conaway Stargatt & Taylor, LLP ("**Young Conaway**" or the "**Firm**") as bankruptcy co-counsel for the Debtors, effective as of the Petition Date (as defined below). In support of this Application, the Debtors rely upon the declaration of Pauline K. Morgan (the "**Morgan Declaration**"), which is attached hereto as Exhibit A, and submit the declaration of Joseph M. Crabb (the "**Crabb Declaration**"), which is attached hereto as Exhibit B. In further support of this Application, the Debtors respectfully represent:

---

[1]  The Debtors in these proceedings (including the last four digits of their respective taxpayer identification numbers) are: Nuverra Environmental Solutions, Inc. (7117), Appalachian Water Services, LLC (0729), Badlands Leasing, LLC (2638), Badlands Power Fuels, LLC (DE) (8703), Badlands Power Fuels, LLC (ND) (1810), Heckmann Water Resources Corporation (1194), Heckmann Water Resources (CVR), Inc. (1795), Heckmann Woods Cross, LLC (9761), HEK Water Solutions, LLC (8233), Ideal Oilfield Disposal, LLC (5796), Landtech Enterprises, L.L.C. (9022), NES Water Solutions, LLC (3421), Nuverra Total Solutions, LLC (6218), and 1960 Well Services, LLC (5084). The Debtors' corporate headquarters is located at 14624 N. Scottsdale Rd., Suite 300, Scottsdale, Arizona 85254.

**Background**

1. On May 1, 2017 (the "**Petition Date**"), each of the Debtors filed with the Court a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**"). The cases are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"). The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these chapter 11 cases. As of the date hereof, no creditors' committee has been appointed.

2. On the Petition Date, the Debtors filed the *Debtors' Prepackaged Plans of Reorganization Under Chapter 11 of the Bankruptcy Code* (the "**Plan**") and the related disclosure statement. Voting on the Plan began prior to the Petition Date, but has not yet concluded.

3. The Plan comprises (i) a separate plan (the "**Nuverra Group Plan**") for all of the Debtors except for Appalachian Water Services, LLC and Badlands Power Fuels, LLC (DE) (the "**Nuverra Group Debtors**"), (ii) a separate plan of reorganization for Appalachian Water Services, LLC (the "**AWS Plan**") and (iii) a separate plan of reorganization for Badlands Power Fuels, LLC (DE) (the "**Badlands (DE) Plan**" and collectively with the Nuverra Group Plan and the AWS Plan, the Plan). The Plan was developed in accordance with the terms of the Restructuring Support Agreement, dated as of April 9, 2017, as amended from time to time (the "**Restructuring Support Agreement**"), among the Debtors and certain supporting noteholders who hold 100% of the outstanding principal amount of the claims arising under a term loan credit agreement, dated April 15, 2016, and approximately 86% in outstanding principal amount

of the 12.5%/10.0% senior secured notes due 2021 (the "**Supporting Noteholders**"). The Restructuring Support Agreement obligates the Supporting Noteholders, subject to certain terms and conditions, to vote to approve the Plan. The Debtors expect that, with the affirmative vote of the Supporting Noteholders, each Plan will be accepted by one or more impaired classes of creditors.

4.  Additional factual background relating to the Debtors' business, capital structure, and the commencement of these chapter 11 cases is set forth in the *Declaration of Robert D. Albergotti in Support of Voluntary Petitions, First Day Motions and Applications* [D.I. 12] (the "**First Day Declaration**").

## Jurisdiction

5.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory predicates for the relief requested herein are section 327(a) of the Bankruptcy Code, Bankruptcy Rule 2014, and Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**").

## Relief Requested

6.  By this Application, the Debtors request entry of an order authorizing the Debtors to retain and employ Young Conaway as bankruptcy co-counsel for the Debtors, effective as of the Petition Date.

**Basis for Relief Requested**

A. **Young Conaway's Qualifications**

7. The Debtors seek to retain Young Conaway as their bankruptcy co-counsel because of the Firm's extensive knowledge, expertise, and experience in the field of debtors' and creditors' rights and business reorganizations under chapter 11 of the Bankruptcy Code. The Debtors submit that Young Conaway's knowledge, expertise, and experience practicing before the Court will enable the Firm to work in an efficient and cost-effective manner on behalf of the Debtors' estates. Additionally, in preparing for these chapter 11 cases, Young Conaway has become familiar with the Debtors' business and affairs and many of the potential legal issues that may arise in the context of these chapter 11 cases. Accordingly, the Debtors believe that Young Conaway is uniquely qualified to represent them as bankruptcy co-counsel in these chapter 11 cases.

B. **Payment of Fees and Expenses**

8. Young Conaway will seek Court approval of its compensation and reimbursement of its actual, necessary expenses and other charges incurred by the Firm upon the filing of appropriate applications for interim and final compensation and reimbursement pursuant to sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable orders of the Court. The principal attorneys and paralegal presently designated to represent the Debtors, and their current standard hourly rates, are:

| Timekeeper | Hourly Rate |
| --- | --- |
| Pauline K. Morgan | $890.00 |
| Kenneth J. Enos | $570.00 |
| Jaime Luton Chapman | $540.00 |

| | |
|---|---|
| Kenneth A. Listwak | $300.00 |
| Debbie Laskin (paralegal) | $270.00 |

9. The hourly rates set forth above are subject to periodic adjustments to reflect economic and other conditions and are expected to increase at the beginning of the year as set forth above. Other attorneys and paralegals from Young Conaway may from time to time also serve the Debtors in connection with the matters described herein.

10. The hourly rates set forth above are the Firm's standard hourly rates for work of this nature. These rates are set at a level designed to fairly compensate the Firm for the work of its attorneys and paralegals and to cover fixed and routine overhead expenses. It is the Firm's policy to charge its clients in all areas of practice for all other expenses incurred in connection with the client's case. The expenses charged to clients include, among other things, mail and express mail charges, special or hand delivery charges, document processing, photocopying charges, charges for mailing supplies (including, without limitation, envelopes and labels) provided by the Firm to outside copying services for use in mass mailings, travel expenses, expenses for "working meals," computerized research, transcription costs, as well as non-ordinary overhead expenses approved by the client such as secretarial and other overtime. The Firm will charge the Debtors for these expenses in a manner and at rates consistent with charges made generally to the Firm's other clients. The Firm believes that it is fairer to charge these expenses to the clients incurring them than to increase the hourly rates and spread the expenses among all clients.

11. Young Conaway was retained by the Debtors pursuant to an engagement agreement dated September 13, 2016 (the "**Engagement Agreement**"). In accordance with the Engagement Agreement, Young Conaway received a retainer in the amount of $75,000 (as

supplemented, the "**Retainer**") on September 22, 2016, in connection with the planning and preparation of initial documents and the Firm's proposed postpetition representation of the Debtors. On March 31, 2017, Young Conaway also received $24,038 as advanced payment for chapter 11 filing fees. In addition, the Firm received certain payments from the Debtors for services performed prior to the Petition Date, as more fully set forth in Young Conaway's statement pursuant to Bankruptcy Rule 2016, which is attached hereto as Exhibit C. A portion of the Retainer will be applied to any outstanding balances existing as of the Petition Date.[2] The remainder will constitute a general retainer as security for postpetition services and expenses.

        12. In this instance, the general security retainer is appropriate for several reasons. *See In re Insilco Techs., Inc.*, 291 B.R. 628, 634 (Bankr. D. Del. 2003) ("Factors to be considered, include, but are not necessarily limited to (1) whether terms of an engagement agreement reflect normal business terms in the marketplace; (2) the relationship between the Debtor and the professionals, i.e., whether the parties involved are sophisticated business entities with equal bargaining power who engaged in an arms-length negotiation; [and] (3) whether the retention, as proposed, is in the best interests of the estate . . . ."); *see also In re CTC Commc'ns Grp., Inc.*, Case No. 02-12873 (PJW) (Bankr. D. Del. May 22, 2003), Hr'g Tr. 43:14–15 ("I agree and adopt wholeheartedly Judge Carey's decision in the *Insilco* case."). First, these types of retainer agreements reflect normal business terms in the marketplace. *See Insilco.*, 291 B.R. at 634 ("[I]t is not disputed that the taking of [security] retainers is a practice now common in the market place."). Second, both Young Conaway and the Debtors are sophisticated business entities that have negotiated the Retainer at arm's length. Third, the retention of Young Conaway is in the best interests of the Debtors' estates because the retention agreement and

---

[2] Young Conaway has not yet completed its final reconciliation of prepetition fees and expenses applied against the Retainer. Details regarding such final reconciliation will be included in the Firm's first application for compensation.

Retainer allow the Debtors to maintain the prepetition relationship established with Young Conaway. Thus, under the standards articulated in *In re Insilco Technologies, Inc.*, and adopted *In re CTC Communications Group, Inc.*, the facts and circumstances of these chapter 11 cases support the approval of the security retainer.

13. As set forth in the Morgan Declaration, Young Conaway has not shared or agreed to share any of its compensation from the Debtors with any other person, other than as permitted by section 504 of the Bankruptcy Code.

C. **Services to be Provided**

14. The professional services that Young Conaway will render to the Debtors include, but shall not be limited to, the following:

> a. providing legal advice with respect to the Debtors' powers and duties as debtors in possession in the continued operation of their business, management of their properties, and the potential sale of their assets;
>
> b. preparing and pursuing confirmation of a plan and approval of a disclosure statement;
>
> c. preparing, on behalf of the Debtors, necessary applications, motions, answers, orders, reports, and other legal papers;
>
> d. appearing in Court and protecting the interests of the Debtors before the Court; and
>
> e. performing all other legal services for the Debtors that may be necessary and proper in these proceedings.

15. By separate application, the Debtors are asking the Court to approve the retentions of: (a) Shearman & Sterling LLP ("**Shearman & Sterling**") as bankruptcy co-counsel; (b) Lazard Middle Market, LLC as investment banker; (c) Squire Patton Boggs (US) LLP as special counsel; (d) AP Services, LLC to provide interim management and restructuring services; and (e) Prime Clerk LLC as claims, noticing, and administrative agent. In addition, the Debtors also may file motions or applications to employ additional professionals.

16. These professionals work, and will continue to work, under the direction of the Debtors' management. The Debtors' directors and management are committed to minimizing duplication of services to reduce professional costs. To that end, the Debtors understand that Young Conaway is prepared to work closely with each professional to ensure that there is no unnecessary duplication of effort or cost.

D. **Bankruptcy Rule 2014 Disclosure**

17. To the best of the Debtors' knowledge, and except as disclosed herein and in the Morgan Declaration, Young Conaway has not represented the Debtors, their creditors, or any other parties-in-interest, or their respective attorneys, in any matter relating to the Debtors or their estates. Young Conaway is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code in that the Firm, its partners, counsel, and associates:

   a. are not creditors, equity security holders, or insiders of the Debtors;

   b. are not and were not, within two (2) years before the Petition Date, directors, officers, or employees of the Debtors; and

   c. do not have an interest materially adverse to the interests of the Debtors' estates or of any class of the Debtors' creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, any of the Debtors, or for any other reason.

18. For the above reasons, the Debtors submit that Young Conaway's employment is necessary and in the best interests of the Debtors and their estates.

**Notice**

19. Notice of this Application will be provided to: (i) the Office of United States Trustee for the District of Delaware (the "U.S. Trustee"); (ii) Fried, Frank, Harris, Shriver & Jacobson LLP, as counsel to the Supporting Noteholders, One New York Plaza, New York, NY 10004, Attn: Brad Eric Scheler and Jennifer Rodburg; (iii) Goldberg Kohn Ltd., as counsel to Wells Fargo Bank, N.A., Revolving Credit Agreement Agent, 55 East Monroe, Suite 3300,

Chicago, IL 60603, Attn: Randall Klein, Dimitri Karcazes and Gary Zussman; (iv) Morrison & Foerster LLP, as counsel to Wilmington Savings Fund Society, FSB, Trustee to Senior Secured Second Lien Notes due 2021, and Term Loan Agent, 250 West 55th Street, New York, NY 10019, Attn: Jonathan I. Levine and James A. Newton; (v) Ropes & Gray LLP, as counsel to Wilmington Trust, National Association, Trustee to 9.875% Senior Notes due 2018, Prudential Tower, 800 Boylston Street, Boston, MA 02199, Attn: Mark R. Somerstein; (vi) American Stock Transfer & Trust Company, LLC, as Warrant Agent, 6201 15th Avenue, Brooklyn, NY 11219, Attn: Relationship Manager, and 48 Wall Street, 21st Floor, New York, NY 10005, Attn: Legal Department; (vii) the 30 largest unsecured creditors of the Debtors, on a consolidated basis; and (viii) all parties that have requested notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002. The Debtors respectfully submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as <u>Exhibit D</u>, granting the relief requested herein and granting the Debtors such other and further relief as is just and proper.

Dated:   May 10, 2017                                   Nuverra Environmental Solutions, Inc., *et al.*

                                                         */s/ Joseph M. Crabb*
                                                         Joseph M. Crabb
                                                         Chief Legal Officer