IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------------x
:
:
In re: : Chapter 11
:
**Nuverra Environmental Solutions, Inc.,** *et al.*,[1] : Case No. 17–10949 (KJC)
:
Debtors. : (Jointly Administered)
:
: Hearing Date: May 31, 2017 at 2:00 p.m. (ET)
: Objection Deadline: May 24, 2017 at 4:00 p.m. (ET)
------------------------------------------------------------------x

### DEBTORS' APPLICATION FOR AN ORDER (I) AUTHORIZING THE RETENTION AND EMPLOYMENT OF LAZARD FRÈRES & CO. LLC AND LAZARD MIDDLE MARKET LLC AS INVESTMENT BANKER, EFFECTIVE AS OF THE PETITION DATE, AND (II) WAIVING CERTAIN INFORMATION REQUIREMENTS OF LOCAL RULE 2016-2

Nuverra Environmental Solutions, Inc. and its affiliated debtors and debtors in possession in the above-captioned cases (collectively, the "**Debtors**") hereby file this application (this "**Application**") for the entry of an order, substantially in the form attached hereto as Exhibit A (the "**Proposed Order**"), (i) authorizing the retention and employment of Lazard Frères & Co. LLC ("**Lazard Frères**") and Lazard Middle Market LLC ("**LMM**" and together with Lazard Frères, "**Lazard**") as investment banker, effective as of the Petition Date, on the terms and conditions set forth herein and in that certain engagement agreement by and between LMM and the Debtors dated as of August 1, 2016 (the "**Engagement Agreement**"),[2] a copy of

---

[1] The Debtors in these proceedings (including the last four digits of their respective taxpayer identification numbers) are: Nuverra Environmental Solutions, Inc. (7117), Appalachian Water Services, LLC (0729), Badlands Leasing, LLC (2638), Badlands Power Fuels, LLC (DE) (8703), Badlands Power Fuels, LLC (ND) (1810), Heckmann Water Resources Corporation (1194), Heckmann Water Resources (CVR), Inc. (1795), Heckmann Woods Cross, LLC (9761), HEK Water Solutions, LLC (8233), Ideal Oilfield Disposal, LLC (5796), Landtech Enterprises, L.L.C. (9022), NES Water Solutions, LLC (3421), Nuverra Total Solutions, LLC (6218), and 1960 Well Services, LLC (5084). The Debtors' corporate headquarters is located at 14624 N. Scottsdale Rd., Suite 300, Scottsdale, Arizona 85254.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Engagement Agreement.

which is attached hereto as <u>Exhibit B</u>, and that certain related indemnification letter, dated September 11, 2015 (the "**Indemnification Letter**"), a copy of which is attached hereto as <u>Exhibit C</u>, and (ii) waiving certain information requirements of Rule 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**") in connection therewith.  In support of this Application, the Debtors rely upon the declaration of Andrew Torgove (the "**Torgove Declaration**"), attached hereto as <u>Exhibit D</u>.  In further support of this Application, the Debtors respectfully state as follows:

**Background**

1. On May 1, 2017 (the "**Petition Date**"), each of the Debtors filed with the Court a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**").  The cases are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").  The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these chapter 11 cases.  As of the date hereof, no creditors' committee has been appointed.

2. On the Petition Date, the Debtors filed the *Debtors' Prepackaged Plans of Reorganization Under Chapter 11 of the Bankruptcy Code* (the "**Plan**") and the related disclosure statement.  Voting on the Plan began prior to the Petition Date, but has not yet concluded.

3. The Plan comprises (i) a separate plan (the "**Nuverra Group Plan**") for all of the Debtors except for Appalachian Water Services, LLC and Badlands Power Fuels, LLC

01:19338845.9

2

(DE) (the "**Nuverra Group Debtors**"), (ii) a separate plan of reorganization for Appalachian Water Services, LLC (the "**AWS Plan**") and (iii) a separate plan of reorganization for Badlands Power Fuels, LLC (DE) (the "**Badlands (DE) Plan**" and collectively with the Nuverra Group Plan and the AWS Plan, the Plan). The Plan was developed in accordance with the terms of the Restructuring Support Agreement, dated as of April 9, 2017, as amended from time to time (the "**Restructuring Support Agreement**"), among the Debtors and certain supporting noteholders who hold 100% of the outstanding principal amount of the claims arising under a term loan credit agreement, dated April 15, 2016, and approximately 86% in outstanding principal amount of the 12.5%/10.0% senior secured notes due 2021 (the "**Supporting Noteholders**"). The Restructuring Support Agreement obligates the Supporting Noteholders, subject to certain terms and conditions, to vote to approve the Plan. The Debtors expect that, with the affirmative vote of the Supporting Noteholders, each Plan will be accepted by one or more impaired classes of creditors.

4. Additional factual background relating to the Debtors' business, capital structure, and the commencement of these chapter 11 cases is set forth in the *Declaration of Robert D. Albergotti in Support of Voluntary Petitions, First Day Motions and Applications* [D.I. 12] (the "**First Day Declaration**").

## Jurisdiction

5. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). The

statutory predicates for the relief requested herein are sections 327(a), 328(a), and 1107(b) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1 and 2016-2.

## Relief Requested

6. By this Application, the Debtors request the Court enter the Proposed Order, authorizing the employment and retention of Lazard, effective as of the Petition Date, to serve as the Debtors' investment banker in these chapter 11 cases in accordance with the terms and conditions of the Engagement Agreement and the Indemnification Letter, as modified by the Proposed Order. The Debtors additionally seek the modification of certain time-keeping requirements as set forth below and any other relief the Court deems just and proper.

## Lazard's Qualifications

7. The Debtors require a qualified and experienced investment banker with the resources, capabilities, and experience of Lazard to assist them in pursuing the transactions that are crucial to the success of the Debtors' cases. An investment banker, such as Lazard, fulfills a critical service that complements the services provided by the Debtors' other professionals.

8. LMM is a subsidiary of Lazard Frères, which is the primary U.S. operating subsidiary of a preeminent international financial advisory and asset management firm. Lazard Frères' principal office is located at 30 Rockefeller Plaza, New York, New York 10020. Together with its predecessors and affiliates, Lazard has been advising clients around the world for over 150 years.

9. Lazard has dedicated professionals who provide restructuring services to its clients. Lazard's professionals have extensive experience in matters working with financially troubled companies in complex financial restructurings and have a reputation for creativity in

01:19338845.9

4

complex situations. Lazard and/or its principals have been involved as advisor to debtor, creditor and equity constituencies, and government agencies in many reorganization cases. Together with its predecessors and affiliates, Lazard's professionals have been involved in over 250 restructurings since 1990, representing over $1 trillion in debtor assets.[3]

10. In addition, as noted in the Torgove Declaration, Lazard has been employed by the Debtors since August 2016[4] to, among other things, provide advice in connection with the Debtors' attempts to complete a restructuring, financing, sale, and/or recapitalization. In providing prepetition services to the Debtors in connection with these matters, Lazard's professionals have worked closely with the Debtors' management and other professionals and have become well acquainted with the Debtors' business, capital structure and related matters. Accordingly, Lazard has significant relevant experience and expertise regarding the Debtors that will assist it in providing effective and efficient services in the Debtors' chapter 11 cases and thus is well qualified to provide the services required by the Debtors.

11. The Debtors have selected Lazard as their investment banker based upon, among other things, (i) the Debtors' need to retain an investment banking firm to provide advice

---

[3] Notably, Lazard has been retained as an investment banker and financial advisor in numerous large and complex chapter 11 cases, including, among others, *In re Modular Space Holdings, Inc.*, Case No. 16-12825 (KJC) (Bankr. D. Del. Jan. 18, 2017); *In re Stone Energy Corp.*, Case No. 16-36390 (MI) (Bankr. S.D. Tex. Jan. 10, 2017); *In re LINN Energy, LLC*, Case No. 16-60040 (Bankr. S.D. Tex. July 12, 2016); *In re Peabody Energy Corp.*, Case No. 16-42529-399 (Bankr. E.D. Mo. May 18, 2016); *In re Sabine Oil & Gas Corp.*, No. 15-11835 (SCC) (Bankr. S.D.N.Y. Sept. 10, 2015); *In re Boomerang Tube, LLC*, Case No. 15-11247 (MFW) (Bankr. D. Del. July 9, 2015); *In re The Standard Register Co.*, No. 15-10541 (BLS) (Bankr. D. Del. Apr. 13, 2015); *In re AWI Del., Inc.*, No. 14-12092 (KJC) (Bankr. D. Del. Sept. 17, 2014); *In re Longview Power, LLC*, No. 13-12211 (BLS) (Bankr. D. Del. Sept. 24, 2013*); In re Maxcom Telecomm. S.A.B. de C.V.*, No. 13-11839 (PJW) (Bankr. D. Del. Aug. 15, 2013); *In re Cengage Learning Inc.*, No. 13-44106 (ESS) (Bankr. E.D.N.Y. July 24, 2013); *In re A123 Svs., Inc.*, No. 12-12859 (KJC) (Bankr. D. Del. Nov. 9, 2012); *In re Eastman Kodak Co.*, No. 12-10202 (ALG) (Bankr. S.D.N.Y. Feb. 28, 2012); *In re NewPage Corp.*, No. 11-12804 (KG) (Bankr. D. Del. Nov. 3, 2011); *In re Great Atl. & Pac. Tea Co.*, No. 10-24549 (RDD) (Bankr. S.D.N.Y. Jan. 12, 2011).

[4] Lazard was also previously engaged by the Company on other matters pursuant to a September 11, 2015 engagement letter, which expired before the Debtors' chapter 11 cases were filed.

01:19338845.9

with respect to the Debtors' restructuring activities, (ii) Lazard's experience with the Debtors' assets and operations, and (iii) Lazard's extensive experience and excellent reputation in providing investment banking and financial advisory services in complex chapter 11 cases.

12.  The resources, capabilities, and experience of Lazard in advising debtors are crucial to a debtor during its chapter 11 case. An experienced investment banker such as Lazard fulfills a critical need that complements the services offered by the Debtors' other restructuring professionals. Lazard will concentrate its efforts on the restructuring, negotiating with the Debtors' creditor constituencies, and assisting the Debtors to consummate a sale of their assets or securing postpetition financing to fund a restructuring plan. For these reasons, the Debtors require the services of a capable and experienced investment banking firm such as Lazard.

## Scope of Services[5]

13.  As discussed above, on August 1, 2016, the parties entered into the Engagement Agreement, which governs the relationship between Lazard and the Debtors.[6] The terms and conditions of the Engagement Agreement were heavily negotiated and reflect the parties' mutual agreement as to the substantial efforts and resources that will be required in connection with Lazard's engagement. Pursuant to the terms of the Engagement Agreement, Lazard has performed or will perform the following investment banking services as the Company may reasonably request, including:

---

[5] To the extent there is any inconsistency between this Application's summary of the services to be rendered and the actual terms of the Engagement Agreement, the terms of the Engagement Agreement shall control. Capitalized terms used in the description of the services to be rendered herein but not otherwise defined shall have the meanings ascribed to such terms in the Engagement Agreement.

[6] The parties subsequently amended the Engagement Agreement on December 6, 2016 to address certain issues related to any solicitation pursuant to Section 3(a)(9) of the Securities Act of 1933. The amendment is attached to the copy of the Engagement Agreement attached hereto as Exhibit B.

01:19338845.9

a. Reviewing and analyzing the Company's business, operations, financial position, liquidity, and financial projections;

b. Evaluating the Company's potential debt capacity in light of its projected cash flows;

c. Reviewing and analyzing the existing capital structure of the Company and assisting in the determination of an alternative capital structure for the Company;

d. Assisting in the determination of a range of values for the Company on a going concern basis;

e. Advising the Company on tactics and strategies for negotiating with the Stakeholders;

f. Rendering financial advice to the Company and participating in meetings or negotiations with the Stakeholders and/or rating agencies or other appropriate parties in connection with any Financing or Restructuring;

g. Advising the Company on the timing, nature, and terms of new securities, other consideration or other inducements to be offered pursuant to any Financing or Restructuring;

h. Advising and assisting the Company in evaluating any potential Financing transaction by the Company, and, subject to Lazard's agreement so to act and, if requested by Lazard, to execution of appropriate agreements, on behalf of the Company, identifying potential sources of capital and contacting such potential sources as the Company may designate and assisting the Company in implementing such Financing;

i. Assisting the Company in preparing documentation and responding thereto, in each case within Lazard's areas of expertise, in connection with any Financing, Restructuring, or Sale Transaction;

j. Assisting the Company in identifying and evaluating candidates for any potential Sale Transaction, advising the Company in connection with negotiations and aiding in the consummation of any Sale Transaction;

k. Attending, participating in and presenting at meetings of the Board of Directors of Nuverra (which for the purposes of the Engagement Agreement includes any committee thereof) with respect to matters on which Lazard has been engaged to advise under the Engagement Agreement;

l. If applicable, providing testimony, as necessary, with respect to matters on which Lazard has been engaged to advise under the Engagement Agreement in any proceeding before the Court; and

    m. Providing the Company with other investment banking and financial restructuring advice.

14. Prior to the Petition Date, Lazard provided services to the Debtors. Specifically, Lazard has been advising and assisting the Debtors in connection with their negotiations with stakeholders, including the Debtors' lenders, on the terms of the Debtors' restructuring. Accordingly, in addition to their general expertise in marketing and evaluating companies of this nature, because of its prepetition engagement, Lazard has a deep knowledge of the Debtors' business and the Debtors' proposed prepackaged restructuring being pursued in their chapter 11 cases. Lazard's continued services are, moreover, critical to the Debtors' ongoing efforts to successfully prosecute their chapter 11 cases and preserve and maximize the value of their estates. As a result, the Debtors submit that Lazard is well qualified and best suited to perform these services and assist the Debtors in their chapter 11 cases.

15. The Debtors will utilize Lazard's services to complement, and not duplicate, the services to be rendered by any other professional retained in these chapter 11 cases. Specifically, Lazard will carry out a unique function and will use reasonable efforts to coordinate with the Debtors and other professionals retained in these chapter 11 cases to avoid unnecessary duplication of services.

**Professional Compensation**[7]

16. As set forth in the Engagement Agreement, the Debtors and Lazard have agreed to the following terms of compensation (the "**Fee and Expense Structure**"):

    a. <u>Monthly Fee.</u> A monthly fee (the "**Monthly Fee**") of $100,000 payable on execution of the Engagement Agreement and on the 1st day of each month thereafter until the earliest of (i) the completion of a Restructuring or a Sale

---

[7] To the extent there is any inconsistency between this Application's summary of the Fee and Expense Structure and the actual terms of the Engagement Agreement, the terms of the Engagement Agreement shall control.

01:19338845.9

8

Transaction, (ii) if the Debtors indicate that a Financing is to be the final transaction, the completion of the Financing, or (iii) the termination of Lazard's engagement. Fifty percent (50%) of all Monthly Fees shall be credited (without duplication) against any Financing Fee, Restructuring Fee, or Sale Transaction Fee subsequently payable; provided that, in the event of a chapter 11 filing, such credit shall only apply to the extent such fees are approved in their entirety by the Court.

b. <u>Restructuring Fee.</u> A fee equal to $2.5 million (the "**Restructuring Fee**"), payable upon the consummation of a Restructuring.[8]

c. <u>Financing Fee.</u> A fee, payable upon consummation of a Financing (as defined in the Engagement Agreement), equal to the grater of (i) $1.0 million, and (ii) an amount equal to the total gross proceeds raised in such Financing multiplied by the applicable fee percentage in the table below (the "**Financing Fee**").

| Funds Raised | Fee Percentage |
|---|---|
| First Lien Senior Secured Debt/DIP Financing | 1.0% |
| Second Lien Debt | 2.0% |
| Unsecured Debt | 3.0% |
| Equity | 5.0% |

As more fully described in the Engagement Agreement, to the extent Financing is provided by existing creditors (including the Debtors' existing asset-backed lenders) and/or bondholders and/or the Debtors' Majority Shareholder, Lazard will be paid as following: (x) if the Debtors have not requested Lazard's assistance in connection with such Financing, no Financing Fee will be due to Lazard with respect to money provided by such persons and (y) if the Debtors have requested Lazard's assistance in connection with such Financing, Lazard will be paid (1) a full Financing Fee with respect to any Financing from the Debtors' existing asset-backed lenders and (2) fifty percent (50%) of the Financing Fee that would otherwise be payable with respect to any Financing from the Debtors' other existing creditors and/or bondholders and/or the Debtors' majority shareholder. One-half of any Financing Fee(s) paid shall be credited (without duplication) against any Restructuring Fee or Sale Transaction Fee subsequently payable to Lazard.

---

[8] As more fully described in the December 6, 2016 amendment to the Engagement Agreement, with respect to a solicitation of acceptances of a prepackaged plan of reorganization in reliance on the exemption from registration provided by Section 3(a)(9) of the Securities Act of 1933, then the Restructuring Fee is payable on the earlier of (x) the effective date of any such plan of reorganization (whether prepackaged or otherwise) and (y) one hundred eighty (180) days after the expiration of any such solicitation period.

01:19338845.9

    d. <u>Expenses.</u> Reimbursement for reasonable and reasonably documented (to the extent the Debtors have requested documentation as described in the Engagement Agreement) expenses incurred by Lazard (including non-local travel and lodging, data processing and communications charges, courier services, other expenditures and the reasonable fees and expenses of counsel, if any, retained by Lazard); provided, however; reimbursement of any amounts in excess of $10,000 per month will require the pre-approval of the Debtors (not to be unreasonably withheld, conditioned or delayed).

The Engagement Agreement also sets forth certain other fees, including a Sale Transaction Fee and Minority Sale Transaction Fee, but the fees outlined above are the only fees that the Debtors anticipate arising in connection with the Debtors' chapter 11 cases.

    17. In determining the Fee and Expense Structure, Lazard's restructuring expertise, as well as its capital markets knowledge, financing skills, and mergers and acquisitions expertise, some or all of which may be required by the Debtors during the term of Lazard's engagement in the Debtors' chapter 11 cases, were important factors, and that expertise will inure to the benefit of the Debtors and their estates. Further, the Debtors believe that the ultimate benefit of Lazard's services derives in substantial part from Lazard's expertise and experience and cannot be measured by reference to the number of hours to be expended by Lazard's professionals in the performance of such services. Therefore, the Debtors believe that the Fee and Expense Structure is reasonable regardless of the number of hours expended by Lazard's professionals in the performance of their services, and that in no event should the deferred component embodied in any fee to which Lazard is entitled to under the Engagement Agreement be considered a "bonus" or fee enhancement.

    18. After a comparison of compensation arrangements offered by investment banking firms, the Debtors found the Fee and Expense Structure to be consistent with, and typical of, compensation arrangements entered into by Lazard and other comparable firms in connection with the rendering of similar services under like circumstances. Thus, for the reasons

01:19338845.9

set forth herein, the Debtors believe that the Fee and Expense Structure is reasonable, market-based and designed to fairly compensate Lazard for its work in these chapter 11 cases.

### Record Keeping and Applications for Compensation

19. All of Lazard's fees and expenses in the Debtors' chapter 11 cases will be subject to approval of the Court upon proper application by Lazard in accordance with the procedures set forth in the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and any other applicable procedures and orders of the Court. In this regard, the Debtors understand that Lazard intends to apply for interim and final allowance of compensation for professional services rendered, and reimbursement of expenses incurred, in connection with these chapter 11 cases, subject to the Court's approval, in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court.

20. It is not the general practice of financial advisory and investment banking firms, including Lazard, to keep detailed time records similar to those customarily kept by attorneys and required by Local Rule 2016-2(d). Because Lazard does not ordinarily maintain contemporaneous time records in one-tenth (0.1) of an hour increments, or provide or conform to a schedule of hourly rates for its professionals, pursuant to Local Rule 2016-2(h), the Debtors seek a waiver of the information requirements set forth in Local Rule 2016-2(d). Notwithstanding that Lazard does not charge for its services on an hourly basis, Lazard will nonetheless maintain time records in half-hour (0.5) increments, setting forth, in a summary format, a description of the services rendered and the professionals rendering such services on behalf of the Debtors.

21. Lazard will also maintain records in support of any costs and expenses incurred in connection with its services. Lazard's applications for compensation and expenses will be paid by the Debtors pursuant to the terms of the Engagement Agreement, in accordance

01:19338845.9

with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any other applicable procedures and orders of the Court.

### Indemnification

22. As part of the overall compensation payable to Lazard under the terms of the Engagement Agreement, the Debtors agreed to certain indemnification and related obligations, which appear in the Indemnification Letter. Generally, the Indemnification Letter provides that the Debtors will, among other things, indemnify, hold harmless, and provide contribution and reimbursement to Lazard and its affiliates, and the respective directors, officers, members, employees, agents, or controlling persons of each of the foregoing under certain circumstances.

23. The Debtors and Lazard believe that the provisions of the Indemnification Letter, as modified by the Proposed Order, are customary and reasonable for financial advisory and investment banking engagements, both in and out-of-court, and reflect the qualifications and limitations on indemnification provisions that are customary in this District and other jurisdictions. Similar indemnification arrangements have been approved and implemented in other large chapter 11 cases by courts in this District.

24. For the reasons set forth herein, the Debtors respectfully submit that their obligations under the Indemnification Letter, as modified by the Proposed Order, and viewed in conjunction with the other terms of Lazard's proposed retention, are reasonable and in the best interests of the Debtors, their estates, and their creditors.

### Lazard's Disinterestedness

25. Lazard has informed the Debtors that, except as set forth in the Torgove Declaration, Lazard: (i) has no connection with the Debtors, their creditors, equity security holders or other parties in interest or their respective attorneys or accountants, the United States

01:19338845.9

Trustee for the District of Delaware (the **"U.S. Trustee"**), or any person employed in the office of the U.S. Trustee in any matter related to the Debtors and their estates; (ii) does not hold any interest adverse to the Debtors' estates; and (iii) believes that it is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code. If any new material facts or relationships are discovered or arise, Lazard will promptly inform the Court as required by Bankruptcy Rule 2014(a). The Debtors' knowledge, information, and belief regarding the matters set forth herein are based, and made in reliance upon, the Torgove Declaration.

26. During the 90 day period prior to the commencement of these cases, Lazard was paid in the ordinary course certain Monthly Fees and expense reimbursements. Specifically, Lazard was paid its January 2017 Monthly Fee and related expense reimbursements in the amount of $106,568.96 on February 14, 2017, its February 2017 Monthly Fee and related expense reimbursements in the amount of $55,058.83 on March 30, 2017, and its April 2017 Monthly Fee in the amount of $100,000.00 on April 21, 2017.[9] To the extent any amounts were unpaid as of the Petition Date, Lazard shall waive any such amounts upon entry of the Proposed Order.[10]

27. Accordingly, to the best of the Debtors' knowledge, information, and belief that is based entirely in reliance on the representations made to the Debtors by Lazard, which are reflected in the Torgove Declaration, none of Lazard's past or current engagements would or do appear to create an interest materially adverse to the interests of the Debtors, their

---

[9] Lazard only billed the Debtors half of the February 2017 Monthly Fee and did not bill the Debtors the March 2017 Monthly Fee.

[10] Lazard did not bill the Debtors for the May 2017 Monthly Fee as it came due on the Petition Date. Lazard will bill the postpetition May 2017 Monthly Fee pursuant to the Bankruptcy Code and any compensation procedures approved by the Court in this case.

01:19338845.9

creditors, or their equity security holders.  As such, the Debtors believe that Lazard is disinterested and holds no materially adverse interest as to the matters upon which they are to be retained in the Debtors' chapter 11 cases.

### Basis for Relief Requested

28.    The Debtors seek authority to employ and retain Lazard as their investment banker in their chapter 11 cases under sections 327(a) and 238(a) of the Bankruptcy Code.  Section 327 of the Bankruptcy Code provides that a debtor is authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out their duties under this title." 11 U.S.C. § 327(a).

29.    Section 1107(b) of the Bankruptcy Code elaborates upon sections 101(14) and 327(a) of the Bankruptcy Code in cases under chapter 11 of the Bankruptcy Code and provides that "a person is not disqualified for employment under section 327 of [the Bankruptcy Code] by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b).

30.    In addition, the Debtors seek approval of the Engagement Agreement and the Indemnification Letter pursuant to section 328(a) of the Bankruptcy Code, which provides, in relevant part, that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis. . . ." 11 U.S.C. § 328(a). Section 328 of the Bankruptcy Code permits the compensation of professionals, including financial advisors and investment bankers, on flexible terms that reflect the nature of their services and market conditions.  As the

United States Court of Appeals for the Fifth Circuit recognized in *Donaldson Lufkin & Jenrett Securities Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*, 123 F.3d 861 (5th Cir. 1997):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

*Id.* at 862 (citations omitted), *cited in Riker, Danzig, Scherer, Hyland & Perretti LLP v. Official Comm. of Unsecured Creditors (In re Smart World Techs. LLC)*, 383 B.R. 869, 874 (S.D.N.Y. 2008). Owing to this inherent uncertainty, courts have approved similar arrangements that contain reasonable terms and conditions under section 328 of the Bankruptcy Code.

31. Furthermore, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 amended section 328(a) of the Bankruptcy Code, which now provides as follows:

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, *on a fixed or percentage fee basis*, or on a contingent fee basis.

11 U.S.C. § 328(a) (amendment emphasized). This change makes clear that the Debtors are able to retain a professional on a fixed or percentage fee basis, such as the Fee and Expense Structure, with bankruptcy court approval. Following the amendment to section 328 of the Bankruptcy Code, courts have routinely approved arrangements similar to the Engagement Agreement in this and other Districts.

32. The Debtors submit that the terms and conditions of the Engagement Agreement are fair, reasonable, and market-based. Moreover, the Debtors believe that the Fee and Expense Structure appropriately reflects (i) the nature and scope of services to be provided by Lazard in connection with the Debtors' chapter 11 cases, (ii) Lazard's substantial experience with respect to financial advisory and investment banking services, and (iii) the fee structure typically utilized by Lazard and other leading financial advisors and investment bankers that do not bill their clients on an hourly basis.

33. For the reasons set forth herein, the Debtors believe that Lazard's retention on the terms and conditions proposed herein is appropriate.

**Notice**

34. Notice of this Application will be provided to: (i) the U.S. Trustee; (ii) Fried, Frank, Harris, Shriver & Jacobson LLP, as counsel to the Supporting Noteholders, One New York Plaza, New York, NY 10004, Attn: Brad Eric Scheler and Jennifer Rodburg; (iii) Goldberg Kohn Ltd., as counsel to Wells Fargo Bank, N.A., Revolving Credit Agreement Agent, 55 East Monroe, Suite 3300, Chicago, IL 60603, Attn: Randall Klein, Dimitri Karcazes and Gary Zussman; (iv) Morrison & Foerster LLP, as counsel to Wilmington Savings Fund Society, FSB, Trustee to Senior Secured Second Lien Notes due 2021, and Term Loan Agent, 250 West 55th Street, New York, NY 10019, Attn: Jonathan I. Levine and James A. Newton; (v) Ropes & Gray LLP, as counsel to Wilmington Trust, National Association, Trustee to 9.875% Senior Notes due 2018, Prudential Tower, 800 Boylston Street, Boston, MA 02199, Attn: Mark R. Somerstein; (vi) American Stock Transfer & Trust Company, LLC, as Warrant Agent, 6201 15th Avenue, Brooklyn, NY 11219, Attn: Relationship Manager, and 48 Wall Street, 21st Floor, New York, NY 10005, Attn: Legal Department; (vii) the 30 largest unsecured

creditors of the Debtors, on a consolidated basis; and (viii) all parties that have requested notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002.  The Debtors respectfully submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtors request entry of the Proposed Order granting the relief requested herein and such other and further relief as is just and proper.

Dated:   Ma{"32, 2017                               Nuverra Environmental Solutions, Inc., *et al.*

 */s/ Joseph M. Crabb*
Joseph M. Crabb
Chief Legal Officer