# **EXHIBIT B**

**Engagement Agreement**

# LAZARD

August 1, 2016

Mark Johnsrud
Chairman & CEO
Nuverra Environmental Solutions, Inc.
14624 N. Scottsdale Rd., Suite 300
Scottsdale, Arizona 85254

Dear Ladies and Gentlemen:

    This letter agreement (the "Agreement") confirms the understanding and agreement between Lazard Middle Market LLC ("LMM") and Nuverra Environmental Solutions, Inc. ("Nuverra") and its controlled subsidiaries (collectively with any entity formed or used for the purposes set forth herein, the "Company").

*Assignment Scope:*

The Company hereby retains LMM as its sole investment banker to provide the Company with general restructuring advice and to advise it in connection with any potential Restructuring, Sale Transaction and/or Financing (each as defined below) on the terms and conditions set forth herein. By signing this Agreement, we hereby accept our appointment as investment banker under the terms hereof.

*Definitions:*

    As used in this Agreement:

- "Financing" means any transaction or series of transaction involving the public or private issuance, sale, or placement of newly issued (including securities held in treasury) equity, equity-linked or debt securities, instruments, or obligations of the Company, including any debtor-in-possession financing or exit financing in connection with a case under the Bankruptcy Code.

- "Restructuring" means, collectively, any restructuring, reorganization (whether or not pursuant to Chapter 11 of the United States Bankruptcy Code) and/or recapitalization of all or a significant portion of the Company's outstanding indebtedness (including bank debt, bond debt, and other on and off balance sheet indebtedness), trade claims, leases (both on and off balance sheet), asbestos and other litigation-related claims and obligations, unfunded pension and retiree medical liabilities, or other liabilities (collectively, the "Existing Obligations") that is achieved, without limitation, through a solicitation of waivers and consents from the holders of Existing Obligations (collectively, the "Stakeholders"); rescheduling of the maturities of Existing Obligations; a change in interest rates, repurchase, settlement or forgiveness of Existing Obligations; conversion of Existing Obligations into equity; an exchange offer involving the issuance of new securities in exchange for Existing Obligations; the issuance of new securities,

Lazard Middle Market LLC
600 Fifth Avenue
Suite 800

Nuverra Environmental Solutions, Inc.
August 1, 2016
Page 2

sale or disposition of assets, sale of debt or equity securities or other interests or other similar transaction or series of transactions.

- "Sale Transaction" means any transaction or series of transactions involving (a) an acquisition, merger, consolidation, or other business combination pursuant to which the business or assets of the Company are, directly or indirectly, combined with another company; (b) the acquisition, directly or indirectly, by a buyer or buyers (which term shall include a "group" of persons as defined in Section 13(d) of the Securities Exchange Act of 1934, as amended), of equity interests or options, or any combination thereof constituting a majority of the then outstanding stock of the Company or possessing a majority of the then outstanding voting power of the Company (except as may occur with current Stakeholders as a result of a Restructuring); (c) any other purchase or acquisition, directly or indirectly, by a buyer or buyers of significant assets, securities or other interests of the Company or (d) the formation of a joint venture or partnership with the Company or direct investment in the Company for the purpose of effecting a transfer of an interest in the Company to a third party. For purposes hereof, any sale of newly issued securities (including securities held in treasury) shall be deemed a Financing and not a Sale Transaction.

*Description of Services:*

1. LMM agrees, in consideration of the compensation provided in Section 2 below, to perform such of the following investment banking services as the Company may reasonably request, including:

    (a)    Reviewing and analyzing the Company's business, operations, financial position, liquidity and financial projections;

    (b)    Evaluating the Company's potential debt capacity in light of its projected cash flows;

    (c)    Reviewing and analyzing the existing capital structure of the Company and assisting in the determination of an alternative capital structure for the Company;

    (d)    Assisting in the determination of a range of values for the Company on a going concern basis;

    (e)    Advising the Company on tactics and strategies for negotiating with the Stakeholders;

    (f)    Rendering financial advice to the Company and participating in meetings or negotiations with the Stakeholders and/or rating agencies or other appropriate parties in connection with any Financing or Restructuring;

    (g)    Advising the Company on the timing, nature, and terms of new securities, other consideration or other inducements to be offered pursuant to any Financing or Restructuring;

(h) Advising and assisting the Company in evaluating any potential Financing transaction by the Company, and, subject to LMM's agreement so to act and, if requested by LMM, to execution of appropriate agreements, on behalf of the Company, identifying potential sources of capital and contacting such potential sources as the Company may designate and assisting the Company in implementing such Financing;

(i) Assisting the Company in preparing documentation and responding thereto, in each case within our areas of expertise, in connection with any Financing, Restructuring or Sale Transaction;

(j) Assisting the Company in identifying and evaluating candidates for any potential Sale Transaction, advising the Company in connection with negotiations and aiding in the consummation of any Sale Transaction;

(k) Attending, participating in and presenting at meetings of the Board of Directors of Nuverra (which for purposes of this Agreement shall include any committee thereof) with respect to matters on which we have been engaged to advise hereunder;

(l) If applicable, providing testimony, as necessary, with respect to matters on which we have been engaged to advise hereunder in any proceeding before the Bankruptcy Court; and

(m) Providing the Company with other investment banking and financial restructuring advice.

*Fees:*

2. As consideration for the services to be provided, the Company shall pay LMM the following fees:

(a) A monthly fee of $100,000 (the "Monthly Fee"), payable on execution of this Agreement and on the 1st day of each month thereafter until the earliest of (i) the completion of a Restructuring or a Sale Transaction subject to Section (c)(i) below, (ii) if the Company indicates that a Financing is to be the final transaction, the completion of the Financing or (iii) the termination of LMM's engagement pursuant to Section 10. Fifty percent (50%) of all Monthly Fees shall be credited (without duplication) against any Financing Fee, Restructuring Fee or Sale Transaction Fee subsequently payable; provided, that, in the event of a Chapter 11 filing, such credit shall only apply to the extent that such fees are approved in entirety by the Bankruptcy Court, if applicable.

(b) A fee, payable upon consummation of a Financing, equal to the greater of (i) $1.0 million, and (ii) the amount set forth in Schedule I (the "Financing Fee"). One-half of any Financing Fee(s) paid shall be credited (without duplication) against any Restructuring Fee or Sale Transaction Fee subsequently payable. However, to the extent Financing is provided by

existing creditors (including the Company's existing asset-backed lenders) and/or bondholders and/or the Company's Majority shareholder, LMM will be paid as following: (x) if the Company has not requested LMM's assistance in connection with such Financing, no Financing Fee will be due to LMM with respect to money provided by such persons and (y) if the Company has requested LMM's assistance in connection with such Financing, LMM will be paid (1) a full Financing Fee with respect to any Financing from the Company's existing asset-backed lenders and (2) fifty percent (50%) of the Financing Fee that would otherwise be payable with respect to any Financing from the Company's other existing creditors and/or bondholders and/or the Company's majority shareholder.

(c) A fee equal to $2.5 million, payable upon the consummation of a Restructuring (the "Restructuring Fee"); provided, however, that if a Restructuring is to be completed through a "pre-packaged" or "pre-arranged" plan of reorganization, the Restructuring Fee shall be earned and shall be payable upon the earlier of (i) execution of definitive agreements with respect to such plan and (ii) delivery of binding consents to such plan by a sufficient number of creditors and/or bondholders, as the case may be, to bind the creditors or bondholders, as the case may be to the plan; provided, further, that in the event that LMM is paid a fee in connection with a "pre-packaged" or "pre-arranged" plan and a plan of reorganization is not consummated, LMM shall return such fee to the Company (less any Monthly Fees that have accrued).

(d) (i) If, whether in connection with the consummation of a Restructuring or otherwise, the Company consummates a Sale Transaction incorporating all or a majority of the assets or all or a majority or controlling interest in the equity securities of the Company, LMM shall be paid a fee (the "Sale Transaction Fee") equal to (A) the Restructuring Fee plus (B) 5.00% of that portion of the Aggregate Consideration[1], if any, that is in excess $350 million.

---

[1] For purposes hereof, the term "Aggregate Consideration" means (x) the total amount of cash and the fair market value (on the date of payment) of all of the property paid and payable (including amounts paid into escrow) in connection with the Sale Transaction (or any related transaction), including amounts paid and payable in respect of convertible securities, preferred equity securities, warrants, stock appreciation rights, option or similar rights, whether or not vested, plus (y) the principal amount of all indebtedness for borrowed money or other liabilities of the Company or relevant Company entity, as applicable, including capital lease obligations, as set forth on the most recent balance sheet, or, in case of the sale of assets, all indebtedness for borrowed money or other liabilities assumed, cancelled, exchanged or forgiven by a third party, including capital lease obligations. Aggregate Consideration shall also include the aggregate amount of any dividends or other distributions declared by the Company or relevant Company entity, as applicable, after the date hereof other than normal quarterly cash dividends, and, in the case of the sale of assets, the net value of any assets not sold by the Company or relevant Company entity, as applicable. For purposes of calculating Aggregate Consideration, (i) all shares will be deemed transferred where a Sale Transaction is effected by the transfer of shares, (a) constituting more than 30% of the then outstanding equity securities of or equity interest in the Company or relevant Company entity, as applicable, or (b) possessing more than 30% of the then outstanding voting power of the outstanding equity securities of or equity interest in the Company or relevant Company entity, as applicable, and (ii) the value of securities (whether debt or equity) that are freely tradable in an established public market will be determined on the basis of the average closing price in such market for the 10 trading days prior to the closing of the Sale Transaction (the "Valuation Date"); and the value of securities that have no established public market or other property will be the fair market value of such securities or other property on such Valuation Date and any restricted stock (i.e., stock in a public company not freely tradeable) received shall be valued at 85% of the public market price of such stock. Aggregate Consideration shall also be deemed to include pension liabilities and guarantees of monies borrowed assumed, cancelled, exchanged or forgiven directly or indirectly by a third party. If the Aggregate Consideration is subject to increase by contingent payments related to future events, the portion of our fee relating thereto shall be calculated by us in good faith and paid to us upon consummation of the Sale Transaction.

Lazard Middle Market LLC
600 Fifth Avenue
Suite 800

Nuverra Environmental Solutions, Inc.
August 1, 2016
Page 5

   (ii) If, whether in connection with the consummation of a Restructuring or otherwise, the Company consummates any Sale Transaction not covered by clause (i) above, the Company shall pay LMM a fee (the "Minority Sale Transaction Fee") to be mutually agreed upon in good faith by the Company and Lazard in light of the results achieved for the Company's stakeholders, the magnitude and complexity of the Minority Sale Transaction and the fees customarily paid to investment bankers of similar standing for similar transactions. One-half of any Minority Sale Transaction Fee paid shall be credited (without duplication) against any Restructuring Fee or Sale Transaction Fee subsequently payable.

   (iii) Any Sale Transaction Fee or Minority Sale Transaction Fee shall be payable upon consummation of the applicable Sale Transaction.

(e) For the avoidance of any doubt, more than one fee may be payable pursuant to each of clauses (b), (c) and (d) above.

(f) In addition to any fees that may be payable to LMM and, regardless of whether any transaction occurs, the Company shall promptly reimburse LMM for all: reasonable and reasonably documented (to the extent the Company has requested documentation as described below) expenses incurred by LMM (including non-local travel and lodging, data processing and communications charges, courier services, other expenditures and the reasonable fees and expenses of counsel, if any, retained by LMM); provided, however; reimbursement of any amounts in excess of $10,000 per month will require the pre-approval of Nuverra (not to be unreasonably withheld, conditioned or delayed) (it being agreed for the avoidance of doubt that this provision does not apply in the case of expenses subject to the Indemnification Letter (as defined below)). LMM shall provide monthly summaries of expenses for which reimbursement is requested by LMM and, if the Company so requests, reasonable documentation of such expenses.

(g) On September 11, 2015, the parties hereto entered into an indemnification letter (the "Indemnification Letter"), which remains in full force and effect. As part of the compensation payable to LMM hereunder, the Company agrees that the indemnification, contribution and related provisions contained in the Indemnification Letter, which are incorporated herein in their entirety, shall also apply to LMM's engagement hereunder.

(h) All amounts referenced hereunder reflect United States currency and shall be paid promptly in cash after such amounts become due and payable hereunder.

*Retention in Chapter 11 Proceedings:*

---

Lazard Middle Market LLC
600 Fifth Avenue
Suite 800

Nuverra Environmental Solutions, Inc.
August 1, 2016
Page 6

3. In the event of the commencement of chapter 11 proceedings, the Company agrees that it will use best efforts to obtain prompt authorization from the Bankruptcy Court to retain LMM on the terms and conditions set forth in this Agreement under the provisions of Section 328(a) of the Bankruptcy Code. Subject to being so retained, LMM agrees that during the pendency of any such proceedings, it shall continue to perform its obligations under this Agreement and that it shall file interim and final applications for allowance of the fees and expenses payable to it under the terms of this Agreement pursuant to the applicable Federal Rules of Bankruptcy Procedure, and the local rules and order of the Bankruptcy Court. The Company shall supply LMM with a draft of the application and proposed retention order authorizing LMM's retention sufficiently in advance of the filing of such application and proposed order to enable LMM and its counsel to review and comment thereon. LMM shall be under no obligation to provide any services under this agreement in the event that the Company becomes a debtor under the Bankruptcy Code unless LMM's retention under the terms of this Agreement is approved under section 328(a) of the Bankruptcy Code by final order of the Bankruptcy Court, which order is acceptable to LMM. The retention application shall note that in so agreeing to seek LMM's retention under Section 328(a) of the Bankruptcy Code, the Company acknowledges that it believes that LMM's general restructuring experience and expertise, its knowledge of the capital markets and its merger and acquisition capabilities will inure to the benefit of the Company in pursuing any Financing, Restructuring or Sale Transaction that the value to the Company of LMM's services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the deferred fees, including the Financing Fee, Restructuring Fee, Sale Transaction Fee and Minority Sale Transaction Fee is reasonable regardless of the number of hours to be expended by LMM's professionals in the performance of the services to be provided hereunder and that the deferred fees shall not be considered to be "bonuses" or fee enhancements under applicable law.

*Other:*

4. No amount payable to any third party, by the Company or any other person or entity, shall reduce or otherwise affect any amount payable hereunder to us.

5. The Company will furnish or cause to be furnished to LMM such current and historical financial information and other information regarding the business of the Company as LMM may request in connection with this engagement. The Company represents and warrants to LMM that all of the foregoing information will be accurate and complete in all material respects at the time it is furnished, and agrees to keep LMM advised of all developments materially affecting the Company or its financial position. Notwithstanding the foregoing, to the extent any financial projections or other forward-looking statements or information have been furnished to LMM by the Company, the Company represents and warrants that such information was prepared in good faith based on information readily available to or otherwise deemed appropriate by the Company and assumptions which, in light of the circumstances under which they are made, are reasonable. In performing its services pursuant to this Agreement, LMM shall be entitled to rely upon information furnished to it by the Company or any third party and information that is publicly available, may assume the accuracy and completeness of such information and shall not assume any responsibility for independent verification of any such information. LMM will not, as part of its engagement, undertake any independent valuation or appraisal of any of the assets or liabilities of the Company or of any third party, or opine or give

Lazard Middle Market LLC
600 Fifth Avenue
Suite 800

advice to the Board of Directors, the Company or management or shareholders with respect thereto or with respect to any issues of solvency.

6. In performing its services pursuant to this Agreement, LMM is not assuming any responsibility for the decision of the Company or any other party to pursue (or not to pursue) any business strategy or to effect (or not to effect) any Financing, Restructuring, Sale Transaction or other transaction. LMM shall not have any obligation or responsibility to provide "crisis management" for or business consultant services to the Company, and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements; nor shall LMM be responsible for providing or be deemed to have provided any tax, accounting, actuarial or legal advice, or any other specialist advice that is outside of its area of expertise.

7. It is understood and agreed that nothing contained in this Agreement shall constitute an express or implied commitment by LMM or any of our affiliates to underwrite, place or purchase any securities in a financing or otherwise, which commitment shall only be set forth in a separate underwriting, placement agency or purchase agreement, as applicable, relating to the financing.

8. The Indemnification Letter and its application to LMM's engagement hereunder shall survive any termination or expiration of our engagement hereunder.

9. In order to coordinate our efforts on behalf of the Company during the period of our engagement hereunder, the Company will promptly inform LMM of any discussions, negotiations, or inquiries regarding a potential transaction, including any such discussions or inquiries that have occurred during the six month period prior to the date of this Agreement. In the event that LMM receives an inquiry, or has any material discussions or negotiations, concerning any transaction, we will promptly inform the Company of such inquiry or material discussions or negotiations.

10. Our engagement hereunder will automatically expire on consummation of a Restructuring and may be earlier terminated by Nuverra or us at any time without liability or continuing obligation to the Company or us following any termination or expiration, except that (a) following any termination or expiration of our engagement we shall remain entitled to any fees accrued pursuant to Section 2 but not yet paid prior to such termination or expiration, as the case may be, and to reimbursement of expenses incurred in accordance with this Agreement prior to such termination or expiration, as the case may be, and (b) in the case of termination by Nuverra (other than termination for cause) or any expiration of our engagement, we shall remain entitled to full payment of all fees contemplated by Section 2 hereof in respect of any Financing, any Restructuring and any Sale Transaction announced during, or resulting from negotiations occurring during, the period from the date hereof until one year following such termination or expiration, as the case may be. For purposes of the foregoing, a termination is "for cause" if LMM has acted with bad faith, willful misconduct or gross negligence in connection with the performance of its role as contemplated herein.

11. LMM has been retained under this Agreement as an independent contractor to Nuverra, and nothing herein is intended to confer any rights or remedies as against LMM upon any person (including the management, Board of Directors, employees, securityholders and creditors of the Company) other than Nuverra. In addition, it is understood

and agreed that this Agreement and our engagement do not create a fiduciary relationship between LMM and any person, including the Company and its management, Board of Directors, employees, securityholders and creditors. No one, other than senior management or the Board of Directors of Nuverra (in their capacities as such) is authorized to rely upon the Company's engagement of LMM or any statements, advice, opinions or conduct by LMM. Without limiting the foregoing, any advice, written or oral, rendered in the course of the Company's engagement of LMM are solely for the purpose of assisting senior management or the Board of Directors of Nuverra (in their capacities as such) in evaluating the relevant Financing, Restructuring or Sale Transaction and does not constitute a recommendation to any stakeholder of the Company that such stakeholder might or should take any action in connection with any Financing, Restructuring or Sale Transaction. The Company agrees that, notwithstanding any termination or expiration of our engagement, any advice, written or oral, rendered by LMM and the terms of our engagement hereunder may not be disclosed publicly or made available to third parties without the prior written consent of LMM. Notwithstanding the foregoing, nothing herein shall prohibit the Company from disclosing to any and all persons the tax treatment and tax structure of any transaction and the portions of any materials that relate to such tax treatment or tax structure.

12. In connection with the services to be provided hereunder, LMM may employ the services of our affiliates (including Lazard Frères & Co. LLC), and may share with any such entity any information concerning the Company. Any such entity so employed shall be entitled to all of the benefits afforded to LMM hereunder and under the Indemnification Letter and shall be entitled to be reimbursed for its expenses pursuant to Section 2(f) on the same basis as LMM.

13. LMM agrees not to use any non-public information about the Company that is provided to LMM by or on behalf of the Company in connection with LMM's engagement hereunder ("Confidential Information") other than in connection with and as contemplated by LMM's engagement hereunder or as otherwise authorized by or on behalf of the Company. LMM further agrees to hold the Confidential Information in confidence and not to disclose it to any third party except in connection with and as contemplated by LMM's engagement hereunder, as otherwise authorized by or on behalf of the Company or as required by law, rule or regulation or legal or regulatory process. LMM may also disclose Confidential Information to the entities described in the first sentence of Section 12 and to LMM's and such entities' respective directors, officers, employees, representatives and other agents, in each case who need to know such information in connection with LMM's engagement hereunder and who are subject to an obligation of confidentiality with respect thereto (any of such persons to whom Confidential Information is disclosed, "Agents"). The term Confidential Information does not include information that (i) is published or otherwise becomes available to the public other than as a result of a disclosure by LMM or its Agents in violation of this Section 13; (ii) was in the possession of LMM at the time of its disclosure by or on behalf of the Company; (iii) is acquired from a third party that is not, to LMM's knowledge, prohibited from disclosing such information by an obligation of confidentiality to the Company; or (iv) is developed without reference to the Confidential Information. This Section 13 and the obligations hereunder shall survive the expiration or termination of this engagement for a period of one year and shall then terminate.

14. LMM agrees that it will not make any public statement or announcement (including any press release) that refers to the Company or LMM's engagement pursuant to this Agreement without the Company's prior consent; except that, following the initial closing of a Financing,

Restructuring or Sale Transaction, LMM may, with the prior approval of the Company, at LMM's expense, place announcements and advertisements or otherwise publicize the Financing, Restructuring or Sale Transaction and LMM's role in it (which may include the reproduction of Nuverra's logo), stating that LMM has acted as investment banker to Nuverra in connection with the transaction, it being agreed that (i) no approval shall be required if such announcement contains only information contained in any announcement previously released by Nuverra, the buyer or any of their respective affiliates (provided, that if such announcement did not name LMM as financial advisor and/or did not include Nuverra's logo, LMM may add such information) and (y) once approval has been given, further use of the same material or portions thereof shall not require further approval).

15. The provisions hereof shall inure to the benefit of and be binding upon the successors and assigns of the Company, LMM and any other person entitled to indemnity under the Indemnification Letter. The Company's obligations pursuant to this Agreement shall be joint and several. This Agreement and the related Indemnification Letter embody the entire agreement and understanding among the parties hereto and supersede any and all prior agreements, arrangements, and understandings, related to the matters provided for herein. No waiver, amendment or other modification of this Agreement shall be effective unless in writing and signed by each party to be bound thereby.

16. This Agreement and any claim related directly or indirectly to this Agreement (including any claim concerning advice provided pursuant to our engagement hereunder) shall be governed by and construed in accordance with the laws of the State of New York without regard to the principle of conflicts of law. No such claim shall be commenced, prosecuted or continued in any forum other than the courts of the State of New York located in the City and County of New York or the United States District Court for the Southern District of New York, and each of the parties hereby submits to the jurisdiction of such courts. The Company hereby waives on behalf of itself and its successors and assigns any and all right to argue that the choice of forum provision is or has become unreasonable in any legal proceeding. The Company waives all right to trial by jury in any action, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to or arising out of this Agreement or the engagement of LMM pursuant to, or the performance by LMM of the services contemplated by, this Agreement.

If the foregoing Agreement is in accordance with your understanding of the terms of our engagement, please sign and return to us the enclosed duplicate hereof.

                Very truly yours,

                LAZARD MIDDLE MARKET LLC

                By: _____
                    Andrew Torgove
                    Managing Director

AGREED TO AND ACCEPTED
as of the date first written above.

Nuverra Environmental Solutions, Inc., on behalf of itself and its controlled subsidiaries

By._____
    Mark Johnsrud
    Chief Executive Officer

Nuverra Environmental Solutions, Inc.
August 1, 2016

## SCHEDULE I

<u>Fees for Financings</u>

The following table outlines the Financing Fees. The Financing Fee shall be calculated by multiplying the applicable fee percentage by the total gross proceeds raised in each Financing.

| Funds Raised | Fee % |
|---|---|
| First Lien Senior Secured Debt/DIP Financing | 1.00% |
| Second Lien Debt | 2.00% |
| Unsecured Debt | 3.00% |
| Equity | 4.00% |

Lazard Middle Market LLC
600 Fifth Avenue
Suite 800