**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

------------------------------------------------------------------x
                                   :

In re:                              :

**Nuverra Environmental Solutions, Inc.,** *et al.*,[1]

                                   **Debtors.**

------------------------------------------------------------------x

|  |  |
|---|---|
| : | **Chapter 11** |
| : | **Case No. 17–10949 (KJC)** |
| : |  |
| : | **(Jointly Administered)** |
| : | Hearing Date:  May 31, 2017 at 2:00 p.m. (ET) |
| : | Objection Deadline:  May 24, 2017 at 4:00 p.m. (ET) |

**DEBTORS' MOTION FOR AN ORDER ESTABLISHING
PROCEDURES FOR THE SALE OF CERTAIN
PROPERTY OF DE MINIMIS VALUE**

        Nuverra Environmental Solutions, Inc. and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") in the above caption chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this motion (this "**Motion**") for entry of an order establishing uniform procedures for the Debtors to sell certain property of their estates of *de minimis* value during the pendency of the Chapter 11 Cases (the "**Procedures**").  In support of this Motion, the Debtors respectfully state as follows:

<u>**Background**</u>

        1.      On May 1, 2017 (the "**Petition Date**"), each of the Debtors filed with the Court a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**").  The cases are being jointly administered.  The

---

[1]     The Debtors in these cases (including the last four digits of their respective taxpayer identification numbers) are:  Nuverra Environmental Solutions, Inc. (7117), Appalachian Water Services, LLC (0729), Badlands Leasing, LLC (2638), Badlands Power Fuels, LLC (DE) (8703), Badlands Power Fuels, LLC (ND) (1810), Heckmann Water Resources Corporation (1194), Heckmann Water Resources (CVR), Inc. (1795), Heckmann Woods Cross, LLC (9761), HEK Water Solutions, LLC (8233), Ideal Oilfield Disposal, LLC (5796), Landtech Enterprises, L.L.C. (9022), NES Water Solutions, LLC (3421), Nuverra Total Solutions, LLC (6218), and 1960 Well Services, LLC (5084). The Debtors' corporate headquarters is located at 14624 N. Scottsdale Rd., Suite 300, Scottsdale, Arizona 85254.

Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these chapter 11 cases.  As of the date hereof, no creditors' committee has been appointed.

2.    On the Petition Date, the Debtors filed the Debtors' Prepackaged Plans of Reorganization Under Chapter 11 of the Bankruptcy Code (the "**Plan**") and the related disclosure statement.  Voting on the Plan began prior to the Petition Date, but has not yet concluded.

3.    The Plan comprises (i) a separate plan (the "**Nuverra Group Plan**") for all of the Debtors except for Appalachian Water Services, LLC and Badlands Power Fuels, LLC (DE) (the "**Nuverra Group Debtors**"), (ii) a separate plan of reorganization for Appalachian Water Services, LLC (the "**AWS Plan**") and (iii) a separate plan of reorganization for Badlands Power Fuels, LLC (DE) (the "**Badlands (DE) Plan**" and collectively with the Nuverra Group Plan and the AWS Plan, the Plan).  The Plan was developed in accordance with the terms of the Restructuring Support Agreement, dated as of April 9, 2017, as amended from time to time (the "**Restructuring Support Agreement**"), among the Debtors and certain supporting noteholders who hold 100% of the outstanding principal amount of the claims arising under a term loan credit agreement, dated April 15, 2016 and approximately 86% in outstanding principal amount of the 12.5%/10.0% senior secured notes due 2021 (together, the "**Supporting Noteholders**"). The Restructuring Support Agreement obligates the Supporting Noteholders, subject to certain terms and conditions, to vote to approve the Plan.  The Debtors expect that, with the affirmative vote of the Supporting Noteholders, each Plan will be accepted by one or more impaired classes of creditors

4.    On the Petition Date, the Debtors filed their motion seeking, among other things, authorization to obtain debtor-in-possession financing (the "**DIP Motion**").  The DIP Motion was approved on an interim basis on May 2, 2017 (the "**Interim DIP Order**").  The Interim DIP Order approved (on an interim basis) the Debtors' entry into two debtor-in-possession financing facilities: (i) a senior secured debtor-in-possession revolving credit facility in an aggregate principal amount of up to $31.5 million (the "**DIP Revolving Facility**") and (ii) a senior secured debtor-in-possession term loan facility in an aggregate principal amount of up to $12.5 million (the "**DIP Term Loan Facility,**" and together with the DIP Revolving Facility, the "**DIP Facilities**").

5.    Additional factual background relating to the Debtors' business, capital structure, and the commencement of these chapter 11 cases is set forth in the *Declaration of Robert D. Albergotti in Support of Voluntary Petitions, First Day Motions and Applications* (the "**First Day Declaration**") [Docket No. 12].

### Jurisdiction

6.    The Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  The statutory predicates for the relief requested herein are sections 105(a), 363, 1107(a) and 1108 of the Bankruptcy Code and Rules 2002, 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

### Relief Requested

7.     By this Motion, the Debtors request that the Court enter an order (i) authorizing the Debtors to implement the Procedures to (a) effectuate sales, assignments, conveyances, transfers or other dispositions of assets to any person or entity in a single transaction with a selling price of not more than $50,000 per transaction (each a "**De Minimis Sale**" and collectively, the "**De Minimis Sales**"), with an aggregate selling price for all De Minimis Sales of no more than $2 million, free and clear of all mortgages, liens, claims, interests and encumbrances (collectively, the "**Liens**"), without the need for further Court Approval, and with such Liens attaching to the proceeds with the same validity, and to the same extent and priority as had attached to the assets immediately prior to the sale, conveyance, transfer or other disposition, (b) apply the proceeds of any De Minimis Sale in accordance with the DIP Facilities, and (c) pay those necessary fees and expenses incurred in connection with the sale of De Minimis Assets, including but not limited to commission fees to agents, brokers, auctioneers and liquidators and (ii) granting related relief.

8.     The assets to be sold in the asset sales constitute collateral under the Debtors' DIP Facilities, and the Debtors will apply the proceeds from De Minimis Sales in accordance with the requirements of their DIP Facilities.  Pursuant to the DIP Revolving Facility, proceeds of asset sales must be applied to satisfy amounts owed under the prepetition revolving credit facility, and, if the prepetition revolving credit facility has been satisfied in full, to amounts owed under the DIP Revolving Facility.  The DIP Term Loan Facility has a similar provision, but it is not applicable in circumstances that give rise to a prepayment under the prepetition revolving credit facility or DIP Revolving Facility.  By applying the proceeds of any asset sales to satisfy amounts outstanding under the prepetition revolving credit facility or DIP

01:21892975.1

Revolving Facility, the Debtors can increase borrowing base availability under the DIP Revolving Facility. In particular, to the extent that assets sold are not part of the borrowing base, and aggregate proceeds of sales of such assets since the Petition Date are less than $1 million, the increased availability will be dollar-for-dollar. For aggregate sales of non-borrowing base assets above $1 million and less than $2.5 million, the availability increase is only half of the asset sale proceeds because section 2.4(e)(ii)(2) of the credit agreement for the DIP Revolving Facility imposes a block on borrowing availability equal to 50% of the net proceeds of such sales. Increased availability blocks apply when sale proceeds of non-borrowing base assets aggregate in excess of $2.5 million. On the other hand, the sale of assets that are in the borrowing base reduces the borrowing base and therefore does not generally create commensurate borrowing availability relative to the prepayments made. In the absence of an event of default, the application of asset sale proceeds to prepay the prepetition revolving credit facility or DIP Revolving Facility does not reduce the commitments under the DIP Revolving Facility. The Debtors evaluate the effects of all asset sales on availability under the DIP Revolving Facility when they determine whether each sale is in the Debtors' best interest in accordance with their business judgment.

### The De Minimis Assets

9.     The Debtors are currently in possession of certain assets of *de minimis* value, in relation to the Debtors' estates, that are no longer necessary for operation of the Debtors' current business or long-term business goals. Such De Minimis Assets consist primarily of water fracking tanks, and the Debtors may also desire to sell other miscellaneous assets of *de minimis* value. Prior to the Petition Date, the Debtors sold similar types of assets as necessary in the ordinary course of their business. The Debtors do not currently have specific contracts to sell

such assets in these Chapter 11 Cases but believe that if the opportunity presents itself, the further sale of such assets during the Chapter 11 Cases would maximize estate value for the benefit of all creditors.

10.    Given the monetary value of the De Minimis Assets in relation to the magnitude of the Debtors' overall operations, and the contemplated expedited time frame of these Chapter 11 Cases (less than 60 days), it would not be an efficient use of resources to seek Court approval each and every time the Debtors have an opportunity to sell De Minimis Assets. In the exercise of their sound business judgment, the Debtors have determined that the prompt sale of De Minimis Assets, without the need for further notice, motions, hearings and subsequent court approval:  (i) is in the best interest of the Debtors' stakeholders, (ii) will enable the maximization of value and efficient sale of De Minimis Assets, (iii) will provide needed liquidity, and (iv) is consistent with customary procedures approved by the Court.

11.    Accordingly, the Debtors respectfully request that the Court enter an order authorizing the Debtors to sell the De Minimis Assets in accordance with the Procedures, which are set forth below.  The Debtors believe that the Procedures will maximize the likelihood that the Debtors can effectively and efficiently negotiate and consummate the sale of De Minimis Assets, while protecting the interests of creditors.

**Proposed Procedures for the Sale of De Minimis Assets**

12.    The Debtors propose to sell the De Minimis Assets for the highest and best offer received, taking into consideration the exigencies and circumstances.  If the relief requested herein is granted, with regard to De Minimis Sales in any single transaction (excluding transactions with "insiders," if any, as defined in section 101 of the Bankruptcy Code), the Debtors would abide by the following procedures:

(a) the Debtors shall be authorized to consummate a De Minimis Sale without further order of the Court or notice to any party other than Wells Fargo Bank, N.A. as administrative agent under the DIP Revolving Facility, Wilmington Savings Fund Society, FSB as administrative agent under the DIP Term Loan Facility, the Supporting Noteholders and the United States Trustee (each of which will be given two Business Days' notice) if the Debtors determine in the exercise of their business judgment that such a sale is in the best interest of their estates;

(b) any such transactions shall be deemed final and fully authorized by the Court and, unless otherwise agreed to by the proposed purchaser of any De Minimis Assets, all De Minimis Sales shall be free and clear of all Liens, with such Liens attaching only to the sale proceeds in the same validity, extent and priority as immediately prior to the transaction; and

(c) good faith purchasers of such assets shall be entitled to the protections of section 363(m) of the Bankruptcy Code.

13.    In the event that the sale price of a De Minimis Sale exceeds the limits set forth herein, the Debtors will seek Court approval of such sale and provide notice to all appropriate parties in accordance with the applicable provisions of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.

14.    In connection with the Procedures, the Debtors also seek authority to pay the reasonable and necessary fees and expenses incurred in the sale or transfer of any De Minimis Assets, including commission fees to agents, brokers, auctioneers and liquidators, if any.

**Basis for Relief and Applicable Authority**

15.    The Debtors believe that the relief requested herein will aid in their efforts to reduce expenses and maximize value for the benefit of their estates, creditors and other parties-in-interest.  Moreover, the Procedures will reduce the burden on the Court.  The Debtors are seeking the Court's authority to sell the De Minimis Assets to reduce indebtedness and

improve liquidity, if the opportunity arises during these Chapter 11 Cases. Indeed, in certain instances, the cost and delays associated with seeking individual Court approval of a sale would undermine the economic benefits of the transaction.  After careful analysis, and in the exercise of their business judgment, the Debtors have determined, and respectfully submit that, for all of the reasons stated herein, the relief requested in this Motion is in the best interest of their estates, creditors and parties-in-interest and should be granted.

A.       **The Procedures are Appropriate Under Section 363(c) of the Bankruptcy Code**

16.    Section 363(b)(1) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  A sale of the Debtors' assets should be authorized pursuant to section 363 of the Bankruptcy Code if such sale is based on the sound business judgment of the Debtors.  *See, e.g., Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citation omitted); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991); *In re Trans World Airlines, Inc.*, No. 01-00056, 2001 Bankr. LEXIS 980 at *29 (Bankr. D. Del. Apr. 2, 2001).

17.    As noted above, prior to the Chapter 11 Cases, the Debtors sold certain assets that were no longer of use in the Debtors' operations. During these cases, the Debtors will continue to evaluate their operations, and in an effort to maximize efficiency and estate value, may decide to sell further De Minimis Assets. The sale of such assets in accordance with the Procedures will enable the Debtors to avoid or defray any operational, carrying, storage or other expenses associated with the De Minimis Assets.

**B.     The Procedures are Appropriate under Section 363(f) of the Bankruptcy Code**

18.     Pursuant to section 363(f) of the Bankruptcy Code, the Court may authorize the sale of assets free and clear of all Liens if (i) applicable non-bankruptcy law permits the sale of such property free and clear of such interest; (ii) the entity holding the lien, claim or encumbrance consents to the proposed sale; (iii) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (iv) such interest is in bona fide dispute; or (v) such entity could be compelled in a legal or equitable proceeding to accept a money satisfaction of such interest.   *See* 11 U.S.C. § 363(f).

19.     Based on their business judgment, the Debtors would sell or dispose of the De Minimis Assets in a commercially reasonable manner, which would maximize the value of the assets to the benefit of all creditors.   The Debtors propose that all sales of De Minimis Assets will be deemed final, free and clear of all Liens and that the creditors with Liens in such assets will have a security interest in the proceeds of such asset sales. In light of the foregoing, the Debtors believe that the procedures set forth above satisfy the requirements of section 363(f) of the Bankruptcy Code.

**C.     The Procedures are Appropriate under Section 363(m) of the Bankruptcy Code**

20.     Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization
> under subsection (b) or (c) of this section of a sale or lease
> or property does not affect the validity of a sale or lease
> under such authorization to an entity that purchased or
> leased such property in good faith, whether or not such
> entity knew of the pendency of the appeal, unless such
> authorization and such sale or lease were stayed pending
> appeal.

11 U.S.C. § 363(m).  Although the Bankruptcy Code does not define "good faith," the Seventh Circuit in *In re of Andy Frain Servs., Inc.*, 798 F.2d 1113, 1125 (7th Cir. 1986), held that:

> The requirement that a purchaser act in good faith . . .
> speaks to the integrity of his conduct in the course of the
> sale proceedings.  Typically, the misconduct that would
> destroy a purchaser's good faith status at a judicial sale
> involves fraud, collusion between the purchaser and other
> bidders or the trustee, or an attempt to take grossly unfair
> advantage of other bidders.

798 F.2d at 1125 (emphasis omitted) (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195,

1198 (7th Cir. 1978) (interpreting Bankruptcy Rule 805, the precursor of section 363(m)).  The

Debtors submit that any agreement that results in the sale of De Minimis Assets will be an

arm's-length transaction entitled to the protections of section 363(m).

21.    Here, the De Minimis Assets would be of little or no use or value to the

Debtors' estates.  To defray any tax, insurance or other additional costs associated with the De

Minimis Assets, and to prevent the further depreciation of such De Minimis Asset's value, the

Debtors seek authorization to consummate sales of the De Minimis Assets in accordance with the

Procedures.  The Debtors have determined in their sound business judgment that implementing a

process to sell the De Minimis Assets will provide them with the necessary flexibility during

their sales efforts.

**D.    Limited Notice of the De Minimis Asset Sales is Appropriate**

22.    Bankruptcy Rules 2002(a)(2) and 2002(i) require that a Debtor that

proposes to sell property outside the ordinary course of business provide a minimum of 20 days'

notice to "the trustee, all creditors and indentured trustees" and any committee appointed under

Section 110 of the Bankruptcy Code. However, Section 363(b)(1) of the Bankruptcy Code only

requires that appropriate notice and an opportunity for hearing be given in certain circumstances.

*See* 11 U.S.C. § 102(1)(A) (defining "notice and a hearing" as any notice and opportunity for

hearing that are "appropriate in the particular circumstances").    Moreover, this Court is

authorized to shorten the 20-day notice requirement upon the showing of "cause." See Fed. R. Bank. P. 2002(a)(2).

23.      Given the *de minimis* value of individual De Minimis Sales—required to be less than $50,000 under the proposed Procedures and proposed order—the Debtors submit that the notice provided by this Motion is sufficient notice of such De Minimis Sales to all parties in interest.  Similar procedures for the sales of miscellaneous and *de minimis* assets have been granted in other significant chapter 11 cases in this District and elsewhere.  *See, e.g.*, *In re: Energy Future Holdings Corp.*, Case No., 14-10979 (CSS) (Bankr. D. Del. April 29, 2014) (authorizing, among other things, asset sales of up to $250,000 without notice); *In re Visteon Corp.*, Case No. 09-11786 (Bankr. D. Del. July 16, 2009) (authorizing, among other things, asset sales of up to $500,000 without notice); and *In re Patriot Coal Corp.*, Case No. 15-32450 (KLP) (Bankr. D. Va. May 12, 2015) (authorizing, among other things, asset sales of up to $1,500,000 without notice).  Given the relatively *de minimis* value of the assets in the context of the Debtors' entire operations, the expected short duration of the Chapter 11 Cases and the fact that the Chapter 11 Cases are prepackaged, having been negotiated prior to the Petition Date with certain of the Debtors' largest creditors, the Debtors believe that the Procedures comply with applicable law and precedent and will enable the efficient and expeditious sale of De Minimis Assets, if an opportunity should present itself, which would maximize estate value for the benefit of all creditors.

### Waiver of Bankruptcy Rule 6004(h)

24.      To implement the foregoing successfully, the Debtors seek a waiver of the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

01:21892975.1

## Notice

25.     Notice of this Motion will be provided to:  (i) the United States Trustee for the District of Delaware; (ii) Fried, Frank, Harris, Shriver & Jacobson LLP, as counsel to the Supporting Noteholders, One New York Plaza, New York, NY 10004, Attn:  Brad Eric Scheler and Jennifer Rodburg; (iii) Goldberg Kohn Ltd., as counsel to Wells Fargo Bank, N.A., Revolving Credit Agreement Agent, 55 East Monroe, Suite 3300, Chicago, IL 60603, Attn: Randall Klein, Dimitri Karcazes and Gary Zussman; (iv) Morrison & Foerster LLP, as counsel to Wilmington Savings Fund Society, FSB, Trustee to Senior Secured Second Lien Notes due 2021, and Term Loan Agent, 250 West 55th Street, New York, NY 10019, Attn:  Jonathan I. Levine and James A. Newton; (v) Ropes & Gray LLP, as counsel to Wilmington Trust, National Association, Trustee to 9.875% Senior Notes due 2018, Prudential Tower, 800 Boylston Street, Boston, MA 02199, Attn:  Mark R. Somerstein; (vi) American Stock Transfer & Trust Company, LLC, as Warrant Agent, 6201 15th Avenue, Brooklyn, NY 11219, Attn:  Relationship Manager, and 48 Wall Street, 21st Floor, New York, NY 10005, Attn:  Legal Department; (vii) the 30 largest unsecured creditors of the Debtors, on a consolidated basis; and (viii) all parties that have requested notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002.  The Debtors respectfully submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

26.     No prior request for the relief sought in this Motion has been made to this or any other court.

01:21892975.1

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed

Order, substantially in the form attached hereto as <u>Exhibit A</u> and grant such other and further

relief as may be just and proper.


Dated: Wilmington, Delaware
       May 10, 2017

                                   SHEARMAN & STERLING LLP
                                   Douglas P. Bartner
                                   Fredric Sosnick
                                   Sara Coelho
                                   Stephen M. Blank
                                   599 Lexington Avenue
                                   New York, New York  10022
                                   Telephone:   (212) 848-4000
                                   Facsimile:   (646) 848-8174

                                           -and-

                                   YOUNG CONAWAY STARGATT & TAYLOR, LLP

                                   <u>/s/ Jaime Luton Chapman</u>
                                   Pauline K. Morgan (No. 3650)
                                   Kenneth J. Enos (No. 4544)
                                   Jaime Luton Chapman (No. 4936)
                                   Rodney Square
                                   1000 North King Street
                                   Wilmington, Delaware  19801
                                   Telephone:   (302) 571-6600
                                   Facsimile:   (302)  571-1253

                                   Proposed Counsel to the Debtors and Debtors in
                                   Possession

01:21892975.1