# **EXHIBIT D**

Exit Financing Term Sheet

# NUVERRA ENVIRONMENTAL SOLUTIONS, INC.

# TERM LOAN FACILITY TERM SHEET

The following summarizes certain of the key terms and conditions of the proposed term loan facility (the "New Term Loan") of reorganized Nuverra Environmental Solutions, Inc. ("Reorganized NES" and together with its subsidiaries, the "Company") to be entered into by and among each DIP Term Lender who agrees to enter into the New Term Loan as described herein.[1] Capitalized terms used but not otherwise defined herein shall have the meaning set forth in the Restructuring Support Agreement, dated as of April 9, 2017, as amended on or prior to the date hereof, by and among the Company and certain holders of the 2021 Notes.

## New Term Loan

| | |
|---|---|
| **The New Term Loan Credit Agreement** | On the Effective Date, the Company will enter into a new term loan credit agreement (the "Credit Agreement") consisting of a new $[31.5] million (the "Term Loan Amount") term loan (the "Term Loan"). |
| **Lenders** | The DIP Term Lenders. |
| **Agent** | Wilmington Savings Fund Society, FSB, or any other institution selected by the Required Lenders (as defined below) in consultation with the Borrower. |
| **Borrower** | Nuverra Environmental Solutions, Inc. (the "Borrower"). |
| **Guarantors** | Each existing and future subsidiary of the Borrower (the "Guarantors" and, each individually, a "Guarantor"), including, without limitation, Heckmann Water Resources Corporation, Heckmann Water Resources (CVR) Inc., 1960 Well Services, LLC, HEK Water Solutions, LLC, Appalachian Water Services, LLC, Badlands Power Fuels, LLC (a Delaware limited liability company), Badlands Power Fuels, LLC (a North Dakota limited liability company), Landtech Enterprises, L.L.C., Badlands Leasing, LLC, Ideal Oilfield Disposal, LLC, Nuverra Total Solutions, LLC, NES Water Solutions, LLC and Heckmann Woods Cross, LLC; provided that no subsidiary that is a "controlled foreign corporation" or immaterial subsidiary (as defined below) shall be required to guaranty the Term Loan.<br><br>An "immaterial subsidiary" is a subsidiary that does not (i) own any assets (other than assets of a *de minimis* nature), (ii) have any liabilities |

---

[1] It is also contemplated that the Company will enter into an asset-backed revolver (an "ABL Facility") on the Effective Date which will provide for borrowing availability in an aggregate amount of at least $20 million.

01:21930391.1

| | |
|---|---|
| | (other than liabilities of a *de minimis* nature) or (iii) engage in any business activity. |
| **Maturity** | The later of the date that is (i) [three (3)] years after the Effective Date and (ii) six (6) months after the maturity date of the ABL Facility. |
| **Interest Rate** | The Term Loan shall bear interest at an annual rate of 9.5% which interest shall be payable in full in cash monthly. |
| **Default Rate** | Upon the occurrence and during the continuance of a payment default or an Event of Default, the interest rate set forth above shall increase by 2% (the "Default Rate").  Such additional interest shall be payable in cash on demand. |
| **Prepayment** | Borrower may prepay the Term Loan at any time without fees or penalties. |
| **Amortization** | [None.]  The entire amount of Term Loan, together with the accrued and unpaid interest thereon shall be due and payable in full at maturity. |
| **Collateral** | The collateral (the "Collateral") shall consist of (a) a first priority perfected lien on all of the Term Collateral (as defined below) and (b) a second priority perfected lien on all of the ABL Collateral (as defined below).  The Company and the Lenders shall enter into intercreditor arrangements with the providers of the ABL Facility on terms and conditions satisfactory to the Lenders.  As used herein, the "ABL Collateral" means all of the Borrower's and each Guarantor's existing and future cash, cash equivalents, bank accounts, accounts receivable, other receivables, chattel paper, inventory, and rights, documents, general intangibles (excluding, for the avoidance of doubt, except as needed to liquidate the collateral, trademarks, trade names and other intellectual property) and insurance, instruments and books and records relating thereto and all proceeds of the foregoing; and the "Term Collateral" means all of the Borrower's and each Guarantor's existing and future shares of capital stock of (or other ownership or profit interests in) each of its present and future subsidiaries, intercompany debt and all other assets and property other than the ABL Collateral.<br><br>The Collateral set forth above shall be subject to customary exclusions and limitations, including an exclusion of those assets (including, without limitation, fixed assets leased pursuant to a capital lease or other similar leasing arrangement) on which liens are placed to secure a portion of the purchase price or financing of such assets. |

| **Use of Proceeds** | The Term Loan Amount shall be used to make Effective Date distributions pursuant to the Chapter 11 plan of reorganization of the Reorganized NES (including the repayment in full in cash of the DIP Revolving Facility Claims and the ABL Credit Facility Claims). |
|---|---|
| **Mandatory Repayments** | Mandatory prepayments of the Term Loan shall occur, without limitation, from [(a)] the proceeds of (i) non-ordinary asset sales, (ii) extraordinary receipts; (iii) debt not permitted by the Loan Documentation and (iv) equity issuances (other than certain excluded equity issuances) [and (b) commencing with the fiscal year ending December 31, 2017, [75]% of annual excess cash flow (to be defined in the Loan Documentation)][2]. |
| **Funding Fee** | On the Effective Date, Lenders shall receive a fee, payable in cash, of $[787,500] (the "Funding Fee").  The Funding Fee shall be payable in cash to each Lender proportionally based on such Lender's *pro rata* portion of the funded Term Loan Amount. |
| **Representation and Warranties** | Substantially similar to those contained in the Term Loan Credit Agreement dated April 15, 2016 (the "Prepetition Loan Agreement"), as amended, with Wilmington Saving Fund Society, FSB, as administrative agent for the lenders party thereto (taking into account the difference in the credit profile of the Company and industry, as a whole) with such changes as may be reasonably requested by the Required Lenders. |
| **Affirmative and Negative Covenants** | Substantially similar to those contained in the Prepetition Loan Agreement (taking into account the difference in the credit profile of the Company and industry, as a whole) with such changes as may be reasonably requested by the Required Lenders. |
| **Financial Covenants** | None. |
| **Events of Default** | Substantially similar to those contained in the Prepetition Loan Agreement (taking into account the difference in the credit profile of the Borrower and industry, as a whole) with such changes as may be reasonably requested by the Required Lenders. |

---

[2] Excess cash flow sweep is subject to the agreement of the ABL Facility provider.

01:21930391.1

| | |
|---|---|
| **Loan Documentation** | The definitive documents governing the Term Loan (the "Loan Documentation") will consist of the following, each of which shall be in form and substance acceptable to the Required Lenders: (a) the Credit Agreement; (b) the Lenders fee letter and the Agency fee letter, (c) security documentation, instruments or agreements evidencing liens and security interests in the collateral in favor of the Agent for the benefit of the Lenders; (d) control agreements; (e) mortgages; (f) an intercreditor agreement pertaining to the ABL Facility; and (g) any other document necessary to effectuate the terms, conditions and provisions of this term sheet, as determined by the Required Lenders. |
| **Amendments, waivers, etc.** | Except for matters customarily requiring consent of each adversely affected Lender, the Loan Documentation may be amended by the Company and Lenders holding the majority in principal amount of the Term Loan (the "Required Lenders"). |
| **Gross-up, Yield protection, Expenses and Indemnification** | Customary for the debt issuances of this type.  Without limiting the generality of the foregoing, the Borrower will reimburse the Lenders and the Agent for all their reasonable fees and expenses (including reasonable and documented legal fees and expenses) incurred in connection with the transaction contemplated hereby, each future amendment or waiver of the Credit Agreement and the enforcement of the Loan Documentation. |
| **Governing Law** | New York. |