# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Nuverra Environmental Solutions, Inc., *et al.*,[1] | Case No.: 17–10949 (KJC) |
| Debtors. | (Jointly Administered) |
| | Hearing Date: June 5, 2017 @ 2:00 p.m. (proposed)<br>Obj. Deadline: June 5, 2017 @ 2:00 p.m. (proposed) |

**MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR RECONSIDERATION OF ORDER (I) SCHEDULING COMBINED HEARING ON (A) ADEQUACY OF DISCLOSURE STATEMENT AND (B) CONFIRMATION OF PREPACKAGED PLAN; (II) FIXING DEADLINE TO OBJECT TO DISCLOSURE STATEMENT AND PREPACKAGED PLAN; (III) APPROVING PREPETITION SOLICITATION PROCEDURES AND FORM AND MANNER OF NOTICE OF COMMENCEMENT, COMBINED HEARING, AND OBJECTION DEADLINE; (IV) CONDITIONALLY (A) DIRECTING THE UNITED STATES TRUSTEE NOT TO CONVENE SECTION 341 MEETING OF CREDITORS AND (B) WAIVING REQUIREMENT OF FILING STATEMENTS OF FINANCIAL AFFAIRS AND SCHEDULES OF ASSETS AND LIABILITIES; AND (V) GRANTING RELATED RELIEF**

The Official Committee of Unsecured Creditors (the "Committee") of the above captioned debtors and debtors in possession (the "Debtors"), by and through its undersigned proposed counsel, Kilpatrick Townsend & Stockton LLP and Landis Rath & Cobb LLP, hereby files this motion for reconsideration (the "Motion for Reconsideration") of the *Order (I) Scheduling Combined Hearing on (A) Adequacy of Disclosure Statement and (B) Confirmation of Prepackaged Plan; (II) Fixing Deadline to Object to Disclosure Statement and Prepackaged Plan; (III) Approving Prepetition Solicitation Procedures and Form and Manner of Notice of*

---

[1] The Debtors in these proceedings (including the last four digits of their respective taxpayer identification numbers) are: Nuverra Environmental Solutions, Inc. (7117), Appalachian Water Services, LLC (0729), Badlands Leasing, LLC (2638), Badlands Power Fuels, LLC (DE) (8703), Badlands Power Fuels, LLC (ND) (1810), Heckmann Water Resources Corporation (1194), Heckmann Water Resources (CVR), Inc. (1795), Heckmann Woods Cross, LLC (9761), HEK Water Solutions, LLC (8233), Ideal Oilfield Disposal, LLC (5796), Landtech Enterprises, L.L.C. (9022), NES Water Solutions, LLC (3421), Nuverra Total Solutions, LLC (6218), and 1960 Well Services, LLC (5084). The Debtors' corporate headquarters is located at 14624 N. Scottsdale Rd., Suite 300, Scottsdale, Arizona 85254.

*Commencement, Combined Hearing, and Objection Deadline; (IV) Conditionally (A) Directing the United States Trustee Not to Convene Section 341 Meeting Of Creditors and (B) Waiving Requirement of Filing Statements of Financial Affairs and Schedules of Assets and Liabilities; and (V) Granting Related Relief [D.I. 59]* (the "Solicitation Order"). In support of this Motion for Reconsideration, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

The Committee moves for reconsideration of the Solicitation Order pursuant to Local Rule 9013-1(m)(v) providing that any party may move for reconsideration of a first day order and the burden of proof remains with the Debtor. The relief granted in the Solicitation Order appears to have been based upon these cases being characterized by the Debtors as a so called "prepackaged chapter 11," with an at least implicit suggestion that all impaired creditor classes were already on board and that there would be no meaningful role for a creditors' committee to play in such a case. This implicit suggestion was reinforced, and arguably made explicit, by the Debtors' "First Day Declaration" stating that "The Debtors expect that the votes to be received and tabulated from ... 2018 Notes eligible to vote on the Nuverra Group Plan will further support confirmation of the Plan."[2] The Committee has been advised that preliminary balloting results reflect that the 2018 Notes, in fact, rejected the Plan.

The Debtors propose essentially to wipe out two classes of unsecured creditors having claims approximating $55 million, including over $41 million in principal amount of publicly issued notes known as the "2018 Notes" (Classes A6, B6 and C6) and various rejection damages claims (Class A8). Notwithstanding this proposed treatment, all other general unsecured claims are unimpaired under the Plan. Notably, the Plan also embraces a management incentive plan

---

[2] *Declaration of Robert D. Albergotti in Support of Voluntary Petitions, First Day Motions and Applications* [D.I. 12, ¶74].

for 12.5% of the equity in reorganized Nuverra Environmental Solutions, Inc. ("Nuverra") which, based on the Debtors' Plan valuation, is worth $32.8 million alone (exclusive of salary and the balance of management compensation packages, and using the Debtors' midpoint valuation estimate of $262.5 million found on page 110 of the Disclosure Statement). And 60% of the $32.8 million, or about $20 million, will be awarded to just one person on the Plan effective date.

Because these cases are different from the customary pre-packaged case, in which a consensual plan is negotiated pre-petition with all significant creditor constituencies that are to be impaired, and because the Plan here proposes effectively to wipe out significant unsecured creditor constituencies, there is a decidedly different fundamental fairness concern and important role for the Committee to play in these cases that may not have been apparent on the first day of these cases. In that regard, at the first day hearing, the Court observed that "I've seen a number of 'prepacks,' so-called, in the last couple of years, which, as it turns out, weren't really fully packed." [D.I. 66, p. 12 of 36, lines 7-9]. Despite that observation, there was no acknowledgment by the Debtors that the Plan in these cases also was not "fully packed," a fact highly relevant to the timeline being proposed by the Debtors. In particular, there was no mention during this colloquy of the fact that a large unsecured constituency not a party to the RSA was relegated to a *de minimis* or zero distribution under the Plan.

Also, when the Court asked the U.S. Trustee if a creditors committee was anticipated to be formed, the U.S. Trustee responded that "the unsecured creditors in this case, where it looks like they're almost all trade creditors would take a look at the plan and maybe speak with the debtors before seeking appointment of a committee" and then indicated a committee would be solicited by mail only, rather than a customary prompt in-person formation meeting. [D.I. 66, p.

31 of 36, lines 18-25]. The trade creditors' claims total about $10.8 million. [D.I. 66, p. 22, line 22]. The approximately $55 million of unsecured creditors' claims slated to receive almost nothing under the Debtors' proposed Plan dwarfs the trade creditors by a margin of about 6 to 1. During this colloquy between the Court and U.S. Trustee, no party at the first day hearing corrected the record to indicate that the unsecured creditors in these cases were not almost all trade creditors.

The Committee respectfully submits that the timeline currently set forth in the Solicitation Order does not accommodate the fundamental fairness concerns alluded to above or the proper role of the Committee and therefore is unfairly prejudicial to the legitimate interests of unsecured creditors. For the reasons set forth herein, the Solicitation Order should be modified as requested below.

## BACKGROUND

1. On May 1, 2017 (the "Petition Date"), the Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. On the Petition Date, the Debtors filed their *Motion for Entry of an Order (I) Scheduling Combined Hearing on (A) Adequacy of Disclosure Statement and (B) Confirmation of Prepackaged Plan; (II) Fixing Deadline to Object to Disclosure Statement and Prepackaged Plan; (III) Approving Prepetition Solicitation Procedures and Form and Manner of Notice of Commencement, Combined Hearing, and Objection Deadline; (IV) Conditionally (A) Directing the United States Trustee Not to Convene Section 341 Meeting of Creditors and (B) Waiving*

*Requirement of Filing Statements of Financial Affairs and Schedules of Assets and Liabilities; and (V) Granting Related Relief* [D.I. 11] (the "Solicitation Motion").

3. Also on May 1, 2017, the Debtors filed their "Disclosure Statement" [D.I. 14] with respect to three related plans (the "Plan") [D.I. 13].

4. On May 2, 2017, the Court entered the Solicitation Order.

5. On Friday, May 19, 2017, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Committee in these cases pursuant to Bankruptcy Code section 1102. Importantly, and contrary to the usual process in this District, no organizational meeting was scheduled; rather committee solicitation questionnaires were mailed to creditors and, after appointment, the U.S. Trustee conducted a telephonic meeting with the Committee members on May 22, 2017. The Committee promptly selected its counsel and financial advisor one business day later on May 23, 2017, which date is less than 30 days before the hearing scheduled on confirmation of the Debtors' Plan. No trustee or examiner has been appointed in these cases.

**REQUESTED RELIEF**

6. Pursuant to this Motion for Reconsideration, the Committee respectfully requests that the Solicitation Order be modified to protect the legitimate interests of and provide fundamental fairness to unsecured creditors in Classes A6, B6, C6 and A8, and to make it possible for the Committee to fulfill the role creditors' committees are expected to fulfill under chapter 11 of the Bankruptcy Code. In true pre-packaged chapter 11 cases, where a consensual plan has been negotiated with the major creditor constituencies and any other creditor constituencies are left unimpaired, concerns about the rights of non-assenting holders within the major constituencies are alleviated because the requisite majority and amount of similarly

situated and identically treated creditors have agreed to accept the treatment afforded their constituency under the plan. As such, a creditors' committee's role may be limited. Though the Debtors may have intimated, at least implicitly, at the outset of these cases that this is such a case, it quite simply is not. Here, without any effort having been made by the Debtors to negotiate a consensual plan with all of its major creditor constituencies, the holders of approximately $55 million of unsecured claims, including the holders of approximately $41.4 million in principal amount of 2018 Note claims, are proposed to be effectively wiped out under the Plan, while trade creditors are to be unimpaired and Nuverra is to retain its equity interests in its debtor subsidiaries that guaranteed payment of the 2018 Notes.

7. There is thus a critical role to be played by the Committee that cannot be fulfilled under the schedule set forth in the Solicitation Order, which requires objections to confirmation of the Plan to be filed by June 12, 2017 and for the confirmation hearing to commence on June 21, 2017. Accordingly, the Committee respectfully requests that the Solicitation Order be modified to extend the dates prescribed therein by at least seventy-five (75) days (without prejudice to the right to seek further extensions as warranted) to enable the Committee to perform its intended function in these cases and its constituencies to be represented effectively as contemplated by the Bankruptcy Code. The Committee also requests that the Debtors be required promptly to file their statements of financial affairs and schedules of assets and liabilities (the "Statements and Schedules") on a debtor by debtor basis.

## ARGUMENT

### A. The Local Bankruptcy Rules Provide for Reconsideration of First Day Orders

8. The Solicitation Order is a first day order. The Local Rules provide for reconsideration of first day orders. Local Rule 9013-1(m)(v) provides:

<u>Reconsideration of Orders</u>. Any party in interest may file a motion to reconsider any First Day Order, other than any order entered under 11 U.S.C. §§ 363 and 364 with respect to the use of cash collateral and/or approval of postpetition financing, within thirty (30) days of the entry of such order, unless otherwise ordered by the Court. Any such motion for reconsideration shall be given expedited consideration by the Court. The burden of proof with respect to the appropriateness of the order subject to the motion for reconsideration shall remain with the debtor notwithstanding the entry of such order.

9. This Motion for Reconsideration is timely, as the Solicitation Order was entered on May 2, 2017.

**B. The Timeline in the Solicitation Order Is Not Appropriate Given the Substance of the Plan and Its Exclusionary Character**

10. At the first day hearing on May 2, the Court's attention was not drawn to the fact that $55 million of unsecured debt effectively was being eradicated under the Plan, a fact that if pointed out, would have alerted the Court to the likelihood that confirmation (including possibly the Debtors' valuation of a sixteen (16) plus entity, multi hundred million dollar enterprise) would be vigorously contested and that the strong policy underlying chapter 11 in favor of consensual plans would be undermined by contracting dramatically the plan process. *See, e.g., In re Innkeepers USA Trust*, 442 B.R. 227, 234 (Bankr. S.D.N.Y. 2010) ("[A] debtor's exclusive period was intended by Congress to provide for an opportunity for the debtor to negotiate with its constituents and reach a consensual plan...."). Given the Debtors' decision to take the contested plan route and attempt to bludgeon significant unsecured constituencies into submission, which was not brought home to the Court at the first day hearing when the Court remarked about cases not being "fully packed," the timeline proposed in the Solicitation Motion was unjustified. The path chosen by the Debtors has dictated the appointment of a creditors' committee that must play

an active and important role in these cases. It should be afforded an adequate opportunity to do so.

11. The Committee needs a reasonable time to respond effectively to the strategy the Debtors have chosen to pursue. In addition to attempting to truncate severely the plan process, the Debtors have exacerbated the situation by eliminating the requirement for filing of their respective Statements and Schedules if their Plan was confirmed on or before June 30. A "best interests of creditors" analysis by the Committee is mandated, but the absence of Statements and Schedules will make it more difficult and time consuming to identify and quantify the Debtors' unencumbered assets. In this regard, it also will be necessary to perform an avoidance analysis that is conspicuous by its absence in the Disclosure Statement. Moreover, the Disclosure Statement purports to include a liquidation analysis, but it is presented on a consolidated basis, notwithstanding that the 2018 Noteholders have guaranty claims against the Debtor subsidiaries on which they receive no distributions under the plan, while Nuverra retains its equity interests in them and while the intercompany debt survives confirmation. The Debtors' strategy also will require a valuation analysis by the Committee, requiring substantial discovery (likely including expert witnesses). A reasonable time to perform such an analysis should be afforded.

### C. The Requirements for Filing Statements and Schedules Should Not be Waived and They Should be Required to Be Filed Promptly

12. Section 521 of the Bankruptcy Code requires a debtor to file Statements and Schedules, unless the court orders otherwise. *See* 11 U.S.C. § 521(a)(1)(B). Furthermore, Bankruptcy Rule 1007 requires that a debtor file Statements and Schedules within 14 days of its petition date, unless the court grants an extension of such time for "cause." Fed. R. Bankr. P. 1007(c) (permitting extension of time to file Statements and Schedules "on motion for cause shown"). Under Local Rule 1007-1(b), in a voluntary chapter 11 case where the debtor has more

than 200 creditors and otherwise satisfies the conditions of Local Rule 1007-2, the time within which the debtor must file its Statements and Schedules is extended to 30 days from the petition date. A further extension may be granted for cause upon filing of a motion. See Del. Bankr. L.R. 1007-1(b).

13. Given the posture of these cases, the Debtors should be required promptly to file their Statements and Schedules. Absent Statements and Schedules on a debtor by debtor basis, the Committee and any other creditor desiring to do so will be unable to analyze the validity, extent and priority of the various secured parties' alleged liens in these cases. Without knowing the specific categories of assets and in certain cases the specific asset owned by a Debtor, all on a debtor by debtor basis, a detailed review of the secured parties' alleged liens is not possible. The Debtors have disclosed that they have three primary secured creditors, making a lien analysis paramount in these cases.

14. The filing of Statements and Schedules will also facilitate performance by the Committee and any creditor desiring to do so of a liquidation analysis to determine if the Debtors' Plan satisfies the "best interests test" under Section 1129(a)(7). The Debtors state in their Disclosure Statement that they are not substantively consolidating. The requirements of section 1129 must be separately satisfied for each Debtor. Absent knowing which assets and liabilities belong to which Debtor, and what if any assets are unencumbered, the Committee will be unable to perform a proper "best interests" test.

**D.     In the Event of Resolicitation, a Consolidated Plan and Disclosure Statement Hearing Should Not be Allowed as the Disclosure Statement is Inadequate**

15. The Committee has been advised that preliminary balloting results reflect that the Plan has been rejected by Class A6, comprised of the holders of 2018 Note claims against the Nuverra Group Debtors. Classes B6 and C6 (the 2018 Notes guaranty claim) and Class A8

(rejection damages claims) are deemed to reject and did not vote. Though the Committee believes the Disclosure Statement is deficient, if final balloting results confirm that the Plan has been rejected by Class A6, the Committee will not take the position that the Plan must be resolicited.

16. The Committee reserves the right as part of this Motion for Reconsideration, however, to challenge the adequacy of the Disclosure Statement and assert that the Plan must be resolicited (and to require the Debtors to include a letter from the Committee with any resolicited plan), at least as to Class A6, if final balloting results do not confirm that Class A6 has rejected the Plan. The Committee has only begun its analysis of the Disclosure Statement and has not yet determined the totality of the deficiencies in the Disclosure Statement. Several deficiencies immediately stand out making the Disclosure Statement inadequate.

17. The Disclosure Statement is completely silent on the value of the Releases proposed in the Plan. The Releases in the Plan appear to be a material component of the Plan, yet no description is provided as to the claims being released or the value of such claims. Notably, the Releases contained in the proposed Plan are broader than typical plan releases (i.e., "gross negligence and willful misconduct" would be released), and include creditors releasing non-debtor third parties even if such creditors did not vote on the Plan. In a Chapter 7, the proceeds of the claims being released by the Debtors would likely inure to the benefit of unsecured creditors.

18. The Plan provides that the Debtors shall retain all "Causes of Action." Importantly, this includes avoidance actions. The Plan Supplement identifies various Causes of Action the Debtors seek to preserve for their benefit. [D.I. 90, Exhibit J]. Yet there is no discussion in the Disclosure Statement as to the value of these Causes of Action. In a Chapter 7,

the proceeds of these Causes of Action would likely inure to the benefit of unsecured creditors. Moreover, the Liquidation Analysis in the Disclosure Statement fails to provide any value for the retained Causes of Action.

19. The Liquidation Analysis assumes there are zero unencumbered assets. Absent the Debtors preparing Statements and Schedules on a debtor by debtor basis, it is not possible for the Committee to determine whether or not there are in fact any unencumbered assets at each Debtor. The Debtor's Plan Supplement at Exhibit J [D.I. 90] discloses that the Debtors have avoidance actions, meaning that there are at least some unencumbered assets.

20. The Plan appears to be patently unconfirmable based upon the treatment of the 2018 Notes guaranty claims against all of the subsidiary Debtor entities. The Plan provides that the 2018 Notes guaranty claims will receive zero distribution at each of the subsidiary Debtor entities. Yet, in violation of the absolute priority rule, the parent Debtor intends to retain its equity in each of these subsidiary Debtors. Given that the Plan is patently unconfirmable because it violates the absolute priority rule, the Disclosure Statement should not be approved.

21. Finally, if resolicitation occurs, the Committee strongly believes that based upon the infirmities in the Plan and Disclosure Statement, and the essentially zero recovery being provided to a significant portion of the Committee's constituency, the Committee should be afforded the opportunity to include in any solicitation package an information letter on behalf of the Committee advising its constituency regarding voting on the Plan as currently constructed.

## NOTICE AND NO PRIOR REQUEST

22. Notice of this Motion to Shorten has been given to the following parties, or their counsel if known: (i) the Debtors, (ii) the U.S. Trustee, (iii) the Supporting Noteholders, (iv) Wells Fargo, as agent for the Revolving Credit Agreement, (v) Wilmington Savings Fund

Society, FSB, as trustee to Senior Secured Second Lien Notes due 2021, Trustee to 9.875% Senior Notes Due 2018 and Term Loan Agent, (vi) American Stock Transfer & Trust Company, LLC, as Warrant Agent, and (vii) all other parties who have requested notice pursuant to Bankruptcy Rule 2002. The Committee submits that no further or other notice need be given.

23. No prior motion for the relief sought herein has been made by the Committee to this or any other Court.

WHEREFORE, for the reasons stated above, the Committee respectfully requests that the Court grant this Motion for Reconsideration, and modify the Solicitation Order (i) to extend the June 12, 2017 Objection Deadline by at least seventy-five (75) days, (ii) to reset the hearing currently scheduled for June 21, 2017 to a date that is at least seventy-five (75) days after June 21, 2017, (iii) to require that the Debtors' respective Statements and Schedules be filed by June 30, 2017, and (iv) if final balloting results do not confirm that Class A6 has rejected the Plan, to require a disclosure statement hearing and resolicitation of the Plan.

Dated:  June 1, 2017
        Wilmington, Delaware

**LANDIS RATH & COBB LLP**

_/s/_

Richard S. Cobb (No. 3157)
Matthew B. McGuire (No. 4366)
Travis J. Ferguson (No. 6029)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email:  cobb@lrclaw.com
       mcguire@lrclaw.com
       ferguson@lrclaw.com

-and-

**KILPATRICK TOWNSEND & STOCKTON LLP**
Todd C. Meyers, Esq.
1100 Peachtree Street NE
Suite 2800
Atlanta, GA, 30309-4528

-and-

1114 Avenue of the Americas
New York, NY  10036-7703
Telephone: (404) 815-6482
Telephone: (212) 775-8766
Facsimile: (404) 541-3307
tmeyers@kilpatricktownsend.com

-and-

Paul M. Rosenblatt
Michael D. Langford
1100 Peachtree Street NE, Suite 2800
Atlanta, GA 30309-4528
Telephone: (404) 815-6500
Facsimile: (404) 815-6555
Email: prosenblatt@kilpatricktownsend.com
       mlangford@kilpatricktownsend.com

*Proposed Counsel to Official Committee of Unsecured Creditors*